In re:

| | |
|---|---|
| Raguse Family Partnership, | Lead Case No. 26-60308 – WJF |
| R.A.G. Holdings, LLC, | Case No. 26-60309 |
| Tru AG LLC, | Case No. 26-60311 |
| Red Rock Cattle LLC, and | Case No. 26-60310 |
| David Raguse and Susan Raguse, | Case No. 26-60312 |
| Truman Raguse, | Case No. 26-60313 |
| | **(Jointly Administered)** |

Debtors.                                                                                          Chapter 11

**NOTICE OF HEARING AND MOTION OF CREDITOR CNH
INDUSTRIAL CAPITAL AMERICA LLC, FOR AN ORDER
GRANTING RELIEF FROM THE AUTOMATIC STAY**

To:     Debtors and other parties-in-interest as defined by Fed. R. Bankr. P. 4001 and Local Rule 9013-2.

1.      Creditor CNH Industrial Capital America LLC ("CNH"), by and through its undersigned counsel, moves this Court for the relief requested below and gives notice of the related hearing.

2.      The Court will hold a hearing on this motion on **August 4, 2026 at 10:30 a.m.** before the Honorable William J. Fisher.  The hearing will be conducted telephonically.  Please contact Judge Fisher's Courtroom Deputy by email at mnb_fisher_hearings@mnb.uscourts.gov or by telephone at 651-848-1061 to obtain the dial-in information. Dial-in instructions for telephonic hearings will also be displayed the day prior to the hearing on Judge Fisher's public calendar here: https://www.mnb.uscourts.gov/judges-calendars. Any person wanting to appear in person must contact Judge Fisher's Courtroom Deputy at 651-848-1061 at least 48 hours prior to the hearing.

3.      Any response to this Motion must be filed and served no later than July 28, 2026, which is seven days before the time set for the hearing (including Saturdays, Sundays, and

1

holidays). UNLESS A RESPONSE TO OPPOSING THE MOTION IS TIMELY FILED, THE COURT MY GRANT THE MOTION WITHOUT A HEARING.

4. The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334, Fed. R. Bankr. P. 5005, and Local R. 1070-1. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The petition commencing this case was filed on May 14, 2026 (the "Petition Date"). The case is now pending before this Court.

5. This Motion arises under 11 U.S.C. § 362 and Fed. R. Bankr. P. 4001. This Motion is filed under Fed. R. Bankr. P. 9013 and 9014, and Local Rules 9006-1, and 9013-1 - 9013-2.

6. CNH requests relief from the automatic stay under 11 U.S.C. § 362(a) with respect to its first-priority security interest in the Collateral (defined below) and with respect to its Leased Equipment (defined below).

## SUMMARY OF RELIEF

7. CNH requests relief from the automatic stay under 11 U.S.C. §362(a) to allow CNH to pursue its contractual and legal rights and remedies with respect to its Collateral and Leased Equipment currently in the possession or control of Raguse Family Partnership, David Raguse, Susan Raguse, and Truman Raguse (collectively, "Debtors"). Alternatively, CNH requests that the Court compel Debtors to make adequate protection payments to CNH for the continued possession and use of the Collateral and Leased Equipment. The Collateral and Leased Equipment are not necessary for an effective reorganization, and there is no equity in the Collateral or Leased Equipment.

## STATEMENT OF FACTS

CNH is engaged, among other things, in the business of leasing and financing equipment to businesses involved in the agricultural industry. (Affidavit of Zach Beegle, ¶ 2). Among the customers of CNH are Debtors. (*Id.*).

<u>The Sale Agreements</u>

**I. The First Agreement**

1. On or about May 9, 2022, Debtors entered into an agreement with CNH as evidenced by that Retail Installment Sale Contract and Security Agreement dated May 9, 2022, in favor of CNH, as Assignee[1], of Titan Machinery Inc ("<u>Titan</u>") identified as contract number 333828 (the "<u>First Agreement</u>"), for the purpose of financing the purchase of a 2021 Case IH Speed Tiller, Model 475, Serial No. CWR003548 (the "<u>First Equipment</u>"), pursuant to the terms and conditions more specifically identified therein. (*See* Beegle Aff., at ¶ 6, Ex.1-A).

2. Immediately upon execution of the First Agreement, Titan assigned the First Agreement, along with all rights, title, and interest in and to the First Equipment, to CNH. (*See* Beegle Aff., at ¶ 7, Ex. 1-A, pp. 1-2 at ¶ 7).

3. To secure Debtors' payment and performance obligations to CNH, pursuant to Paragraph 6 of the First Agreement, Debtors granted CNH a first-priority purchase money security interest in the First Equipment, as well as all improvements, parts, accessories, substitutions, replacements, products, proceeds, and premium refunds associated with or related to the First Equipment, to CNH.

4. To perfect its purchase money security interest in the First Equipment, on or about May 13, 2022, CNH filed a UCC-1 Financing Statement (the "<u>First UCC</u>") with the Minnesota Secretary of State, which financing statement is identified as filing number 1313726000363. (*See* Beegle Aff., at ¶ 9, Ex.1-B).

5. According to Paragraph 10 of the First Agreement, Debtors agreed that the First Equipment would remain in Minnesota.

---

[1] Capitalized terms not otherwise defined herein or the pleadings have the meanings ascribed to them in the applicable Loan Documents.

6. Debtors further agreed in Paragraph 10 of the First Agreement that they would use the First Equipment "solely within the intended uses of the manufacturer."

7. Pursuant to Paragraph 14 of the First Agreement, Debtors shall be in default if they fail to pay when due any of the Obligations,[2] or to perform any covenant or any other obligation of theirs under the First Agreement or any other agreement with or assigned to CNH.

8. Paragraph 19 of the First Agreement further provides that upon a default, CNH shall have the right, in its sole discretion, to exercise its remedies, which include but are not limited to:

    i. Declaring all Obligations[3] immediately due and payable without notice or demand;

    ii. Entering into any premises where the First Equipment may be located, taking possession of the First Equipment, without notice or hearing, and, Debtors or any guarantor, also expressly waives any right to notice or a prior hearing or to require CNH to post any bond;

    iii. Requiring Debtors to assemble the First Equipment and make it available to CNH at any convenient place designated by CNH within 10 days after notice from CNH; and

    iv. Selling (including at wholesale) or otherwise disposing of the First Equipment at public or private sale for cash or on credit terms, without notice; and if notice is required by law, ten (10) days' notice to Debtors shall be deemed reasonable notice.

---

[2] As defined in the Agreements.
[3] As defined in the Agreements.

9.      Paragraph 15 of the First Agreement provides that Debtors shall reimburse CNH for any expense incurred by CNH in protecting or enforcing its rights under the First Agreement, including reasonable attorneys' fees and legal expenses.

10.     Pursuant to the First Agreement, Debtors entered into a payment schedule change agreement on May 30, 2024 ("First Agreement PSC 1") in which Debtors agreed to make remaining payments as follows: one (1) payment of $10,000.00 on September 9, 2024, then one (1) payment of $3,775.12 on December 9, 2024, then three (3) consecutive annual payments of $26,908.15 beginning May 9, 2025, and one (1) final payment of $27,010.46 on May 9, 2028. (See Beegle Aff., at ¶ 15, Ex.1-C).

11.     Pursuant to the First Agreement, Debtors entered into another payment schedule change agreement on May 22, 2025 ("First Agreement PSC 2"), in which Debtors agreed to make remaining payments as follows: one (1) payment of $13,015.31 on December 1, 2025, then two (2) consecutive annual payments of $26,908.15 beginning on May 9, 2025, then one (1) final payment of $27,610.26 on May 9, 2028. (*See* Beegle Aff., at ¶ 16, Ex.1-D). According to the plain language of the First Agreement, Debtors' right to possess the First Equipment expires upon Debtors being in default under the First Agreement.

## II.      The Second Agreement

12.     On or about August 29, 2022, Debtors entered into an agreement with CNH as evidenced by that Retail Installment Sale Contract and Security Agreement dated August 29, 2022, in favor of CNH, as Assignee, of Titan identified as contract number 343512 (the "Second Agreement"), for the purpose of financing the purchase of a 2022 Brent Grain Cart, Model 2096, Serial No. B42060120 (the, "Second Equipment"), pursuant to the terms and conditions more specifically identified therein. (*See* Beegle Aff., at ¶ 17, Ex.2-A).

13.     Immediately upon execution of the Second Agreement, Titan assigned the Second Agreement, along with all rights, title, and interest in and to the Second Equipment, to CNH. (*See* Beegle Aff., at ¶ 18, Ex. 2-A, pp. 1-2 at ¶ 7).

14.     To secure Debtors payment and performance obligations to CNH, pursuant to Paragraph 6 of the Second Agreement, Debtors granted CNH a first-priority purchase money security interest in the Second Equipment, as well as all improvements, parts, accessories, substitutions, replacements, products, proceeds, and premium refunds associated with or related to the Second Equipment, to CNH.

15.     To perfect its purchase money security interest in the Second Equipment, on or about September 7, 2022, CNH filed a UCC-1 Financing Statement (the "Second UCC") with the Minnesota Secretary of State, which financing statement is identified as filing number 1332159800055. (*See* Beegle Aff., at ¶ 20, Ex.2-B).

16.     Paragraph 10 of the Second Agreement with respect to Debtors' covenants are materially the same as the First Agreement provided in Paragraph 5 of this memorandum and is incorporated herein by reference.

17.     Paragraphs 14, 15, and 19 of the Second Agreement-with respect to the events of default and CNH's rights and remedies-are materially the same as the First Agreement provided in Paragraphs 7-9 of this memorandum are incorporated herein by reference.

18.     Pursuant to the Second Agreement, Debtors entered into a payment schedule change agreement on May 30, 2024 ("Second Agreement PSC 1") in which Debtors agreed to make remaining payments as follows: one (1) payment of $10,000.00 on September 9, 2024, then one (1) payment of $25,913.29 on December 1, 2024, then two (2) consecutive annual payments

of $39,984.67 beginning September 1, 2025, and one (1) final payment of $40,478.61 on September 1, 2027. (*See* Beegle Aff., at ¶ 23, Ex.2-C).

19.     Pursuant to the Second Agreement, Debtors again entered into a payment schedule change agreement on May 22, 2025 ("Second Agreement PSC 2") in which Debtors agreed to make remaining payments as follows: one (1) payment of $19,992.33 on December 1, 2025, then one (1) payment of $39,984.67 on September 1, 2026, then one (1) final payment of $40,987.46 on September 1, 2027. (*See* Beegle Aff., at ¶ 24, Ex.2-D). According to the plain language of the Second Agreement, Debtors' right to possess the Second Equipment expires upon Debtors being in default under the Second Agreement.

## III.     The Third Agreement

20.     On or about September 22, 2023, Debtors entered into an agreement with CNH as evidenced by that Retail Installment Sale Contract and Security Agreement dated September 22, 2023, in favor of CNH, as Assignee, of Titan identified as contract number 703363 (the "Third Agreement"), for the purpose of financing the purchase of the following equipment:

| Description | Model | Serial Number |
|---|---|---|
| 2023 Case IH Combine[4] | 9250 AF COM | HAJF9N4MEPG253708 |
| 2011 Universal Trailer | TE 100 | 1DADLDO36M020355 |

(collectively the "Third Equipment") pursuant to the terms and conditions more specifically identified therein. (*See* Beegle Aff., at ¶ 25, Ex.3-A).

---

[4] Debtors sold part of the 2023 Case IH Combine, on August 7, 2024, proceeds in the amount of $557,451.24 were applied to the Third Agreement, for the purpose of this Motion, the 2023 Case IH Combine, Model 9250 AF COM, Serial No. HAJF9N4MEPG253708 in not included in the Collateral.

21. Immediately upon execution of the Third Agreement, Titan assigned the Third Agreement, along with all rights, title, and interest in and to the Third Equipment, to CNH. (*See* Beegle Aff., at ¶ 26, Ex.3-A, pp. 1-2 at ¶ 7).

22. To secure Debtors' payment and performance obligations to CNH, pursuant to Paragraph 6 of the Third Agreement, Debtors granted CNH a first-priority purchase money security interest in the Third Equipment, as well as all improvements, parts, accessories, substitutions, replacements, products, proceeds, and premium refunds associated with or related to the Third Equipment, to CNH.

23. To perfect its purchase money security interest in the Third Equipment, on or about September 28, 2023, CNH filed a UCC-1 Financing Statement (the "Third UCC") with the Minnesota Secretary of State, which financing statement is identified as filing number 14135789000484. (*See* Beegle Aff., at ¶ 28, Ex.3-B).

24. Paragraph 10 of the Third Agreement with respect to Debtors covenants are materially the same as the First Agreement provided in Paragraph 5 of this memorandum and is incorporated herein by reference.

25. Paragraphs 14, 15, and 19 of the Third Agreement-with respect to the events of default and CNH's rights and remedies-are materially the same as the First Agreement provided in Paragraphs 7-9 of this memorandum are incorporated herein by reference.

26. Pursuant to the Third Agreement, Debtors entered into a payment schedule change agreement on May 30, 2025 ("Third Agreement PSC 1") in which Debtors agreed to make remaining payments as follows: one (1) payment of $10,000.00 on September 22, 2024, then one (1) payment of $126,177.64 on December 22, 2024, then three (3) consecutive annual payments of $139,794.45 beginning on September 22, 2025, then one (1) final payment of $139,778.27 on

September 22, 2028. (*See* Beegle Aff., at ¶ 31, Ex.3-C). According to the plain language of the Third Agreement, Debtors' right to possess the Third Equipment expires upon Debtors being in default under the Third Agreement.

**IV.    The Fourth Agreement**

27.    On or about December 29, 2023, Debtors entered into an agreement with CNH as evidenced by that Retail Installment Sale Contract and Security Agreement dated December 29, 2023, in favor of CNH, as Assignee, of Titan identified as contract number 755358 (the "Fourth Agreement"), for the purpose of financing the purchase of a 2018 Case IH Combine Head, Model 4418-22 Corn, Serial No. YJH633407, (the "Fourth Equipment"), pursuant to the terms and conditions more specifically identified therein. (*See* Beegle Aff., at ¶ 32, Ex.4-A).

28.    Immediately upon execution of the Fourth Agreement, Titan assigned the Fourth Agreement, along with all rights, title, and interest in and to the Fourth Equipment, to CNH. (*See* Beegle Aff., at ¶ 33, Ex. 4-A, pp. 1-2 at ¶ 7).

29.    To secure Debtors' payment and performance obligations to CNH, pursuant to Paragraph 6 of the Fourth Agreement, Debtors granted CNH a first-priority purchase money security interest in the Fourth Equipment, as well as all improvements, parts, accessories, substitutions, replacements, products, proceeds, and premium refunds associated with or related to the Fourth Equipment, to CNH.

30.    To perfect its purchase money security interest in the Fourth Equipment, on or about January 16, 2024, CNH filed a UCC-1 Financing Statement (the "Fourth UCC") with the Minnesota Secretary of State, which financing statement is identified as filing number 1448370400619. (*See* Beegle Aff., at ¶ 35, Ex.4-B).

31.     Paragraph 10 of the Fourth Agreement with respect to Debtors' covenants is materially the same as the First Agreement provided in Paragraph 5 of this memorandum and is incorporated herein by reference.

32.     Paragraphs 14, 15, and 19 of the Fourth Agreement-with respect to the events of default and CNH's rights and remedies-are materially the same as the First Agreement provided in Paragraphs 7-9 of this memorandum are incorporated herein by reference.

33.     Pursuant to the Fourth Agreement, Debtors entered into a payment schedule change agreement on May 22, 2025 ("Fourth Agreement PSC 1") in which Debtors agreed to make remaining payments as follows: one (1) payment of $24,236.86 on December 1, 2025, then one (1) payment of $48,473.73 on January 1, 2026, then two (2) consecutive annual payments of $48,473.73 beginning on January 1, 2027, then one (1) final payment of $51,208.45 on January 1, 2029. (*See* Beegle Aff., at ¶ 38, Ex.4-C). According to the plain language of the Fourth Agreement, Debtors' right to possess the Fourth Equipment expires upon Debtors being in default under the Fourth Agreement.

**V.      The Fifth Agreement**

34.     On or about July 12, 2024, Debtors entered into an agreement with CNH as evidenced by that Retail Installment Sale Contract and Security Agreement dated July 12, 2024, in favor of CNH, as Assignee, of Titan identified as contract number 833847 (the "Fifth Agreement"), for the purpose of financing the purchase of the following equipment:

| Description | Model | Serial Number |
| --- | --- | --- |
| 2024 Case IH Steiger Tractor | 595 | JEEZC595JRF514418 |
| 2024 Case IH Steiger Tractor | 595Q | JEEZC595KRF514417 |
| 2024 Case IH Steiger Tractor | 595 | JEEZC595CRF14400 |

| Description | Model | Serial Number |
| --- | --- | --- |
| 2024 Case IH Steiger Tractor | 595 TK | JEEZC595LRF514408 |
| 2024 Case IH Steiger Tractor | 645 TK | JEEZC645CRF514868 |

(collectively the "Fifth Equipment"), pursuant to the terms and conditions more specifically identified therein. (*See* Beegle Aff., at ¶ 39, Ex.5-A).

35.     Immediately upon execution of the Fifth Agreement, Titan assigned the Fifth Agreement, along with all rights, title, and interest in and to the Fifth Equipment, to CNH. (*See* Beegle Aff., at ¶ 40, Ex.5-A, pp. 1-2 at ¶ 7).

36.     To secure Debtors payment and performance obligations to CNH, pursuant to Paragraph 6 of the Fifth Agreement, Debtors granted CNH a first-priority purchase money security interest in the Fifth Equipment, as well as all improvements, parts, accessories, substitutions, replacements, products, proceeds, and premium refunds associated with or related to the Fifth Equipment, to CNH.

37.     To perfect its purchase money security interest in the Fifth Equipment, on or about July 16, 2024, CNH filed a UCC-1 Financing Statement (the "Fifth UCC") with the Minnesota Secretary of State, which financing statement is identified as filing number 1482523500915. (*See* Beegle Aff., at ¶ 42, Ex.5-B).

38.     Paragraph 10 of the Fifth Agreement with respect to Debtors' covenants is materially the same as the First Agreement provided in Paragraph 5 of this memorandum and is incorporated herein by reference.

39.     Paragraphs 14, 15, and 19 of the Fifth Agreement-with respect to the events of default and CNH's rights and remedies-are materially the same as the First Agreement provided in Paragraphs 7-9 of this memorandum are incorporated herein by reference.

40.     Pursuant to the Fifth Agreement, Debtors entered into a payment schedule change agreement on May 22, 2025 ("Fifth Agreement PSC 1") in which Debtors agreed to make remaining payments as follows: one (1) payment of $323,297.77 on August 1, 2025, then one (1) payment of $646,594.82 on December 20, 2025, then one (1) payment of $646,594.82 on December 20, 2026 then, one (1) payment of $646,594.82 on December 20, 2027, then one (1) final payment of $550,395.20 on December 20, 2028. (*See* Beegle Aff., at ¶ 45, Ex.5-C).

41.     Pursuant to the Fifth Agreement, Debtors again entered into a payment schedule change agreement on September 29, 2025 ("Fifth Agreement PSC 2") in which Debtors agreed to make remaining payments as follows: one (1) payment of $345,557.00 on October 1, 2025, then one (1) payment of $646,594.82 on December 20, 2025, then two (2) consecutive annual payments of $646,594.82 beginning on December 20, 2026, then one (1) final payment of $646,594.83 on December 20, 2028. (*See* Beegle Aff., at ¶ 46, Ex.5-D). According to the plain language of the Fifth Agreement, Debtors' right to possess the Fifth Equipment expires upon Debtors being in default under the Fifth Agreement.

**VI.     The Sixth Agreement**

42.     On or about September 16, 2024, Debtors entered into an agreement with CNH as evidenced by that Retail Installment Sale Contract and Security Agreement dated September 16, 2024, in favor of CNH, as Assignee, of Titan identified as contract number 861340 (the "Sixth Agreement"), for the purpose of financing the purchase of the following equipment:

| Description | Model | Serial Number |
|---|---|---|
| 2024 Case IH Combine | 9250 | HAJF9NNHRG258191 |
| 2024 Case IH Combine | 9250 | HAJF9N4NLRG258156 |
| 2024 Case IH Combine | 8250 | HAJF8N4MKPG253748 |

(collectively the "<u>Sixth Equipment</u>"), pursuant to the terms and conditions more specifically identified therein. (*See* Beegle Aff., at ¶ 47, Ex.6-A).

43.     Immediately upon execution of the Sixth Agreement, Titan assigned the Sixth Agreement, along with all rights, title, and interest in and to the Sixth Equipment, to CNH. (*See* Beegle Aff., at ¶ 48, Ex. 6-A, pp. 1-2 at ¶ 7).

44.     To secure Debtors payment and performance obligations to CNH, pursuant to Paragraph 6 of the Sixth Agreement, Debtors granted CNH a first-priority purchase money security interest in the Sixth Equipment, as well as all improvements, parts, accessories, substitutions, replacements, products, proceeds, and premium refunds associated with or related to the Sixth Equipment, to CNH.

45.     To perfect its purchase money security interest in the Sixth Equipment, on or about September 19, 2024, CNH filed a UCC-1 Financing Statement (the "<u>Sixth UCC</u>") with the Minnesota Secretary of State, which financing statement is identified as filing number 1492873700133. (*See* Beegle Aff., at ¶ 50, Ex.6-B).

46.     Paragraph 10 of the Sixth Agreement with respect to Debtors' covenants is materially the same as the First Agreement provided in Paragraph 5 of this memorandum and is incorporated herein by reference.

47.     Paragraphs 14, 15, and 19 of the Sixth Agreement-with respect to the events of default and CNH's rights and remedies-are materially the same as the First Agreement provided in Paragraphs 7-9 of this memorandum are incorporated herein by reference.

48.     Pursuant to the Sixth Agreement, Debtors entered into a payment schedule change agreement on September 29, 2025 ("<u>Sixth Agreement PSC 1</u>") in which Debtors agreed to make remaining payments as follows: one (1) payment of $195,418.36 on August 1, 2025, then one (1)

13

payment of $390,836.73 on December 20, 2025, then three (3) annual consecutive payments of $390,836.73 beginning on December 20, 2026, and one (1) final payment of $295,046.34 on September 20, 2029. (*See* Beegle Aff., at ¶ 53, Ex.6-C). According to the plain language of the Sixth Agreement, Debtors' right to possess the Sixth Equipment expires upon Debtors being in default under the Sixth Agreement.

**VII.     The Seventh Agreement**

49.     On or about October 3, 2024, Debtors entered into an agreement with CNH as evidenced by that Retail Installment Sale Contract and Security Agreement dated October 3, 2024, in favor of CNH, as Assignee, of Titan identified as contract number 870821 (the "Seventh Agreement"), for the purpose of financing the purchase of a 2024 Geringhoff Combine Head, Model Horizon, Serial No. 1042400231822FB (the "Seventh Equipment" which along with the First Equipment, Second Equipment, Third Equipment, Fourth Equipment, Fifth Equipment, and Sixth Equipment are collectively the "Collateral) pursuant to the terms and conditions more specifically identified therein. (*See* Beegle Aff., at ¶ 54, Ex.7-A).

50.     Immediately upon execution of the Seventh Agreement, Titan assigned the Seventh Agreement, along with all rights, title, and interest in and to the Seventh Equipment, to CNH. (*See* Beegle Aff., at ¶ 55, Ex. 7-A, pp. 1-2 at ¶ 7).

51.     To secure Debtors payment and performance obligations to CNH, pursuant to Paragraph 6 of the Seventh Agreement, Debtors granted CNH a first-priority purchase money security interest in the Seventh Equipment, as well as all improvements, parts, accessories, substitutions, replacements, products, proceeds, and premium refunds associated with or related to the Seventh Equipment, to CNH.

52.     To perfect its purchase money security interest in the Seventh Equipment, on or about October 8, 2024, CNH filed a UCC-1 Financing Statement (the "Seventh UCC") with the

Minnesota Secretary of State, which financing statement is identified as filing number 1499984800638. (*See* Beegle Aff., at ¶ 57, Ex.7-B).

53.     Paragraph 10 of the Seventh Agreement with respect to Debtors' covenants is materially the same as the First Agreement provided in Paragraph 5 of this memorandum and is incorporated herein by reference.

54.     Paragraphs 14, 15, and 19 of the Seventh Agreement-with respect to the events of default and CNH's rights and remedies-are materially the same as the First Agreement provided in Paragraphs 7-9 of this memorandum are incorporated herein by reference.

55.     Pursuant to the Seventh Agreement, Debtors entered into a payment schedule change agreement on May 22, 2025 ("Seventh Agreement PSC 1") in which Debtors agreed to make remaining payments as follows: one (1) payment of $116,541.05 on December 27, 2025, then three (3) consecutive annual payments of $77,694.26 beginning on December 20, 2026, and one (1) final payment of $82,963.48 on September 27, 2029. (*See* Beegle Aff., at ¶ 60, Ex.7-C). According to the plain language of the Seventh Agreement, Debtors' right to possess the Seventh Equipment expires upon Debtors being in default under the Seventh Agreement.

The Lease Agreements

**VIII.   The First Lease Agreement**

56.     On or about March 29, 2024, Debtors entered into an agreement with CNH as evidenced by that Equipment Operating Lease Agreement dated March 29, 2024, in favor of CNH, as Assignee, of Titan identified as contract number 786478 ("Lease One"), for the purpose of leasing a 2023 Case Wheel Loader, Model 721G Z-Bar, Serial No. JEEN0721EPF256837 (the "Lease One Equipment") pursuant to the terms and conditions more specifically identified therein. (*See* Beegle Aff., at ¶ 61, Ex.8-A).

15

57. Immediately upon execution of Lease One, Titan assigned Lease One, along with all rights, title, and interest in and to the Lease One Equipment, to CNH. (*See* Beegle Aff., at ¶ 62, Ex. 8-A, pp. 1-2).

58. Though legally unnecessary because Lease One is a true lease and CNH holds all right, title, and interest in the Lease One Equipment, CNH filed a UCC-1 Financing Statement (the "Lease One Equipment UCC") with the Minnesota Secretary of State on or about April 1, 2024, which financing statement is identified as filing number 1466789300284. (*See* Beegle Aff., at ¶ 63, Ex.8-B).

59. Pursuant to Paragraph 2 of Lease One, Debtors have no right, title, or interest in Lease One Equipment except the right to use it during the lease term, so long as an event of default has not occurred. Ex. 8-A at p.2.

60. Pursuant to Paragraph 13 of Lease One, Debtors shall be in default if they fail to pay when due any of the Obligations, or to perform any covenant or any other obligation of theirs under the First Agreement or any other agreement with or assigned to CNH. *Id*. at p. 3.

61. Pursuant to Paragraph 15 of Lease One, upon an event of default, CNH shall have the right in its sole discretion to exercise its remedies, which, among other things include:

      i.     Pursuing all rights provided by law and terminating Lease One;

      ii.     Declaring all obligations immediately due and payable without notice or demand;

      iii.     Taking the Lease One Equipment, without notice of hearing, and Debtors and any guarantor expressly waives its right to notice or prior hearing and agreed that CNH shall not be required to post any bond;

iv. Selling the Lease One Equipment or otherwise disposing of it in a commercially reasonable manner;

v. Collecting all of CNH's costs that arise from repossession and/or selling the Lease One Equipment, including without limitation, reasonable legal fees and costs; and

vi. Exercising all of its rights and remedies either separately or in combination and any action taken by CHN to recover payment shall not limit CNH's rights with respect to the Lease One Equipment.

*Id*.

62. Paragraph 15 further provides that neither the termination of Lease One nor the repossession of the Lease One Equipment releases Debtors from their Lease One obligations. *Id*.

63. Paragraph 15 also provides that if there is a deficiency after CNH applies the net proceeds from any realization of the Lease One Equipment, Debtors agree to pay the deficiency upon demand. *Id*.

64. Paragraph 14 of Lease One provides the Debtors shall reimburse CNH for any expense incurred by CNH in protection or enforcing its rights under Lease One, including reasonable attorneys' fees and legal expenses. *Id*.

65. Pursuant to the Lease One Agreement, Debtors entered into a payment schedule change agreement on May 30, 2024 ("Lease One PSC 1") in which Debtors agreed to make remaining payments as follows: one (1) payment of $17,062.24 on May 1, 2024, then one (1) payment of $9,356.73 on September 1, 2024, then one (1) payment of $10,051.77 on December 1, 2024, then three (3) consecutive annual payments of $41,942.13 beginning on May 1, 2025, and one (1) final payment of $41,942.17 on May 1, 2028. (*See* Beegle Aff., at ¶ 70, Ex.8-C).

66.     Pursuant to the Lease One Agreement, Debtors again entered into a payment schedule change agreement on May 22, 2025 ("Lease One PSC 2") in which Debtors agreed to make remaining payments as follows: one (1) payment of $20,971.06 on December 1, 2025, then two (2) consecutive annual payments of $41,942.13 beginning on May 1, 2026, then one (1) final payment of $41,942.17 on May 1, 2028. (*See* Beegle Aff., at ¶ 71, Ex.8-D).

## IX.     The Second Lease Agreement

67.     On or about July 31, 2024, Debtors entered into an agreement with CNH as evidenced by that Equipment Operating Lease Agreement dated July 31, 2024, in favor of CNH, as Assignee, of Titan identified as contract number 843466 ("Lease Two") for the purpose of leasing the following equipment:

| Description | Model | Serial Number |
|---|---|---|
| 2024 Case IH Loader AG | L117 | YPWLT5036 |
| 2024 Case IH Puma Tractor | 220 CXV | DBDPU220KRDL51145 |

(collectively, "Lease Two Equipment" which along with the Lease One Equipment is collectively "Leased Equipment"). pursuant to the terms and conditions more specifically identified therein. (*See* Beegle Aff., at ¶ 72, Ex.9-A).

68.     Immediately upon execution of Lease Two, Titan assigned Lease Two, along with all rights, title, and interest in and to the Lease Two Equipment, to CNH. (*See* Beegle Aff., at ¶ 73, Ex. 9-A, at pp.1-2).

69.     Though legally unnecessary because Lease Two is a true lease and CNH holds all right, title, and interest in the Lease Two Equipment, CNH filed a UCC-1 Financing Statement (the "Lease Two Equipment UCC") with the Minnesota Secretary of State on or about August 8,

2024, which financing statement is identified as filing number 1486215300374. (See Beegle Aff., at ¶ 74, Ex.9-B).

70.     Paragraph 2 of Lease Two with respect to Debtors' covenants is materially the same as Lease One First provided in Paragraph 59 of this memorandum and is incorporated herein by reference.

71.     Paragraphs 13, 14, and 15 of Lease Two-with respect to the events of default and CNH's rights and remedies-are materially the same as Lease One provided in Paragraphs 60-64 of this memorandum are incorporated herein by reference.

72.     Pursuant to the Lease Two Agreement, Debtors entered into a payment schedule change agreement on May 22, 2025 ("Lease Two PSC 1" which along with which along with the First Agreement, Second Agreement, Third Agreement, Fourth Agreement, Fifth Agreement, Sixth Agreement, Seventh Agreement, Lease One, Lease Two, First Agreement PSC 1, First Agreement PSC 2, Second Agreement PSC 1, Second Agreement PSC 2, Third Agreement PSC 1, Fourth Agreement PSC 1, Fifth Agreement PSC 1, Fifth Agreement PSC 2, Sixth Agreement PSC 1, Seventh Agreement PSC 1, Lease One PSC 1, and Lease One PSC 2 are collectively the "Agreements"), in which Debtors agreed to make remaining payments as follows: one (1) payment of $53,780.29 on December 1, 2025, then two (2) consecutive annual payments of $36,953.53 beginning on December 1, 2026, and one (1) final payment of $36,953.56 on December 1, 2028. (See Beegle Aff., at ¶ 77, Ex.9-C).

Debtors' Defaults

73.     Debtors failed to adhere to their payment obligations under the Agreements[5] and are therefore in default.

---

[5] Debtors are not currently in default for failure to make payments when due under the Third Agreement with CNH. Debtors sold part of the Third Equipment, the 2023 Case IH Combine, on August 7, 2024, proceeds in the amount of

74. Pursuant to the terms and conditions set forth in the Agreements, CNH is entitled to recover the amounts due under the terms of the Agreements as of April 23, 2026, of not less than $5,871,857.80, as itemized below, plus interest accruing at the contracted rates through the date of judgment, plus costs and expenses incurred by CNH in enforcing its rights and remedies pursuant to the Agreements, plus attorneys' fees incurred and CNH is entitled to recover the Collateral.

i. Pursuant to the terms of the First Agreement, as of April 23, 2026, CNH is entitled to recover not less than $91,643.52, which is comprised of $85,984.95 in principal, $4,398.54 in interest, and $1,260.03 in fees.

ii. Pursuant to the terms of the Second Agreement, as of April 23, 2026, CNH is entitled to recover not less than $97,268.32, which is comprised of $90,987.61 in principal, $5,959.44 in interest, and $321.27 in fees.

iii. Pursuant to the terms of the Third Agreement, as of April 23, 2026, CNH is entitled to recover not less than $17,273.57, which is comprised of $16,464.25 in principal, $738.05 in interest, and $71.27 in fees.

iv. Pursuant to the terms of the Fourth Agreement, as of April 23, 2026, CNH is entitled to recover not less than $205,390.85, which is comprised of $191,427.16 in principal, $13,892.42 in interest, and $71.27 in fees.

v. Pursuant to the terms of the Fifth Agreement, as of April 23, 2026, CNH is entitled to recover not less than $2,736,040.51, which is comprised of $2,556,440.57 in principal, $179,528.67 in interest, and $71.27 in fees.

---

$557,451.24 were applied to the Third Agreement. Debtors are still in default under the Third Agreement because the other Agreements are in default.

vi. Pursuant to the terms of the Sixth Agreement, as of April 23, 2026, CNH is entitled to recover not less than $1,756,511.76, which is comprised of $1,677,187.63 in principal, $75,576.83 in interest, and $3,747.30 in fees.

vii. Pursuant to the terms of the Seventh Agreement, as of April 23, 2026, CNH is entitled to recover not less than $392,368.54, which is comprised of $367,193.72 in principal, $25,103.48 in interest, and $71.34 in fees.

viii. Pursuant to the terms of Lease One, as of April 23, 2026, CNH is entitled to recover not less than $146,868.76, plus residual balance of $85,334.28.

ix. Pursuant to the terms of Lease Two, as of April 23, 2026, CNH is entitled to recover not less than $161,412.17, plus residual balance of $181,745.52.

75. As a consequence of the Debtors' defaults, CNH issued a Notice of Default and Acceleration to Debtors on December 8, 2025, in which CNH exercised its non-exclusive right to accelerate the Agreements, declare all the indebtedness under the Agreements to be immediately due and payable, and demanded immediate payment of such indebtedness. (*See* Beegle Aff., at ¶ 80, Ex.10).

76. On or around May 2025, in connection with the Agreements and in an attempt to resolve the Debtors' respective defaults prior to initialing this litigation, Debtors and CNH participated in mediation pursuant to the Farmer Lender Mediation Act, Minn. Stat. § 583.20 et seq. The parties reached agreements which were memorized pursuant to the First Agreement PSC 2, Second Agreement PSC 2, Fourth Agreement PSC 1, Fifth Agreement PSC 1, Sixth Agreement PSC 1, Seventh Agreement PSC 1, Lease One PSC 2, and Lease Two PSC 1 (collectively, the "Mediation Related PSC's"). As noted above, Debtors failed to make payments due under the Agreements which include the Mediation Related PSC's. (*See* Beegle Aff., at ¶ 81, Ex.11).

77. The Debtors have failed to cure the defaults.

78. The Debtors are in default and are in breach of the Agreements. Consequently, CNH is entitled to exercise its remedies afforded under the Agreements and state law. Such remedies include, without limitation, recovering the total amounts due under the terms of the Agreements as of April 23, 2026, of not less than $5,871,857.80, as itemized above and below, plus interest accruing at the contracted rate through the date of judgment, plus costs and expenses incurred by CNH in enforcing its right and remedies pursuant to the Agreements, plus attorneys' fees incurred, and taking possession of the Collateral.

    i. Pursuant to the terms of the First Agreement, as of April 23, 2026, CNH is entitled to recover not less than $91,643.52, which is comprised of $85,984.95 in principal, $4,398.54 in interest, and $1,260.03 in fees.

    ii. Pursuant to the terms of the Second Agreement, as of April 23, 2026, CNH is entitled to recover not less than $97,268.32, which is comprised of $90,987.61 in principal, $5,959.44 in interest, and $321.27 in fees.

    iii. Pursuant to the terms of the Third Agreement, as of April 23, 2026, CNH is entitled to recover not less than $17,273.57, which is comprised of $16,464.25 in principal, $738.05 in interest, and $71.27 in fees.

    iv. Pursuant to the terms of the Fourth Agreement, as of April 23, 2026, CNH is entitled to recover not less than $205,390.85, which is comprised of $191,427.16 in principal, $13,892.42 in interest, and $71.27 in fees.

    v. Pursuant to the terms of the Fifth Agreement, as of April 23, 2026, CNH is entitled to recover not less than $2,736,040.51, which is comprised of $2,556,440.57 in principal, $152,297.32 in interest, and $27,302.62 in fees.

vi.      Pursuant to the terms of the Sixth Agreement, as of April 23, 2026, CNH is entitled to recover not less than $1,756,511.76, which is comprised of $1,677,187.63 in principal, $79,252.86 in interest, and $71.27 in fees.

vii.      Pursuant to the terms of the Seventh Agreement, as of April 23, 2026, CNH is entitled to recover not less than $392,368.54, which is comprised of $367,193.72 in principal, $25,103.48 in interest, and $71.34 in fees.

viii.      Pursuant to the terms of Lease One, as of April 23, 2026, CNH is entitled to recover not less than $146,868.76, plus residual balance of $85,334.28.

ix.      Pursuant to the terms of Lease Two, as of April 23, 2026, CNH is entitled to recover not less than $161,412.17, plus residual balance of $181,745.52.

79.      CNH estimates that the value of the Collateral and Leased Equipment is approximately $4,949,091.00. (*See* Beegle Aff., at ¶ 85).

80.      CNH is entitled to stay relief pursuant to Sections 362(d)(1) and (d)(2) of the Bankruptcy Code.

81.      Section 362(d)(1) of the Bankruptcy Code provides that, on request of a party in interest and after notice and a hearing, the court shall grant relief from the automatic stay for cause, including *lack of adequate protection* of an interest in property of such party. 11 U.S.C. § 362(d)(1). Debtors bear the burden of establishing that the interest of CNH is adequately protected.  11 U.S.C. § 362(g).

82.      Debtors have failed to provide for adequate protection of CNH's interest in the Collateral or the Leased Equipment. As a result, CNH is entitled to relief from stay under section 362(d)(1).

83. CNH is also entitled to relief from stay pursuant to § 362(d)(2) of the Bankruptcy Code, which provides that a creditor is entitled to relief from the automatic stay if: (1) the debtor does not have equity in the collateral, and (2) the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2).

84. As described herein, even before considering the costs of repossession and sale, Debtors have no equity in the Collateral or Leased Equipment. Additionally, Debtors continue to utilize the Collateral and the Leased Equipment, and both continue to depreciate at a rapid pace. Moreover, Debtors cannot satisfy their burden of establishing that the Collateral and Leased Equipment are necessary for an effective reorganization. 11 U.S.C. § 362(g). As a result, CNH is also entitled to relief under section 362(d)(2).

85. If the Court determines that relief from the stay is inappropriate, it should require Debtors to make adequate protection payments to protect CNH's interest in the Collateral and Leased Equipment.

86. CNH requests that the Court enter an order modifying the automatic stay to allow it to take possession of and to dispose of the Collateral and Leased Equipment and waive the stay of the order provided for in Bankruptcy Rule 4001(a)(3), or alternatively, enter an order requiring Debtors to make adequate protection payments.

87. As set forth above, there is no equity in the Collateral or the Leased Equipment, and neither the Collateral nor the Leased Equipment are necessary for an effective reorganization.

88. This Motion is verified and is accompanied by a memorandum of law, proof of service, and a proposed order.

89. CNH gives notice that it may, if necessary, call Zach Beegle, High Risk/Bankruptcy Analyst for CNH, whose address is 1 CNH Way, Waterford, WI 53185, to testify at the hearing on the Motion regarding the facts set forth herein.

**WHEREFORE**, CNH respectfully requests the entry of an order:

1. Granting relief from the automatic stay as to CNH's Collateral and the Leased Equipment and waiving any stay that may apply to such order; or

2. Alternatively, compel Debtors to make adequate protection payments to CNH for continued use of the Collateral and Leased Equipment; and

3. Granting such other relief as the Court deems just and equitable.

**STINSON LLP**

Dated: July 21, 2026

*/s/ Terri A. Running*
Benjamin J. Court (#0319016)
Terri A. Running (#238338)
Austyn K. Boothe (#0403141)
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 335-1500
benjamin.court@stinson.com
terri.running@stinson.com
austyn.boothe@stinson.com

**COUNSEL FOR CNH INDUSTRIAL CAPITAL AMERICA LLC**

## <u>VERIFICATION</u>

I, Zach Beegle, High Risk/Bankruptcy Analyst of CNH Industrial Capital America LLC, hereby verify, under penalty of perjury, that I have read the foregoing motion for relief from the automatic stay, I know the contents thereof, and the information contained therein is true and correct to the best of my knowledge, information, and belief.

Dated:  July 21, 2026    */s/ Zach Beegle*
                          Zach Beegle, High Risk/Bankruptcy Analyst