**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

---

In re:

| | |
|---|---|
| Raguse Family Partnership, | Lead Case No. 26-60308 – WJF |
| R.A.G. Holdings, LLC, | Case No. 26-60309 |
| Tru AG LLC, | Case No. 26-60311 |
| Red Rock Cattle LLC, and | Case No. 26-60310 |
| David Raguse and Susan Raguse, | Case No. 26-60312 |
| Truman Raguse, | Case No. 26-60313 |
| | **(Jointly Administered)** |
| Debtors. | Chapter 11 |

# DECLARATION OF ZACH BEEGLE IN SUPPORTION OF CREDITOR CNH INDUSTRIAL CAPITAL AMERICA LLC'S MOTION FOR AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY

---

STATE OF PENNSYLVANIA )
): ss.
COUNTY OF LANCASTER )

Zach Beegle, being first duly sworn, deposes and says:

1. I am a High Risk/Bankruptcy Analyst for Plaintiff CNH Industrial Capital America LLC ("CNH"). I have first-hand knowledge of all matters asserted herein.

2. CNH is engaged, among other things, in the business of leasing and financing equipment to businesses involved in the agricultural industry. Debtors are customers of CNH.

3. As detailed herein and in the pleadings that CNH has filed with the Court in this action, Debtors are in default of their written financing agreements with CNH. Pursuant to the plain language of the agreements and state law, CNH is entitled to recover possession of the collateral at issue.

4. Debtors have failed to provide for adequate protection of CNH's interest in the Collateral and in the Leased Equipment.

5. Debtors do not have equity in the Collateral or the Leased Equipment, particularly after considering the costs of repossession and sale. In addition, the Collateral and Leased Equipment continue to depreciate over time as Debtors utilize it without compensation to CNH.

The Sale Agreements

## I. The First Agreement

6. On or about May 9, 2022, Debtors entered into an agreement with CNH as evidenced by that Retail Installment Sale Contract and Security Agreement dated May 9, 2022, in favor of CNH, as Assignee[1], of Titan Machinery Inc ("Titan") identified as contract number 333828 (the "First Agreement"), for the purpose of financing the purchase of a 2021 Case IH Speed Tiller, Model 475, Serial No. CWR003548 (the "First Equipment"), pursuant to the terms and conditions more specifically identified therein. A true and correct copy of the First Agreement is attached as **Exhibit 1-A** and incorporated herein by reference.

7. Immediately upon execution of the First Agreement, Titan assigned the First Agreement, along with all rights, title, and interest in and to the First Equipment, to CNH. *See* Exhibit 1-A, pp. 1-2 at ¶ 7.

8. To secure Debtors' payment and performance obligations to CNH, pursuant to Paragraph 6 of the First Agreement, Debtors granted CNH a first-priority purchase money security interest in the First Equipment, as well as all improvements, parts, accessories, substitutions, replacements, products, proceeds, and premium refunds associated with or related to the First Equipment, to CNH.

9. To perfect its purchase money security interest in the First Equipment, on or about May 13, 2022, CNH filed a UCC-1 Financing Statement (the "First UCC") with the Minnesota

---

[1] Capitalized terms not otherwise defined herein or the pleadings have the meanings ascribed to them in the applicable Loan Documents.

Secretary of State, which financing statement is identified as filing number 1313726000363. A true and correct copy of the First UCC is attached as **Exhibit 1-B** and incorporated by herein by reference.

10. According to Paragraph 10 of the First Agreement, Debtors agreed that the First Equipment would remain in Minnesota.

11. Debtors further agreed in Paragraph 10 of the First Agreement that they would use the First Equipment "solely within the intended uses of the manufacturer."

12. Pursuant to Paragraph 14 of the First Agreement, Debtors shall be in default if they fail to pay when due any of the Obligations,[2] or to perform any covenant or any other obligation of theirs under the First Agreement or any other agreement with or assigned to CNH.

13. Paragraph 19 of the First Agreement further provides that upon a default, CNH shall have the right, in its sole discretion, to exercise its remedies, which include but are not limited to:

i. Declaring all Obligations[3] immediately due and payable without notice or demand;

ii. Entering into any premises where the First Equipment may be located, taking possession of the First Equipment, without notice or hearing, and, Debtors or any guarantor, also expressly waives any right to notice or a prior hearing or to require CNH to post any bond;

[2] As defined in the Agreements.
[3] As defined in the Agreements.

iii. Requiring Debtors to assemble the First Equipment and make it available to CNH at any convenient place designated by CNH within 10 days after notice from CNH; and

iv. Selling (including at wholesale) or otherwise disposing of the First Equipment at public or private sale for cash or on credit terms, without notice; and if notice is required by law, ten (10) days' notice to Debtors shall be deemed reasonable notice.

14. Paragraph 15 of the First Agreement provides that Debtors shall reimburse CNH for any expense incurred by CNH in protecting or enforcing its rights under the First Agreement, including reasonable attorneys' fees and legal expenses.

15. Pursuant to the First Agreement, Debtors entered into a payment schedule change agreement on May 30, 2024 ("First Agreement PSC 1") in which Debtors agreed to make remaining payments as follows: one (1) payment of $10,000.00 on September 9, 2024, then one (1) payment of $3,775.12 on December 9, 2024, then three (3) consecutive annual payments of $26,908.15 beginning May 9, 2025, and one (1) final payment of $27,010.46 on May 9, 2028. A true and correct copy of the First Agreement PSC 1 is attached as **Exhibit 1-C** and incorporated herein by reference.

16. Pursuant to the First Agreement, Debtors entered into another payment schedule change agreement on May 22, 2025 ("First Agreement PSC 2"), in which Debtors agreed to make remaining payments as follows: one (1) payment of $13,015.31 on December 1, 2025, then two (2) consecutive annual payments of $26,908.15 beginning on May 9, 2025, then one (1) final payment of $27,610.26 on May 9, 2028. A true and correct copy of the First Agreement PSC 2 is attached as **Exhibit 1-D** and incorporated herein by reference. According to the plain language of

the First Agreement, Debtors' right to possess the First Equipment expires upon Debtors being in default under the First Agreement.

## II. The Second Agreement

17. On or about August 29, 2022, Debtors entered into an agreement with CNH as evidenced by that Retail Installment Sale Contract and Security Agreement dated August 29, 2022, in favor of CNH, as Assignee, of Titan identified as contract number 343512 (the "Second Agreement"), for the purpose of financing the purchase of a 2022 Brent Grain Cart, Model 2096, Serial No. B42060120 (the, "Second Equipment"), pursuant to the terms and conditions more specifically identified therein. A true and correct copy of the Second Agreement is attached as **Exhibit 2-A** and incorporated herein by reference.

18. Immediately upon execution of the Second Agreement, Titan assigned the Second Agreement, along with all rights, title, and interest in and to the Second Equipment, to CNH. *See* Exhibit 2-A, pp. 1-2 at ¶ 7.

19. To secure Debtors payment and performance obligations to CNH, pursuant to Paragraph 6 of the Second Agreement, Debtors granted CNH a first-priority purchase money security interest in the Second Equipment, as well as all improvements, parts, accessories, substitutions, replacements, products, proceeds, and premium refunds associated with or related to the Second Equipment, to CNH.

20. To perfect its purchase money security interest in the Second Equipment, on or about September 7, 2022, CNH filed a UCC-1 Financing Statement (the "Second UCC") with the Minnesota Secretary of State, which financing statement is identified as filing number 1332159800055. A true and correct copy of the Second UCC is attached as **Exhibit 2-B** and incorporated herein by reference.

21. Paragraph 10 of the Second Agreement with respect to Debtors' covenants are materially the same as the First Agreement provided in Paragraphs 10 and 11 of this affidavit and is incorporated herein by reference.

22. Paragraphs 14, 15, and 19 of the Second Agreement-with respect to the events of default and CNH's rights and remedies-are materially the same as the First Agreement provided in Paragraphs 12-14 of this affidavit are incorporated herein by reference.

23. Pursuant to the Second Agreement, Debtors entered into a payment schedule change agreement on May 30, 2024 ("Second Agreement PSC 1") in which Debtors agreed to make remaining payments as follows: one (1) payment of $10,000.00 on September 1st, 2024, then one (1) payment of $25,913.29 on December 1, 2024, then two (2) consecutive annual payments of $39,984.67 beginning September 1, 2025, and one (1) final payment of $40,478.61 on September 1, 2027. A true and correct copy of the Second Agreement PSC 1 is attached as **Exhibit 2-C** and incorporated herein by reference.

24. Pursuant to the Second Agreement, Debtors again entered into a payment schedule change agreement on May 22, 2025 ("Second Agreement PSC 2") in which Debtors agreed to make remaining payments as follows: one (1) payment of $19,992.33 on December 1, 2025, then one (1) payment of $39,984.67 on September 1, 2026, then one (1) final payment of $40,987.46 on September 1, 2027. A true and correct copy of the Second Agreement PSC 2 is attached as **Exhibit 2-D** and incorporated herein by reference. According to the plain language of the Second Agreement, Debtors' right to possess the Second Equipment expires upon Debtors being in default under the Second Agreement.

## III. The Third Agreement

25. On or about September 22, 2023, Debtors entered into an agreement with CNH as evidenced by that Retail Installment Sale Contract and Security Agreement dated September 22, 2023, in favor of CNH, as Assignee, of Titan identified as contract number 703363 (the "Third Agreement"), for the purpose of financing the purchase of the following equipment:

| **Description** | **Model** | **Serial Number** |
|---|---|---|
| 2023 Case IH Combine[4] | 9250 AF COM | HAJF9N4MEPG253708 |
| 2011 Universal Trailer | TE 100 | 1DADLDO36M020355 |

(collectively the "Third Equipment") pursuant to the terms and conditions more specifically identified therein. A true and correct copy of the Third Agreement is attached as **Exhibit 3-A** and incorporated herein by reference.

26. Immediately upon execution of the Third Agreement, Titan assigned the Third Agreement, along with all rights, title, and interest in and to the Third Equipment, to CNH. *See* Exhibit 3-A, pp. 1-2 at ¶ 7.

27. To secure Debtors' payment and performance obligations to CNH, pursuant to Paragraph 6 of the Third Agreement, Debtors granted CNH a first-priority purchase money security interest in the Third Equipment, as well as all improvements, parts, accessories, substitutions, replacements, products, proceeds, and premium refunds associated with or related to the Third Equipment, to CNH.

28. To perfect its purchase money security interest in the Third Equipment, on or about September 28, 2023, CNH filed a UCC-1 Financing Statement (the "Third UCC") with the Minnesota Secretary of State, which financing statement is identified as filing number

[4] Defendants sold part of the 2023 Case IH Combine, on August 7, 2024, proceeds in the amount of $557,451.24 were applied to the Third Agreement, for the purpose of this Motion, the 2023 Case IH Combine, Model 9250 AF COM, Serial No. HAJF9N4MEPG253708 in not included in the Collateral.

14135789000484. A true and correct copy of the Third UCC Statement is attached as **Exhibit 3-B** and incorporated herein by reference.

29. Paragraph 10 of the Third Agreement with respect to Debtors' covenants are materially the same as the First Agreement provided in Paragraphs 10 and 11 of this affidavit and is incorporated herein by reference.

30. Paragraphs 14, 15, and 19 of the Third Agreement-with respect to the events of default and CNH's rights and remedies-are materially the same as the First Agreement provided in Paragraphs 12-14 of this affidavit are incorporated herein by reference.

31. Pursuant to the Third Agreement, Debtors entered into a payment schedule change agreement on May 30, 2025 ("Third Agreement PSC 1") in which Debtors agreed to make remaining payments as follows: one (1) payment of $10,000.00 on September 22, 2024, then one (1) payment of $126,177.64 on December 22, 2024, then three (3) consecutive annual payments of $139,794.45 beginning on September 22, 2025, then one (1) final payment of $139,778.27 on September 22, 2028. A true and correct copy of the Third Agreement PSC 1 is attached as **Exhibit 3-C** and incorporated herein by reference. According to the plain language of the Third Agreement, Debtors' right to possess the Third Equipment expires upon Debtors being in default under the Third Agreement.

## IV. The Fourth Agreement

32. On or about December 29, 2023, Debtors entered into an agreement with CNH as evidenced by that Retail Installment Sale Contract and Security Agreement dated December 29, 2023, in favor of CNH, as Assignee, of Titan identified as contract number 755358 (the "Fourth Agreement"), for the purpose of financing the purchase of a 2018 Case IH Combine Head, Model 4418-22 Corn, Serial No. YJH633407, (the "Fourth Equipment"), pursuant to the terms and

conditions more specifically identified therein. A true and correct copy of the Fourth Agreement is attached as **Exhibit 4-A** and incorporated herein by reference.

33. Immediately upon execution of the Fourth Agreement, Titan assigned the Fourth Agreement, along with all rights, title, and interest in and to the Fourth Equipment, to CNH. *See* Exhibit 4-A, pp. 1-2 at ¶ 7.

34. To secure Debtors' payment and performance obligations to CNH, pursuant to Paragraph 6 of the Fourth Agreement, Debtors granted CNH a first-priority purchase money security interest in the Fourth Equipment, as well as all improvements, parts, accessories, substitutions, replacements, products, proceeds, and premium refunds associated with or related to the Fourth Equipment, to CNH.

35. To perfect its purchase money security interest in the Fourth Equipment, on or about January 16, 2024, CNH filed a UCC-1 Financing Statement (the "Fourth UCC") with the Minnesota Secretary of State, which financing statement is identified as filing number 1448370400619. A true and correct copy of the Fourth UCC is attached as **Exhibit 4-B** and incorporated herein by reference.

36. Paragraph 10 of the Fourth Agreement with respect to Debtors' covenants is materially the same as the First Agreement provided in Paragraphs 10 and 11 of this affidavit and is incorporated herein by reference.

37. Paragraphs 14, 15, and 19 of the Fourth Agreement-with respect to the events of default and CNH's rights and remedies-are materially the same as the First Agreement provided in Paragraphs 12-14 of this affidavit are incorporated herein by reference.

38. Pursuant to the Fourth Agreement, Debtors entered into a payment schedule change agreement on May 22, 2025 ("Fourth Agreement PSC 1") in which Debtors agreed to make

remaining payments as follows: one (1) payment of $24,236.86 on December 1, 2025, then one (1) payment of $48,473.73 on January 1, 2026, then two (2) consecutive annual payments of $48,473.73 beginning on January 1, 2027, then one (1) final payment of $51,208.45 on January 1, 2029. A true and correct copy of the Fourth Agreement PSC 1 is attached as **Exhibit 4-C** and incorporated herein by reference. According to the plain language of the Fourth Agreement, Debtors' right to possess the Fourth Equipment expires upon Debtors being in default under the Fourth Agreement.

## V. The Fifth Agreement

39. On or about July 12, 2024, Debtors entered into an agreement with CNH as evidenced by that Retail Installment Sale Contract and Security Agreement dated July 12, 2024, in favor of CNH, as Assignee, of Titan identified as contract number 833847 (the "Fifth Agreement"), for the purpose of financing the purchase of the following equipment:

| Description | Model | Serial Number |
|---|---|---|
| 2024 Case IH Steiger Tractor | 595 | JEEZC595JRF514418 |
| 2024 Case IH Steiger Tractor | 595Q | JEEZC595KRF514417 |
| 2024 Case IH Steiger Tractor | 595 | JEEZC595CRF14400 |
| 2024 Case IH Steiger Tractor | 595 TK | JEEZC595LRF514408 |
| 2024 Case IH Steiger Tractor | 645 TK | JEEZC645CRF514868 |

(collectively the "Fifth Equipment"), pursuant to the terms and conditions more specifically identified therein. A true and correct copy of the Fifth Agreement is attached as **Exhibit 5-A** and incorporated herein by reference.

40. Immediately upon execution of the Fifth Agreement, Titan assigned the Fifth Agreement, along with all rights, title, and interest in and to the Fifth Equipment, to CNH. *See* Exhibit 5-A, pp. 1-2 at ¶ 7.

41. To secure Debtors' payment and performance obligations to CNH, pursuant to Paragraph 6 of the Fifth Agreement, Debtors granted CNH a first-priority purchase money security interest in the Fifth Equipment, as well as all improvements, parts, accessories, substitutions, replacements, products, proceeds, and premium refunds associated with or related to the Fifth Equipment, to CNH.

42. To perfect its purchase money security interest in the Fifth Equipment, on or about July 16, 2024, CNH filed a UCC-1 Financing Statement (the "Fifth UCC") with the Minnesota Secretary of State, which financing statement is identified as filing number 1482523500915. A true and correct copy of the Fifth UCC is attached as **Exhibit 5-B** and incorporated herein by reference.

43. Paragraph 10 of the Fifth Agreement with respect to Debtors' covenants is materially the same as the First Agreement provided in Paragraphs 10 and 11 of this affidavit and is incorporated herein by reference.

44. Paragraphs 14, 15, and 19 of the Fifth Agreement-with respect to the events of default and CNH's rights and remedies-are materially the same as the First Agreement provided in Paragraphs 12-14 of this affidavit are incorporated herein by reference.

45. Pursuant to the Fifth Agreement, Debtors entered into a payment schedule change agreement on May 22, 2025 ("Fifth Agreement PSC 1") in which Debtors agreed to make remaining payments as follows: one (1) payment of $323,297.77 on August 1, 2025, then one (1) payment of $646,594.82 on December 20, 2025, then one (1) payment of $646,594.82 on

December 20, 2026 then, one (1) payment of $646,594.82 on December 20, 2027, then one (1) final payment of $550,395.20 on December 20, 2028. A true and correct copy of the Fifth Agreement PSC 1 is attached as **Exhibit 5-C** and incorporated herein by reference.

46. Pursuant to the Fifth Agreement, Debtors again entered into a payment schedule change agreement on September 29, 2025 ("Fifth Agreement PSC 2") in which Debtors agreed to make remaining payments as follows: one (1) payment of $345,557.00 on October 1, 2025, then one (1) payment of $646,594.82 on December 20, 2025, then two (2) consecutive annual payments of $646,594.82 beginning on December 20, 2026, then one (1) final payment of $646,594.83 on December 20, 2028. A true and correct copy of the Fifth Agreement PSC 2 is attached as **Exhibit 5-D** and incorporated herein by reference. According to the plain language of the Fifth Agreement, Debtors' right to possess the Fifth Equipment expires upon Debtors being in default under the Fifth Agreement.

## VI. The Sixth Agreement

47. On or about September 16, 2024, Debtors entered into an agreement with CNH as evidenced by that Retail Installment Sale Contract and Security Agreement dated September 16, 2024, in favor of CNH, as Assignee, of Titan identified as contract number 861340 (the "Sixth Agreement"), for the purpose of financing the purchase of the following equipment:

| Description | Model | Serial Number |
|---|---|---|
| 2024 Case IH Combine | 9250 | HAJF9NNHRG258191 |
| 2024 Case IH Combine | 9250 | HAJF9N4NLRG258156 |
| 2024 Case IH Combine | 8250 | HAJF8N4MKPG253748 |

(collectively the, "Sixth Equipment"), pursuant to the terms and conditions more specifically identified therein. A true and correct copy of the Sixth Agreement is attached as **Exhibit 6-A** and incorporated herein by reference.

48. Immediately upon execution of the Sixth Agreement, Titan assigned the Sixth Agreement, along with all rights, title, and interest in and to the Sixth Equipment, to CNH. *See* Exhibit 6-A, pp. 1-2 at ¶ 7.

49. To secure Debtors payment and performance obligations to CNH, pursuant to Paragraph 6 of the Sixth Agreement, Debtors granted CNH a first-priority purchase money security interest in the Sixth Equipment, as well as all improvements, parts, accessories, substitutions, replacements, products, proceeds, and premium refunds associated with or related to the Sixth Equipment, to CNH.

50. To perfect its purchase money security interest in the Sixth Equipment, on or about September 19, 2024, CNH filed a UCC-1 Financing Statement (the "Sixth UCC") with the Minnesota Secretary of State, which financing statement is identified as filing number 1492873700133. A true and correct copy of the Sixth UCC is attached as **Exhibit 6-B** and incorporated herein by reference.

51. Paragraph 10 of the Sixth Agreement with respect to Debtors' covenants is materially the same as the First Agreement provided in Paragraphs 10 and 11 of this affidavit and is incorporated herein by reference.

52. Paragraphs 14, 15, and 19 of the Sixth Agreement-with respect to the events of default and CNH's rights and remedies-are materially the same as the First Agreement provided in Paragraphs 12-14 of this affidavit are incorporated herein by reference.

53. Pursuant to the Sixth Agreement, Debtors entered into a payment schedule change agreement on September 29, 2025 ("Sixth Agreement PSC 1") in which Debtors agreed to make remaining payments as follows: one (1) payment of $195,418.36 on August 1, 2025, then one (1) payment of $390,836.73 on December 20, 2025, then three (3) annual consecutive payments of $390,836.73 beginning on December 20, 2026, and one (1) final payment of $295,046.34 on September 20, 2029. A true and correct copy of the Sixth Agreement PSC 1 is attached as **Exhibit 6-C** and incorporated herein by reference. According to the plain language of the Sixth Agreement, Debtors' right to possess the Sixth Equipment expires upon Debtors being in default under the Sixth Agreement.

**VII. The Seventh Agreement**

54. On or about October 3, 2024, Debtors entered into an agreement with CNH as evidenced by that Retail Installment Sale Contract and Security Agreement dated October 3, 2024, in favor of CNH, as Assignee, of Titan identified as contract number 870821 (the "Seventh Agreement"), for the purpose of financing the purchase of a 2024 Geringhoff Combine Head, Model Horizon, Serial No. 1042400231822FB (the "Seventh Equipment" the "Seventh Equipment" which along with the First Equipment, Second Equipment, Third Equipment, Fourth Equipment, Fifth Equipment, and Sixth Equipment are collectively the "Collateral) pursuant to the terms and conditions more specifically identified therein. A true and correct copy of the Seventh Agreement is attached as **Exhibit 7-A** and incorporated herein by reference.

55. Immediately upon execution of the Seventh Agreement, Titan assigned the Seventh Agreement, along with all rights, title, and interest in and to the Seventh Equipment, to CNH. See Exhibit 7-A, pp. 1-2 at ¶ 7.

56. To secure Debtors' payment and performance obligations to CNH, pursuant to Paragraph 6 of the Seventh Agreement, Debtors granted CNH a first-priority purchase money security interest in the Seventh Equipment, as well as all improvements, parts, accessories, substitutions, replacements, products, proceeds, and premium refunds associated with or related to the Seventh Equipment, to CNH.

57. To perfect its purchase money security interest in the Seventh Equipment, on or about October 8, 2024, CNH filed a UCC-1 Financing Statement (the "Seventh UCC") with the Minnesota Secretary of State, which financing statement is identified as filing number 1499984800638. A true and correct copy of the Seventh UCC Statement is attached as **Exhibit 7-B** and incorporated herein by reference.

58. Paragraph 10 of the Seventh Agreement with respect to Debtors' covenants is materially the same as the First Agreement provided in Paragraphs 10 and 11 of this affidavit and is incorporated herein by reference.

59. Paragraphs 14, 15, and 19 of the Seventh Agreement-with respect to the events of default and CNH's rights and remedies-are materially the same as the First Agreement provided in Paragraphs 12-14 of this affidavit are incorporated herein by reference.

60. Pursuant to the Seventh Agreement, Debtors entered into a payment schedule change agreement on May 22, 2025 ("Seventh Agreement PSC 1") in which Debtors agreed to make remaining payments as follows: one (1) payment of $116,541.05 on December 27, 2025, then three (3) consecutive annual payments of $77,694.26 beginning on December 20, 2026, and one (1) final payment of $82,963.48 on September 27, 2029. A true and correct copy of the Seventh Agreement PSC 1 is attached as **Exhibit 7-C** and incorporated herein by reference. According to

the plain language of the Seventh Agreement, Debtors' right to possess the Seventh Equipment expires upon Debtors being in default under the Seventh Agreement.

The Lease Agreements

**VIII. The First Lease Agreement**

61. On or about March 29, 2024, Debtors entered into an agreement with CNH as evidenced by that Equipment Operating Lease Agreement dated March 29, 2024, in favor of CNH, as Assignee, of Titan identified as contract number 786478 ("Lease One"), for the purpose of leasing a 2023 Case Wheel Loader, Model 721G Z-Bar, Serial No. JEEN0721EPF256837 (the "Lease One Equipment") pursuant to the terms and conditions more specifically identified therein. A true and correct copy of Lease One is attached as **Exhibit 8-A** and is incorporated herein by reference.

62. Immediately upon execution of Lease One, Titan assigned Lease One, along with all rights, title, and interest in and to the Lease One Equipment, to CNH. *See* Exhibit 8-A, at pp.1-2.

63. Though legally unnecessary because Lease One is a true lease and CNH holds all right, title, and interest in the Lease One Equipment, CNH filed a UCC-1 Financing Statement (the "Lease One Equipment UCC") with the Minnesota Secretary of State on or about April 1, 2024, which financing statement is identified as filing number 1466789300284. A true and correct copy of the Eighth UCC is attached as **Exhibit 8-B** and is incorporated herein by reference.

64. Pursuant to Paragraph 2 of Lease One, Debtors have no right, title, or interest in Lease One Equipment except the right to use it during the lease term, so long as an event of default has not occurred. Ex. 8-A at p.2.

65. Pursuant to Paragraph 13 of Lease One, Debtors shall be in default if they fail to pay when due any of the Obligations, or to perform any covenant or any other obligation of theirs under the First Agreement or any other agreement with or assigned to CNH. *Id.* at p. 3.

66. Pursuant to Paragraph 15 of Lease One, upon an event of default, CNH shall have the right in its sole discretion to exercise its remedies, which, among other things include:

i. Pursuing all rights provided by law and terminating Lease One;

ii. Declaring all obligations immediately due and payable without notice or demand;

iii. Taking the Lease One Equipment, without notice of hearing, and Debtors and any guarantor expressly waives its right to notice or prior hearing and agreed that CNH shall not be required to post any bond;

iv. Selling the Lease One Equipment or otherwise disposing of it in a commercially reasonable manner;

v. Collecting all of CNH's costs that arise from repossession and/or selling the Lease One Equipment, including without limitation, reasonable legal fees and costs; and

vi. Exercising all of its rights and remedies either separately or in combination and any action taken by CHN to recover payment shall not limit CNH's rights with respect to the Lease One Equipment.

*Id.*

67. Paragraph 15 further provides that neither the termination of Lease One nor the repossession of the Lease One Equipment releases Debtors from their Lease One obligations. *Id.*

68. Paragraph 15 also provides that if there is a deficiency after CNH applies the net proceeds from any realization of the Lease One Equipment, Debtors agree to pay the deficiency upon demand. *Id.*

69. Paragraph 14 of Lease One provides the Debtors shall reimburse CNH for any expense incurred by CNH in protection or enforcing its rights under Lease One, including reasonable attorneys' fees and legal expenses. *Id.*

70. Pursuant to the Lease One Agreement, Debtors entered into a payment schedule change agreement on May 30, 2024 ("Lease One PSC 1") in which Debtors agreed to make remaining payments as follows: one (1) payment of $17,062.24 on May 1, 2024, then one (1) payment of $9,356.73 on September 1, 2024, then one (1) payment of $10,051.77 on December 1, 2024, then three (3) consecutive annual payments of $41,942.13 beginning on May 1, 2025, and one (1) final payment of $41,942.17 on May 1, 2028. A true and correct copy of Lease One PSC 1 is attached here to as **Exhibit 8-C** and incorporated herein by reference.

71. Pursuant to the Lease One Agreement, Debtors again entered into a payment schedule change agreement on May 22, 2025 ("Lease One PSC 2") in which Debtors agreed to make remaining payments as follows: one (1) payment of $20,971.06 on December 1, 2025, then two (2) consecutive annual payments of $41,942.13 beginning on May 1, 2026, then one (1) final payment of $41,942.17 on May 1, 2028. A true and correct copy of Lease One PSC 2 is attached hereto as **Exhibit 8-D** and incorporated herein by reference.

## IX. The Second Lease Agreement

72. On or about July 31, 2024, Debtors entered into an agreement with CNH as evidenced by that Equipment Operating Lease Agreement dated July 31, 2024, in favor of CNH,

as Assignee, of Titan identified as contract number 843466 ("Lease Two") for the purpose of leasing the following equipment:

| Description | Model | Serial Number |
|---|---|---|
| 2024 Case IH Loader AG | L117 | YPWLT5036 |
| 2024 Case IH Puma Tractor | 220 CXV | DBDPU220KRDL51145 |

(collectively, "Lease Two Equipment" which along with the Lease One Equipment is collectively "Leased Equipment"). pursuant to the terms and conditions more specifically identified therein. A true and correct copy of Lease One is attached as **<u>Exhibit 9-A</u>** and incorporated herein by reference.

73. Immediately upon execution of Lease Two, Titan assigned Lease Two, along with all rights, title, and interest in and to the Lease Two Equipment, to CNH. *See* Exhibit 9-A, at pp.1-2.

74. Though legally unnecessary because Lease Two is a true lease and CNH holds all right, title, and interest in the Lease Two Equipment, CNH filed a UCC-1 Financing Statement (the "Lease Two Equipment UCC") with the Minnesota Secretary of State on or about August 8, 2024, which financing statement is identified as filing number 1486215300374. A true and correct copy of the Lease Two Equipment is attached as **<u>Exhibit 9-B</u>** and incorporated herein by reference.

75. Paragraph 2 of Lease Two with respect to Debtors' covenants is materially the same as Lease One First provided in Paragraph 64 of this affidavit and is incorporated herein by reference.

76. Paragraphs 13, 14, and 15 of Lease Two-with respect to the events of default and CNH's rights and remedies-are materially the same as Lease One provided in Paragraphs 65-69 of this affidavit are incorporated herein by reference.

77. Pursuant to the Lease Two Agreement, Debtors entered into a payment schedule change agreement on May 22, 2025 ("Lease Two PSC 1" which along with which along with the First Agreement, Second Agreement, Third Agreement, Fourth Agreement, Fifth Agreement, Sixth Agreement, Seventh Agreement, Lease One, Lease Two, First Agreement PSC 1, First Agreement PSC 2, Second Agreement PSC 1, Second Agreement PSC 2, Third Agreement PSC 1, Fourth Agreement PSC 1, Fifth Agreement PSC 1, Fifth Agreement PSC 2, Sixth Agreement PSC 1, Seventh Agreement PSC 1, Lease One PSC 1, and Lease One PSC 2 are collectively the "Agreements"), in which Debtors agreed to make remaining payments as follows: one (1) payment of $53,780.29 on December 1, 2025, then two (2) consecutive annual payments of $36,953.53 beginning on December 1, 2026, and one (1) final payment of $36,953.56 on December 1, 2028. A true and correct copy of the Lease Two PSC 1 is attached here as **Exhibit 9-C** and incorporated herein by reference.

Debtors' Defaults

78. The Debtors failed to adhere to their payment obligations under the Agreements[5] and are therefore in default.

79. Pursuant to the terms and conditions set forth in the Agreements, CNH is entitled to recover the amounts due under the terms of the Agreements as of April 23, 2026, of not less than $5,871,857.80, as itemized below, plus interest accruing at the contracted rates through the date of judgment, plus costs and expenses incurred by CNH in enforcing its rights and remedies pursuant to the Agreements, plus attorneys' fees incurred and CNH is entitled to recover the Collateral.

[5] Debtors are not currently in default for failure to make payments when due under the Third Agreement with CNH. Debtors sold part of the Third Equipment, the 2023 Case IH Combine, on August 7, 2024, proceeds in the amount of $557,451.24 were applied to the Third Agreement. Debtors are still in default under the Third Agreement because the other Agreements are in default.

i. Pursuant to the terms of the First Agreement, as of April 23, 2026, CNH is entitled to recover not less than $91,643.52, which is comprised of $85,984.95 in principal, $4,398.54 in interest, and $1,260.03 in fees.

ii. Pursuant to the terms of the Second Agreement, as of April 23, 2026, CNH is entitled to recover not less than $97,268.32, which is comprised of $90,987.61 in principal, $5,959.44 in interest, and $321.27 in fees.

iii. Pursuant to the terms of the Third Agreement, as of April 23, 2026, CNH is entitled to recover not less than $17,273.57, which is comprised of $16,464.25 in principal, $738.05 in interest, and $71.27 in fees.

iv. Pursuant to the terms of the Fourth Agreement, as of April 23, 2026, CNH is entitled to recover not less than $205,390.85, which is comprised of $191,427.16 in principal, $13,892.42 in interest, and $71.27 in fees.

v. Pursuant to the terms of the Fifth Agreement, as of April 23, 2026, CNH is entitled to recover not less than $2,736,040.51, which is comprised of $2,556,440.57 in principal, $179,599.94 in interest, and $71.27 in fees.

vi. Pursuant to the terms of the Sixth Agreement, as of April 23, 2026, CNH is entitled to recover not less than $1,756,511.76, which is comprised of $1,677,187.63 in principal, $79,252.86 in interest, and $71.27in fees.

vii. Pursuant to the terms of the Seventh Agreement, as of April 23, 2026, CNH is entitled to recover not less than $392,368.54, which is comprised of $367,193.72 in principal, $25,103.48 in interest, and $71.34 in fees.

viii. Pursuant to the terms of Lease One, as of April 23, 2026, CNH is entitled to recover not less than $146,868.76, plus residual balance of $85,334.28.

ix. Pursuant to the terms of Lease Two, as of April 23, 2026, CNH is entitled to recover not less than $161,412.17, plus residual balance of $181,745.52.

80. As a consequence of the Debtors' defaults, CNH issued a Notice of Default and Acceleration to Debtors on December 8, 2025, in which CNH exercised its non-exclusive right to accelerate the Agreements, declare all the indebtedness under the Agreements to be immediately due and payable, and demanded immediate payment of such indebtedness. A true and correct copy of the Notice of Default is attached hereto as **<u>Exhibit 10</u>** and incorporated herein by reference.

81. On or around May 2025, in connection with the Agreements and in an attempt to resolve the Debtors' respective defaults prior to initialing this litigation, Debtors and CNH participated in mediation pursuant to the Farmer Lender Mediation Act, Minn. Stat. § 583.20 *et seq*. The parties reached agreements which were memorized pursuant to the First Agreement PSC 2, Second Agreement PSC 2, Fourth Agreement PSC 1, Fifth Agreement PSC 1, Sixth Agreement PSC 1, Seventh Agreement PSC 1, Lease One PSC 2, and Lease Two PSC 1 (collectively. The "Mediation Related PSC's"). As noted above, Debtors failed to make payments due under the Agreements which include the Mediation Related PSC's. A true and correct copy of the Farmer Lender Mediation Closing Statement dated May 12, 2025, is attached hereto as **Exhibit 11** and incorporated herein by reference.

82. The Debtors have failed to cure the defaults.

83. The Debtors are in default and are in breach of the Agreements. Consequently, CNH is entitled to exercise its remedies afforded under the Agreements and state law. Such remedies include, without limitation, recovering the total amounts due under the terms of the Agreements as of April 23, 2026, of not less than $5,871,857.80, as itemized above and below, plus interest accruing at the contracted rate through the date of judgment, plus costs and expenses incurred by CNH in enforcing its right and remedies pursuant to the Agreements, plus attorneys' fees incurred, and taking possession of the Collateral.

i. Pursuant to the terms of the First Agreement, as of April 23, 2026, CNH is entitled to recover not less than $91,643.52, which is comprised of $85,984.95 in principal, $4,398.54 in interest, and $1,260.03 in fees.

ii. Pursuant to the terms of the Second Agreement, as of April 23, 2026, CNH is entitled to recover not less than $97,268.32, which is comprised of $90,987.61 in principal, $5,959.44 in interest, and $321.27 in fees.

iii. Pursuant to the terms of the Third Agreement, as of April 23, 2026, CNH is entitled to recover not less than $17,273.57, which is comprised of $16,464.25 in principal, $738.05 in interest, and $71.27 in fees.

iv. Pursuant to the terms of the Fourth Agreement, as of April 23, 2026, CNH is entitled to recover not less than $205,390.85, which is comprised of $191,427.16 in principal, $13,892.42 in interest, and $71.27 in fees.

v. Pursuant to the terms of the Fifth Agreement, as of April 23, 2026, CNH is entitled to recover not less than $2,736,040.51, which is comprised of $2,556,440.57 in principal, $179,599.94 in interest, and $71.27 in fees.

vi. Pursuant to the terms of the Sixth Agreement, as of April 23, 2026, CNH is entitled to recover not less than $1,756,511.76, which is comprised of $1,677,187.63 in principal, $79,252.86 in interest, and $71.27 in fees.

vii. Pursuant to the terms of the Seventh Agreement, as of April 23, 2026, CNH is entitled to recover not less than $392,368.54, which is comprised of $367,193.72 in principal, $25,103.48 in interest, and $71.34 in fees.

viii. Pursuant to the terms of Lease One, as of April 23, 2026, CNH is entitled to recover not less than $146,868.76.

ix. Pursuant to the terms of Lease Two, as of April 23, 2026, CNH is entitled to recover not less than $161,412.17.

84. CNH believes the Collateral is presently located at 6867-740th Street, Wheaton, MN 56296.

85. CNH is familiar with the Collateral. Based on CNH's knowledge of the market value of the type of equipment at issue and the Collateral itself, CNH estimates that the value of the Collateral is approximately $4,949,091.00, total, broken down as follows:

| Description | Model | Serial Number | Retail Value |
|---|---|---|---|
| 2021 Case IH Speed Tiller | 475 | CWR003548 | $72,551.00 |
| 2022 Brent Grain Cart | 2096 | B42060120 | $149,688.00 |
| 2011 Universal Trailer | TE 100 | 1DADLDO36M020355 | $22,542.00 |

| | | | |
|---|---|---|---|
| 2018 Case IH Combine Head | 4418-22 Corn | YJH633407 | $66,987.00 |
| 2024 Case IH Steiger Tractor | 595 | JEEZC595JRF514418 | $564,017.00 |
| 2024 Case IH Steiger Tractor | 595Q | JEEZC595KRF514417 | $564,017.00 |
| 2024 Case IH Steiger Tractor | 595 | JEEZC595CRF14400 | $564,017.00 |
| 2024 Case IH Steiger Tractor | 595 TK | JEEZC595LRF514408 | $564,017.00 |
| 2024 Case IH Steiger Tractor | 645 TK | JEEZC645CRF514868 | $587,464.00 |
| 2024 Case IH Combine | 9250 | HAJF9NNHRG258191 | $437,517.00 |
| 2024 Case IH Combine | 9250 | HAJF9N4NLRG258156 | $437,517.00 |
| 2024 Case IH Combine | 8250 | HAJF8N4MKPG253748 | $410,320.00 |
| 2024 Geringhoff Combine Head | Horizon | 1042400231822FB | $125,377.00 |
| 2023 Case Wheel Loader | 721G Z-Bar | JEEN0721EPF256837 | $158,900.00 |
| 2024 Case IH Puma Tractor including 2024 Case IH Loader AG | 220 CXV, L117 | DBDPU220KRDL51145, YPWLT5036 | $224,160.00 |

FURTHER AFFIANT SAYETH NOT.

[signature]

Subscribed and sworn to before me this 14th day of July, 2026.

[signature] Laura Stankiewicz
Notary Public

Commonwealth of Pennsylvania - Notary Seal
Laura Stankiewicz, Notary Public
Lancaster County
My commission expires October 3, 2028
Commission number 1454175
Member, Pennsylvania Association of Notaries

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

# EXHIBIT 1-A

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH INDUSTRIAL | CAPITAL

062160 / 2712881

# RETAIL INSTALLMENT SALE CONTRACT AND SECURITY AGREEMENT FIXED RATE

F%0000025974562 1004A0105

| "Buyer(s)": Legal Name(s) | Address | City | St | Zip Code |
|---|---|---|---|---|
| RAGUSE FAMILY PARTNERSHIP | 6867 740TH ST. | WHEATON | MN | 56296-5504 |

| "Seller": Legal Name | Address | City | St | Zip Code |
|---|---|---|---|---|
| TITAN MACHINERY INC. | 101 THIRD STREET EAST | HERMAN | MN | 56248 |

The undersigned Buyer(s) (collectively called "Buyer") hereby purchases from Seller and Seller hereby sells to Buyer the following goods (the "Equipment") at the Time Sale Price and the terms set forth herein. The Equipment is purchased for commercial ☐ business use ☑ agricultural use.

| NEW*/USED | EQUIPMENT DESCRIPTION | MODEL | SERIAL NUMBER/PIN | "CASH SALE PRICE" |
|---|---|---|---|---|
| NEW | Case IH Speed Tiller | 475 | CWR003548 | $155,260.00 |
| | | | | |
| | | | | |
| | | | | |

*New Equipment is unused equipment, a rental unit or a demonstrator, not previously sold, for which the manufacturer will supply all or a portion of a new equipment warranty; this Equipment may have been manufactured in a year prior to the year of this purchase.

| TRADE-IN EQUIPMENT | MODEL | SERIAL NUMBER/PIN | ALLOWANCE | AMT. OWED | NET TRADE-IN | OWED TO (Address details Page 4) |
|---|---|---|---|---|---|---|
| GERINGHOFF Combine Head | 1622/B | 932681622/B | $20,260.00 | N/A | $20,260.00 | |
| | | | | | | |
| | | | | | | |

STATEMENT OF TRANSACTION

| | | |
|---|---|---|
| 1. Cash Price (Cash Sale Price) | | 1. $ 155,260.00 |
| 2. Cash Down Payment | $ N/A | |
| Net Trade-in Allowance | $ 20,260.00 | |
| Manufacturer's Rebate | $ N/A | |
| Total Down Payment | | 2. $ 20,260.00 |
| 3. Unpaid Balance of Cash Price (1 minus 2) | | 3. $ 135,000.00 |
| 4. Other Charges | | |
| (a) Taxes (Not in Cash Price) | $ N/A | |
| (b) Official Fees (Filing and Termination) | $ 40.00 | |
| (c) UCC Service Fee (Filing and Termination) | $ 22.00 | |
| (d) Administrative Fee | $ N/A | |
| (e) Physical Damage Insurance | $ N/A | |
| (f) Credit Life Insurance | $ N/A | |
| (g) Credit Accident & Health Insurance | $ N/A | |
| (h) Purchased Protection Plan | $ N/A | |
| (i) Other | $ N/A | |
| Total Other Charges | | 4. $ 62.00 |
| 5. Unpaid Balance (Amount Financed) (3+4) | | 5. $ 135,062.00 |
| 6. **FINANCE CHARGE (Time Price Differential)** | | 6. $ 26,386.92 |
| 7. Total of Payments (Time Balance) (5+6) | | 7. $ 161,448.92 |
| 8. Deferred Payment Price (Time Sale Price) (1+4+6) | | 8. $ 181,708.92 |

9. The Unpaid Balance (Amount Financed) shall bear a Finance Charge computed at a per annum rate [the **ANNUAL PERCENTAGE RATE ("APR")**] equal to 5.35 % (this is a ***FIXED RATE*** contract).

10. Date APR begins accruing: 05-09-2022

Buyer agrees to pay to the Seller the Time Balance as follows:

| NBR OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MM/DD/YYYY |
|---|---|---|---|
| 5 | 12 MONTHS | $ 26,908.15 | 05/09/2023 |
| 1 | 12 MONTHS | $ 26,908.17 | 05/09/2028 |

The payments have been calculated to pay in full principal and interest over the term of this Agreement using the APR in effect on the date of this Agreement, and assuming that all required payments are made in full on the scheduled due dates. The final payment due hereunder shall be recalculated to pay the Obligations in full.

Buyer hereby conveys to Seller all rights, title and interest in the Trade-in Equipment free and clear of all encumbrances except as noted above.

☑ If checked, Seller represents and warrants that the above Amt. Owed has been paid.

Buyer agrees to the terms of the above titled agreement (herein the "Agreement"). Buyer has received and examined the Equipment, which is in good operating order and condition and is as described above. Buyer acknowledges receipt of a copy of this Agreement. Buyer agrees to purchase the Equipment described above and pay the Time Balance based on the terms of this Agreement.

**NOTICE TO THE BUYER:**

1. DO NOT SIGN THIS BEFORE YOU READ THE TERMS ON THE FOUR AGREEMENT PAGES (PLUS ANY ADDENDUMS), EVEN IF OTHERWISE ADVISED.
2. DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
3. YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.
4. BUYER REPRESENTS THAT THE EQUIPMENT IS NOT BEING PURCHASED FOR FAMILY, HOUSEHOLD OR PERSONAL USE.

**ADDITIONAL PROVISIONS CONCERNING RIGHTS AND DUTIES OF THE PARTIES ON THE ADDITIONAL PAGES OF THIS AGREEMENT ARE A PART OF THIS AGREEMENT.**

| | | | |
|---|---|---|---|
| X [signature] | RAGUSE FAMILY PARTNERSHIP | Partner | 05-09-2022 |
| Signature of Buyer/Buyer's Representative | Printed Name | Title (not for an individual Buyer) | Date |
| X | | | |
| Signature of Buyer/Buyer's Representative | Printed Name | Title (not for an individual Buyer) | Date |

Dealer (hereinafter "Assignor" or "Seller") hereby assigns all of its rights, title and interest in and to the Agreement and the Equipment to CNH Industrial Capital America LLC (hereinafter "Assignee" or "CNH Capital"), under terms also described in the Retail Finance Agreement, Program Procedures, Dealer Handbook or other related documents (collectively hereinafter the "RFA") executed by the Assignor and Assignee. Seller has obtained a signed credit application for this Agreement. The Equipment has been paid in full or will be paid in full with Agreement proceeds pursuant to the terms of the RFA. Assignor waives notice of acceptance of this Assignment and notice of non-payment and non-performance of the Agreement and any other notices required by law and waives any and all setoffs and counterclaims. This Assignment shall become effective upon delivery of the Agreement to Assignee or upon Assignee's payment of the purchase price thereof, whichever occurs first.

Basis of Acceptance: ☑ Nonrecourse ☐ Repurchase ☐ Full Recourse ☐ Other

Other explanation:

| | | |
|---|---|---|
| X [signature] | TITAN MACHINERY INC. | 05-09-2022 |
| Signature of Seller's Representative | Printed Seller Name | Date |

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH INDUSTRIAL | CAPITAL

F%000002597456210 04A0205

062160 / 2712881

# Agreement Provisions

1. **NO WARRANTY. THE EQUIPMENT IS SOLD AS IS AND WITH ALL FAULTS, SUBJECT TO ANY APPLICABLE MANUFACTURER'S EXPRESS, WRITTEN WARRANTY. NEITHER SELLER NOR MANUFACTURER MAKE ANY OTHER REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AND SPECIFICALLY DISCLAIM THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSES.* NEITHER SELLER NOR MANUFACTURER WILL BE LIABLE FOR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM A BREACH OF THE EXPRESS WARRANTY OR ANY IMPLIED WARRANTY IMPOSED BY LAW.***

   ***Some states do not allow these limitations and exclusions, and they shall not apply to the extent such limitations or exclusions are not allowed by applicable state law.***

2. **Prepayments.** Buyer may make a partial prepayment of the unpaid Time Balance at any time, but any partial prepayments will not change or defer Buyer's next scheduled payments. If Buyer prepays the full unpaid Time Balance on construction equipment for commercial business use, Buyer shall pay a prepayment fee of up to $150, unless such fee is prohibited by applicable law.

3. **Late Charges/Default Rate/Returned Checks.** Buyer shall pay a late charge on each payment not paid within 10 days after the due date at the highest amount, both as permitted by applicable law. Buyer shall pay interest on the unpaid balance after maturity (as scheduled, by acceleration or otherwise) at the highest rate, as permitted by applicable law. If a check is returned for any reason, Assignee may charge Buyer a returned check processing fee as established by Assignee from time to time not to exceed the maximum permitted under applicable law. Assignee may apply any payment or proceed received toward the Obligations, in its sole discretion regardless of how requested or directed.

4. **Fees.** All parties to this Agreement acknowledge and agree that some fees and charges scheduled under section 4 in the Statement of Transaction may be shared between the Seller and CNH Capital as permitted by law and may result in profit for the Seller and CNH Capital. The parties further agree that Administrative or Other Fees are reasonable consideration for credit determination, handling, review, and approval of the transaction, and are not a document preparation fee nor an official fee. CNH Capital may make UCC related filings and/or termination statements pursuant to this Agreement. CNH Capital reserves its right to assess additional fees and other charges to the Obligations including but not limited to, if fees and other charges increase or other actions are needed to protect its lien upon the Equipment. If any fees and/or other charges scheduled and/or assessed under any part of this Agreement exceed the maximum permitted by applicable law, any excess shall be applied toward a reduction of the principal balance and that shall be the sole and satisfactory remedy under this Agreement.

5. **Extensions and Refinancing.** If Assignee extends, defers or refinances any payments due under this Agreement, Assignee may, at its option, increase the APR or Time Price Differential Rate (herein collectively referred to as APR).

6. **Security Interests/Cross Collateralization.** Buyer hereby grants to Seller and its successors and assigns (including Assignee) a first priority purchase money security interest in the Equipment, and in all improvements, parts and accessories belonging to the Equipment, and all substitutions, replacements, products, proceeds (including any insurance proceeds) thereof and premium refunds, refunds of any other charges hereunder and all accessions related to the Equipment (the Equipment and such items are collectively referred to herein as the "Collateral"), to secure payment and performance of all existing and future obligations of Buyer under this Agreement or any other agreement between Buyer and Seller, between Buyer and Assignee or any affiliate of Assignee, or where Buyer, under another agreement in favor of Seller or Assignee, is a guarantor or obligor (the "Obligations"). Loss of or damage to the Equipment shall not release Buyer from any of the Obligations. Upon request, Buyer shall take any action reasonably deemed necessary by Assignee to protect and enforce Assignee's interest in the Collateral or rights under this Agreement. Assignee or Seller is authorized to examine the Collateral wherever located at any reasonable time or times. Buyer authorizes Assignee to insert in this Agreement, or amend any financing statement or title registration documentation to reflect the serial/PIN and/or model numbers of the Equipment if unknown at the time this Agreement is executed and to correct any errors in such numbers or any other errors in the description of the Equipment.

7. **Assignment.** Seller hereby assigns this Agreement, and any guarantee(s) ("Guarantee") hereof (together, "Assignment") to Assignee. Buyer acknowledges that Seller has the right to assign this Agreement and such Guarantee, that all rights and benefits but no obligations (if any) of Seller under this Agreement may be exercised by Assignee and that no obligations (if any) of Seller pass to Assignee. Buyer shall make all payments due under this Agreement directly to Assignee. This Agreement shall be binding on and inure to the benefit of Buyer, Seller and Assignee and their respective heirs, personal representatives, successors and assigns, provided however, that Buyer may not assign its interest in the Collateral, rights, nor its obligations under this Agreement to any person without Assignee's prior written consent.

8. **Notification of Change in Residence, Principal Office, or Organizational Form.** If Buyer changes (as applicable): (a) its state of principal residence; or (b) the state in which its chief executive office is located; or (c) the state in which it is organized; or (d) its form of organization (such as from an individual to a corporation); or (e) its name, as printed on a State filed registration document or individual name, as printed on a valid driver's license, then Buyer will notify Assignee in writing promptly, but in no event more than 30 days after such change.

9. **Waiver of Defenses Against Assignee; Indemnification.** Buyer will not assert against Assignee any claim or defense which Buyer may have against Seller, the manufacturer of the Equipment, or any other person. Buyer agrees that its obligation to remit payments will not be subject to, and it will not make any claim against Assignee for breach of any representation, warranty or condition with respect to the Equipment and that its obligation to pay Assignee all amounts under this Agreement is absolute and unconditional without abatement, reduction, set-off, counterclaim or interruption for any reason whatsoever, including any dispute which now or hereafter arises between Buyer and Seller or any other person. Time is of the essence. Buyer shall indemnify and hold harmless Seller, Assignee and their respective officers, directors, employees and agents from and against any damage, loss, theft or destruction of the Equipment or any part thereof, and from and against any and all loss, damages, injuries, claims, demands, costs and expenses (including without limitation reasonable attorneys' fees and expenses) of any kind and nature, arising out of or connected with this Agreement or the use, condition (including without limitation, all defects whether or not discoverable by Buyer, Seller or Assignee) or operation of the Equipment or any part thereof. Buyer shall promptly notify Seller and Assignee in writing of any loss, damage, theft, destruction, injury, claim, demand, cost or expense related to this Agreement or the Equipment of which Buyer has knowledge.

10. **Buyer's Covenants.** Buyer shall: (a) keep the Equipment in the state listed on page 1 of this Agreement and not remove the Equipment from such location, except temporarily in connection with its ordinary use or repair, unless Assignee consents in writing; (b) maintain the Equipment in good condition and repair and not permit its intended function or value to be impaired; (c) keep the Collateral free of all liens, encumbrances and security interests of all persons other than Seller and Assignee; (d) defend the Collateral against all claims and legal proceedings by persons other than Assignee; (e) pay and discharge when due all taxes, fees, levies and other charges upon the Collateral (including all personal property and ad valorem taxes); (f) pay when due all taxes arising from the purchase of the Equipment under this Agreement, excluding any taxes based upon Seller's net income; (g) use the Equipment solely in the conduct of Buyer's business; (h) ensure the Equipment will be used solely within the intended uses of the manufacturer and that manufacturer warranty remains valid; (i) not sell, lease or otherwise dispose of the Equipment nor permit the Equipment to become an accession to other goods or a fixture; and (j) not permit the Equipment to be used in violation of any law, regulation or policy of insurance; and (k) strictly follow the terms on page 1 of this Agreement; (l) perform (at Buyer's expense) all maintenance and repairs necessary to keep the Equipment in as good a condition as when delivered to Buyer, reasonable wear excepted; (m) not permit the Equipment to be used by, or to be in the possession of, anyone other than Buyer or Buyer's employees. Buyer represents and warrants that: (i) each individual executing this Agreement authorized by or on behalf of Buyer has the requisite power and authority to execute this Agreement and all related documents; (ii) Buyer is fully authorized to perform its obligations and consummate the transactions contemplated under this Agreement and related documents; (iii) the execution and delivery of this Agreement and all related documents and the consummation of the transactions under this Agreement have been duly authorized by Buyer; and (iv) this Agreement and all related documents constitute valid and legally binding obligations of Buyer, enforceable against Buyer in accordance with their respective terms.

CNH INDUSTRIAL | CAPITAL

F%000002597456210004A0305

062160 / 2712881

## Agreement Provisions

11. **Insurance.** Buyer shall keep Assignee's interests in the Equipment insured against fire, theft, physical damage and other hazards under policies listing Assignee as Lender's loss payee or as an additional insured, with such provisions, for such amounts (but not less than the unpaid balance outstanding under this Agreement) and by such insurers and terms as shall be satisfactory to Assignee from time to time, and shall furnish to Assignee evidence of such insurance satisfactory to Assignee. Such insurance shall provide at least 30 days' written notice of cancellation, lapse or expiration to Assignee. Buyer assigns (and directs any insurer to pay) to Assignee Buyer's interest in the proceeds of any and all insurance related to the Equipment and any premium refund, and Assignee may, at its option, apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to repair or restore the Equipment. Buyer must make all payments due under this Agreement whether or not the Equipment is insured or underinsured. Assignee is authorized, in the name of Buyer or otherwise, to make, adjust and/or settle claims under any insurance on the Equipment, or cancel the same after the occurrence of an event of default, or set off amounts owed Assignee against any rebates, credits or refunds due Buyer and/or any guarantor. If Buyer purchased physical damage insurance that is financed under this Agreement, Buyer hereby requests and authorizes Seller (provided Seller is properly licensed to do so) or its designee: (a) to arrange physical damage insurance for the benefit of Seller or Assignee and Buyer that covers physical damage to the Equipment; (b) to replace or otherwise modify such insurance as Seller deems appropriate; and (c) to be Buyer's attorney-in-fact to make claim for, receive payment of and execute, endorse and negotiate all documents, checks or drafts received in payment of loss, damage or premium refunds under any insurance. This Agreement includes and hereby incorporates by reference any Insurance Addendum signed in connection with this Agreement.

STATEMENT TO BUYER: THE PHYSICAL DAMAGE INSURANCE PURCHASED UNDER THE TERMS OF THIS AGREEMENT COVERS ONLY LOSS OF OR DAMAGE TO THE EQUIPMENT. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED AS PART OF THE PHYSICAL DAMAGE INSURANCE. BUYER UNDERSTANDS THAT IF INSURANCE IS FINANCED UNDER THIS AGREEMENT, PREPAYMENT OF BUYER'S OBLIGATIONS OR TERMINATION OF THIS AGREEMENT WILL RESULT IN CANCELLATION OF INSURANCE COVERAGE, UNLESS OTHERWISE EXPLICITLY AGREED TO IN WRITING BY ASSIGNEE.

12. **Modifications and Waivers.** This Agreement sets forth the entire understanding among Seller, Assignee and Buyer. No modification, amendment or extension of this Agreement and no waiver of any provision of this Agreement shall be valid unless in writing and signed by the parties and a waiver of any default hereunder by Assignee shall not constitute a waiver of any other prior or subsequent default, except that Buyer authorizes Assignee to insert in this Agreement the serial number/PIN and/or model number of any Equipment if this information is unknown when this Agreement is executed or to correct any errors in such numbers or any other patent errors in the description of the Equipment.

13. **Authority of Assignee to Perform for Buyer.** If Buyer fails to perform any of Buyer's duties set forth in this Agreement (including, without limitation, the purchase of insurance), Assignee may at its option, in Buyer's name or otherwise, take any such action, including, without limitation, signing Buyer's name or paying any amount so required, and all costs and expenses incurred by Assignee in connection therewith shall form part of the Obligations and shall be payable by Buyer upon demand with interest from the date of payment by Assignee at the highest rate permitted by applicable law.

14. **Default/Cross Default.** Buyer shall be in default under this Agreement, and any other agreement with or assigned to Assignee, if any of the following occurs (each, an "event of default"): (a) Buyer fails to pay when due any of the Obligations, or to perform any covenant or other obligation of Buyer under this Agreement or any other agreement with or assigned to Assignee; (b) Buyer or any guarantor dies, ceases to exist, becomes insolvent or the subject of bankruptcy, insolvency or liquidation proceedings, attempts to or does assign this Agreement or attempts to or does remove, sell, transfer, further encumber, part with possession of or sublet any Equipment; (c) any warranty or representation made by Buyer or any guarantor to induce Seller or Assignee to extend credit to Buyer, under this Agreement or otherwise, is false in any material respect when made; (d) Buyer fails to maintain insurance required hereunder or fails to comply with the requirements of any such insurance; (e) any other event occurs that causes Assignee, in good faith, to consider that payment or performance of the Obligations is impaired or that the Equipment is at risk; (f) the Equipment is impounded or confiscated by any federal, state or local governmental authority; (g) Buyer fails to produce Collateral for inspection within 10 days, upon demand; or (h) Buyer breaches any of the other terms of this Agreement or any other agreement with or assigned to Assignee.

15. **Expenses.** To the extent not prohibited by law, Buyer shall reimburse Seller or Assignee for any expense incurred by Seller or Assignee in protecting, defending or enforcing their rights under this Agreement, including, without limitation, reasonable attorneys' fees and legal expenses and all expenses of taking possession, transporting, holding, repairing, refurbishing, preparing for disposition and disposing of the Collateral, and all expenses and costs incurred in collecting the Obligations, including collection agency fees based on a maximum of 25% of the Obligations, and all shall be part of the Obligations.

16. **Conflict with Law.** Any provision of this Agreement prohibited by applicable law shall be ineffective to the extent of the prohibition without invalidating the remaining portions of this Agreement. The validity, construction and enforcement of this Agreement shall be governed by the laws of the State of the Seller (without regard to conflict of law principles of such State). All terms not otherwise defined have the meanings assigned to them by the applicable Uniform Commercial Code.

17. **Authorization to Execute and File Financing Statements and Lien Documents.** Buyer hereby authorizes Assignee or its designee to execute and file financing statements, and any motor vehicle title, registration and lien notification documentation, and any amendments thereto, on behalf and in the name of Buyer to evidence the security interest in the Collateral granted pursuant to this Agreement. Buyer hereby irrevocably appoints Assignee or its designee as Buyer's agent and attorney-in-fact to sign such instruments on Buyer's behalf and to file them.

18. **Time Price Calculations.** If this is a variable rate contract, the Prime Rate for a given calendar month shall be the rate designated as the "Prime Rate" published in The Wall Street Journal on the twentieth day of the prior calendar month (or on the next day published if not published on the twentieth day). If The Wall Street Journal ceases publication permanently or no longer publishes a "Prime Rate", the Prime Rate shall mean the prime loan rate of any federally chartered bank selected by Assignee. For all contracts the APR shall never be less than 0%. APR shall be calculated using a daily rate determined by dividing the annual rate by 365. Buyer shall make all payments in lawful money of the United States of America.

19. **Remedies.** Upon the occurrence of any event of default, Seller or Assignee shall have all rights and remedies provided by the Uniform Commercial Code or any other applicable law and Seller or Assignee may, except where prohibited by law, at its option: (i) declare all Obligations immediately due and payable without notice or demand; (ii) enter onto any premises where the Collateral may be located, take possession of all Collateral, without notice or hearing, and, Buyer or any guarantor, also expressly waives any right to notice or a prior hearing or to require Assignee to post any bond; (iii) render the Equipment unusable; (iv) require Buyer to assemble all Collateral and make it available to Assignee at any convenient place designated by Assignee within 10 days after notice from Assignee; (v) sell (including at wholesale) or otherwise dispose of all Collateral at public or private sale for cash or on credit terms, without notice; and if notice is required by law, ten (10) days' notice to Buyer shall be deemed reasonable notice; and/or (vi) obtain a consumer credit bureau upon any Buyer or any guarantor. All rights and remedies may be exercised by Seller or Assignee either separately or in combination and any action taken by Assignee to recover payment from Buyer of the Obligations shall not limit Assignee's rights with respect to all Collateral. Assignee may apply all proceeds of realization of the Collateral to such part or parts of the Obligations as Assignee may decide. If there is a deficiency, Buyer will pay the amount of the deficiency upon demand. Buyer waives notice of dishonor, presentment and demand as to this Agreement.

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH INDUSTRIAL | CAPITAL

F%000025974562 1004A0405

062160 / 2712881

## Agreement Provisions

**20. Miscellaneous.** In the event that this contract is determined by a court of competent jurisdiction to be characterized as a loan or forbearance agreement, and not a sale, despite the terms and conditions found in this contract, then all parties agree that any interest charges computed and assessed in this contract that are in excess of the maximum allowed interest charges allowed by law shall be applied as a reduction to the principal balance owed on this contract only, and this shall be the agreed upon and satisfactory remedy to all parties. By providing any address, email address or telephone number, including a mobile phone number, either now or in the future to Seller, Assignee, any of Assignee's affiliates or any debt collectors retained by Assignee, Buyer agrees that any of the above may contact Buyer using that address or number, including contact through calls or texts using an automatic dialing and announcing device and prerecorded calls, and that such calls are not "unsolicited" under state or federal law. Any attempted revocation of this consent to contact, if allowable by law, must be made in writing. Buyer acknowledges and agrees that CNH Capital and its third party service providers can access and use telematics data and other information regarding location, maintenance and operation of the Equipment for any lawful purpose, including without limitation, to locate and repossess the Equipment. See https://www.cnhindustrialcapital.com/en_us/Pages/Privacy.aspx for additional details. If a court finds that any part of this Agreement to be invalid or unenforceable, the remainder of this Agreement will remain in effect. All of Assignee's rights shall remain in effect after the expiration or termination of this Agreement. If more than one Buyer is named in the Agreement, the liability of each shall be joint and several. All notices required or permitted hereunder shall be in writing and shall be deemed adequate if sent to the first Buyer on page 1 of the Agreement. The captions and headings of the sections of this Agreement are for convenience only and are not to be used to interpret or define the provisions hereof. Restrictive endorsements on checks or other forms of payment that Buyer sends to Assignee will not change or reduce Buyer's obligations to Assignee. Assignee will not lose any rights if Assignee accepts late or partial payments or delays enforcing its rights under this Agreement.

**21. WAIVER OF JURY TRIAL.** EXCEPT IN GEORGIA OR CALIFORNIA OR WHERE OTHERWISE PROHIBITED BY LAW, EACH BUYER, SELLER AND CNH CAPITAL WAIVES ANY AND ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THE OBLIGATIONS, THIS AGREEMENT, OR ANY OTHER DOCUMENT CONNECTED HEREWITH, OR ANY TRANSACTION ARISING FROM OR CONNECTED TO ANY OF THE FOREGOING. EACH BUYER, SELLER AND CNH CAPITAL REPRESENTS THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY GIVEN.

**22. Electronic Contracting, Signature Acknowledgment, Future Notices.** Buyer agrees that (i) this Agreement is an electronic agreement executed by Buyer using Buyer's electronic signature or that Assignee may convert this Agreement into an electronic agreement; (ii) Buyer's electronic signature signifies Buyer's intent to enter into this Agreement and that this Agreement shall be a legally valid and enforceable Agreement in accordance with its terms to the same extent as if Buyer had executed this Agreement using Buyer's written signature and (iii) the authoritative copy of this Agreement ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by Assignee for the storage and authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the forgoing, if the Authoritative Copy is converted by printing a paper copy which is marked by Assignee as the original (the "Paper Contract"), then Buyer acknowledges and agrees that (1) your signing of this Agreement with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this Agreement, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, Buyer's duties and Obligations will be evidenced by the Paper Contract alone. By providing your e-mail address and electing to execute this Agreement electronically, Buyer agrees that all future notices, statements and communications relating to this Agreement shall be delivered to the Buyer via e-mail transmission to the e-mail address provided to Assignee by the Buyer. It is the Buyer's duty to provide any changes to Buyer's e-mail address to Assignee so that future communications can reach Buyer in a timely manner.

CNH INDUSTRIAL | CAPITAL

# ADDITIONAL SIGNATURE ADDENDUM

F%00000259745622918A0505

062160 / 2712881

In addition to the following Buyer(s) (collectively called "Buyer")

RAGUSE FAMILY PARTNERSHIP
Printed Buyer Name

Printed Buyer Name

the below are also considered a Buyer under the terms of the commercial Retail Installment Sale Contract and Security Agreement (herein the "Agreement") dated May 09, 2022 with Seller TITAN MACHINERY INC. for the purchase of the following goods (the "Equipment").

| NEW OR USED | EQUIPMENT DESCRIPTION | MODEL | SERIAL NUMBER/PIN |
|---|---|---|---|
| NEW | Case IH Speed Tiller | 475 | CWR003548 |
| | | | |
| | | | |
| | | | |
| | | | |

This Additional Signature Addendum is incorporated by reference into the Agreement. Buyer acknowledges receipt of this Agreement at the time it is executed. Each Buyer herein has received a complete copy of the Agreement, and has read fully all pages of the Agreement, and agrees to all the terms.

Executed this 09 day of May, 2022.

X [signature]
Signature of Buyer/Buyer's Representative
SUSAN EVE RAGUSE
Printed Name
Partner
Title (not for individual Buyer)

[signature]
Signature of Buyer/Buyer's Representative
DAVID DEAN RAGUSE
Printed Name
Partner
Title (not for individual Buyer)

X [signature]
Signature of Buyer/Buyer's Representative
TRUMAN RAGUSE
Printed Name
Partner
Title (not for individual Buyer)

X [signature]
Signature of Seller's Representative
TITAN MACHINERY INC.
Printed Seller Name

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

# **EXHIBIT 1-B**

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

**Filing Number: 1313726000363**
**Date: 05/13/2022**
**Time: 11:42 AM**
**STATE OF MINNESOTA**
**Office: Office of the Minnesota Secretary of State**

# UCC1 - Original Filing - UCC Financing Statement

**RETURN ACKNOWLEDGEMENT TO:**
Corporation Service Company
801 Stevenson Drive
Springfield, IL 62703

## DEBTOR INFORMATION

**ORGANIZATION'S NAME**
RAGUSE FAMILY PARTNERSHIP

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 6867 740TH ST. | Wheaton | MN | 562965504 | USA |

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDL NAME(S), INITIAL(S) |
|---|---|---|
| RAGUSE | DAVID | DEAN |

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 6867 740TH ST. | Wheaton | MN | 562965504 | USA |

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDL NAME(S), INITIAL(S) |
|---|---|---|
| RAGUSE | SUSAN | EVE |

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 6867 740TH ST | Wheaton | MN | 562965504 | USA |

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME |
|---|---|
| RAGUSE | TRUMAN |

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 6867 740 TH ST | Wheaton | MN | 562965504 | USA |

## SECURED PARTY INFORMATION

**ORGANIZATION'S NAME**
CNH Industrial Capital America LLC

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5729 Washington Avenue | Racine | WI | 53406 | USA |

## COLLATERAL

2021, Case IH, 475, Serial No.: CWR003548, Speed Tiller
SECURED CREDITOR ASSERTS A FIRST PRIORITY PURCHASE MONEY SECURITY INTEREST IN THE FOREGOING EQUIPMENT, AND INCLUDING BUT NOT LIMITED TO, ALL ITS IMPROVEMENTS, PARTS, ACCESSORIES, SUBSTITUTIONS, REPLACEMENTS, PRODUCTS, PROCEEDS, INSURANCE PROCEEDS, PREMIUM REFUNDS AND ACCESSIONS..

## ADDITIONAL INFORMATION(IF ANY)

**TRUST DESIGNATION:** No Alternative

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

**Filing Number: 1313726000363**

**ADDITIONAL FILER REFERENCE DATA:**

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

# **EXHIBIT 1-C**

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH CAPITAL

# PAYMENT SCHEDULE CHANGE AGREEMENT - RISC

2527712

Customer Number:
Contract Number:

Date: 05/30/2024

Buyer and Co-Buyer (collectively called "Buyer" request CNH Industrial Capital America LLC ("CNH Industrial Capital") to modify the payments due under a certain Retail Installment Sales Contract ("Contract"). Buyer and CNH Industrial Capital agree to modify the payments due under the Contract as provided in this Agreement. All other provisions of the Contract shall remain in full force and effect.

## INSURANCE

**A. Physical Damage Insurance.** Buyer must insure Buyer and CNH Industrial Capital against loss of and physical damage to the Property. CNH Industrial Capital will not provide or obtain insurance for the Buyer as part of this Agreement. **PHYSICAL DAMAGE INSURANCE MAY BE OBTAINED FROM A PERSON OF THE LESSEE'S CHOICE**
If the Contract includes a charge for physical damage insurance, then (check applicable box):

_ CNH Industrial Capital will cancel the insurance and apply any premium refund to the account. To replace the cancelled insurance, Buyer has obtained insurance coverage and will provide proof thereof.

_ The insurance covering the Equipment will remain in effect until . BUYER is required to obtain insurance covering the equipment after and maintain the insurance until the Agreement is paid in full.

X_ Buyer has insurance coverage and will provide proof thereof.

**B. Credit Insurance. CREDIT LIFE INSURANCE AND/OR CREDIT DISABILITY INSURANCE IS NOT REQUIRED AND IS NOT A FACTOR IN CNH INDUSTRIAL CAPITAL'S APPROVAL OF THIS AGREEMENT.** CNH Industrial Capital will not provide or obtain credit life insurance and/or credit disability insurance for the Buyer as part of this Agreement.
If the Contract includes a charge for credit life insurance and/or credit disability insurance, then (check applicable box):

X_ Buyer authorizes CNH Industrial Capital to cancel the insurance and apply any premium refund to the account.

_ The insurance will remain in place until the original maturity of the Contract, any benefits due will be paid in accordance with the original terms of the insurance policy.

| | |
|---|---|
| (1) Remaining Principal Balance | $108,132.92 |
| (2) Unpaid Interest Balance | $331.93 |
| (3) Interest Rate per Year | 5.35% |
| **If the contract contains a variable interest rate, the rate shown is the rate in effect when this agreement is executed** | |
| (4) Date interest begins Accruing | 5/9/24 |
| (5) Time Price Differential (Finance Charge) | $13,377.11 |
| (6) Time Balance to be Paid (Total (1) + (5) ) | $121,510.03 |

Buyer hereby agrees to pay to the order of CNH Industrial Capital the Time Balance (line 6) in accordance with the following schedule.

| NO. OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MMDDYYYY |
|---|---|---|---|
| 1 | ANNUAL | $10000.00 | 09/09/2024 |
| 1 | ANNUAL | $3775.12 | 12/09/2024 |
| 3 | ANNUAL | $26908.15 | 05/09/2025 |
| 1 | ANNUAL | $27010.46 | 05/09/2028 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

The payment amount may vary from the original Agreement due to a change in the payment schedule and/or insurance premiums.

**This section is intentionally left blank. No signature required.**

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

# EXHIBIT 1-D

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH CAPITAL

# PAYMENT SCHEDULE CHANGE AGREEMENT
## US - RISC

2634696

Customer Numbe[redacted]
Contract Number[redacted]

Date: 05/22/2025

Buyer and Co-Buyer (collectively called "Buyer" request CNH Industrial Capital America LLC ("CNH Industrial Capital") to modify the payments due under a certain Retail Installment Sales Contract ("Contract"). Buyer and CNH Industrial Capital agree to modify the payments due under the Contract as provided in this Agreement. All other provisions of the Contract shall remain in full force and effect.

### INSURANCE

**A. Physical Damage Insurance.** Buyer must insure Buyer and CNH Industrial Capital against loss of and physical damage to the Property. CNH Industrial Capital will not provide or obtain insurance for the Buyer as part of this Agreement. **PHYSICAL DAMAGE INSURANCE MAY BE OBTAINED FROM A PERSON OF THE LESSEE'S CHOICE**
If the Contract includes a charge for physical damage insurance, then (check applicable box):

_ CNH Industrial Capital will cancel the insurance and apply any premium refund to the account. To replace the cancelled insurance, Buyer has obtained insurance coverage and will provide proof thereof.

_ The insurance covering the Equipment will remain in effect until . BUYER is required to obtain insurance covering the equipment after  and maintain the insurance until the Agreement is paid in full.

X_ Buyer has insurance coverage and will provide proof thereof.

**B. Credit Insurance. CREDIT LIFE INSURANCE AND/OR CREDIT DISABILITY INSURANCE IS NOT REQUIRED AND IS NOT A FACTOR IN CNH INDUSTRIAL CAPITAL'S APPROVAL OF THIS AGREEMENT.** CNH Industrial Capital will not provide or obtain credit life insurance and/or credit disability insurance for the Buyer as part of this Agreement.
If the Contract includes a charge for credit life insurance and/or credit disability insurance, then (check applicable box):

X_ Buyer authorizes CNH Industrial Capital to cancel the insurance and apply any premium refund to the account.

_ The insurance will remain in place until the original maturity of the Contract, any benefits due will be paid in accordance with the original terms of the insurance policy.

| | |
|---|---|
| (1) Remaining Principal Balance | $85,984.95 |
| (2) Unpaid Interest Balance | $63.02 |
| (3) Interest Rate per Year | 5.35% |
| **If the contract contains a variable interest rate, the rate shown is the rate in effect when this agreement is executed** | |
| (4) Date interest begins Accruing | 5/9/25 |
| (5) Time Price Differential (Finance Charge) | $8,456.92 |
| (6) Time Balance to be Paid (Total (1) + (5) ) | $94,441.87 |

Buyer hereby agrees to pay to the order of CNH Industrial Capital the Time Balance (line 6) in accordance with the following schedule.

| NO. OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MMDDYYYY |
|---|---|---|---|
| 1 | ANNUAL | $13015.31 | 12/01/2025 |
| 1 | ANNUAL | $26908.15 | 05/09/2026 |
| 1 | ANNUAL | $26908.15 | 05/09/2027 |
| 1 | ANNUAL | $27610.26 | 05/09/2028 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

The payment amount may vary from the original Agreement due to a change in the payment schedule and/or insurance premiums.

**This section is intentionally left blank. No signature required.**

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

# **EXHIBIT 2-A**

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH INDUSTRIAL | CAPITAL

# RETAIL INSTALLMENT SALE CONTRACT AND SECURITY AGREEMENT
## FIXED RATE

062160 / 2728130

F%0000026341952 1004A0105

| "Buyer(s)": Legal Name(s) | Address | City | St | Zip Code |
|---|---|---|---|---|
| RAGUSE FAMILY PARTNERSHIP | 6867 740TH ST. | WHEATON | MN | 56296-5504 |

| "Seller": Legal Name | Address | City | St | Zip Code |
|---|---|---|---|---|
| TITAN MACHINERY INC. | 101 THIRD STREET EAST | HERMAN | MN | 56248 |

The undersigned Buyer(s) (collectively called "Buyer") hereby purchases from Seller and Seller hereby sells to Buyer the following goods (the "Equipment") at the Time Sale Price and the terms set forth herein. The Equipment is purchased for commercial ☐ business use ☑ agricultural use.

| NEW*/USED | EQUIPMENT DESCRIPTION | MODEL | SERIAL NUMBER/PIN | "CASH SALE PRICE" |
|---|---|---|---|---|
| NEW | Brent Grain Cart | 2096 | ~~B402060120~~ B4206 0120 | $190,000.00 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

*New Equipment is unused equipment, a rental unit or a demonstrator, not previously sold, for which the manufacturer will supply all or a portion of a new equipment warranty; this Equipment may have been manufactured in a year prior to the year of this purchase.

| TRADE-IN EQUIPMENT | MODEL | SERIAL NUMBER/PIN | ALLOWANCE | AMT. OWED | NET TRADE-IN | OWED TO (Address details Page 4) |
|---|---|---|---|---|---|---|
| J&M Grain Cart | 1501 | 2022 | $60,000.00 | $34,456.90 | $25,543.10 | CNH Capital |
| | | | | | | |
| | | | | | | |

### STATEMENT OF TRANSACTION

| | | | | |
|---|---|---|---|---|
| 1. Cash Price (Cash Sale Price) | | | 1. $ | 190,000.00 |
| 2. Cash Down Payment | $ | N/A | | |
| Net Trade-in Allowance | $ | 25,543.10 | | |
| Manufacturer's Rebate | $ | N/A | | |
| Total Down Payment | | | 2. $ | 25,543.10 |
| 3. Unpaid Balance of Cash Price (1 minus 2) | | | 3. $ | 164,456.90 |
| 4. Other Charges | | | | |
| (a) Taxes (Not in Cash Price) | $ | N/A | | |
| (b) Official Fees (Filing and Termination) | $ | 40.00 | | |
| (c) UCC Service Fee (Filing and Termination) | $ | 22.00 | | |
| (d) Administrative Fee | $ | N/A | | |
| (e) Physical Damage Insurance | $ | N/A | | |
| (f) Credit Life Insurance | $ | N/A | | |
| (g) Credit Accident & Health Insurance | $ | N/A | | |
| (h) Purchased Protection Plan | $ | N/A | | |
| (i) Other | $ | N/A | | |
| Total Other Charges | | | 4. $ | 62.00 |
| 5. Unpaid Balance (Amount Financed) (3+4) | | | 5. $ | 164,518.90 |
| 6. **FINANCE CHARGE (Time Price Differential)** | | | 6. $ | 35,404.43 |
| 7. Total of Payments (Time Balance) (5+6) | | | 7. $ | 199,923.33 |
| 8. Deferred Payment Price (Time Sale Price) (1+4+6) | | | 8. $ | 225,466.43 |

9. The Unpaid Balance (Amount Financed) shall bear a Finance Charge computed at a per annum rate [the **ANNUAL PERCENTAGE RATE ("APR")**] equal to 6.85 % (this is a ***FIXED RATE*** contract).

10. Date APR begins accruing: 08-29-2022

Buyer agrees to pay to the Seller the Time Balance as follows:

| NBR OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MM/DD/YYYY |
|---|---|---|---|
| 4 | 12 MONTHS | $ 39,984.67 | 09/01/2023 |
| 1 | 12 MONTHS | $ 39,984.65 | 09/01/2027 |

The payments have been calculated to pay in full principal and interest over the term of this Agreement using the APR in effect on the date of this Agreement, and assuming that all required payments are made in full on the scheduled due dates. The final payment due hereunder shall be recalculated to pay the Obligations in full.

Buyer hereby conveys to Seller all rights, title and interest in the Trade-in Equipment free and clear of all encumbrances except as noted above.

☐ If checked, Seller represents and warrants that the above Amt. Owed has been paid.

Buyer agrees to the terms of the above titled agreement (herein the "Agreement"). Buyer has received and examined the Equipment, which is in good operating order and condition and is as described above. Buyer acknowledges receipt of a copy of this Agreement. Buyer agrees to purchase the Equipment described above and pay the Time Balance based on the terms of this Agreement.

**NOTICE TO THE BUYER:**
1. DO NOT SIGN THIS BEFORE YOU READ THE TERMS ON THE FOUR AGREEMENT PAGES (PLUS ANY ADDENDUMS), EVEN IF OTHERWISE ADVISED.
2. DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
3. YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.
4. BUYER REPRESENTS THAT THE EQUIPMENT IS NOT BEING PURCHASED FOR FAMILY, HOUSEHOLD OR PERSONAL USE.

**ADDITIONAL PROVISIONS CONCERNING RIGHTS AND DUTIES OF THE PARTIES ON THE ADDITIONAL PAGES OF THIS AGREEMENT ARE A PART OF THIS AGREEMENT.**

| | | | |
|---|---|---|---|
| X [signature] | RAGUSE FAMILY PARTNERSHIP | Partner | 08-29-2022 |
| Signature of Buyer/Buyer's Representative | Printed Name | Title (not for an individual Buyer) | Date |
| X | | | |
| Signature of Buyer/Buyer's Representative | Printed Name | Title (not for an individual Buyer) | Date |

Dealer (hereinafter "Assignor" or "Seller") hereby assigns all of its rights, title and interest in and to the Agreement and the Equipment to CNH Industrial Capital America LLC (hereinafter "Assignee" or "CNH Capital"), under terms also described in the Retail Finance Agreement, Program Procedures, Dealer Handbook or other related documents (collectively hereinafter the "RFA") executed by the Assignor and Assignee. Seller has obtained a signed credit application for this Agreement. The Equipment has been paid in full or will be paid in full with Agreement proceeds pursuant to the terms of the RFA. Assignor waives notice of acceptance of this Assignment and notice of non-payment and non-performance of the Agreement and any other notices required by law and waives any and all setoffs and counterclaims. This Assignment shall become effective upon delivery of the Agreement to Assignee or upon Assignee's payment of the purchase price thereof, whichever occurs first.

Basis of Acceptance: ☑ Nonrecourse ☐ Repurchase ☐ Full Recourse ☐ Other

Other explanation:

| | | |
|---|---|---|
| X [signature] | TITAN MACHINERY INC. | 08-29-2022 |
| Signature of Seller's Representative | Printed Seller Name | Date |

CNH INDUSTRIAL | CAPITAL

F%000002634 1952 1004A0205

062160 / 2728130

# Agreement Provisions

1. **NO WARRANTY. THE EQUIPMENT IS SOLD AS IS AND WITH ALL FAULTS, SUBJECT TO ANY APPLICABLE MANUFACTURER'S EXPRESS, WRITTEN WARRANTY. NEITHER SELLER NOR MANUFACTURER MAKE ANY OTHER REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AND SPECIFICALLY DISCLAIM THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSES.* NEITHER SELLER NOR MANUFACTURER WILL BE LIABLE FOR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM A BREACH OF THE EXPRESS WARRANTY OR ANY IMPLIED WARRANTY IMPOSED BY LAW.***
   ***Some states do not allow these limitations and exclusions, and they shall not apply to the extent such limitations or exclusions are not allowed by applicable state law.***

2. **Prepayments.** Buyer may make a partial prepayment of the unpaid Time Balance at any time, but any partial prepayments will not change or defer Buyer's next scheduled payments. If Buyer prepays the full unpaid Time Balance on construction equipment for commercial business use, Buyer shall pay a prepayment fee of up to $150, unless such fee is prohibited by applicable law.

3. **Late Charges/Default Rate/Returned Checks.** Buyer shall pay a late charge on each payment not paid within 10 days after the due date at the highest amount, both as permitted by applicable law. Buyer shall pay interest on the unpaid balance after maturity (as scheduled, by acceleration or otherwise) at the highest rate, as permitted by applicable law. If a check is returned for any reason, Assignee may charge Buyer a returned check processing fee as established by Assignee from time to time not to exceed the maximum permitted under applicable law. Assignee may apply any payment or proceed received toward the Obligations, in its sole discretion regardless of how requested or directed.

4. **Fees.** All parties to this Agreement acknowledge and agree that some fees and charges scheduled under section 4 in the Statement of Transaction may be shared between the Seller and CNH Capital as permitted by law and may result in profit for the Seller and CNH Capital. The parties further agree that Administrative or Other Fees are reasonable consideration for credit determination, handling, review, and approval of the transaction, and are not a document preparation fee nor an official fee. CNH Capital may make UCC related filings and/or termination statements pursuant to this Agreement. CNH Capital reserves its right to assess additional fees and other charges to the Obligations including but not limited to, if fees and other charges increase or other actions are needed to protect its lien upon the Equipment. If any fees and/or other charges scheduled and/or assessed under any part of this Agreement exceed the maximum permitted by applicable law, any excess shall be applied toward a reduction of the principal balance and that shall be the sole and satisfactory remedy under this Agreement.

5. **Extensions and Refinancing.** If Assignee extends, defers or refinances any payments due under this Agreement, Assignee may, at its option, increase the APR or Time Price Differential Rate (herein collectively referred to as APR).

6. **Security Interests/Cross Collateralization.** Buyer hereby grants to Seller and its successors and assigns (including Assignee) a first priority purchase money security interest in the Equipment, and in all improvements, parts and accessories belonging to the Equipment, and all substitutions, replacements, products, proceeds (including any insurance proceeds) thereof and premium refunds, refunds of any other charges hereunder and all accessions related to the Equipment (the Equipment and such items are collectively referred to herein as the "Collateral"), to secure payment and performance of all existing and future obligations of Buyer under this Agreement or any other agreement between Buyer and Seller, between Buyer and Assignee or any affiliate of Assignee, or where Buyer, under another agreement in favor of Seller or Assignee, is a guarantor or obligor (the "Obligations"). Loss of or damage to the Equipment shall not release Buyer from any of the Obligations. Upon request, Buyer shall take any action reasonably deemed necessary by Assignee to protect and enforce Assignee's interest in the Collateral or rights under this Agreement. Assignee or Seller is authorized to examine the Collateral wherever located at any reasonable time or times. Buyer authorizes Assignee to insert in this Agreement, or amend any financing statement or title registration documentation to reflect the serial/PIN and/or model numbers of the Equipment if unknown at the time this Agreement is executed and to correct any errors in such numbers or any other errors in the description of the Equipment.

7. **Assignment.** Seller hereby assigns this Agreement, and any guarantee(s) ("Guarantee") hereof (together, "Assignment") to Assignee. Buyer acknowledges that Seller has the right to assign this Agreement and such Guarantee, that all rights and benefits but no obligations (if any) of Seller under this Agreement may be exercised by Assignee and that no obligations (if any) of Seller pass to Assignee. Buyer shall make all payments due under this Agreement directly to Assignee. This Agreement shall be binding on and inure to the benefit of Buyer, Seller and Assignee and their respective heirs, personal representatives, successors and assigns, provided however, that Buyer may not assign its interest in the Collateral, rights, nor its obligations under this Agreement to any person without Assignee's prior written consent.

8. **Notification of Change in Residence, Principal Office, or Organizational Form.** If Buyer changes (as applicable): (a) its state of principal residence; or (b) the state in which its chief executive office is located; or (c) the state in which it is organized; or (d) its form of organization (such as from an individual to a corporation); or (e) its name, as printed on a State filed registration document or individual name, as printed on a valid driver's license, then Buyer will notify Assignee in writing promptly, but in no event more than 30 days after such change.

9. **Waiver of Defenses Against Assignee; Indemnification.** Buyer will not assert against Assignee any claim or defense which Buyer may have against Seller, the manufacturer of the Equipment, or any other person. Buyer agrees that its obligation to remit payments will not be subject to, and it will not make any claim against Assignee for breach of any representation, warranty or condition with respect to the Equipment and that its obligation to pay Assignee all amounts under this Agreement is absolute and unconditional without abatement, reduction, set-off, counterclaim or interruption for any reason whatsoever, including any dispute which now or hereafter arises between Buyer and Seller or any other person. Time is of the essence. Buyer shall indemnify and hold harmless Seller, Assignee and their respective officers, directors, employees and agents from and against any damage, loss, theft or destruction of the Equipment or any part thereof, and from and against any and all loss, damages, injuries, claims, demands, costs and expenses (including without limitation reasonable attorneys' fees and expenses) of any kind and nature, arising out of or connected with this Agreement or the use, condition (including without limitation, all defects whether or not discoverable by Buyer, Seller or Assignee) or operation of the Equipment or any part thereof. Buyer shall promptly notify Seller and Assignee in writing of any loss, damage, theft, destruction, injury, claim, demand, cost or expense related to this Agreement or the Equipment of which Buyer has knowledge.

10. **Buyer's Covenants.** Buyer shall: (a) keep the Equipment in the state listed on page 1 of this Agreement and not remove the Equipment from such location, except temporarily in connection with its ordinary use or repair, unless Assignee consents in writing; (b) maintain the Equipment in good condition and repair and not permit its intended function or value to be impaired; (c) keep the Collateral free of all liens, encumbrances and security interests of all persons other than Seller and Assignee; (d) defend the Collateral against all claims and legal proceedings by persons other than Assignee; (e) pay and discharge when due all taxes, fees, levies and other charges upon the Collateral (including all personal property and ad valorem taxes); (f) pay when due all taxes arising from the purchase of the Equipment under this Agreement, excluding any taxes based upon Seller's net income; (g) use the Equipment solely in the conduct of Buyer's business; (h) ensure the Equipment will be used solely within the intended uses of the manufacturer and that manufacturer warranty remains valid; (i) not sell, lease or otherwise dispose of the Equipment nor permit the Equipment to become an accession to other goods or a fixture; and (j) not permit the Equipment to be used in violation of any law, regulation or policy of insurance; and (k) strictly follow the terms on page 1 of this Agreement; (l) perform (at Buyer's expense) all maintenance and repairs necessary to keep the Equipment in as good a condition as when delivered to Buyer, reasonable wear excepted; (m) not permit the Equipment to be used by, or to be in the possession of, anyone other than Buyer or Buyer's employees. Buyer represents and warrants that: (i) each individual executing this Agreement authorized by or on behalf of Buyer has the requisite power and authority to execute this Agreement and all related documents; (ii) Buyer is fully authorized to perform its obligations and consummate the transactions contemplated under this Agreement and related documents; (iii) the execution and delivery of this Agreement and all related documents and the consummation of the transactions under this Agreement have been duly authorized by Buyer; and (iv) this Agreement and all related documents constitute valid and legally binding obligations of Buyer, enforceable against Buyer in accordance with their respective terms.

# Agreement Provisions

11. **Insurance.** Buyer shall keep Assignee's interests in the Equipment insured against fire, theft, physical damage and other hazards under policies listing Assignee as Lender's loss payee or as an additional insured, with such provisions, for such amounts (but not less than the unpaid balance outstanding under this Agreement) and by such insurers and terms as shall be satisfactory to Assignee from time to time, and shall furnish to Assignee evidence of such insurance satisfactory to Assignee. Such insurance shall provide at least 30 days' written notice of cancellation, lapse or expiration to Assignee. Buyer assigns (and directs any insurer to pay) to Assignee Buyer's interest in the proceeds of any and all insurance related to the Equipment and any premium refund, and Assignee may, at its option, apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to repair or restore the Equipment. Buyer must make all payments due under this Agreement whether or not the Equipment is insured or underinsured. Assignee is authorized, in the name of Buyer or otherwise, to make, adjust and/or settle claims under any insurance on the Equipment, or cancel the same after the occurrence of an event of default, or set off amounts owed Assignee against any rebates, credits or refunds due Buyer and/or any guarantor. If Buyer purchased physical damage insurance that is financed under this Agreement, Buyer hereby requests and authorizes Seller (provided Seller is properly licensed to do so) or its designee: (a) to arrange physical damage insurance for the benefit of Seller or Assignee and Buyer that covers physical damage to the Equipment; (b) to replace or otherwise modify such insurance as Seller deems appropriate; and (c) to be Buyer's attorney-in-fact to make claim for, receive payment of and execute, endorse and negotiate all documents, checks or drafts received in payment of loss, damage or premium refunds under any insurance. This Agreement includes and hereby incorporates by reference any Insurance Addendum signed in connection with this Agreement.

    STATEMENT TO BUYER: THE PHYSICAL DAMAGE INSURANCE PURCHASED UNDER THE TERMS OF THIS AGREEMENT COVERS ONLY LOSS OF OR DAMAGE TO THE EQUIPMENT. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED AS PART OF THE PHYSICAL DAMAGE INSURANCE. BUYER UNDERSTANDS THAT IF INSURANCE IS FINANCED UNDER THIS AGREEMENT, PREPAYMENT OF BUYER'S OBLIGATIONS OR TERMINATION OF THIS AGREEMENT WILL RESULT IN CANCELLATION OF INSURANCE COVERAGE, UNLESS OTHERWISE EXPLICITLY AGREED TO IN WRITING BY ASSIGNEE.

12. **Modifications and Waivers.** This Agreement sets forth the entire understanding among Seller, Assignee and Buyer. No modification, amendment or extension of this Agreement and no waiver of any provision of this Agreement shall be valid unless in writing and signed by the parties and a waiver of any default hereunder by Assignee shall not constitute a waiver of any other prior or subsequent default, except that Buyer authorizes Assignee to insert in this Agreement the serial number/PIN and/or model number of any Equipment if this information is unknown when this Agreement is executed or to correct any errors in such numbers or any other patent errors in the description of the Equipment.

13. **Authority of Assignee to Perform for Buyer.** If Buyer fails to perform any of Buyer's duties set forth in this Agreement (including, without limitation, the purchase of insurance), Assignee may at its option, in Buyer's name or otherwise, take any such action, including, without limitation, signing Buyer's name or paying any amount so required, and all costs and expenses incurred by Assignee in connection therewith shall form part of the Obligations and shall be payable by Buyer upon demand with interest from the date of payment by Assignee at the highest rate permitted by applicable law.

14. **Default/Cross Default.** Buyer shall be in default under this Agreement, and any other agreement with or assigned to Assignee, if any of the following occurs (each, an "event of default"): (a) Buyer fails to pay when due any of the Obligations, or to perform any covenant or other obligation of Buyer under this Agreement or any other agreement with or assigned to Assignee; (b) Buyer or any guarantor dies, ceases to exist, becomes insolvent or the subject of bankruptcy, insolvency or liquidation proceedings, attempts to or does assign this Agreement or attempts to or does remove, sell, transfer, further encumber, part with possession of or sublet any Equipment; (c) any warranty or representation made by Buyer or any guarantor to induce Seller or Assignee to extend credit to Buyer, under this Agreement or otherwise, is false in any material respect when made; (d) Buyer fails to maintain insurance required hereunder or fails to comply with the requirements of any such insurance; (e) any other event occurs that causes Assignee, in good faith, to consider that payment or performance of the Obligations is impaired or that the Equipment is at risk; (f) the Equipment is impounded or confiscated by any federal, state or local governmental authority; (g) Buyer fails to produce Collateral for inspection within 10 days, upon demand; or (h) Buyer breaches any of the other terms of this Agreement or any other agreement with or assigned to Assignee.

15. **Expenses.** To the extent not prohibited by law, Buyer shall reimburse Seller or Assignee for any expense incurred by Seller or Assignee in protecting, defending or enforcing their rights under this Agreement, including, without limitation, reasonable attorneys' fees and legal expenses and all expenses of taking possession, transporting, holding, repairing, refurbishing, preparing for disposition and disposing of the Collateral, and all expenses and costs incurred in collecting the Obligations, including collection agency fees based on a maximum of 25% of the Obligations, and all shall be part of the Obligations.

16. **Conflict with Law.** Any provision of this Agreement prohibited by applicable law shall be ineffective to the extent of the prohibition without invalidating the remaining portions of this Agreement. The validity, construction and enforcement of this Agreement shall be governed by the laws of the State of the Seller (without regard to conflict of law principles of such State). All terms not otherwise defined have the meanings assigned to them by the applicable Uniform Commercial Code.

17. **Authorization to Execute and File Financing Statements and Lien Documents.** Buyer hereby authorizes Assignee or its designee to execute and file financing statements, and any motor vehicle title, registration and lien notification documentation, and any amendments thereto, on behalf and in the name of Buyer to evidence the security interest in the Collateral granted pursuant to this Agreement. Buyer hereby irrevocably appoints Assignee or its designee as Buyer's agent and attorney-in-fact to sign such instruments on Buyer's behalf and to file them.

18. **Time Price Calculations.** If this is a variable rate contract, the Prime Rate for a given calendar month shall be the rate designated as the "Prime Rate" published in The Wall Street Journal on the twentieth day of the prior calendar month (or on the next day published if not published on the twentieth day). If The Wall Street Journal ceases publication permanently or no longer publishes a "Prime Rate", the Prime Rate shall mean the prime loan rate of any federally chartered bank selected by Assignee. For all contracts the APR shall never be less than 0%. APR shall be calculated using a daily rate determined by dividing the annual rate by 365. Buyer shall make all payments in lawful money of the United States of America.

19. **Remedies.** Upon the occurrence of any event of default, Seller or Assignee shall have all rights and remedies provided by the Uniform Commercial Code or any other applicable law and Seller or Assignee may, except where prohibited by law, at its option: (i) declare all Obligations immediately due and payable without notice or demand; (ii) enter onto any premises where the Collateral may be located, take possession of all Collateral, without notice or hearing, and, Buyer or any guarantor, also expressly waives any right to notice or a prior hearing or to require Assignee to post any bond; (iii) render the Equipment unusable; (iv) require Buyer to assemble all Collateral and make it available to Assignee at any convenient place designated by Assignee within 10 days after notice from Assignee; (v) sell (including at wholesale) or otherwise dispose of all Collateral at public or private sale for cash or on credit terms, without notice; and if notice is required by law, ten (10) days' notice to Buyer shall be deemed reasonable notice; and/or (vi) obtain a consumer credit bureau upon any Buyer or any guarantor. All rights and remedies may be exercised by Seller or Assignee either separately or in combination and any action taken by Assignee to recover payment from Buyer of the Obligations shall not limit Assignee's rights with respect to all Collateral. Assignee may apply all proceeds of realization of the Collateral to such part or parts of the Obligations as Assignee may decide. If there is a deficiency, Buyer will pay the amount of the deficiency upon demand. Buyer waives notice of dishonor, presentment and demand as to this Agreement.

CNH INDUSTRIAL | CAPITAL

F%000002634 1952 1004A0405

062160 / 2728130

## Agreement Provisions

20. **Miscellaneous.** In the event that this contract is determined by a court of competent jurisdiction to be characterized as a loan or forbearance agreement, and not a sale, despite the terms and conditions found in this contract, then all parties agree that any interest charges computed and assessed in this contract that are in excess of the maximum allowed interest charges allowed by law shall be applied as a reduction to the principal balance owed on this contract only, and this shall be the agreed upon and satisfactory remedy to all parties. By providing any address, email address or telephone number, including a mobile phone number, either now or in the future to Seller, Assignee, any of Assignee's affiliates or any debt collectors retained by Assignee, Buyer agrees that any of the above may contact Buyer using that address or number, including contact through calls or texts using an automatic dialing and announcing device and prerecorded calls, and that such calls are not "unsolicited" under state or federal law. Any attempted revocation of this consent to contact, if allowable by law, must be made in writing. Buyer acknowledges and agrees that CNH Capital and its third party service providers can access and use telematics data and other information regarding location, maintenance and operation of the Equipment for any lawful purpose, including without limitation, to locate and repossess the Equipment. See https://www.cnhindustrialcapital.com/en_us/Pages/Privacy.aspx for additional details. If a court finds that any part of this Agreement to be invalid or unenforceable, the remainder of this Agreement will remain in effect. All of Assignee's rights shall remain in effect after the expiration or termination of this Agreement. If more than one Buyer is named in the Agreement, the liability of each shall be joint and several. All notices required or permitted hereunder shall be in writing and shall be deemed adequate if sent to the first Buyer on page 1 of the Agreement. The captions and headings of the sections of this Agreement are for convenience only and are not to be used to interpret or define the provisions hereof. Restrictive endorsements on checks or other forms of payment that Buyer sends to Assignee will not change or reduce Buyer's obligations to Assignee. Assignee will not lose any rights if Assignee accepts late or partial payments or delays enforcing its rights under this Agreement.

21. **WAIVER OF JURY TRIAL.** EXCEPT IN GEORGIA OR CALIFORNIA OR WHERE OTHERWISE PROHIBITED BY LAW, EACH BUYER, SELLER AND CNH CAPITAL WAIVES ANY AND ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THE OBLIGATIONS, THIS AGREEMENT, OR ANY OTHER DOCUMENT CONNECTED HEREWITH, OR ANY TRANSACTION ARISING FROM OR CONNECTED TO ANY OF THE FOREGOING. EACH BUYER, SELLER AND CNH CAPITAL REPRESENTS THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY GIVEN.

22. **Electronic Contracting, Signature Acknowledgment, Future Notices.** Buyer agrees that (i) this Agreement is an electronic agreement executed by Buyer using Buyer's electronic signature or that Assignee may convert this Agreement into an electronic agreement; (ii) Buyer's electronic signature signifies Buyer's intent to enter into this Agreement and that this Agreement shall be a legally valid and enforceable Agreement in accordance with its terms to the same extent as if Buyer had executed this Agreement using Buyer's written signature and (iii) the authoritative copy of this Agreement ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by Assignee for the storage and authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the forgoing, if the Authoritative Copy is converted by printing a paper copy which is marked by Assignee as the original (the "Paper Contract"), then Buyer acknowledges and agrees that (1) your signing of this Agreement with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this Agreement, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, Buyer's duties and Obligations will be evidenced by the Paper Contract alone. By providing your e-mail address and electing to execute this Agreement electronically, Buyer agrees that all future notices, statements and communications relating to this Agreement shall be delivered to the Buyer via e-mail transmission to the e-mail address provided to Assignee by the Buyer. It is the Buyer's duty to provide any changes to Buyer's e-mail address to Assignee so that future communications can reach Buyer in a timely manner.

**OWED TO** details from Trade-In Equipment Section (Address will not print for CNH Capital payoffs)

| SERIAL NUMBER/PIN | PAYOFF DATE | ADDRESS | CITY | STATE | ZIP | PHONE |
|---|---|---|---|---|---|---|
| 2022 | 08-31-2022 | | | | | |

Filed in District Court
State of Minnesota
4/23/2026 3:45 PM

CNH INDUSTRIAL | CAPITAL

# ADDITIONAL SIGNATURE ADDENDUM

F%00000263419522918A0505

062160 / 2728130

In addition to the following Buyer(s) (collectively called "Buyer")

RAGUSE FAMILY PARTNERSHIP
Printed Buyer Name

Printed Buyer Name

the below are also considered a Buyer under the terms of the commercial Retail Installment Sale Contract and Security Agreement (herein the "Agreement") dated August 29, 2022 with Seller TITAN MACHINERY INC. for the purchase of the following goods (the "Equipment").

| NEW OR USED | EQUIPMENT DESCRIPTION | MODEL | SERIAL NUMBER/PIN |
|---|---|---|---|
| NEW | Brent Grain Cart | 2096 | ~~B402060120~~ B42060120 |
| | | | |
| | | | |
| | | | |
| | | | |

This Additional Signature Addendum is incorporated by reference into the Agreement. Buyer acknowledges receipt of this Agreement at the time it is executed. Each Buyer herein has received a complete copy of the Agreement, and has read fully all pages of the Agreement, and agrees to all the terms.

Executed this 29 day of August, 2022.

| Signature of Buyer/Buyer's Representative | Printed Name | Title (not for individual Buyer) |
|---|---|---|
| X [signature] | SUSAN EVE RAGUSE | Partner |
| X [signature] | DAVID DEAN RAGUSE | Partner |
| X [signature] | TRUMAN RAGUSE | Partner |

X [signature]
Signature of Seller's Representative

TITAN MACHINERY INC.
Printed Seller Name

# EXHIBIT 2-B

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

**Filing Number: 1332159800055**
**Date: 09/07/2022**
**Time: 7:09 AM**
**STATE OF MINNESOTA**
**Office: Office of the Minnesota Secretary of State**

# UCC1 - Original Filing - UCC Financing Statement

**RETURN ACKNOWLEDGEMENT TO:**
Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703
USA

**FILER CONTACT INFORMATION:**
Corporation Service Company
1-800-858-5294
SPRFiling@cscglobal.com

## DEBTOR INFORMATION

**ORGANIZATION'S NAME**
RAGUSE FAMILY PARTNERSHIP

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 6867 740TH ST. | Wheaton | MN | 56296 | USA |

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDL NAME(S), INITIAL(S) |
|---|---|---|
| RAGUSE | DAVID | DEAN |

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 6867 740TH ST. | Wheaton | MN | 56296 | USA |

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDL NAME(S), INITIAL(S) |
|---|---|---|
| RAGUSE | SUSAN | EVE |

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 6867 740TH ST | Wheaton | MN | 56296 | USA |

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME |
|---|---|
| RAGUSE | TRUMAN |

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 6867 740 TH ST | Wheaton | MN | 56296 | USA |

## SECURED PARTY INFORMATION

**ORGANIZATION'S NAME**
CNH Industrial Capital America LLC

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5729 Washington Avenue | Racine | WI | 53406 | USA |

## COLLATERAL

2022, Brent, 2096, Serial No.: B42060120, Grain Cart
SECURED CREDITOR ASSERTS A FIRST PRIORITY PURCHASE MONEY SECURITY INTEREST IN THE FOREGOING EQUIPMENT, AND INCLUDING BUT NOT LIMITED TO, ALL ITS IMPROVEMENTS, PARTS, ACCESSORIES, SUBSTITUTIONS, REPLACEMENTS, PRODUCTS, PROCEEDS, INSURANCE PROCEEDS, PREMIUM REFUNDS AND ACCESSIONS..

## ADDITIONAL INFORMATION(IF ANY)

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

**Filing Number: 1332159800055**

**TRUST DESIGNATION:** No Alternative

**ADDITIONAL FILER REFERENCE DATA:**
2390 25847

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

# EXHIBIT 2-C

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH CAPITAL

# PAYMENT SCHEDULE CHANGE AGREEMENT
## US - RISC

2527722

Customer Number:
Contract Number:

Date: 05/30/2024

Buyer and Co-Buyer (collectively called "Buyer" request CNH Industrial Capital America LLC ("CNH Industrial Capital") to modify the payments due under a certain Retail Installment Sales Contract ("Contract"). Buyer and CNH Industrial Capital agree to modify the payments due under the Contract as provided in this Agreement. All other provisions of the Contract shall remain in full force and effect.

### INSURANCE

**A. Physical Damage Insurance.** Buyer must insure Buyer and CNH Industrial Capital against loss of and physical damage to the Property. CNH Industrial Capital will not provide or obtain insurance for the Buyer as part of this Agreement. **PHYSICAL DAMAGE INSURANCE MAY BE OBTAINED FROM A PERSON OF THE LESSEE'S CHOICE**
If the Contract includes a charge for physical damage insurance, then (check applicable box):

_ CNH Industrial Capital will cancel the insurance and apply any premium refund to the account. To replace the cancelled insurance, Buyer has obtained insurance coverage and will provide proof thereof.

_ The insurance covering the Equipment will remain in effect until . BUYER is required to obtain insurance covering the equipment after and maintain the insurance until the Agreement is paid in full.

X_ Buyer has insurance coverage and will provide proof thereof.

**B. Credit Insurance. CREDIT LIFE INSURANCE AND/OR CREDIT DISABILITY INSURANCE IS NOT REQUIRED AND IS NOT A FACTOR IN CNH INDUSTRIAL CAPITAL'S APPROVAL OF THIS AGREEMENT.** CNH Industrial Capital will not provide or obtain credit life insurance and/or credit disability insurance for the Buyer as part of this Agreement.
If the Contract includes a charge for credit life insurance and/or credit disability insurance, then (check applicable box):

X_ Buyer authorizes CNH Industrial Capital to cancel the insurance and apply any premium refund to the account.

_ The insurance will remain in place until the original maturity of the Contract, any benefits due will be paid in accordance with the original terms of the insurance policy.

| | |
|---|---|
| (1) Remaining Principal Balance | $137,700.04 |
| (2) Unpaid Interest Balance | $902.01 |
| (3) Interest Rate per Year | 6.85% |
| **If the contract contains a variable interest rate, the rate shown is the rate in effect when this agreement is executed** | |
| (4) Date interest begins Accruing | 4/25/24 |
| (5) Time Price Differential (Finance Charge) | $18,661.20 |
| (6) Time Balance to be Paid (Total (1) + (5) ) | $156,361.24 |

Buyer hereby agrees to pay to the order of CNH Industrial Capital the Time Balance (line 6) in accordance with the following schedule.

| NO. OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MMDDYYYY |
|---|---|---|---|
| 1 | ANNUAL | $10000.00 | 09/01/2024 |
| 1 | ANNUAL | $25913.29 | 12/01/2024 |
| 2 | ANNUAL | $39984.67 | 09/01/2025 |
| 1 | ANNUAL | $40478.61 | 09/01/2027 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

The payment amount may vary from the original Agreement due to a change in the payment schedule and/or insurance premiums.

**This section is intentionally left blank. No signature required.**

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

# EXHIBIT 2-D

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH CAPITAL

# PAYMENT SCHEDULE CHANGE AGREEMENT
## US - RISC

2634712

Customer Numbe[redacted]
Contract Number:[redacted]

Date: 05/22/2025

Buyer and Co-Buyer (collectively called "Buyer" request CNH Industrial Capital America LLC ("CNH Industrial Capital") to modify the payments due under a certain Retail Installment Sales Contract ("Contract"). Buyer and CNH Industrial Capital agree to modify the payments due under the Contract as provided in this Agreement. All other provisions of the Contract shall remain in full force and effect.

### INSURANCE

**A. Physical Damage Insurance.** Buyer must insure Buyer and CNH Industrial Capital against loss of and physical damage to the Property. CNH Industrial Capital will not provide or obtain insurance for the Buyer as part of this Agreement. **PHYSICAL DAMAGE INSURANCE MAY BE OBTAINED FROM A PERSON OF THE LESSEE'S CHOICE**
If the Contract includes a charge for physical damage insurance, then (check applicable box):

_ CNH Industrial Capital will cancel the insurance and apply any premium refund to the account. To replace the cancelled insurance, Buyer has obtained insurance coverage and will provide proof thereof.

_ The insurance covering the Equipment will remain in effect until . BUYER is required to obtain insurance covering the equipment after and maintain the insurance until the Agreement is paid in full.

X_ Buyer has insurance coverage and will provide proof thereof.

**B. Credit Insurance. CREDIT LIFE INSURANCE AND/OR CREDIT DISABILITY INSURANCE IS NOT REQUIRED AND IS NOT A FACTOR IN CNH INDUSTRIAL CAPITAL'S APPROVAL OF THIS AGREEMENT.** CNH Industrial Capital will not provide or obtain credit life insurance and/or credit disability insurance for the Buyer as part of this Agreement.
If the Contract includes a charge for credit life insurance and/or credit disability insurance, then (check applicable box):

X_ Buyer authorizes CNH Industrial Capital to cancel the insurance and apply any premium refund to the account.

_ The insurance will remain in place until the original maturity of the Contract, any benefits due will be paid in accordance with the original terms of the insurance policy.

| | |
|---|---|
| (1) Remaining Principal Balance | $90,987.61 |
| (2) Unpaid Interest Balance | $85.38 |
| (3) Interest Rate per Year | 6.85% |
| **If the contract contains a variable interest rate, the rate shown is the rate in effect when this agreement is executed** | |
| (4) Date interest begins Accruing | 5/9/25 |
| (5) Time Price Differential (Finance Charge) | $9,976.85 |
| (6) Time Balance to be Paid (Total (1) + (5) ) | $100,964.46 |

Buyer hereby agrees to pay to the order of CNH Industrial Capital the Time Balance (line 6) in accordance with the following schedule.

| NO. OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MMDDYYYY |
|---|---|---|---|
| 1 | ANNUAL | $19992.33 | 12/01/2025 |
| 1 | ANNUAL | $39984.67 | 09/01/2026 |
| 1 | ANNUAL | $40987.46 | 09/01/2027 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

The payment amount may vary from the original Agreement due to a change in the payment schedule and/or insurance premiums.

**This section is intentionally left blank. No signature required.**

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

# EXHIBIT 3-A

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH INDUSTRIAL | CAPITAL

# RETAIL INSTALLMENT SALE CONTRACT AND SECURITY AGREEMENT
## SPLIT RATE

062160 / 2763255

F%000002782555210004A0105

| "Buyer(s)": Legal Name(s) | Address | City | St | Zip Code |
|---|---|---|---|---|
| RAGUSE FAMILY PARTNERSHIP | 6867 740TH ST. | WHEATON | MN | 56296-5504 |

| "Seller": Legal Name | Address | City | St | Zip Code |
|---|---|---|---|---|
| TITAN MACHINERY INC. | 101 THIRD STREET EAST | HERMAN | MN | 56248 |

The undersigned Buyer(s) (collectively called "Buyer") hereby purchases from Seller and Seller hereby sells to Buyer the following goods (the "Equipment") at the Time Sale Price and the terms set forth herein. The Equipment is purchased for commercial ☐ business use ☑ agricultural use.

| NEW*/USED | EQUIPMENT DESCRIPTION | MODEL | SERIAL NUMBER/PIN | "CASH SALE PRICE" |
|---|---|---|---|---|
| NEW | Case IH Combine | 9250 AF COMB | HAJF9N4MEPG253708 | $645,000.00 |
| USED | Universal Trailer | TE 100 | IDADLDO36M020355 | $42,000.00 |
| | | | | |
| | | | | |
| | | | | |

*New Equipment is unused equipment, a rental unit or a demonstrator, not previously sold, for which the manufacturer will supply all or a portion of a new equipment warranty; this Equipment may have been manufactured in a year prior to the year of this purchase.

| TRADE-IN EQUIPMENT | MODEL | SERIAL NUMBER/PIN | ALLOWANCE | AMT. OWED | NET TRADE-IN | OWED TO (Address details Page 4) |
|---|---|---|---|---|---|---|
| Claas Combine | 740tt | C7800536 | $260,000.00 | $163,500.00 | $96,500.00 | TitanMachinery |
| | | | | | | |
| | | | | | | |

### STATEMENT OF TRANSACTION

1. Cash Price (Cash Sale Price) — 1. $ 687,000.00
2. Cash Down Payment $ N/A
   - Net Trade-in Allowance $ 96,500.00
   - Manufacturer's Rebate $ N/A
   - Total Down Payment — 2. $ 96,500.00
3. Unpaid Balance of Cash Price (1 minus 2) — 3. $ 590,500.00
4. Other Charges
   - (a) Taxes (Not in Cash Price) $ N/A
   - (b) Official Fees (Filing and Termination) $ 40.00
   - (c) UCC Service Fee (Filing and Termination) $ 22.00
   - (d) Administrative Fee $ N/A
   - (e) Physical Damage Insurance $ N/A
   - (f) Credit Life Insurance $ N/A
   - (g) Credit Accident & Health Insurance $ N/A
   - (h) Purchased Protection Plan $ N/A
   - (i) Other ________ $ N/A
   - Total Other Charges — 4. $ 62.00
5. Unpaid Balance (Amount Financed) (3+4) — 5. $ 590,562.00
6. **INTEREST CHARGE** — 6. $ 108,410.30
7. Total of Payments (Time Balance) (5+6) — 7. $ 698,972.30
8. Deferred Payment Price (Time Sale Price) (1+4+6) — 8. $ 795,472.30
9. The Unpaid Balance shall bear an Interest Charge computed at a per annum rate [the **INTEREST RATE**] equal to 1.90 % from the date the Interest Rate begins accruing (see item 10, below) through and including 09 / 21 / 2024;
   8.10 % from 09 / 22 / 2024 through and including 09 / 22 / 2028
   ____ % from __ / __ / ____ through and including __ / __ / ____
   ____ % from __ / __ / ____ through and including __ / __ / ____
   ____ % from __ / __ / ____ through and including the date the Time Balance is paid in full (this is a ***SPLIT RATE*** contract).
10. Date Interest Rate begins accruing: 2023-09-22

Buyer agrees to pay to the Seller the Time Balance as follows:

| NBR OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MM/DD/YYYY |
|---|---|---|---|
| 4 | 12 MONTHS | $ 139,794.45 | 09/22/2024 |
| 1 | 12 MONTHS | $ 139,794.50 | 09/22/2028 |

The payments have been calculated to pay in full principal and interest over the term of this Agreement using the Interest Rate in effect on the date of this Agreement, and assuming that all required payments are made in full on the scheduled due dates. The final payment due hereunder shall be recalculated to pay the Obligations in full.

Buyer hereby conveys to Seller all rights, title and interest in the Trade-in Equipment free and clear of all encumbrances except as noted above.

☑ If checked, Seller represents and warrants that the above Amt. Owed has been paid.

Buyer agrees to the terms of the above titled agreement (herein the "Agreement"). Buyer has received and examined the Equipment, which is in good operating order and condition and is as described above. Buyer acknowledges receipt of a copy of this Agreement. Buyer agrees to purchase the Equipment described above and pay the Time Balance based on the terms of this Agreement.

**NOTICE TO THE BUYER:**
1. DO NOT SIGN THIS BEFORE YOU READ THE TERMS ON THE FOUR AGREEMENT PAGES (PLUS ANY ADDENDUMS), EVEN IF OTHERWISE ADVISED.
2. DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
3. YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.
4. BUYER REPRESENTS THAT THE EQUIPMENT IS NOT BEING PURCHASED FOR FAMILY, HOUSEHOLD OR PERSONAL USE.

**ADDITIONAL PROVISIONS CONCERNING RIGHTS AND DUTIES OF THE PARTIES ON THE ADDITIONAL PAGES OF THIS AGREEMENT ARE A PART OF THIS AGREEMENT.**

| Signature of Buyer/Buyer's Representative | Printed Name | Title (not for an individual Buyer) | Date |
|---|---|---|---|
| X [signature] G.P. | RAGUSE FAMILY PARTNERSHIP | Partner | 09-22-2023 |
| X | | | |

Dealer (hereinafter "Assignor" or "Seller") hereby assigns all of its rights, title and interest in and to the Agreement and the Equipment to CNH Industrial Capital America LLC (hereinafter "Assignee" or "CNH Capital"), under terms also described in the Retail Finance Agreement, Program Procedures, Dealer Handbook or other related documents (collectively hereinafter the "RFA") executed by the Assignor and Assignee. Seller has obtained a signed credit application for this Agreement. The Equipment has been paid in full or will be paid in full with Agreement proceeds pursuant to the terms of the RFA. Assignor waives notice of acceptance of this Assignment and notice of non-payment and non-performance of the Agreement and any other notices required by law and waives any and all setoffs and counterclaims. This Assignment shall become effective upon delivery of the Agreement to Assignee or upon Assignee's payment of the purchase price thereof, whichever occurs first.

Basis of Acceptance: ☑ Nonrecourse ☐ Repurchase ☐ Full Recourse ☐ Other

Other explanation:

| Signature of Seller's Representative | Printed Seller Name | Date |
|---|---|---|
| X [signature] | TITAN MACHINERY INC. | 09-22-2023 |

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH INDUSTRIAL | CAPITAL

F%0000027825552 1004A0205

062160 / 2763255

# Agreement Provisions

1. **NO WARRANTY. THE EQUIPMENT IS SOLD AS IS AND WITH ALL FAULTS, SUBJECT TO ANY APPLICABLE MANUFACTURER'S EXPRESS, WRITTEN WARRANTY. NEITHER SELLER NOR MANUFACTURER MAKE ANY OTHER REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AND SPECIFICALLY DISCLAIM THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSES.* NEITHER SELLER NOR MANUFACTURER WILL BE LIABLE FOR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM A BREACH OF THE EXPRESS WARRANTY OR ANY IMPLIED WARRANTY IMPOSED BY LAW.***

   ***Some states do not allow these limitations and exclusions, and they shall not apply to the extent such limitations or exclusions are not allowed by applicable state law.***

2. **Prepayments.** Buyer may make a partial prepayment of the unpaid Time Balance at any time, but any partial prepayments will not change or defer Buyer's next scheduled payments.

3. **Late Charges/Default Rate/Returned Checks.** Buyer shall pay a late charge on each payment not paid within 10 days after the due date at the highest amount, both as permitted by applicable law. Buyer shall pay interest on the unpaid balance after maturity (as scheduled, by acceleration or otherwise) at the highest rate, as permitted by applicable law. If a check is returned for any reason, Assignee may charge Buyer a returned check processing fee as established by Assignee from time to time not to exceed the maximum permitted under applicable law. Assignee may apply any payment or proceed received toward the Obligations, in its sole discretion regardless of how requested or directed.

4. **Fees.** All parties to this Agreement acknowledge and agree that some fees and charges scheduled under section 4 in the Statement of Transaction may be shared between the Seller and CNH Capital as permitted by law and may result in profit for the Seller and CNH Capital. The parties further agree that Administrative or Other Fees are reasonable consideration for credit determination, handling, review, and approval of the transaction, and are not a document preparation fee nor an official fee. CNH Capital may make UCC related filings and/or termination statements pursuant to this Agreement. CNH Capital reserves its right to assess additional fees and other charges to the Obligations including but not limited to, if fees and other charges increase or other actions are needed to protect its lien upon the Equipment. If any fees and/or other charges scheduled and/or assessed under any part of this Agreement exceed the maximum permitted by applicable law, any excess shall be applied toward a reduction of the principal balance and that shall be the sole and satisfactory remedy under this Agreement.

5. **Extensions and Refinancing.** If Assignee extends, defers or refinances any payments due under this Agreement, Assignee may, at its option, increase the Interest Rate or Interest Charge (herein collectively referred to as the Interest Rate).

6. **Security Interests/Cross Collateralization.** Buyer hereby grants to Seller and its successors and assigns (including Assignee) a first priority purchase money security interest in the Equipment, and in all improvements, parts and accessories belonging to the Equipment, and all substitutions, replacements, products, proceeds (including any insurance proceeds) thereof and premium refunds, refunds of any other charges hereunder and all accessions related to the Equipment (the Equipment and such items are collectively referred to herein as the "Collateral"), to secure payment and performance of all existing and future obligations of Buyer under this Agreement or any other agreement between Buyer and Seller, between Buyer and Assignee or any affiliate of Assignee, or where Buyer, under another agreement in favor of Seller or Assignee, is a guarantor or obligor (the "Obligations"). Loss of or damage to the Equipment shall not release Buyer from any of the Obligations. Upon request, Buyer shall take any action reasonably deemed necessary by Assignee to protect and enforce Assignee's interest in the Collateral or rights under this Agreement. Assignee or Seller is authorized to examine the Collateral wherever located at any reasonable time or times. Buyer authorizes Assignee to insert in this Agreement, or amend any financing statement or title registration documentation to reflect the serial/PIN and/or model numbers of the Equipment if unknown at the time this Agreement is executed and to correct any errors in such numbers or any other errors in the description of the Equipment.

7. **Assignment.** Seller hereby assigns this Agreement, and any guarantee(s) ("Guarantee") hereof (together, "Assignment") to Assignee. Buyer acknowledges that Seller has the right to assign this Agreement and such Guarantee, that all rights and benefits but no obligations (if any) of Seller under this Agreement may be exercised by Assignee and that no obligations (if any) of Seller pass to Assignee. Buyer shall make all payments due under this Agreement directly to Assignee. This Agreement shall be binding on and inure to the benefit of Buyer, Seller and Assignee and their respective heirs, personal representatives, successors and assigns, provided however, that Buyer may not assign its interest in the Collateral, rights, nor its obligations under this Agreement to any person without Assignee's prior written consent. CNH Capital may pay a fee to the Assignor as consideration for the Assignor's assignment of this Agreement to CNH Capital.

8. **Notification of Change in Residence, Principal Office, or Organizational Form.** If Buyer changes (as applicable): (a) its state of principal residence; or (b) the state in which its chief executive office is located; or (c) the state in which it is organized; or (d) its form of organization (such as from an individual to a corporation); or (e) its name, as printed on a State filed registration document or individual name, as printed on a valid driver's license, then Buyer will notify Assignee in writing promptly, but in no event more than 30 days after such change.

9. **Waiver of Defenses Against Assignee; Indemnification.** Buyer will not assert against Assignee any claim or defense which Buyer may have against Seller, the manufacturer of the Equipment, or any other person. Buyer agrees that its obligation to remit payments will not be subject to, and it will not make any claim against Assignee for breach of any representation, warranty or condition with respect to the Equipment and that its obligation to pay Assignee all amounts under this Agreement is absolute and unconditional without abatement, reduction, set-off, counterclaim or interruption for any reason whatsoever, including any dispute which now or hereafter arises between Buyer and Seller or any other person. Time is of the essence. Buyer shall indemnify and hold harmless Seller, Assignee and their respective officers, directors, employees and agents from and against any damage, loss, theft or destruction of the Equipment or any part thereof, and from and against any and all loss, damages, injuries, claims, demands, costs and expenses (including without limitation reasonable attorneys' fees and expenses) of any kind and nature, arising out of or connected with this Agreement or the use, condition (including without limitation, all defects whether or not discoverable by Buyer, Seller or Assignee) or operation of the Equipment or any part thereof. Buyer shall promptly notify Seller and Assignee in writing of any loss, damage, theft, destruction, injury, claim, demand, cost or expense related to this Agreement or the Equipment of which Buyer has knowledge.

10. **Buyer's Covenants.** Buyer shall: (a) keep the Equipment in the state listed on page 1 of this Agreement and not remove the Equipment from such location, except temporarily in connection with its ordinary use or repair, unless Assignee consents in writing; (b) maintain the Equipment in good condition and repair and not permit its intended function or value to be impaired; (c) keep the Collateral free of all liens, encumbrances and security interests of all persons other than Seller and Assignee; (d) defend the Collateral against all claims and legal proceedings by persons other than Assignee; (e) pay and discharge when due all taxes, fees, levies and other charges upon the Collateral (including all personal property and ad valorem taxes); (f) pay when due all taxes arising from the purchase of the Equipment under this Agreement, excluding any taxes based upon Seller's net income; (g) use the Equipment solely in the conduct of Buyer's business; (h) ensure the Equipment will be used solely within the intended uses of the manufacturer and that manufacturer warranty remains valid; (i) not sell, lease or otherwise dispose of the Equipment nor permit the Equipment to become an accession to other goods or a fixture; and (j) not permit the Equipment to be used in violation of any law, regulation or policy of insurance; and (k) strictly follow the terms on page 1 of this Agreement; (l) perform (at Buyer's expense) all maintenance and repairs necessary to keep the Equipment in as good a condition as when delivered to Buyer, reasonable wear excepted; (m) not permit the Equipment to be used by, or to be in the possession of, anyone other than Buyer or Buyer's employees. Buyer represents and warrants that: (i) each individual executing this Agreement authorized by or on behalf of Buyer has the requisite power and authority to execute this Agreement and all related documents; (ii) Buyer is fully authorized to perform its obligations and consummate the transactions contemplated under this Agreement and related documents; (iii) the execution and delivery of this Agreement and all related documents and the consummation of the transactions under this Agreement have been duly authorized by Buyer; and (iv) this Agreement and all related documents constitute valid and legally binding obligations of Buyer, enforceable against Buyer in accordance with their respective terms.

CNH INDUSTRIAL | CAPITAL

062160 / 2763255

# Agreement Provisions

F%000002 7825552 1004A0305

**11. Insurance.** Buyer shall keep Assignee's interests in the Equipment insured against fire, theft, physical damage and other hazards under policies listing Assignee as Lender's loss payee or as an additional insured, with such provisions, for such amounts (but not less than the unpaid balance outstanding under this Agreement) and by such insurers and terms as shall be satisfactory to Assignee from time to time, and shall furnish to Assignee evidence of such insurance satisfactory to Assignee. Such insurance shall provide at least 30 days' written notice of cancellation, lapse or expiration to Assignee. Buyer assigns (and directs any insurer to pay) to Assignee Buyer's interest in the proceeds of any and all insurance related to the Equipment and any premium refund, and Assignee may, at its option, apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to repair or restore the Equipment. Buyer must make all payments due under this Agreement whether or not the Equipment is insured or underinsured. Assignee is authorized, in the name of Buyer or otherwise, to make, adjust and/or settle claims under any insurance on the Equipment, or cancel the same after the occurrence of an event of default, or set off amounts owed Assignee against any rebates, credits or refunds due Buyer and/or any guarantor. If Buyer purchased physical damage insurance that is financed under this Agreement, Buyer hereby requests and authorizes Seller (provided Seller is properly licensed to do so) or its designee: (a) to arrange physical damage insurance for the benefit of Seller or Assignee and Buyer that covers physical damage to the Equipment; (b) to replace or otherwise modify such insurance as Seller deems appropriate; and (c) to be Buyer's attorney-in-fact to make claim for, receive payment of and execute, endorse and negotiate all documents, checks or drafts received in payment of loss, damage or premium refunds under any insurance. This Agreement includes and hereby incorporates by reference any Insurance Addendum signed in connection with this Agreement.

STATEMENT TO BUYER: THE PHYSICAL DAMAGE INSURANCE PURCHASED UNDER THE TERMS OF THIS AGREEMENT COVERS ONLY LOSS OF OR DAMAGE TO THE EQUIPMENT. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED AS PART OF THE PHYSICAL DAMAGE INSURANCE. BUYER UNDERSTANDS THAT IF INSURANCE IS FINANCED UNDER THIS AGREEMENT, PREPAYMENT OF BUYER'S OBLIGATIONS OR TERMINATION OF THIS AGREEMENT WILL RESULT IN CANCELLATION OF INSURANCE COVERAGE, UNLESS OTHERWISE EXPLICITLY AGREED TO IN WRITING BY ASSIGNEE.

**12. Modifications and Waivers.** This Agreement sets forth the entire understanding among Seller, Assignee and Buyer. No modification, amendment or extension of this Agreement and no waiver of any provision of this Agreement shall be valid unless in writing and signed by the parties and a waiver of any default hereunder by Assignee shall not constitute a waiver of any other prior or subsequent default, except that Buyer authorizes Assignee to insert in this Agreement the serial number/PIN and/or model number of any Equipment if this information is unknown when this Agreement is executed or to correct any errors in such numbers or any other patent errors in the description of the Equipment.

**13. Authority of Assignee to Perform for Buyer.** If Buyer fails to perform any of Buyer's duties set forth in this Agreement (including, without limitation, the purchase of insurance), Assignee may at its option, in Buyer's name or otherwise, take any such action, including, without limitation, signing Buyer's name or paying any amount so required, and all costs and expenses incurred by Assignee in connection therewith shall form part of the Obligations and shall be payable by Buyer upon demand with interest from the date of payment by Assignee at the highest rate permitted by applicable law.

**14. Default/Cross Default.** Buyer shall be in default under this Agreement, and any other agreement with or assigned to Assignee, if any of the following occurs (each, an "event of default"): (a) Buyer fails to pay when due any of the Obligations, or to perform any covenant or other obligation of Buyer under this Agreement or any other agreement with or assigned to Assignee; (b) Buyer or any guarantor dies, ceases to exist, becomes insolvent or the subject of bankruptcy, insolvency or liquidation proceedings, attempts to or does assign this Agreement or attempts to or does remove, sell, transfer, further encumber, part with possession of or sublet any Equipment; (c) any warranty or representation made by Buyer or any guarantor to induce Seller or Assignee to extend credit to Buyer, under this Agreement or otherwise, is false in any material respect when made; (d) Buyer fails to maintain insurance required hereunder or fails to comply with the requirements of any such insurance; (e) any other event occurs that causes Assignee, in good faith, to consider that payment or performance of the Obligations is impaired or that the Equipment is at risk; (f) the Equipment is impounded or confiscated by any federal, state or local governmental authority; (g) Buyer fails to produce Collateral for inspection within 10 days, upon demand; or (h) Buyer breaches any of the other terms of this Agreement or any other agreement with or assigned to Assignee.

**15. Expenses.** To the extent not prohibited by law, Buyer shall reimburse Seller or Assignee for any expense incurred by Seller or Assignee in protecting, defending or enforcing their rights under this Agreement, including, without limitation, reasonable attorneys' fees and legal expenses and all expenses of taking possession, transporting, holding, repairing, refurbishing, preparing for disposition and disposing of the Collateral, and all expenses and costs incurred in collecting the Obligations, including collection agency fees based on a maximum of 25% of the Obligations, and all shall be part of the Obligations.

**16. Conflict with Law.** Any provision of this Agreement prohibited by applicable law shall be ineffective to the extent of the prohibition without invalidating the remaining portions of this Agreement. The validity, construction and enforcement of this Agreement shall be governed by the laws of the State of the Seller (without regard to conflict of law principles of such State). All terms not otherwise defined have the meanings assigned to them by the applicable Uniform Commercial Code.

**17. Authorization to Execute and File Financing Statements and Lien Documents.** Buyer hereby authorizes Assignee or its designee to execute and file financing statements, and any motor vehicle title, registration and lien notification documentation, and any amendments thereto, on behalf and in the name of Buyer to evidence the security interest in the Collateral granted pursuant to this Agreement. Buyer hereby irrevocably appoints Assignee or its designee as Buyer's agent and attorney-in-fact to sign such instruments on Buyer's behalf and to file them.

**18. Time Price Calculations.** If this is a variable rate contract, the Prime Rate for a given calendar month shall be the rate designated as the "Prime Rate" published in The Wall Street Journal on the twentieth day of the prior calendar month (or on the next day published if not published on the twentieth day). If The Wall Street Journal ceases publication permanently or no longer publishes a "Prime Rate", the Prime Rate shall mean the prime loan rate of any federally chartered bank selected by Assignee. For all contracts the Interest Rate shall never be less than 0%. Interest Rate shall be calculated using a daily rate determined by dividing the annual rate by 365. Buyer shall make all payments in lawful money of the United States of America.

**19. Remedies.** Upon the occurrence of any event of default, Seller or Assignee shall have all rights and remedies provided by the Uniform Commercial Code or any other applicable law and Seller or Assignee may, except where prohibited by law, at its option: (i) declare all Obligations immediately due and payable without notice or demand; (ii) enter onto any premises where the Collateral may be located, take possession of all Collateral, without notice or hearing, and, Buyer or any guarantor, also expressly waives any right to notice or a prior hearing or to require Assignee to post any bond; (iii) render the Equipment unusable; (iv) require Buyer to assemble all Collateral and make it available to Assignee at any convenient place designated by Assignee within 10 days after notice from Assignee; (v) sell (including at wholesale) or otherwise dispose of all Collateral at public or private sale for cash or on credit terms, without notice; and if notice is required by law, ten (10) days' notice to Buyer shall be deemed reasonable notice; and/or (vi) obtain a consumer credit bureau upon any Buyer or any guarantor. All rights and remedies may be exercised by Seller or Assignee either separately or in combination and any action taken by Assignee to recover payment from Buyer of the Obligations shall not limit Assignee's rights with respect to all Collateral. Assignee may apply all proceeds of realization of the Collateral to such part or parts of the Obligations as Assignee may decide. If there is a deficiency, Buyer will pay the amount of the deficiency upon demand. Buyer waives notice of dishonor, presentment and demand as to this Agreement.

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH INDUSTRIAL | CAPITAL

062160 / 2763255

## Agreement Provisions

F%000002 7825552 1004A0405

**20. Miscellaneous.** In the event that this contract is determined by a court of competent jurisdiction to be characterized as a loan or forbearance agreement, and not a sale, despite the terms and conditions found in this contract, then all parties agree that any interest charges computed and assessed in this contract that are in excess of the maximum allowed interest charges allowed by law shall be applied as a reduction to the principal balance owed on this contract only, and this shall be the agreed upon and satisfactory remedy to all parties. By providing any address, email address or telephone number, including a mobile phone number, either now or in the future to Seller, Assignee, any of Assignee's affiliates or any debt collectors retained by Assignee, Buyer agrees that any of the above may contact Buyer using that address or number, including contact through calls or texts using an automatic dialing and announcing device and prerecorded calls, and that such calls are not "unsolicited" under state or federal law. Any attempted revocation of this consent to contact, if allowable by law, must be made in writing. Buyer acknowledges and agrees that CNH Capital and its third party service providers can access and use telematics data and other information regarding location, maintenance and operation of the Equipment for any lawful purpose, including without limitation, to locate and repossess the Equipment. See https://www.cnhindustrialcapital.com/en_us/Pages/Privacy.aspx for additional details. If a court finds that any part of this Agreement to be invalid or unenforceable, the remainder of this Agreement will remain in effect. All of Assignee's rights shall remain in effect after the expiration or termination of this Agreement. If more than one Buyer is named in the Agreement, the liability of each shall be joint and several. All notices required or permitted hereunder shall be in writing and shall be deemed adequate if sent to the first Buyer on page 1 of the Agreement. The captions and headings of the sections of this Agreement are for convenience only and are not to be used to interpret or define the provisions hereof. Restrictive endorsements on checks or other forms of payment that Buyer sends to Assignee will not change or reduce Buyer's obligations to Assignee. Assignee will not lose any rights if Assignee accepts late or partial payments or delays enforcing its rights under this Agreement. South Dakota Residents: If there are any improprieties in making the loan or in loan practices, you may contact the South Dakota Division of Banking: South Dakota Division of Banking, 1714 Lincoln Ave, Suite 2, Pierre, SD 57501, phone number: (605) 773-3421

**21. WAIVER OF JURY TRIAL.** EXCEPT IN GEORGIA OR CALIFORNIA OR WHERE OTHERWISE PROHIBITED BY LAW, EACH BUYER, SELLER AND CNH CAPITAL WAIVES ANY AND ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THE OBLIGATIONS, THIS AGREEMENT, OR ANY OTHER DOCUMENT CONNECTED HEREWITH, OR ANY TRANSACTION ARISING FROM OR CONNECTED TO ANY OF THE FOREGOING. EACH BUYER, SELLER AND CNH CAPITAL REPRESENTS THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY GIVEN.

**22. Electronic Contracting, Signature Acknowledgment, Future Notices.** Buyer agrees that (i) this Agreement is an electronic agreement executed by Buyer using Buyer's electronic signature or that Assignee may convert this Agreement into an electronic agreement; (ii) Buyer's electronic signature signifies Buyer's intent to enter into this Agreement and that this Agreement shall be a legally valid and enforceable Agreement in accordance with its terms to the same extent as if Buyer had executed this Agreement using Buyer's written signature and (iii) the authoritative copy of this Agreement ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by Assignee for the storage and authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the forgoing, if the Authoritative Copy is converted by printing a paper copy which is marked by Assignee as the original (the "Paper Contract"), then Buyer acknowledges and agrees that (1) your signing of this Agreement with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this Agreement, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, Buyer's duties and Obligations will be evidenced by the Paper Contract alone. By providing your e-mail address and electing to execute this Agreement electronically, Buyer agrees that all future notices, statements and communications relating to this Agreement shall be delivered to the Buyer via e-mail transmission to the e-mail address provided to Assignee by the Buyer. It is the Buyer's duty to provide any changes to Buyer's e-mail address to Assignee so that future communications can reach Buyer in a timely manner.

**OWED TO** details from Trade-In Equipment Section (Address will not print for CNH Capital payoffs)

| SERIAL NUMBER/PIN | PAYOFF DATE | ADDRESS | CITY | STATE | ZIP | PHONE |
|---|---|---|---|---|---|---|
| C7800536 | 09-30-2023 | 101 3rd Street East | Herman | MN | 56248 | (320) 677-2255 |

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH INDUSTRIAL | CAPITAL

# ADDITIONAL SIGNATURE ADDENDUM

F%0000027825552291 8A0505

062160 / 2763255

In addition to the following Buyer(s) (collectively called "Buyer")

RAGUSE FAMILY PARTNERSHIP

Printed Buyer Name | Printed Buyer Name

the below are also considered a Buyer under the terms of the commercial Retail Installment Sale Contract and Security Agreement (herein the "Agreement") dated September 22, 2023 with Seller TITAN MACHINERY INC. for the purchase of the following goods (the "Equipment").

| NEW OR USED | EQUIPMENT DESCRIPTION | MODEL | SERIAL NUMBER/PIN |
|---|---|---|---|
| NEW | Case IH Combine | 9250 AF COMB | HAJF9N4MEPG253708 |
| USED | Universal Trailer | TE 100 | IDADLDO36M020355 |
| | | | |
| | | | |
| | | | |

This Additional Signature Addendum is incorporated by reference into the Agreement. Buyer acknowledges receipt of this Agreement at the time it is executed. Each Buyer herein has received a complete copy of the Agreement, and has read fully all pages of the Agreement, and agrees to all the terms.

Executed this 22 day of September, 2023.

X ______ Signature of Buyer/Buyer's Representative | SUSAN EVE RAGUSE Printed Name | Partner Title (not for individual Buyer)

X ______ Signature of Buyer/Buyer's Representative | DAVID DEAN RAGUSE Printed Name | Partner Title (not for individual Buyer)

X ______ Signature of Buyer/Buyer's Representative | TRUMAN DEAN RAGUSE Printed Name | Partner Title (not for individual Buyer)

X ______ Signature of Seller's Representative | TITAN MACHINERY INC. Printed Seller Name

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

# EXHIBIT 3-B

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

**Filing Number: 1413578900484**
**Date: 09/28/2023**
**Time: 7:37 AM**
**STATE OF MINNESOTA**
**Office: Office of the Minnesota Secretary of State**

# UCC1 - Original Filing - UCC Financing Statement

**RETURN ACKNOWLEDGEMENT TO:**
Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703
USA

**FILER CONTACT INFORMATION:**
Corporation Service Company
1-800-858-5294
SPRFiling@cscglobal.com

## DEBTOR INFORMATION

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDL NAME(S), INITIAL(S) | | |
|---|---|---|---|---|
| RAGUSE | TRUMAN | DEAN | | |
| **MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 6867 740TH ST | Wheaton | MN | 56296 | USA |

**ORGANIZATION'S NAME**
RAGUSE FAMILY PARTNERSHIP

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 6867 740TH ST. | Wheaton | MN | 56296 | USA |

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDL NAME(S), INITIAL(S) | | |
|---|---|---|---|---|
| RAGUSE | DAVID | DEAN | | |
| **MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 6867 740TH ST. | Wheaton | MN | 56296 | USA |

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDL NAME(S), INITIAL(S) | | |
|---|---|---|---|---|
| RAGUSE | SUSAN | EVE | | |
| **MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 6867 740TH ST | Wheaton | MN | 56296 | USA |

## SECURED PARTY INFORMATION

**ORGANIZATION'S NAME**
CNH Industrial Capital America LLC

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5729 Washington Avenue | Racine | WI | 53406 | USA |

## COLLATERAL

2023, Case IH, 9250 AF COMBINE T4B, Serial No.: HAJF9N4MEPG253708, Combine.
2011, Universal, TE 100, Serial No.: IDADLDO36M020355, Trailer
SECURED CREDITOR ASSERTS A FIRST PRIORITY PURCHASE MONEY SECURITY INTEREST IN THE FOREGOING EQUIPMENT, AND INCLUDING BUT NOT LIMITED TO, ALL ITS IMPROVEMENTS, PARTS, ACCESSORIES, SUBSTITUTIONS, REPLACEMENTS, PRODUCTS, PROCEEDS, INSURANCE PROCEEDS, PREMIUM REFUNDS AND ACCESSIONS. THE EQUIPMENT MAY DISPLAY A SERIAL NUMBER OR OTHER IDENTIFYING NUMBER, INCLUDING BUT NOT LIMITED TO, THE FOLLOWING - PRODUCT

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

**Filing Number: 1413578900484**

IDENTIFICATION NUMBER, TRACTOR NUMBER OR CHASSIS NUMBER..

## ADDITIONAL INFORMATION(IF ANY)

**TRUST DESIGNATION:** No Alternative

**ADDITIONAL FILER REFERENCE DATA:**
2658 70413

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

# EXHIBIT 3-C

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH CAPITAL

# PAYMENT SCHEDULE CHANGE AGREEMENT
US - RISC

2527746

Customer Number:
Contract Number:

Date: 05/30/2024

Buyer and Co-Buyer (collectively called "Buyer" request CNH Industrial Capital America LLC ("CNH Industrial Capital") to modify the payments due under a certain Retail Installment Sales Contract ("Contract"). Buyer and CNH Industrial Capital agree to modify the payments due under the Contract as provided in this Agreement. All other provisions of the Contract shall remain in full force and effect.

## INSURANCE

**A. Physical Damage Insurance.** Buyer must insure Buyer and CNH Industrial Capital against loss of and physical damage to the Property. CNH Industrial Capital will not provide or obtain insurance for the Buyer as part of this Agreement. **PHYSICAL DAMAGE INSURANCE MAY BE OBTAINED FROM A PERSON OF THE LESSEE'S CHOICE**
If the Contract includes a charge for physical damage insurance, then (check applicable box):

_ CNH Industrial Capital will cancel the insurance and apply any premium refund to the account. To replace the cancelled insurance, Buyer has obtained insurance coverage and will provide proof thereof.

_ The insurance covering the Equipment will remain in effect until . BUYER is required to obtain insurance covering the equipment after and maintain the insurance until the Agreement is paid in full.

X_ Buyer has insurance coverage and will provide proof thereof.

**B. Credit Insurance. CREDIT LIFE INSURANCE AND/OR CREDIT DISABILITY INSURANCE IS NOT REQUIRED AND IS NOT A FACTOR IN CNH INDUSTRIAL CAPITAL'S APPROVAL OF THIS AGREEMENT.** CNH Industrial Capital will not provide or obtain credit life insurance and/or credit disability insurance for the Buyer as part of this Agreement.
If the Contract includes a charge for credit life insurance and/or credit disability insurance, then (check applicable box):

X_ Buyer authorizes CNH Industrial Capital to cancel the insurance and apply any premium refund to the account.

_ The insurance will remain in place until the original maturity of the Contract, any benefits due will be paid in accordance with the original terms of the insurance policy.

| | |
|---|---|
| (1) Remaining Principal Balance | $590,562.00 |
| (2) Unpaid Interest Balance | $1,073.02 |
| (3) Interest Rate per Year | 8.10% |
| **If the contract contains a variable interest rate, the rate shown is the rate in effect when this agreement is executed** | |
| (4) Date interest begins Accruing | 4/25/24 |
| (5) Time Price Differential (Finance Charge) | $104,777.26 |
| (6) Time Balance to be Paid (Total (1) + (5) ) | $695,339.26 |

Buyer hereby agrees to pay to the order of CNH Industrial Capital the Time Balance (line 6) in accordance with the following schedule.

| NO. OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MMDDYYYY |
|---|---|---|---|
| 1 | ANNUAL | $10000.00 | 09/22/2024 |
| 1 | ANNUAL | $126177.64 | 12/22/2024 |
| 3 | ANNUAL | $139794.45 | 09/22/2025 |
| 1 | ANNUAL | $139778.27 | 09/22/2028 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

The payment amount may vary from the original Agreement due to a change in the payment schedule and/or insurance premiums.

**This section is intentionally left blank. No signature required.**

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

# **EXHIBIT 4-A**

Filed in District Court
State of Minnesota
4/9/2026 3:45 PM

CNH CAPITAL

# RETAIL INSTALLMENT SALE CONTRACT AND SECURITY AGREEMENT FIXED RATE

062160 / 2801276

F%000002829446210044A0105

| "Buyer(s)": Legal Name(s) | Address | City | St | Zip Code |
|---|---|---|---|---|
| RAGUSE FAMILY PARTNERSHIP | 6867 740TH ST. | WHEATON | MN | 56296-5504 |

| "Seller": Legal Name | Address | City | St | Zip Code |
|---|---|---|---|---|
| TITAN MACHINERY INC. | 101 THIRD STREET EAST | HERMAN | MN | 56248 |

The undersigned Buyer(s) (collectively called "Buyer") hereby purchases from Seller and Seller hereby sells to Buyer the following goods (the "Equipment") at the Time Sale Price and the terms set forth herein. The Equipment is purchased for commercial ☐ business use ☑ agricultural use.

| NEW*/USED | EQUIPMENT DESCRIPTION | MODEL | SERIAL NUMBER/PIN | "CASH SALE PRICE" |
|---|---|---|---|---|
| USED | Case IH Combine Head | 4418-22 Corn | YJH633407 | $205,000.00 |
| | | | | |
| | | | | |
| | | | | |

*New Equipment is unused equipment, a rental unit or a demonstrator, not previously sold, for which the manufacturer will supply all or a portion of a new equipment warranty; this Equipment may have been manufactured in a year prior to the year of this purchase.

| TRADE-IN EQUIPMENT | MODEL | SERIAL NUMBER/PIN | ALLOWANCE | AMT. OWED | NET TRADE-IN | OWED TO (Address details Page 4) |
|---|---|---|---|---|---|---|
| Case IH S.P. Sprayer | 4430 | YCT033942 | $115,000.00 | $105,000.00 | $10,000.00 | RED RIVER STATE BANK |
| | | | | | | |
| | | | | | | |

## STATEMENT OF TRANSACTION

| | | | |
|---|---|---|---|
| 1. Cash Price (Cash Sale Price) | | 1. $ | 205,000.00 |
| 2. Cash Down Payment | $ N/A | | |
| Net Trade-in Allowance | $ 10,000.00 | | |
| Manufacturer's Rebate | $ N/A | | |
| Total Down Payment | | 2. $ | 10,000.00 |
| 3. Unpaid Balance of Cash Price (1 minus 2) | | 3. $ | 195,000.00 |
| 4. Other Charges | | | |
| (a) Taxes (Not in Cash Price) | $ N/A | | |
| (b) Official Fees (Filing and Termination) | $ 40.00 | | |
| (c) UCC Service Fee (Filing and Termination) | $ 22.00 | | |
| (d) Administrative Fee | $ 438.00 | | |
| (e) Physical Damage Insurance | $ N/A | | |
| (f) Credit Life Insurance | $ N/A | | |
| (g) Credit Accident & Health Insurance | $ N/A | | |
| (h) Purchased Protection Plan | $ N/A | | |
| (i) Other | $ N/A | | |
| Total Other Charges | | 4. $ | 500.00 |
| 5. Unpaid Balance (Amount Financed) (3+4) | | 5. $ | 195,500.00 |
| 6. **INTEREST CHARGE** | | 6. $ | 46,868.65 |
| 7. Total of Payments (Time Balance) (5+6) | | 7. $ | 242,368.65 |
| 8. Deferred Payment Price (Time Sale Price) (1+4+6) | | 8. $ | 252,368.65 |

9. The Unpaid Balance (Amount Financed) shall bear an Interest Charge computed at a per annum rate [the **INTEREST RATE**] equal to 7.59 % (this is a ***FIXED RATE*** contract).

10. Date Interest Rate begins accruing: 12-29-2023

Buyer agrees to pay to the Seller the Time Balance as follows:

| NBR OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MM/DD/YYYY |
|---|---|---|---|
| 5 | 12 MONTHS | $ 48,473.73 | 01/01/2025 |

The payments have been calculated to pay in full principal and interest over the term of this Agreement using the Interest Rate in effect on the date of this Agreement, and assuming that all required payments are made in full on the scheduled due dates. The final payment due hereunder shall be recalculated to pay the Obligations in full.

Buyer hereby conveys to Seller all rights, title and interest in the Trade-in Equipment free and clear of all encumbrances except as noted above.

☐ If checked, Seller represents and warrants that the above Amt. Owed has been paid.

Buyer agrees to the terms of the above titled agreement (herein the "Agreement"). Buyer has received and examined the Equipment, which is in good operating order and condition and is as described above. Buyer acknowledges receipt of a copy of this Agreement. Buyer agrees to purchase the Equipment described above and pay the Time Balance based on the terms of this Agreement.

**NOTICE TO THE BUYER:**

1. DO NOT SIGN THIS BEFORE YOU READ THE TERMS ON THE FOUR AGREEMENT PAGES (PLUS ANY ADDENDUMS), EVEN IF OTHERWISE ADVISED.
2. DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
3. YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.
4. BUYER REPRESENTS THAT THE EQUIPMENT IS NOT BEING PURCHASED FOR FAMILY, HOUSEHOLD OR PERSONAL USE.

**ADDITIONAL PROVISIONS CONCERNING RIGHTS AND DUTIES OF THE PARTIES ON THE ADDITIONAL PAGES OF THIS AGREEMENT ARE A PART OF THIS AGREEMENT.**

X [signature] RAGUSE FAMILY PARTNERSHIP — Partner — 12-29-2023
Signature of Buyer/Buyer's Representative — Printed Name — Title (not for an individual Buyer) — Date

X
Signature of Buyer/Buyer's Representative — Printed Name — Title (not for an individual Buyer) — Date

Dealer (hereinafter "Assignor" or "Seller") hereby assigns all of its rights, title and interest in and to the Agreement and the Equipment to CNH Industrial Capital America LLC (hereinafter "Assignee" or "CNH Capital"), under terms also described in the Retail Finance Agreement, Program Procedures, Dealer Handbook or other related documents (collectively hereinafter the "RFA") executed by the Assignor and Assignee. Seller has obtained a signed credit application for this Agreement. The Equipment has been paid in full or will be paid in full with Agreement proceeds pursuant to the terms of the RFA. Assignor waives notice of acceptance of this Assignment and notice of non-payment and non-performance of the Agreement and any other notices required by law and waives any and all setoffs and counterclaims. This Assignment shall become effective upon delivery of the Agreement to Assignee or upon Assignee's payment of the purchase price thereof, whichever occurs first.

Basis of Acceptance: ☑ Nonrecourse ☐ Repurchase ☐ Full Recourse ☐ Other

Other explanation:

X [signature] TITAN MACHINERY INC. — 12-29-2023
Signature of Seller's Representative — Printed Seller Name — Date

# Agreement Provisions

1. **NO WARRANTY. THE EQUIPMENT IS SOLD AS IS AND WITH ALL FAULTS, SUBJECT TO ANY APPLICABLE MANUFACTURER'S EXPRESS, WRITTEN WARRANTY. NEITHER SELLER NOR MANUFACTURER MAKE ANY OTHER REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AND SPECIFICALLY DISCLAIM THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSES.* NEITHER SELLER NOR MANUFACTURER WILL BE LIABLE FOR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM A BREACH OF THE EXPRESS WARRANTY OR ANY IMPLIED WARRANTY IMPOSED BY LAW.***

   ***Some states do not allow these limitations and exclusions, and they shall not apply to the extent such limitations or exclusions are not allowed by applicable state law.***

2. **Prepayments.** Buyer may make a partial prepayment of the unpaid Time Balance at any time, but any partial prepayments will not change or defer Buyer's next scheduled payments.

3. **Late Charges/Default Rate/Returned Checks.** Buyer shall pay a late charge on each payment not paid within 10 days after the due date at the highest amount, both as permitted by applicable law. Buyer shall pay interest on the unpaid balance after maturity (as scheduled, by acceleration or otherwise) at the highest rate, as permitted by applicable law. If a check is returned for any reason, Assignee may charge Buyer a returned check processing fee as established by Assignee from time to time not to exceed the maximum permitted under applicable law. Assignee may apply any payment or proceed received toward the Obligations, in its sole discretion regardless of how requested or directed.

4. **Fees.** All parties to this Agreement acknowledge and agree that some fees and charges scheduled under section 4 in the Statement of Transaction may be shared between the Seller and CNH Capital as permitted by law and may result in profit for the Seller and CNH Capital. The parties further agree that Administrative or Other Fees are reasonable consideration for credit determination, handling, review, and approval of the transaction, and are not a document preparation fee nor an official fee. CNH Capital may make UCC related filings and/or termination statements pursuant to this Agreement. CNH Capital reserves its right to assess additional fees and other charges to the Obligations including but not limited to, if fees and other charges increase or other actions are needed to protect its lien upon the Equipment. If any fees and/or other charges scheduled and/or assessed under any part of this Agreement exceed the maximum permitted by applicable law, any excess shall be applied toward a reduction of the principal balance and that shall be the sole and satisfactory remedy under this Agreement.

5. **Extensions and Refinancing.** If Assignee extends, defers or refinances any payments due under this Agreement, Assignee may, at its option, increase the Interest Rate or Interest Charge (herein collectively referred to as the Interest Rate).

6. **Security Interests/Cross Collateralization.** Buyer hereby grants to Seller and its successors and assigns (including Assignee) a first priority purchase money security interest in the Equipment, and in all improvements, parts and accessories belonging to the Equipment, and all substitutions, replacements, products, proceeds (including any insurance proceeds) thereof and premium refunds, refunds of any other charges hereunder and all accessions related to the Equipment (the Equipment and such items are collectively referred to herein as the "Collateral"), to secure payment and performance of all existing and future obligations of Buyer under this Agreement or any other agreement between Buyer and Seller, between Buyer and Assignee or any affiliate of Assignee, or where Buyer, under another agreement in favor of Seller or Assignee, is a guarantor or obligor (the "Obligations"). Loss of or damage to the Equipment shall not release Buyer from any of the Obligations. Upon request, Buyer shall take any action reasonably deemed necessary by Assignee to protect and enforce Assignee's interest in the Collateral or rights under this Agreement. Assignee or Seller is authorized to examine the Collateral wherever located at any reasonable time or times. Buyer authorizes Assignee to insert in this Agreement, or amend any financing statement or title registration documentation to reflect the serial/PIN and/or model numbers of the Equipment if unknown at the time this Agreement is executed and to correct any errors in such numbers or any other errors in the description of the Equipment.

7. **Assignment.** Seller hereby assigns this Agreement, and any guarantee(s) ("Guarantee") hereof (together, "Assignment") to Assignee. Buyer acknowledges that Seller has the right to assign this Agreement and such Guarantee, that all rights and benefits but no obligations (if any) of Seller under this Agreement may be exercised by Assignee and that no obligations (if any) of Seller pass to Assignee. Buyer shall make all payments due under this Agreement directly to Assignee. This Agreement shall be binding on and inure to the benefit of Buyer, Seller and Assignee and their respective heirs, personal representatives, successors and assigns, provided however, that Buyer may not assign its interest in the Collateral, rights, nor its obligations under this Agreement to any person without Assignee's prior written consent. CNH Capital may pay a fee to the Assignor as consideration for the Assignor's assignment of this Agreement to CNH Capital.

8. **Notification of Change in Residence, Principal Office, or Organizational Form.** If Buyer changes (as applicable): (a) its state of principal residence; or (b) the state in which its chief executive office is located; or (c) the state in which it is organized; or (d) its form of organization (such as from an individual to a corporation); or (e) its name, as printed on a State filed registration document or individual name, as printed on a valid driver's license, then Buyer will notify Assignee in writing promptly, but in no event more than 30 days after such change.

9. **Waiver of Defenses Against Assignee; Indemnification.** Buyer will not assert against Assignee any claim or defense which Buyer may have against Seller, the manufacturer of the Equipment, or any other person. Buyer agrees that its obligation to remit payments will not be subject to, and it will not make any claim against Assignee for breach of any representation, warranty or condition with respect to the Equipment and that its obligation to pay Assignee all amounts under this Agreement is absolute and unconditional without abatement, reduction, set-off, counterclaim or interruption for any reason whatsoever, including any dispute which now or hereafter arises between Buyer and Seller or any other person. Time is of the essence. Buyer shall indemnify and hold harmless Seller, Assignee and their respective officers, directors, employees and agents from and against any damage, loss, theft or destruction of the Equipment or any part thereof, and from and against any and all loss, damages, injuries, claims, demands, costs and expenses (including without limitation reasonable attorneys' fees and expenses) of any kind and nature, arising out of or connected with this Agreement or the use, condition (including without limitation, all defects whether or not discoverable by Buyer, Seller or Assignee) or operation of the Equipment or any part thereof. Buyer shall promptly notify Seller and Assignee in writing of any loss, damage, theft, destruction, injury, claim, demand, cost or expense related to this Agreement or the Equipment of which Buyer has knowledge.

10. **Buyer's Covenants.** Buyer shall: (a) keep the Equipment in the state listed on page 1 of this Agreement and not remove the Equipment from such location, except temporarily in connection with its ordinary use or repair, unless Assignee consents in writing; (b) maintain the Equipment in good condition and repair and not permit its intended function or value to be impaired; (c) keep the Collateral free of all liens, encumbrances and security interests of all persons other than Seller and Assignee; (d) defend the Collateral against all claims and legal proceedings by persons other than Assignee; (e) pay and discharge when due all taxes, fees, levies and other charges upon the Collateral (including all personal property and ad valorem taxes); (f) pay when due all taxes arising from the purchase of the Equipment under this Agreement, excluding any taxes based upon Seller's net income; (g) use the Equipment solely in the conduct of Buyer's business; (h) ensure the Equipment will be used solely within the intended uses of the manufacturer and that manufacturer warranty remains valid; (i) not sell, lease or otherwise dispose of the Equipment nor permit the Equipment to become an accession to other goods or a fixture; and (j) not permit the Equipment to be used in violation of any law, regulation or policy of insurance; and (k) strictly follow the terms on page 1 of this Agreement; (l) perform (at Buyer's expense) all maintenance and repairs necessary to keep the Equipment in as good a condition as when delivered to Buyer, reasonable wear excepted; (m) not permit the Equipment to be used by, or to be in the possession of, anyone other than Buyer or Buyer's employees. Buyer represents and warrants that: (i) each individual executing this Agreement authorized by or on behalf of Buyer has the requisite power and authority to execute this Agreement and all related documents; (ii) Buyer is fully authorized to perform its obligations and consummate the transactions contemplated under this Agreement and related documents; (iii) the execution and delivery of this Agreement and all related documents and the consummation of the transactions under this Agreement have been duly authorized by Buyer; and (iv) this Agreement and all related documents constitute valid and legally binding obligations of Buyer, enforceable against Buyer in accordance with their respective terms.

CNH | CAPITAL

F%0000028294462 1004A0305

062160 / 2801276

# Agreement Provisions

**11. Insurance.** Buyer shall keep Assignee's interests in the Equipment insured against fire, theft, physical damage and other hazards under policies listing Assignee as Lender's loss payee or as an additional insured, with such provisions, for such amounts (but not less than the unpaid balance outstanding under this Agreement) and by such insurers and terms as shall be satisfactory to Assignee from time to time, and shall furnish to Assignee evidence of such insurance satisfactory to Assignee. Such insurance shall provide at least 30 days' written notice of cancellation, lapse or expiration to Assignee. Buyer assigns (and directs any insurer to pay) to Assignee Buyer's interest in the proceeds of any and all insurance related to the Equipment and any premium refund, and Assignee may, at its option, apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to repair or restore the Equipment. Buyer must make all payments due under this Agreement whether or not the Equipment is insured or underinsured. Assignee is authorized, in the name of Buyer or otherwise, to make, adjust and/or settle claims under any insurance on the Equipment, or cancel the same after the occurrence of an event of default, or set off amounts owed Assignee against any rebates, credits or refunds due Buyer and/or any guarantor. If Buyer purchased physical damage insurance that is financed under this Agreement, Buyer hereby requests and authorizes Seller (provided Seller is properly licensed to do so) or its designee: (a) to arrange physical damage insurance for the benefit of Seller or Assignee and Buyer that covers physical damage to the Equipment; (b) to replace or otherwise modify such insurance as Seller deems appropriate; and (c) to be Buyer's attorney-in-fact to make claim for, receive payment of and execute, endorse and negotiate all documents, checks or drafts received in payment of loss, damage or premium refunds under any insurance. This Agreement includes and hereby incorporates by reference any Insurance Addendum signed in connection with this Agreement.

STATEMENT TO BUYER: THE PHYSICAL DAMAGE INSURANCE PURCHASED UNDER THE TERMS OF THIS AGREEMENT COVERS ONLY LOSS OF OR DAMAGE TO THE EQUIPMENT. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED AS PART OF THE PHYSICAL DAMAGE INSURANCE. BUYER UNDERSTANDS THAT IF INSURANCE IS FINANCED UNDER THIS AGREEMENT, PREPAYMENT OF BUYER'S OBLIGATIONS OR TERMINATION OF THIS AGREEMENT WILL RESULT IN CANCELLATION OF INSURANCE COVERAGE, UNLESS OTHERWISE EXPLICITLY AGREED TO IN WRITING BY ASSIGNEE.

**12. Modifications and Waivers.** This Agreement sets forth the entire understanding among Seller, Assignee and Buyer. No modification, amendment or extension of this Agreement and no waiver of any provision of this Agreement shall be valid unless in writing and signed by the parties and a waiver of any default hereunder by Assignee shall not constitute a waiver of any other prior or subsequent default, except that Buyer authorizes Assignee to insert in this Agreement the serial number/PIN and/or model number of any Equipment if this information is unknown when this Agreement is executed or to correct any errors in such numbers or any other patent errors in the description of the Equipment.

**13. Authority of Assignee to Perform for Buyer.** If Buyer fails to perform any of Buyer's duties set forth in this Agreement (including, without limitation, the purchase of insurance), Assignee may at its option, in Buyer's name or otherwise, take any such action, including, without limitation, signing Buyer's name or paying any amount so required, and all costs and expenses incurred by Assignee in connection therewith shall form part of the Obligations and shall be payable by Buyer upon demand with interest from the date of payment by Assignee at the highest rate permitted by applicable law.

**14. Default/Cross Default.** Buyer shall be in default under this Agreement, and any other agreement with or assigned to Assignee, if any of the following occurs (each, an "event of default"): (a) Buyer fails to pay when due any of the Obligations, or to perform any covenant or other obligation of Buyer under this Agreement or any other agreement with or assigned to Assignee; (b) Buyer or any guarantor dies, ceases to exist, becomes insolvent or the subject of bankruptcy, insolvency or liquidation proceedings, attempts to or does assign this Agreement or attempts to or does remove, sell, transfer, further encumber, part with possession of or sublet any Equipment; (c) any warranty or representation made by Buyer or any guarantor to induce Seller or Assignee to extend credit to Buyer, under this Agreement or otherwise, is false in any material respect when made; (d) Buyer fails to maintain insurance required hereunder or fails to comply with the requirements of any such insurance; (e) any other event occurs that causes Assignee, in good faith, to consider that payment or performance of the Obligations is impaired or that the Equipment is at risk; (f) the Equipment is impounded or confiscated by any federal, state or local governmental authority; (g) Buyer fails to produce Collateral for inspection within 10 days, upon demand; or (h) Buyer breaches any of the other terms of this Agreement or any other agreement with or assigned to Assignee.

**15. Expenses.** To the extent not prohibited by law, Buyer shall reimburse Seller or Assignee for any expense incurred by Seller or Assignee in protecting, defending or enforcing their rights under this Agreement, including, without limitation, reasonable attorneys' fees and legal expenses and all expenses of taking possession, transporting, holding, repairing, refurbishing, preparing for disposition and disposing of the Collateral, and all expenses and costs incurred in collecting the Obligations, including collection agency fees based on a maximum of 25% of the Obligations, and all shall be part of the Obligations.

**16. Conflict with Law.** Any provision of this Agreement prohibited by applicable law shall be ineffective to the extent of the prohibition without invalidating the remaining portions of this Agreement. The validity, construction and enforcement of this Agreement shall be governed by the laws of the State of the Seller (without regard to conflict of law principles of such State). All terms not otherwise defined have the meanings assigned to them by the applicable Uniform Commercial Code.

**17. Authorization to Execute and File Financing Statements and Lien Documents.** Buyer hereby authorizes Assignee or its designee to execute and file financing statements, and any motor vehicle title, registration and lien notification documentation, and any amendments thereto, on behalf and in the name of Buyer to evidence the security interest in the Collateral granted pursuant to this Agreement. Buyer hereby irrevocably appoints Assignee or its designee as Buyer's agent and attorney-in-fact to sign such instruments on Buyer's behalf and to file them.

**18. Time Price Calculations.** If this is a variable rate contract, the Prime Rate for a given calendar month shall be the rate designated as the "Prime Rate" published in The Wall Street Journal on the twentieth day of the prior calendar month (or on the next day published if not published on the twentieth day). If The Wall Street Journal ceases publication permanently or no longer publishes a "Prime Rate", the Prime Rate shall mean the prime loan rate of any federally chartered bank selected by Assignee. For all contracts the Interest Rate shall never be less than 0%. Interest Rate shall be calculated using a daily rate determined by dividing the annual rate by 365. Buyer shall make all payments in lawful money of the United States of America.

**19. Remedies.** Upon the occurrence of any event of default, Seller or Assignee shall have all rights and remedies provided by the Uniform Commercial Code or any other applicable law and Seller or Assignee may, except where prohibited by law, at its option: (i) declare all Obligations immediately due and payable without notice or demand; (ii) enter onto any premises where the Collateral may be located, take possession of all Collateral, without notice or hearing, and, Buyer or any guarantor, also expressly waives any right to notice or a prior hearing or to require Assignee to post any bond; (iii) render the Equipment unusable; (iv) require Buyer to assemble all Collateral and make it available to Assignee at any convenient place designated by Assignee within 10 days after notice from Assignee; (v) sell (including at wholesale) or otherwise dispose of all Collateral at public or private sale for cash or on credit terms, without notice; and if notice is required by law, ten (10) days' notice to Buyer shall be deemed reasonable notice; and/or (vi) obtain a consumer credit bureau upon any Buyer or any guarantor. All rights and remedies may be exercised by Seller or Assignee either separately or in combination and any action taken by Assignee to recover payment from Buyer of the Obligations shall not limit Assignee's rights with respect to all Collateral. Assignee may apply all proceeds of realization of the Collateral to such part or parts of the Obligations as Assignee may decide. If there is a deficiency, Buyer will pay the amount of the deficiency upon demand. Buyer waives notice of dishonor, presentment and demand as to this Agreement.

CNH | CAPITAL

F%000002829446210004A0405

062160 / 2801276

# Agreement Provisions

**20. Miscellaneous.** In the event that this contract is determined by a court of competent jurisdiction to be characterized as a loan or forbearance agreement, and not a sale, despite the terms and conditions found in this contract, then all parties agree that any interest charges computed and assessed in this contract that are in excess of the maximum allowed interest charges allowed by law shall be applied as a reduction to the principal balance owed on this contract only, and this shall be the agreed upon and satisfactory remedy to all parties. By providing any address, email address or telephone number, including a mobile phone number, either now or in the future to Seller, Assignee, any of Assignee's affiliates or any debt collectors retained by Assignee, Buyer agrees that any of the above may contact Buyer using that address or number, including contact through calls or texts using an automatic dialing and announcing device and prerecorded calls, and that such calls are not "unsolicited" under state or federal law. Any attempted revocation of this consent to contact, if allowable by law, must be made in writing. Buyer acknowledges and agrees that CNH Capital and its third party service providers can access and use telematics data and other information regarding location, maintenance and operation of the Equipment for any lawful purpose, including without limitation, to locate and repossess the Equipment. See https://www.cnhindustrialcapital.com/en_us/Pages/Privacy.aspx for additional details. If a court finds that any part of this Agreement to be invalid or unenforceable, the remainder of this Agreement will remain in effect. All of Assignee's rights shall remain in effect after the expiration or termination of this Agreement. If more than one Buyer is named in the Agreement, the liability of each shall be joint and several. All notices required or permitted hereunder shall be in writing and shall be deemed adequate if sent to the first Buyer on page 1 of the Agreement. The captions and headings of the sections of this Agreement are for convenience only and are not to be used to interpret or define the provisions hereof. Restrictive endorsements on checks or other forms of payment that Buyer sends to Assignee will not change or reduce Buyer's obligations to Assignee. Assignee will not lose any rights if Assignee accepts late or partial payments or delays enforcing its rights under this Agreement. South Dakota Residents: If there are any improprieties in making the loan or in loan practices, you may contact the South Dakota Division of Banking: South Dakota Division of Banking, 1714 Lincoln Ave, Suite 2, Pierre, SD 57501, phone number: (605) 773-3421.

**21. WAIVER OF JURY TRIAL.** EXCEPT IN GEORGIA OR CALIFORNIA OR WHERE OTHERWISE PROHIBITED BY LAW, EACH BUYER, SELLER AND CNH CAPITAL WAIVES ANY AND ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THE OBLIGATIONS, THIS AGREEMENT, OR ANY OTHER DOCUMENT CONNECTED HEREWITH, OR ANY TRANSACTION ARISING FROM OR CONNECTED TO ANY OF THE FOREGOING. EACH BUYER, SELLER AND CNH CAPITAL REPRESENTS THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY GIVEN.

**22. Electronic Contracting, Signature Acknowledgment, Future Notices.** Buyer agrees that (i) this Agreement is an electronic agreement executed by Buyer using Buyer's electronic signature or that Assignee may convert this Agreement into an electronic agreement; (ii) Buyer's electronic signature signifies Buyer's intent to enter into this Agreement and that this Agreement shall be a legally valid and enforceable Agreement in accordance with its terms to the same extent as if Buyer had executed this Agreement using Buyer's written signature and (iii) the authoritative copy of this Agreement ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by Assignee for the storage and authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the forging, if the Authoritative Copy is converted by printing a paper copy which is marked by Assignee as the original (the "Paper Contract"), then Buyer acknowledges and agrees that (1) your signing of this Agreement with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this Agreement, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, Buyer's duties and Obligations will be evidenced by the Paper Contract alone. By providing your e-mail address and electing to execute this Agreement electronically, Buyer agrees that all future notices, statements and communications relating to this Agreement shall be delivered to the Buyer via e-mail transmission to the e-mail address provided to Assignee by the Buyer. It is the Buyer's duty to provide any changes to Buyer's e-mail address to Assignee so that future communications can reach Buyer in a timely manner.

**OWED TO** details from Trade-In Equipment Section (Address will not print for CNH Capital payoffs)

| SERIAL NUMBER/PIN | PAYOFF DATE | ADDRESS | CITY | STATE | ZIP | PHONE |
|---|---|---|---|---|---|---|
| YCT033942 | 01-15-2024 | 300 2nd Ave W | HALSTAD | MN | 56548 | (701) 866-3236 |

Filed in District Court
State of Minnesota
1/29/2026 3:45 PM

CNH CAPITAL

# ADDITIONAL SIGNATURE ADDENDUM

F%00000282944622918A0505

062160 / 2801276

In addition to the following Buyer(s) (collectively called "Buyer")

RAGUSE FAMILY PARTNERSHIP

Printed Buyer Name

Printed Buyer Name

the below are also considered a Buyer under the terms of the commercial Retail Installment Sale Contract and Security Agreement (herein the "Agreement") dated December 29, 2023 with Seller TITAN MACHINERY INC. for the purchase of the following goods (the "Equipment").

| NEW OR USED | EQUIPMENT DESCRIPTION | MODEL | SERIAL NUMBER/PIN |
|---|---|---|---|
| USED | Case IH Combine Head | 4418-22 Corn | YJH633407 |
| | | | |
| | | | |
| | | | |
| | | | |

This Additional Signature Addendum is incorporated by reference into the Agreement. Buyer acknowledges receipt of this Agreement at the time it is executed. Each Buyer herein has received a complete copy of the Agreement, and has read fully all pages of the Agreement, and agrees to all the terms.

Executed this 29 day of December, 2023.

| Signature of Buyer/Buyer's Representative | Printed Name | Title (not for individual Buyer) |
|---|---|---|
| X [signature] | TRUMAN DEAN RAGUSE | Partner |
| X [signature] | SUSAN EVE RAGUSE | Partner |
| X [signature] | DAVID DEAN RAGUSE | Partner |

X [signature]
Signature of Seller's Representative

TITAN MACHINERY INC.
Printed Seller Name

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

# **EXHIBIT 4-B**

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

**Filing Number: 1448370400619**
**Date: 01/16/2024**
**Time: 8:19 AM**
**STATE OF MINNESOTA**
**Office: Office of the Minnesota Secretary of State**

# UCC1 - Original Filing - UCC Financing Statement

**RETURN ACKNOWLEDGEMENT TO:**
Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703
USA

**FILER CONTACT INFORMATION:**
Corporation Service Company
1-800-858-5294
SPRFiling@cscglobal.com

## DEBTOR INFORMATION

**ORGANIZATION'S NAME**
RAGUSE FAMILY PARTNERSHIP

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 6867 740TH ST. | WHEATON | MN | 56296 | USA |

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDL NAME(S), INITIAL(S) |
|---|---|---|
| RAGUSE | DAVID | DEAN |

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 6867 740TH ST. | WHEATON | MN | 56296 | USA |

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDL NAME(S), INITIAL(S) |
|---|---|---|
| RAGUSE | TRUMAN | DEAN |

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 6867 740TH ST. | WHEATON | MN | 56296 | USA |

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDL NAME(S), INITIAL(S) |
|---|---|---|
| RAGUSE | SUSAN | EVE |

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 6867 740TH ST. | WHEATON | MN | 56296 | USA |

## SECURED PARTY INFORMATION

**ORGANIZATION'S NAME**
CNH INDUSTRIAL CAPITAL AMERICA LLC

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 500 DILLER AVENUE | NEW HOLLAND | PA | 17557 | USA |

## COLLATERAL

2018 Case IH 4418-22 Corn Combine Head, serial YJH633407

## ADDITIONAL INFORMATION(IF ANY)

**TRUST DESIGNATION:** No Alternative

**ADDITIONAL FILER REFERENCE DATA:**
2737 62467

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

# EXHIBIT 4-C

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH CAPITAL

# PAYMENT SCHEDULE CHANGE AGREEMENT
US - RISC

2634704

Customer Numbe[redacted]
Contract Number:[redacted]

Date: 05/22/2025

Buyer and Co-Buyer (collectively called "Buyer" request CNH Industrial Capital America LLC ("CNH Industrial Capital") to modify the payments due under a certain Retail Installment Sales Contract ("Contract"). Buyer and CNH Industrial Capital agree to modify the payments due under the Contract as provided in this Agreement. All other provisions of the Contract shall remain in full force and effect.

## INSURANCE

**A. Physical Damage Insurance.** Buyer must insure Buyer and CNH Industrial Capital against loss of and physical damage to the Property. CNH Industrial Capital will not provide or obtain insurance for the Buyer as part of this Agreement. **PHYSICAL DAMAGE INSURANCE MAY BE OBTAINED FROM A PERSON OF THE LESSEE'S CHOICE**
If the Contract includes a charge for physical damage insurance, then (check applicable box):

_ CNH Industrial Capital will cancel the insurance and apply any premium refund to the account. To replace the cancelled insurance, Buyer has obtained insurance coverage and will provide proof thereof.

_ The insurance covering the Equipment will remain in effect until . BUYER is required to obtain insurance covering the equipment after and maintain the insurance until the Agreement is paid in full.

X_ Buyer has insurance coverage and will provide proof thereof.

**B. Credit Insurance. CREDIT LIFE INSURANCE AND/OR CREDIT DISABILITY INSURANCE IS NOT REQUIRED AND IS NOT A FACTOR IN CNH INDUSTRIAL CAPITAL'S APPROVAL OF THIS AGREEMENT.** CNH Industrial Capital will not provide or obtain credit life insurance and/or credit disability insurance for the Buyer as part of this Agreement.
If the Contract includes a charge for credit life insurance and/or credit disability insurance, then (check applicable box):

X_ Buyer authorizes CNH Industrial Capital to cancel the insurance and apply any premium refund to the account.

_ The insurance will remain in place until the original maturity of the Contract, any benefits due will be paid in accordance with the original terms of the insurance policy.

| | |
|---|---|
| (1) Remaining Principal Balance | $191,427.16 |
| (2) Unpaid Interest Balance | $238.84 |
| (3) Interest Rate per Year | 7.59% |
| **If the contract contains a variable interest rate, the rate shown is the rate in effect when this agreement is executed** | |
| (4) Date interest begins Accruing | 5/9/25 |
| (5) Time Price Differential (Finance Charge) | $29,439.34 |
| (6) Time Balance to be Paid (Total (1) + (5) ) | $220,866.50 |

Buyer hereby agrees to pay to the order of CNH Industrial Capital the Time Balance (line 6) in accordance with the following schedule.

| NO. OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MMDDYYYY |
|---|---|---|---|
| 1 | ANNUAL | $24236.86 | 12/01/2025 |
| 1 | ANNUAL | $48473.73 | 01/01/2026 |
| 2 | ANNUAL | $48473.73 | 01/01/2027 |
| 1 | ANNUAL | $51208.45 | 01/01/2029 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

The payment amount may vary from the original Agreement due to a change in the payment schedule and/or insurance premiums.

**This section is intentionally left blank. No signature required.**

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

# **EXHIBIT 5-A**

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH CAPITAL

# RETAIL INSTALLMENT SALE CONTRACT AND SECURITY AGREEMENT
## SPLIT RATE

062160 / 2812529

F%000002895312210O4A0106

| "Buyer(s)": Legal Name(s) | Address | City | St | Zip Code |
|---|---|---|---|---|
| RAGUSE FAMILY PARTNERSHIP | 6867 740TH ST. | WHEATON | MN | 56296-5504 |

| "Seller": Legal Name | Address | City | St | Zip Code |
|---|---|---|---|---|
| TITAN MACHINERY INC. | 101 THIRD STREET EAST | HERMAN | MN | 56248 |

The undersigned Buyer(s) (collectively called "Buyer") hereby purchases from Seller and Seller hereby sells to Buyer the following goods (the "Equipment") at the Time Sale Price and the terms set forth herein. The Equipment is purchased for commercial ☐ business use ☑ agricultural use.

| NEW*/USED | EQUIPMENT DESCRIPTION | MODEL | IDENTIFICATION NO. (PIN) | "CASH SALE PRICE" |
|---|---|---|---|---|
| NEW | Case IH Steiger Tractor | 595 | JEEZC595JRF514418 | $610,778.13 |
| NEW | Case IH Steiger Tractor | 595Q | JEEZC595KRF514417 | $633,137.09 |
| NEW | Case IH Steiger Tractor | 595 | JEEZC595CRF514400 | $607,450.80 |
| NEW | Case IH Steiger Tractor | 595 TK | JEEZC595LRF514408 | $615,679.42 |
| NEW | Case IH Steiger Tractor | 645 TK | JEEZC645CRF514868 | $662,080.72 |

*New Equipment is unused equipment, a rental unit or a demonstrator, not previously sold, for which the manufacturer will supply all or a portion of a new equipment warranty; this Equipment may have been manufactured in a year prior to the year of this purchase.

| TRADE-IN EQUIPMENT | MODEL | IDENTIFICATION NO. (PIN) | ALLOWANCE | AMT. OWED | NET TRADE-IN | OWED TO (Address details Page 4) |
|---|---|---|---|---|---|---|
| See attached Trade-in Addendum | | | | | | |
| | | | | | | |
| | | | | | | |

### STATEMENT OF TRANSACTION

1. Cash Price (Cash Sale Price) — 1. $ 3,129,126.16
2. Cash Down Payment $ N/A
   Net Trade-in Allowance $ 371,168.25
   Manufacturer's Rebate $ N/A
   Total Down Payment — 2. $ 371,168.25
3. Unpaid Balance of Cash Price (1 minus 2) — 3. $ 2,757,957.91
4. Other Charges
   (a) Taxes (Not in Cash Price) $ N/A
   (b) Official Fees (Filing and Termination) $ 40.00
   (c) UCC Service Fee (Filing and Termination) $ 22.00
   (d) Administrative Fee $ 500.00
   (e) Physical Damage Insurance $ N/A
   (f) Credit Life Insurance $ N/A
   (g) Credit Accident & Health Insurance $ N/A
   (h) Purchased Protection Plan $ N/A
   (i) Other $ N/A
   Total Other Charges — 4. $ 562.00
5. Unpaid Balance (Amount Financed) (3+4) — 5. $ 2,758,519.91
6. INTEREST CHARGE — 6. $ 474,454.20
7. Total of Payments (Time Balance) (5+6) — 7. $ 3,232,974.11
8. Deferred Payment Price (Time Sale Price) (1+4+6) — 8. $ 3,604,142.36
9. The Unpaid Balance shall bear an Interest Charge computed at a per annum rate [the INTEREST RATE] equal to 5.40 % from the date the Interest Rate begins accruing (see item 10, below) through and including 07 / 19 / 2025;
   7.85 % from 07 / 20 / 2025 through and including 12 / 20 / 2028
   ____ % from __ / __ / __ through and including __ / __ / __
   ____ % from __ / __ / __ through and including __ / __ / __
   ____ % from __ / __ / __ through and including the date the Time Balance is paid in full (this is a ***SPLIT RATE*** contract).
10. Date Interest Rate begins accruing: 2024-07-12

Buyer agrees to pay to the Seller the Time Balance as follows:

| NBR OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MM/DD/YYYY |
|---|---|---|---|
| 1 | 5 MONTHS | $ 646,594.82 | 12/20/2024 |
| 3 | 12 MONTHS | $ 646,594.82 | 12/20/2025 |
| 1 | 12 MONTHS | $ 646,594.83 | 12/20/2028 |

The payments have been calculated to pay in full principal and interest over the term of this Agreement using the Interest Rate in effect on the date of this Agreement, and assuming that all required payments are made in full on the scheduled due dates. The final payment due hereunder shall be recalculated to pay the Obligations in full.

Buyer hereby conveys to Seller all rights, title and interest in the Trade-in Equipment free and clear of all encumbrances except as noted above.

☐ If checked, Seller represents and warrants that the above Amt. Owed has been paid.

Buyer agrees to the terms of the above titled agreement (herein the "Agreement"). Buyer has received and examined the Equipment, which is in good operating order and condition and is as described above. Buyer acknowledges receipt of a copy of this Agreement. Buyer agrees to purchase the Equipment described above and pay the Time Balance based on the terms of this Agreement.

**NOTICE TO THE BUYER:**
1. DO NOT SIGN THIS BEFORE YOU READ THE TERMS ON THE FOUR AGREEMENT PAGES (PLUS ANY ADDENDUMS), EVEN IF OTHERWISE ADVISED.
2. DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
3. YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.
4. BUYER REPRESENTS THAT THE EQUIPMENT IS NOT BEING PURCHASED FOR FAMILY, HOUSEHOLD OR PERSONAL USE.

**ADDITIONAL PROVISIONS CONCERNING RIGHTS AND DUTIES OF THE PARTIES ON THE ADDITIONAL PAGES OF THIS AGREEMENT ARE A PART OF THIS AGREEMENT.**

| X [signature] | RAGUSE FAMILY PARTNERSHIP | Partner | 07-12-2024 |
|---|---|---|---|
| Signature of Buyer/Buyer's Representative | Printed Name | Title (not for an individual Buyer) | Date |
| X | | | |
| Signature of Buyer/Buyer's Representative | Printed Name | Title (not for an individual Buyer) | Date |

Dealer (hereinafter "Assignor" or "Seller") hereby assigns all of its rights, title and interest in and to the Agreement and the Equipment to CNH Industrial Capital America LLC (hereinafter "Assignee" or "CNH Capital"), under terms also described in the Retail Finance Agreement, Program Procedures, Dealer Handbook or other related documents (collectively hereinafter the "RFA") executed by the Assignor and Assignee. Seller has obtained a signed credit application for this Agreement. The Equipment has been paid in full or will be paid in full with Agreement proceeds pursuant to the terms of the RFA. Assignor waives notice of acceptance of this Assignment and notice of non-payment and non-performance of the Agreement and any other notices required by law and waives any and all setoffs and counterclaims. This Assignment shall become effective upon delivery of the Agreement to Assignee or upon Assignee's payment of the purchase price thereof, whichever occurs first.

Basis of Acceptance: ☑ Nonrecourse ☐ Repurchase ☐ Full Recourse ☐ Other

Other explanation:

| X [signature] | TITAN MACHINERY INC. | 07-12-2024 |
|---|---|---|
| Signature of Seller's Representative | Printed Seller Name | Date |

Filed in District Court
State of Minnesota
4/23/2026 3:45 PM

CNH | CAPITAL

F%000002895312210 04A0206

062160 / 2812529

# Agreement Provisions

1. **NO WARRANTY. THE EQUIPMENT IS SOLD AS IS AND WITH ALL FAULTS, SUBJECT TO ANY APPLICABLE MANUFACTURER'S EXPRESS, WRITTEN WARRANTY. NEITHER SELLER NOR MANUFACTURER MAKE ANY OTHER REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AND SPECIFICALLY DISCLAIM THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSES.* NEITHER SELLER NOR MANUFACTURER WILL BE LIABLE FOR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM A BREACH OF THE EXPRESS WARRANTY OR ANY IMPLIED WARRANTY IMPOSED BY LAW.***

   ***Some states do not allow these limitations and exclusions, and they shall not apply to the extent such limitations or exclusions are not allowed by applicable state law.***

2. **Prepayments.** Buyer may make a partial prepayment of the unpaid Time Balance at any time, but any partial prepayments will not change or defer Buyer's next scheduled payments.

3. **Late Charges/Default Rate/Returned Checks.** Buyer shall pay a late charge on each payment not paid within 10 days after the due date at the highest amount, both as permitted by applicable law. Buyer shall pay interest on the unpaid balance after maturity (as scheduled, by acceleration or otherwise) at the highest rate, as permitted by applicable law. If a check is returned for any reason, Assignee may charge Buyer a returned check processing fee as established by Assignee from time to time not to exceed the maximum permitted under applicable law. Assignee may apply any payment or proceed received toward the Obligations, in its sole discretion regardless of how requested or directed.

4. **Fees.** All parties to this Agreement acknowledge and agree that some fees and charges scheduled under section 4 in the Statement of Transaction may be shared between the Seller and CNH Capital as permitted by law and may result in profit for the Seller and CNH Capital. The parties further agree that Administrative or Other Fees are reasonable consideration for credit determination, handling, review, and approval of the transaction, and are not a document preparation fee nor an official fee. CNH Capital may make UCC related filings and/or termination statements pursuant to this Agreement. CNH Capital reserves its right to assess additional fees and other charges to the Obligations including but not limited to, if fees and other charges increase or other actions are needed to protect its lien upon the Equipment. If any fees and/or other charges scheduled and/or assessed under any part of this Agreement exceed the maximum permitted by applicable law, any excess shall be applied toward a reduction of the principal balance and that shall be the sole and satisfactory remedy under this Agreement.

5. **Extensions and Refinancing.** If Assignee extends, defers or refinances any payments due under this Agreement, Assignee may, at its option, increase the Interest Rate or Interest Charge (herein collectively referred to as the Interest Rate).

6. **Security Interests/Cross Collateralization.** Buyer hereby grants to Seller and its successors and assigns (including Assignee) a first priority purchase money security interest in the Equipment, and in all improvements, parts and accessories belonging to the Equipment, and all substitutions, replacements, products, proceeds (including any insurance proceeds) thereof and premium refunds, refunds of any other charges hereunder and all accessions related to the Equipment (the Equipment and such items are collectively referred to herein as the "Collateral"), to secure payment and performance of all existing and future obligations of Buyer under this Agreement or any other agreement between Buyer and Seller, between Buyer and Assignee or any affiliate of Assignee, or where Buyer, under another agreement in favor of Seller or Assignee, is a guarantor or obligor (the "Obligations"). Loss of or damage to the Equipment shall not release Buyer from any of the Obligations. Upon request, Buyer shall take any action reasonably deemed necessary by Assignee to protect and enforce Assignee's interest in the Collateral or rights under this Agreement. Assignee or Seller is authorized to examine the Collateral wherever located at any reasonable time or times. Buyer authorizes Assignee to insert in this Agreement, or amend any financing statement or title registration documentation to reflect the identification no. (PIN) and/or model numbers of the Equipment if unknown at the time this Agreement is executed and to correct any errors in such numbers or any other errors in the description of the Equipment.

7. **Assignment.** Seller hereby assigns this Agreement, and any guarantee(s) ("Guarantee") hereof (together, "Assignment") to Assignee. Buyer acknowledges that Seller has the right to assign this Agreement and such Guarantee, that all rights and benefits but no obligations (if any) of Seller under this Agreement may be exercised by Assignee and that no obligations (if any) of Seller pass to Assignee. Buyer shall make all payments due under this Agreement directly to Assignee. This Agreement shall be binding on and inure to the benefit of Buyer, Seller and Assignee and their respective heirs, personal representatives, successors and assigns, provided however, that Buyer may not assign its interest in the Collateral, rights, nor its obligations under this Agreement to any person without Assignee's prior written consent. CNH Capital may pay a fee to the Assignor as consideration for the Assignor's assignment of this Agreement to CNH Capital.

8. **Notification of Change in Residence, Principal Office, or Organizational Form.** If Buyer changes (as applicable): (a) its state of principal residence; or (b) the state in which its chief executive office is located; or (c) the state in which it is organized; or (d) its form of organization (such as from an individual to a corporation); or (e) its name, as printed on a State filed registration document or individual name, as printed on a valid driver's license, then Buyer will notify Assignee in writing promptly, but in no event more than 30 days after such change.

9. **Waiver of Defenses Against Assignee; Indemnification.** Buyer will not assert against Assignee any claim or defense which Buyer may have against Seller, the manufacturer of the Equipment, or any other person. Buyer agrees that its obligation to remit payments will not be subject to, and it will not make any claim against Assignee for breach of any representation, warranty or condition with respect to the Equipment and that its obligation to pay Assignee all amounts under this Agreement is absolute and unconditional without abatement, reduction, set-off, counterclaim or interruption for any reason whatsoever, including any dispute which now or hereafter arises between Buyer and Seller or any other person. Time is of the essence. Buyer shall indemnify and hold harmless Seller, Assignee and their respective officers, directors, employees and agents from and against any damage, loss, theft or destruction of the Equipment or any part thereof, and from and against any and all loss, damages, injuries, claims, demands, costs and expenses (including without limitation reasonable attorneys' fees and expenses) of any kind and nature, arising out of or connected with this Agreement or the use, condition (including without limitation, all defects whether or not discoverable by Buyer, Seller or Assignee) or operation of the Equipment or any part thereof. Buyer shall promptly notify Seller and Assignee in writing of any loss, damage, theft, destruction, injury, claim, demand, cost or expense related to this Agreement or the Equipment of which Buyer has knowledge.

10. **Buyer's Covenants.** Buyer shall: (a) keep the Equipment in the state listed on page **1** of this Agreement and not remove the Equipment from such location, except temporarily in connection with its ordinary use or repair, unless Assignee consents in writing; (b) maintain the Equipment in good condition and repair and not permit its intended function or value to be impaired; (c) keep the Collateral free of all liens, encumbrances and security interests of all persons other than Seller and Assignee; (d) defend the Collateral against all claims and legal proceedings by persons other than Assignee; (e) pay and discharge when due all taxes, fees, levies and other charges upon the Collateral (including all personal property and ad valorem taxes); (f) pay when due all taxes arising from the purchase of the Equipment under this Agreement, excluding any taxes based upon Seller's net income; (g) use the Equipment solely in the conduct of Buyer's business; (h) ensure the Equipment will be used solely within the intended uses of the manufacturer and that manufacturer warranty remains valid; (i) not sell, lease or otherwise dispose of the Equipment nor permit the Equipment to become an accession to other goods or a fixture; and (j) not permit the Equipment to be used in violation of any law, regulation or policy of insurance; and (k) strictly follow the terms on page 1 of this Agreement; (l) perform (at Buyer's expense) all maintenance and repairs necessary to keep the Equipment in as good a condition as when delivered to Buyer, reasonable wear excepted; (m) not permit the Equipment to be used by, or to be in the possession of, anyone other than Buyer or Buyer's employees. Buyer represents and warrants that: (i) each individual executing this Agreement authorized by or on behalf of Buyer has the requisite power and authority to execute this Agreement and all related documents; (ii) Buyer is fully authorized to perform its obligations and consummate the transactions contemplated under this Agreement and related documents; (iii) the execution and delivery of this Agreement and all related documents and the consummation of the transactions under this Agreement have been duly authorized by Buyer; and (iv) this Agreement and all related documents constitute valid and legally binding obligations of Buyer, enforceable against Buyer in accordance with their respective terms.

CNH | CAPITAL

FX000002895312210 04A0306

062160 / 2812529

# Agreement Provisions

**11. Insurance.** Buyer shall keep Assignee's interests in the Equipment insured against fire, theft, physical damage and other hazards under policies listing Assignee as Lender's loss payee or as an additional insured, with such provisions, for such amounts (but not less than the unpaid balance outstanding under this Agreement) and by such insurers and terms as shall be satisfactory to Assignee from time to time, and shall furnish to Assignee evidence of such insurance satisfactory to Assignee. Such insurance shall provide at least 30 days' written notice of cancellation, lapse or expiration to Assignee. Buyer assigns (and directs any insurer to pay) to Assignee Buyer's interest in the proceeds of any and all insurance related to the Equipment and any premium refund, and Assignee may, at its option, apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to repair or restore the Equipment. Buyer must make all payments due under this Agreement whether or not the Equipment is insured or underinsured. Assignee is authorized, in the name of Buyer or otherwise, to make, adjust and/or settle claims under any insurance on the Equipment, or cancel the same after the occurrence of an event of default, or set off amounts owed Assignee against any rebates, credits or refunds due Buyer and/or any guarantor. If Buyer purchased physical damage insurance that is financed under this Agreement, Buyer hereby requests and authorizes Seller (provided Seller is properly licensed to do so) or its designee: (a) to arrange physical damage insurance for the benefit of Seller or Assignee and Buyer that covers physical damage to the Equipment; (b) to replace or otherwise modify such insurance as Seller deems appropriate; and (c) to be Buyer's attorney-in-fact to make claim for, receive payment of and execute, endorse and negotiate all documents, checks or drafts received in payment of loss, damage or premium refunds under any insurance. This Agreement includes and hereby incorporates by reference any Insurance Addendum signed in connection with this Agreement.

STATEMENT TO BUYER: THE PHYSICAL DAMAGE INSURANCE PURCHASED UNDER THE TERMS OF THIS AGREEMENT COVERS ONLY LOSS OF OR DAMAGE TO THE EQUIPMENT. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED AS PART OF THE PHYSICAL DAMAGE INSURANCE. BUYER UNDERSTANDS THAT IF INSURANCE IS FINANCED UNDER THIS AGREEMENT, PREPAYMENT OF BUYER'S OBLIGATIONS OR TERMINATION OF THIS AGREEMENT WILL RESULT IN CANCELLATION OF INSURANCE COVERAGE, UNLESS OTHERWISE EXPLICITLY AGREED TO IN WRITING BY ASSIGNEE.

**12. Modifications and Waivers.** This Agreement sets forth the entire understanding among Seller, Assignee and Buyer. No modification, amendment or extension of this Agreement and no waiver of any provision of this Agreement shall be valid unless in writing and signed by the parties and a waiver of any default hereunder by Assignee shall not constitute a waiver of any other prior or subsequent default, except that Buyer authorizes Assignee to insert in this Agreement the identification no. (PIN) and/or model number of any Equipment if this information is unknown when this Agreement is executed or to correct any errors in such numbers or any other patent errors in the description of the Equipment.

**13. Authority of Assignee to Perform for Buyer.** If Buyer fails to perform any of Buyer's duties set forth in this Agreement (including, without limitation, the purchase of insurance), Assignee may at its option, in Buyer's name or otherwise, take any such action, including, without limitation, signing Buyer's name or paying any amount so required, and all costs and expenses incurred by Assignee in connection therewith shall form part of the Obligations and shall be payable by Buyer upon demand with interest from the date of payment by Assignee at the highest rate permitted by applicable law.

**14. Default/Cross Default.** Buyer shall be in default under this Agreement, and any other agreement with or assigned to Assignee, if any of the following occurs (each, an "event of default"): (a) Buyer fails to pay when due any of the Obligations, or to perform any covenant or other obligation of Buyer under this Agreement or any other agreement with or assigned to Assignee; (b) Buyer or any guarantor dies, ceases to exist, becomes insolvent or the subject of bankruptcy, insolvency or liquidation proceedings, attempts to or does assign this Agreement or attempts to or does remove, sell, transfer, further encumber, part with possession of or sublet any Equipment; (c) any warranty or representation made by Buyer or any guarantor to induce Seller or Assignee to extend credit to Buyer, under this Agreement or otherwise, is false in any material respect when made; (d) Buyer fails to maintain insurance required hereunder or fails to comply with the requirements of any such insurance; (e) any other event occurs that causes Assignee, in good faith, to consider that payment or performance of the Obligations is impaired or that the Equipment is at risk; (f) the Equipment is impounded or confiscated by any federal, state or local governmental authority; (g) Buyer fails to produce Collateral for inspection within 10 days, upon demand; or (h) Buyer breaches any of the other terms of this Agreement or any other agreement with or assigned to Assignee.

**15. Expenses.** To the extent not prohibited by law, Buyer shall reimburse Seller or Assignee for any expense incurred by Seller or Assignee in protecting, defending or enforcing their rights under this Agreement, including, without limitation, reasonable attorneys' fees and legal expenses and all expenses of taking possession, transporting, holding, repairing, refurbishing, preparing for disposition and disposing of the Collateral, and all expenses and costs incurred in collecting the Obligations, including collection agency fees based on a maximum of 25% of the Obligations, and all shall be part of the Obligations.

**16. Conflict with Law.** Any provision of this Agreement prohibited by applicable law shall be ineffective to the extent of the prohibition without invalidating the remaining portions of this Agreement. The validity, construction and enforcement of this Agreement shall be governed by the laws of the State of the Seller (without regard to conflict of law principles of such State). All terms not otherwise defined have the meanings assigned to them by the applicable Uniform Commercial Code.

**17. Authorization to Execute and File Financing Statements and Lien Documents.** Buyer hereby authorizes Assignee or its designee to execute and file financing statements, and any motor vehicle title, registration and lien notification documentation, and any amendments thereto, on behalf and in the name of Buyer to evidence the security interest in the Collateral granted pursuant to this Agreement. Buyer hereby irrevocably appoints Assignee or its designee as Buyer's agent and attorney-in-fact to sign such instruments on Buyer's behalf and to file them.

**18. Time Price Calculations.** If this is a variable rate contract, the Prime Rate for a given calendar month shall be the rate designated as the "Prime Rate" published in The Wall Street Journal on the twentieth day of the prior calendar month (or on the next day published if not published on the twentieth day). If The Wall Street Journal ceases publication permanently or no longer publishes a "Prime Rate", the Prime Rate shall mean the prime loan rate of any federally chartered bank selected by Assignee. For all contracts the Interest Rate shall never be less than 0%. Interest Rate shall be calculated using a daily rate determined by dividing the annual rate by 365. Buyer shall make all payments in lawful money of the United States of America.

**19. Remedies.** Upon the occurrence of any event of default, Seller or Assignee shall have all rights and remedies provided by the Uniform Commercial Code or any other applicable law and Seller or Assignee may, except where prohibited by law, at its option: (i) declare all Obligations immediately due and payable without notice or demand; (ii) enter onto any premises where the Collateral may be located, take possession of all Collateral, without notice or hearing, and, Buyer or any guarantor, also expressly waives any right to notice or a prior hearing or to require Assignee to post any bond; (iii) render the Equipment unusable; (iv) require Buyer to assemble all Collateral and make it available to Assignee at any convenient place designated by Assignee within 10 days after notice from Assignee; (v) sell (including at wholesale) or otherwise dispose of all Collateral at public or private sale for cash or on credit terms, without notice; and if notice is required by law, ten (10) days' notice to Buyer shall be deemed reasonable notice; and/or (vi) obtain a consumer credit bureau upon any Buyer or any guarantor. All rights and remedies may be exercised by Seller or Assignee either separately or in combination and any action taken by Assignee to recover payment from Buyer of the Obligations shall not limit Assignee's rights with respect to all Collateral. Assignee may apply all proceeds of realization of the Collateral to such part or parts of the Obligations as Assignee may decide. If there is a deficiency, Buyer will pay the amount of the deficiency upon demand. Buyer waives notice of dishonor, presentment and demand as to this Agreement.

CNH CAPITAL

F%000002895312210 04A0406

062160 / 2812529

# Agreement Provisions

**20. Miscellaneous.** In the event that this contract is determined by a court of competent jurisdiction to be characterized as a loan or forbearance agreement, and not a sale, despite the terms and conditions found in this contract, then all parties agree that any interest charges computed and assessed in this contract that are in excess of the maximum allowed interest charges allowed by law shall be applied as a reduction to the principal balance owed on this contract only, and this shall be the agreed upon and satisfactory remedy to all parties. By providing any address, email address or telephone number, including a mobile phone number, either now or in the future to Seller, Assignee, any of Assignee's affiliates or any debt collectors retained by Assignee, Buyer agrees that any of the above may contact Buyer using that address or number, including contact through calls or texts using an automatic dialing and announcing device and prerecorded calls, and that such calls are not "unsolicited" under state or federal law. Any attempted revocation of this consent to contact, if allowable by law, must be made in writing. Buyer acknowledges and agrees that CNH Capital and its third party service providers can access and use telematics data and other information regarding location, maintenance and operation of the Equipment for any lawful purpose, including without limitation, to locate and repossess the Equipment. See https://www.cnhindustrialcapital.com/en_us/Pages/Privacy.aspx for additional details. If a court finds that any part of this Agreement to be invalid or unenforceable, the remainder of this Agreement will remain in effect. All of Assignee's rights shall remain in effect after the expiration or termination of this Agreement. If more than one Buyer is named in the Agreement, the liability of each shall be joint and several. All notices required or permitted hereunder shall be in writing and shall be deemed adequate if sent to the first Buyer on page 1 of the Agreement. The captions and headings of the sections of this Agreement are for convenience only and are not to be used to interpret or define the provisions hereof. Restrictive endorsements on checks or other forms of payment that Buyer sends to Assignee will not change or reduce Buyer's obligations to Assignee. Assignee will not lose any rights if Assignee accepts late or partial payments or delays enforcing its rights under this Agreement. South Dakota Residents: If there are any improprieties in making the loan or in loan practices, you may contact the South Dakota Division of Banking: South Dakota Division of Banking, 1714 Lincoln Ave, Suite 2, Pierre, SD 57501, phone number: (605) 773-3421.

**21. WAIVER OF JURY TRIAL.** EXCEPT IN GEORGIA OR CALIFORNIA OR WHERE OTHERWISE PROHIBITED BY LAW, EACH BUYER, SELLER AND CNH CAPITAL WAIVES ANY AND ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THE OBLIGATIONS, THIS AGREEMENT, OR ANY OTHER DOCUMENT CONNECTED HEREWITH, OR ANY TRANSACTION ARISING FROM OR CONNECTED TO ANY OF THE FOREGOING. EACH BUYER, SELLER AND CNH CAPITAL REPRESENTS THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY GIVEN.

**22. Electronic Contracting, Signature Acknowledgment, Future Notices.** Buyer agrees that (i) this Agreement is an electronic agreement executed by Buyer using Buyer's electronic signature or that Assignee may convert this Agreement into an electronic agreement; (ii) Buyer's electronic signature signifies Buyer's intent to enter into this Agreement and that this Agreement shall be a legally valid and enforceable Agreement in accordance with its terms to the same extent as if Buyer had executed this Agreement using Buyer's written signature and (iii) the authoritative copy of this Agreement ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by Assignee for the storage and authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the forgoing, if the Authoritative Copy is converted by printing a paper copy which is marked by Assignee as the original (the "Paper Contract"), then Buyer acknowledges and agrees that (1) your signing of this Agreement with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this Agreement, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, Buyer's duties and Obligations will be evidenced by the Paper Contract alone. By providing your e-mail address and electing to execute this Agreement electronically, Buyer agrees that all future notices, statements and communications relating to this Agreement shall be delivered to the Buyer via e-mail transmission to the e-mail address provided to Assignee by the Buyer. It is the Buyer's duty to provide any changes to Buyer's e-mail address to Assignee so that future communications can reach Buyer in a timely manner.

**OWED TO** details from Trade-in Equipment Section (Address will not print for CNH Capital payoffs)

| IDENTIFICATION NO. (PIN) | PAYOFF DATE | ADDRESS | CITY | STATE | ZIP | PHONE |
|---|---|---|---|---|---|---|
| ZNF505547 | 07-15-2024 | | | | | |
| ZNF505664 | 07-15-2024 | | | | | |
| ZNF505395 | 07-15-2024 | | | | | |
| ZNF505660 | 07-15-2024 | | | | | |
| ZNF505390 | 07-15-2024 | | | | | |

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH | CAPITAL

# ADDITIONAL SIGNATURE ADDENDUM

F%0000028953122291&A0506

062160 / 2812529

In addition to the following Buyer(s) (collectively called "Buyer")

RAGUSE FAMILY PARTNERSHIP

Printed Buyer Name

Printed Buyer Name

the below are also considered a Buyer under the terms of the commercial Retail Installment Sale Contract and Security Agreement (herein the "Agreement") dated July 12, 2024 with Seller TITAN MACHINERY INC. for the purchase of the following goods (the "Equipment").

| NEW OR USED | EQUIPMENT DESCRIPTION | MODEL | IDENTIFICATION NO. (PIN) |
|---|---|---|---|
| NEW | Case IH Steiger Tractor | 595 | JEEZC595JRF514418 |
| NEW | Case IH Steiger Tractor | 595Q | JEEZC595KRF514417 |
| NEW | Case IH Steiger Tractor | 595 | JEEZC595CRF514400 |
| NEW | Case IH Steiger Tractor | 595 TK | JEEZC595LRF514408 |
| NEW | Case IH Steiger Tractor | 645 TK | JEEZC645CRF514868 |

This Additional Signature Addendum is incorporated by reference into the Agreement. Buyer acknowledges receipt of this Agreement at the time it is executed. Each Buyer herein has received a complete copy of the Agreement, and has read fully all pages of the Agreement, and agrees to all the terms.

Executed this 12 day of July, 2024.

| Signature | Printed Name | Title |
|---|---|---|
| X [signature] Signature of Buyer/Buyer's Representative | SUSAN EVE RAGUSE | Partner |
| X [signature] Signature of Buyer/Buyer's Representative | TRUMAN DEAN RAGUSE | Partner |
| X [signature] Signature of Buyer/Buyer's Representative | DAVID DEAN RAGUSE | Partner |

(Printed Name; Title (not for individual Buyer))

X [signature]
Signature of Seller's Representative

TITAN MACHINERY INC.
Printed Seller Name

Filed in District Court
State of Minnesota
4/29/2025 3:45 PM

F%0000289531221142A0606

CNH | CAPITAL

062160 / 2812529

# MULTIPLE TRADE-IN UNIT ADDENDUM

This Multiple Trade-In Unit Addendum is hereby incorporated into the commercial Retail Installment Contract and Security Agreement or Lease Agreement dated July 12, 2024 with Seller TITAN MACHINERY INC. herein the ("Agreement"). Buyer or Lessee acknowledges receipt of this Multiple Trade-In Unit Addendum at the time it is executed, along with a copy of the Agreement and all its pages.

| # | Equipment Description | Model | Identification No. (PIN) | Allowance | Amt. Owed | Net Trade-In | Owed To |
|---|---|---|---|---|---|---|---|
| 1 | Case IH Steiger Tractor | 620 TK | ZNF505547 | $ 540,000.00 | $ 461,766.35 | $ 78,233.65 | CNH Capital |
| 2 | Case IH Steiger Tractor | 620 TK | ZNF505664 | $ 540,000.00 | $ 461,766.35 | $ 78,233.65 | CNH Capital |
| 3 | Case IH Steiger Tractor | 620 TK | ZNF505395 | $ 560,000.00 | $ 461,766.35 | $ 98,233.65 | CNH Capital |
| 4 | Case IH Steiger Tractor | 620 TK | ZNF505660 | $ 520,000.00 | $ 461,766.35 | $ 58,233.65 | CNH Capital |
| 5 | Case IH Steiger Tractor | 620 TK | ZNF505390 | $ 520,000.00 | $ 461,766.35 | $ 58,233.65 | CNH Capital |

Buyer hereby conveys to Seller all rights, title and interest in the Trade-in Equipment free and clear of all encumbrances except as noted above.

☐ If checked, Seller represents and warrants that the above Amt. Owed has been paid.

Executed this 12 day of July, 2024.

X [signature] Signature of Buyer/Buyer's Representative — RAGUSE FAMILY PARTNERSHIP, Printed Name — Partner, Title (not for an individual Buyer)

[signature] Signature of Buyer/Buyer's Representative — SUSAN EVE RAGUSE, Printed Name — Partner, Title (not for an individual Buyer)

X [signature] Signature of Buyer/Buyer's Representative — TRUMAN DEAN RAGUSE, Printed Name — Partner, Title (not for an individual Buyer)

[signature] Signature of Buyer/Buyer's Representative — DAVID DEAN RAGUSE, Printed Name — Partner, Title (not for an individual Buyer)

X [signature] Signature of Seller's Representative — TITAN MACHINERY INC., Printed Seller Name

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

# EXHIBIT 5-B

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

**Filing Number: 1482523500915**
**Date: 07/16/2024**
**Time: 3:08 PM**
**STATE OF MINNESOTA**
**Office: Office of the Minnesota Secretary of State**

# UCC1 - Original Filing - UCC Financing Statement

**RETURN ACKNOWLEDGEMENT TO:**
Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703
USA

**FILER CONTACT INFORMATION:**
Corporation Service Company
1-800-858-5294
SPRFiling@cscglobal.com

## DEBTOR INFORMATION

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDL NAME(S), INITIAL(S) | | |
|---|---|---|---|---|
| RAGUSE | TRUMAN | DEAN | | |
| **MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 6867 740TH ST | Wheaton | MN | 56296 | USA |

**ORGANIZATION'S NAME**
RAGUSE FAMILY PARTNERSHIP

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 6867 740TH ST. | Wheaton | MN | 56296 | USA |

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDL NAME(S), INITIAL(S) | | |
|---|---|---|---|---|
| RAGUSE | DAVID | DEAN | | |
| **MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 6867 740TH ST. | Wheaton | MN | 56296 | USA |

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDL NAME(S), INITIAL(S) | | |
|---|---|---|---|---|
| RAGUSE | SUSAN | EVE | | |
| **MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 6867 740TH ST | Wheaton | MN | 56296 | USA |

## SECURED PARTY INFORMATION

**ORGANIZATION'S NAME**
CNH Industrial Capital America LLC

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5729 Washington Avenue | Racine | WI | 53406 | USA |

## COLLATERAL

2024, Case IH, 645 TK, Serial No.: JEEZC645CRF514868, Steiger Tractor.
2024, Case IH, 595Q, Serial No.: JEEZC595KRF514417, Steiger Tractor.
2024, Case IH, 595 TK, Serial No.: JEEZC595LRF514408, Steiger Tractor.
2024, Case IH, 595, Serial No.: JEEZC595JRF514418, Steiger Tractor.
2024, Case IH, 595, Serial No.: JEEZC595CRF514400, Steiger Tractor
SECURED CREDITOR ASSERTS A FIRST PRIORITY PURCHASE MONEY SECURITY INTEREST IN THE FOREGOING EQUIPMENT, AND INCLUDING BUT NOT LIMITED TO, ALL ITS IMPROVEMENTS, PARTS,

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

**Filing Number: 1482523500915**

ACCESSORIES, SUBSTITUTIONS, REPLACEMENTS, PRODUCTS, PROCEEDS, INSURANCE PROCEEDS, PREMIUM REFUNDS AND ACCESSIONS. THE EQUIPMENT MAY DISPLAY A SERIAL NUMBER OR OTHER IDENTIFYING NUMBER, INCLUDING BUT NOT LIMITED TO, THE FOLLOWING - PRODUCT IDENTIFICATION NUMBER, TRACTOR NUMBER OR CHASSIS NUMBER..

## ADDITIONAL INFORMATION(IF ANY)

**TRUST DESIGNATION:** No Alternative

**ADDITIONAL FILER REFERENCE DATA:**
2881 08769

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

# EXHIBIT 5-C

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH CAPITAL

# PAYMENT SCHEDULE CHANGE AGREEMENT
## US - RISC

2634688

Customer Number[redacted]
Contract Number:[redacted]

Date: 05/22/2025

Buyer and Co-Buyer (collectively called "Buyer" request CNH Industrial Capital America LLC ("CNH Industrial Capital") to modify the payments due under a certain Retail Installment Sales Contract ("Contract"). Buyer and CNH Industrial Capital agree to modify the payments due under the Contract as provided in this Agreement. All other provisions of the Contract shall remain in full force and effect.

### INSURANCE

**A. Physical Damage Insurance.** Buyer must insure Buyer and CNH Industrial Capital against loss of and physical damage to the Property. CNH Industrial Capital will not provide or obtain insurance for the Buyer as part of this Agreement. **PHYSICAL DAMAGE INSURANCE MAY BE OBTAINED FROM A PERSON OF THE LESSEE'S CHOICE**
If the Contract includes a charge for physical damage insurance, then (check applicable box):

_ CNH Industrial Capital will cancel the insurance and apply any premium refund to the account. To replace the cancelled insurance, Buyer has obtained insurance coverage and will provide proof thereof.

_ The insurance covering the Equipment will remain in effect until . BUYER is required to obtain insurance covering the equipment after  and maintain the insurance until the Agreement is paid in full.

X_ Buyer has insurance coverage and will provide proof thereof.

**B. Credit Insurance. CREDIT LIFE INSURANCE AND/OR CREDIT DISABILITY INSURANCE IS NOT REQUIRED AND IS NOT A FACTOR IN CNH INDUSTRIAL CAPITAL'S APPROVAL OF THIS AGREEMENT.** CNH Industrial Capital will not provide or obtain credit life insurance and/or credit disability insurance for the Buyer as part of this Agreement.
If the Contract includes a charge for credit life insurance and/or credit disability insurance, then (check applicable box):

X_ Buyer authorizes CNH Industrial Capital to cancel the insurance and apply any premium refund to the account.

_ The insurance will remain in place until the original maturity of the Contract, any benefits due will be paid in accordance with the original terms of the insurance policy.

| | |
|---|---|
| (1) Remaining Principal Balance | $2,556,440.57 |
| (2) Unpaid Interest Balance | $2,269.28 |
| (3) Interest Rate per Year | 5.40% |
| **If the contract contains a variable interest rate, the rate shown is the rate in effect when this agreement is executed** | |
| (4) Date interest begins Accruing | 5/9/25 |
| (5) Time Price Differential (Finance Charge) | $257,036.86 |
| (6) Time Balance to be Paid (Total (1) + (5) ) | $2,813,477.43 |

Buyer hereby agrees to pay to the order of CNH Industrial Capital the Time Balance (line 6) in accordance with the following schedule.

| NO. OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MMDDYYYY |
|---|---|---|---|
| 1 | ANNUAL | $323297.77 | 08/01/2025 |
| 1 | ANNUAL | $646594.82 | 12/20/2025 |
| 1 | ANNUAL | $646594.82 | 12/20/2026 |
| 1 | ANNUAL | $646594.82 | 12/20/2027 |
| 1 | ANNUAL | $550395.20 | 12/20/2028 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

The payment amount may vary from the original Agreement due to a change in the payment schedule and/or insurance premiums.

**This section is intentionally left blank. No signature required.**

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

# EXHIBIT 5-D

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH CAPITAL

# PAYMENT SCHEDULE CHANGE AGREEMENT
## US - RISC

2680537

Customer Number[redacted]
Contract Number[redacted]

Date: 09/29/2025

Buyer and Co-Buyer (collectively called "Buyer" request CNH Industrial Capital America LLC ("CNH Industrial Capital") to modify the payments due under a certain Retail Installment Sales Contract ("Contract"). Buyer and CNH Industrial Capital agree to modify the payments due under the Contract as provided in this Agreement. All other provisions of the Contract shall remain in full force and effect.

### INSURANCE

**A. Physical Damage Insurance.** Buyer must insure Buyer and CNH Industrial Capital against loss of and physical damage to the Property. CNH Industrial Capital will not provide or obtain insurance for the Buyer as part of this Agreement. **PHYSICAL DAMAGE INSURANCE MAY BE OBTAINED FROM A PERSON OF THE LESSEE'S CHOICE**
If the Contract includes a charge for physical damage insurance, then (check applicable box):

_ CNH Industrial Capital will cancel the insurance and apply any premium refund to the account. To replace the cancelled insurance, Buyer has obtained insurance coverage and will provide proof thereof.

_ The insurance covering the Equipment will remain in effect until . BUYER is required to obtain insurance covering the equipment after and maintain the insurance until the Agreement is paid in full.

X_ Buyer has insurance coverage and will provide proof thereof.

**B. Credit Insurance. CREDIT LIFE INSURANCE AND/OR CREDIT DISABILITY INSURANCE IS NOT REQUIRED AND IS NOT A FACTOR IN CNH INDUSTRIAL CAPITAL'S APPROVAL OF THIS AGREEMENT.** CNH Industrial Capital will not provide or obtain credit life insurance and/or credit disability insurance for the Buyer as part of this Agreement.
If the Contract includes a charge for credit life insurance and/or credit disability insurance, then (check applicable box):

X_ Buyer authorizes CNH Industrial Capital to cancel the insurance and apply any premium refund to the account.

_ The insurance will remain in place until the original maturity of the Contract, any benefits due will be paid in accordance with the original terms of the insurance policy.

| | |
|---|---|
| (1) Remaining Principal Balance | $2,556,440.57 |
| (2) Unpaid Interest Balance | $66,267.85 |
| (3) Interest Rate per Year | 7.85% |
| **If the contract contains a variable interest rate, the rate shown is the rate in effect when this agreement is executed** | |
| (4) Date interest begins Accruing | 5/31/25 |
| (5) Time Price Differential (Finance Charge) | $375,495.72 |
| (6) Time Balance to be Paid (Total (1) + (5) ) | $2,931,936.29 |

Buyer hereby agrees to pay to the order of CNH Industrial Capital the Time Balance (line 6) in accordance with the following schedule.

| NO. OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MMDDYYYY |
|---|---|---|---|
| 1 | MONTHLY | $345557.00 | 10/01/2025 |
| 1 | ANNUAL | $646594.82 | 12/20/2025 |
| 2 | ANNUAL | $646594.82 | 12/20/2026 |
| 1 | ANNUAL | $646594.83 | 12/20/2028 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

The payment amount may vary from the original Agreement due to a change in the payment schedule and/or insurance premiums.

**This section is intentionally left blank. No signature required.**

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

# EXHIBIT 6-A

Filed in District Court
State of Minnesota
1/29/2026 3:45 PM

CNH | CAPITAL

# RETAIL INSTALLMENT SALE CONTRACT AND SECURITY AGREEMENT
## SPLIT RATE

061125 / 2783341

F%00000292145621004A0105

| "Buyer(s)": Legal Name(s) | Address | City | St | Zip Code |
|---|---|---|---|---|
| RAGUSE FAMILY PARTNERSHIP | 6867 740TH ST. | WHEATON | MN | 56296-5504 |

| "Seller": Legal Name | Address | City | St | Zip Code |
|---|---|---|---|---|
| TITAN MACHINERY INC. | 27062 U.S. HIGHWAY 59 | ELBOW LAKE | MN | 56531 |

The undersigned Buyer(s) (collectively called "Buyer") hereby purchases from Seller and Seller hereby sells to Buyer the following goods (the "Equipment") at the Time Sale Price and the terms set forth herein. The Equipment is purchased for commercial ☐ business use ☑ agricultural use.

| NEW*/USED | EQUIPMENT DESCRIPTION | MODEL | IDENTIFICATION NO. (PIN) | "CASH SALE PRICE" |
|---|---|---|---|---|
| NEW | Case IH Combine | 9250 | HAJF9N4NLRG258156 | $697,294.86 |
| NEW | Case IH Combine | 9250 | HAJF9N4NHRG258191 | $745,294.50 |
| NEW | Case IH Combine | 8250 | HAJF8N4MKPG253748 | $647,068.88 |
| | | | | |
| | | | | |

*New Equipment is unused equipment, a rental unit or a demonstrator, not previously sold, for which the manufacturer will supply all or a portion of a new equipment warranty. this Equipment may have been manufactured in a year prior to the year of this purchase.

| TRADE-IN EQUIPMENT | MODEL | IDENTIFICATION NO. (PIN) | ALLOWANCE | AMT. OWED | NET TRADE-IN | OWED TO (Address details Page 4) |
|---|---|---|---|---|---|---|
| John Deere Combine | S780 | 1H0S780SVMT815731 | $450,000.00 | $425,000.00 | $25,000.00 | John Deere |
| Case IH Combine | 9250 | YPG253708 | $650,000.00 | $594,586.63 | $55,413.37 | CNH Capital |
| John Deere Combine | S780 | 1H0S780SPMT815707 | $460,000.00 | $425,000.00 | $35,000.00 | John Deere |

### STATEMENT OF TRANSACTION

1. Cash Price (Cash Sale Price) — 1. $ 2,089,658.24
2. Cash Down Payment $ N/A
   - Net Trade-in Allowance $ 115,413.37
   - Manufacturer's Rebate $ N/A
   - Total Down Payment — 2. $ 115,413.37
3. Unpaid Balance of Cash Price (1 minus 2) — 3. $ 1,974,244.87
4. Other Charges
   - (a) Taxes (Not In Cash Price) $ N/A
   - (b) Official Fees (Filing and Termination) $ 40.00
   - (c) UCC Service Fee (Filing and Termination) $ 22.00
   - (d) Administrative Fee $ 438.00
   - (e) Physical Damage Insurance $ N/A
   - (f) Credit Life Insurance $ N/A
   - (g) Credit Accident & Health Insurance $ N/A
   - (h) Purchased Protection Plan $ N/A
   - (i) Other $ N/A
   - Total Other Charges — 4. $ 500.00
5. Unpaid Balance (Amount Financed) (3+4) — 5. $ 1,974,744.87
6. INTEREST CHARGE — 6. $ 370,275.47
7. Total of Payments (Time Balance) (5+6) — 7. $ 2,345,020.34
8. Deferred Payment Price (Time Sale Price) (1+4+6) — 8. $ 2,460,433.71
9. The Unpaid Balance shall bear an Interest Charge computed at a per annum rate [the INTEREST RATE] equal to 5.00 % from the date the Interest Rate begins accruing (see item 10. below) through and including 09 / 19 / 2025;
   7.65 % from 09 / 20 / 2025 through and including 09 / 20 / 2029
   ____ % from __ / __ / __ through and including __ / __ / __
   ____ % from __ / __ / __ through and including __ / __ / __
   ____ % from __ / __ / __ through and including the date the Time Balance is paid in full (this is a *SPLIT RATE* contract).
10. Date Interest Rate begins accruing: 2024-09-16

Buyer agrees to pay to the Seller the Time Balance as follows:

| NBR OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MM/DD/YYYY |
|---|---|---|---|
| 1 | 3 MONTHS | $ 390,836.73 | 12/20/2024 |
| 4 | 12 MONTHS | $ 390,836.73 | 12/20/2025 |
| 1 | 9 MONTHS | $ 390,836.69 | 09/20/2029 |

The payments have been calculated to pay in full principal and interest over the term of this Agreement using the Interest Rate in effect on the date of this Agreement, and assuming that all required payments are made in full on the scheduled due dates. The final payment due hereunder shall be recalculated to pay the Obligations in full.

Buyer hereby conveys to Seller all rights, title and interest in the Trade-in Equipment free and clear of all encumbrances except as noted above.

☑ If checked, Seller represents and warrants that the above Amt. Owed has been paid.

Buyer agrees to the terms of the above titled agreement (herein the "Agreement"). Buyer has received and examined the Equipment, which is in good operating order and condition and is as described above. Buyer acknowledges receipt of a copy of this Agreement. Buyer agrees to purchase the Equipment described above and pay the Time Balance based on the terms of this Agreement.

**NOTICE TO THE BUYER:**

1. DO NOT SIGN THIS BEFORE YOU READ THE TERMS ON THE FOUR AGREEMENT PAGES (PLUS ANY ADDENDUMS), EVEN IF OTHERWISE ADVISED.
2. DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
3. YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.
4. BUYER REPRESENTS THAT THE EQUIPMENT IS NOT BEING PURCHASED FOR FAMILY, HOUSEHOLD OR PERSONAL USE.

ADDITIONAL PROVISIONS CONCERNING RIGHTS AND DUTIES OF THE PARTIES ON THE ADDITIONAL PAGES OF THIS AGREEMENT ARE A PART OF THIS AGREEMENT.

x [signature] RAGUSE FAMILY PARTNERSHIP — Partner — 09-16-2024
Signature of Buyer/Buyer's Representative — Printed Name [handwritten names] — Title (not for an individual Buyer) — Date

x [signatures] — Printed Name: Tromm Raguse — Title (not for an individual Buyer): G.P. G.P. G.P. — Date
Signature of Buyer/Buyer's Representative — Printed Name — Title (not for an individual Buyer) — Date

Dealer (hereinafter "Assignor" or "Seller") hereby assigns all of its rights, title and interest in and to the Agreement and the Equipment to CNH Industrial Capital America LLC (hereinafter "Assignee" or "CNH Capital"), under terms also described in the Retail Finance Agreement, Program Procedures, Dealer Handbook or other related documents (collectively hereinafter the "RFA") executed by the Assignor and Assignee. Seller has obtained a signed credit application for this Agreement. The Equipment has been paid in full or will be paid in full with Agreement proceeds pursuant to the terms of the RFA. Assignor waives notice of acceptance of this Assignment and notice of non-payment and non-performance of the Agreement and any other notices required by law and waives any and all setoffs and counterclaims. This Assignment shall become effective upon delivery of the Agreement to Assignee or upon Assignee's payment of the purchase price thereof, whichever occurs first.

Basis of Acceptance: ☑ Nonrecourse ☐ Repurchase ☐ Full Recourse ☐ Other

Other explanation:

x [signature] — TITAN MACHINERY INC. — 09-16-2024
Signature of Seller's Representative — Printed Seller Name — Date

21004A Rev. 04/24 Previous editions may not be used.

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH | CAPITAL

F%0000029214562100 4A0205

061125 / 2783341

# Agreement Provisions

1. NO WARRANTY. THE EQUIPMENT IS SOLD AS IS AND WITH ALL FAULTS, SUBJECT TO ANY APPLICABLE MANUFACTURER'S EXPRESS, WRITTEN WARRANTY. NEITHER SELLER NOR MANUFACTURER MAKE ANY OTHER REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AND SPECIFICALLY DISCLAIM THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSES.* NEITHER SELLER NOR MANUFACTURER WILL BE LIABLE FOR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM A BREACH OF THE EXPRESS WARRANTY OR ANY IMPLIED WARRANTY IMPOSED BY LAW.*

   ****Some states do not allow these limitations and exclusions, and they shall not apply to the extent such limitations or exclusions are not allowed by applicable state law.***

2. **Prepayments.** Buyer may make a partial prepayment of the unpaid Time Balance at any time, but any partial prepayments will not change or defer Buyer's next scheduled payments.

3. **Late Charges/Default Rate/Returned Checks.** Buyer shall pay a late charge on each payment not paid within 10 days after the due date at the highest amount, both as permitted by applicable law. Buyer shall pay interest on the unpaid balance after maturity (as scheduled, by acceleration or otherwise) at the highest rate, as permitted by applicable law. If a check is returned for any reason, Assignee may charge Buyer a returned check processing fee as established by Assignee from time to time not to exceed the maximum permitted under applicable law. Assignee may apply any payment or proceed received toward the Obligations, in its sole discretion regardless of how requested or directed.

4. **Fees.** All parties to this Agreement acknowledge and agree that some fees and charges scheduled under section 4 in the Statement of Transaction may be shared between the Seller and CNH Capital as permitted by law and may result in profit for the Seller and CNH Capital. The parties further agree that Administrative or Other Fees are reasonable consideration for credit determination, handling, review, and approval of the transaction, and are not a document preparation fee nor an official fee. CNH Capital may make UCC related filings and/or termination statements pursuant to this Agreement. CNH Capital reserves its right to assess additional fees and other charges to the Obligations including but not limited to, if fees and other charges increase or other actions are needed to protect its lien upon the Equipment. If any fees and/or other charges scheduled and/or assessed under any part of this Agreement exceed the maximum permitted by applicable law, any excess shall be applied toward a reduction of the principal balance and that shall be the sole and satisfactory remedy under this Agreement.

5. **Extensions and Refinancing.** If Assignee extends, defers or refinances any payments due under this Agreement, Assignee may, at its option, increase the Interest Rate or Interest Charge (herein collectively referred to as the Interest Rate).

6. **Security Interests/Cross Collateralization.** Buyer hereby grants to Seller and its successors and assigns (including Assignee) a first priority purchase money security interest in the Equipment, and in all improvements, parts and accessories belonging to the Equipment, and all substitutions, replacements, products, proceeds (including any insurance proceeds) thereof and premium refunds, refunds of any other charges hereunder and all accessions related to the Equipment (the Equipment and such items are collectively referred to herein as the "Collateral"), to secure payment and performance of all existing and future obligations of Buyer under this Agreement or any other agreement between Buyer and Seller, between Buyer and Assignee or any affiliate of Assignee, or where Buyer, under another agreement in favor of Seller or Assignee, is a guarantor or obligor (the "Obligations"). Loss of or damage to the Equipment shall not release Buyer from any of the Obligations. Upon request, Buyer shall take any action reasonably deemed necessary by Assignee to protect and enforce Assignee's interest in the Collateral or rights under this Agreement. Assignee or Seller is authorized to examine the Collateral wherever located at any reasonable time or times. Buyer authorizes Assignee to insert in this Agreement, or amend any financing statement or title registration documentation to reflect the identification no. (PIN) and/or model numbers of the Equipment if unknown at the time this Agreement is executed and to correct any errors in such numbers or any other errors in the description of the Equipment.

7. **Assignment.** Seller hereby assigns this Agreement, and any guarantee(s) ("Guarantee") hereof (together, "Assignment") to Assignee. Buyer acknowledges that Seller has the right to assign this Agreement and such Guarantee, that all rights and benefits but no obligations (if any) of Seller under this Agreement may be exercised by Assignee and that no obligations (if any) of Seller pass to Assignee. Buyer shall make all payments due under this Agreement directly to Assignee. This Agreement shall be binding on and inure to the benefit of Buyer, Seller and Assignee and their respective heirs, personal representatives, successors and assigns, provided however, that Buyer may not assign its interest in the Collateral, rights, nor its obligations under this Agreement to any person without Assignee's prior written consent. CNH Capital may pay a fee to the Assignor as consideration for the Assignor's assignment of this Agreement to CNH Capital.

8. **Notification of Change in Residence, Principal Office, or Organizational Form.** If Buyer changes (as applicable): (a) its state of principal residence; or (b) the state in which its chief executive office is located; or (c) the state in which it is organized; or (d) its form of organization (such as from an individual to a corporation); or (e) its name, as printed on a State filed registration document or individual name, as printed on a valid driver's license, then Buyer will notify Assignee in writing promptly, but in no event more than 30 days after such change.

9. **Waiver of Defenses Against Assignee; Indemnification.** Buyer will not assert against Assignee any claim or defense which Buyer may have against Seller, the manufacturer of the Equipment, or any other person. Buyer agrees that its obligation to remit payments will not be subject to, and it will not make any claim against Assignee for breach of any representation, warranty or condition with respect to the Equipment and that its obligation to pay Assignee all amounts under this Agreement is absolute and unconditional without abatement, reduction, set-off, counterclaim or interruption for any reason whatsoever, including any dispute which now or hereafter arises between Buyer and Seller or any other person. Time is of the essence. Buyer shall indemnify and hold harmless Seller, Assignee and their respective officers, directors, employees and agents from and against any damage, loss, theft or destruction of the Equipment or any part thereof, and from and against any and all loss, damages, injuries, claims, demands, costs and expenses (including without limitation reasonable attorneys' fees and expenses) of any kind and nature, arising out of or connected with this Agreement or the use, condition (including without limitation, all defects whether or not discoverable by Buyer, Seller or Assignee) or operation of the Equipment or any part thereof. Buyer shall promptly notify Seller and Assignee in writing of any loss, damage, theft, destruction, injury, claim, demand, cost or expense related to this Agreement or the Equipment of which Buyer has knowledge.

10. **Buyer's Covenants.** Buyer shall: (a) keep the Equipment in the state listed on page 1 of this Agreement and not remove the Equipment from such location, except temporarily in connection with its ordinary use or repair, unless Assignee consents in writing; (b) maintain the Equipment in good condition and repair and not permit its intended function or value to be impaired; (c) keep the Collateral free of all liens, encumbrances and security interests of all persons other than Seller and Assignee; (d) defend the Collateral against all claims and legal proceedings by persons other than Assignee; (e) pay and discharge when due all taxes, fees, levies and other charges upon the Collateral (including all personal property and ad valorem taxes); (f) pay when due all taxes arising from the purchase of the Equipment under this Agreement, excluding any taxes based upon Seller's net income; (g) use the Equipment solely in the conduct of Buyer's business; (h) ensure the Equipment will be used solely within the intended uses of the manufacturer and that manufacturer warranty remains valid; (i) not sell, lease or otherwise dispose of the Equipment nor permit the Equipment to become an accession to other goods or a fixture; and (j) not permit the Equipment to be used in violation of any law, regulation or policy of insurance; and (k) strictly follow the terms on page 1 of this Agreement; (l) perform (at Buyer's expense) all maintenance and repairs necessary to keep the Equipment in as good a condition as when delivered to Buyer, reasonable wear excepted; (m) not permit the Equipment to be used by, or to be in the possession of, anyone other than Buyer or Buyer's employees. Buyer represents and warrants that: (i) each individual executing this Agreement authorized by or on behalf of Buyer has the requisite power and authority to execute this Agreement and all related documents; (ii) Buyer is fully authorized to perform its obligations and consummate the transactions contemplated under this Agreement and related documents; (iii) the execution and delivery of this Agreement and all related documents and the consummation of the transactions under this Agreement have been duly authorized by Buyer; and (iv) this Agreement and all related documents constitute valid and legally binding obligations of Buyer, enforceable against Buyer in accordance with their respective terms

CNH | CAPITAL



# Agreement Provisions



11. **Insurance.** Buyer shall keep Assignee's interests in the Equipment insured against fire, theft, physical damage and other hazards under policies listing Assignee as Lender's loss payee or as an additional insured, with such provisions, for such amounts (but not less than the unpaid balance outstanding under this Agreement) and by such insurers and terms as shall be satisfactory to Assignee from time to time, and shall furnish to Assignee evidence of such insurance satisfactory to Assignee. Such insurance shall provide at least 30 days' written notice of cancellation, lapse or expiration to Assignee. Buyer assigns (and directs any insurer to pay) to Assignee Buyer's interest in the proceeds of any and all insurance related to the Equipment and any premium refund, and Assignee may, at its option, apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to repair or restore the Equipment. Buyer must make all payments due under this Agreement whether or not the Equipment is insured or underinsured. Assignee is authorized, in the name of Buyer or otherwise, to make, adjust and/or settle claims under any insurance on the Equipment, or cancel the same after the occurrence of an event of default, or set off amounts owed Assignee against any rebates, credits or refunds due Buyer and/or any guarantor. If Buyer purchased physical damage insurance that is financed under this Agreement, Buyer hereby requests and authorizes Seller (provided Seller is properly licensed to do so) or its designee: (a) to arrange physical damage insurance for the benefit of Seller or Assignee and Buyer that covers physical damage to the Equipment; (b) to replace or otherwise modify such insurance as Seller deems appropriate; and (c) to be Buyer's attorney-in-fact to make claim for, receive payment of and execute, endorse and negotiate all documents, checks or drafts received in payment of loss, damage or premium refunds under any insurance. This Agreement includes and hereby incorporates by reference any Insurance Addendum signed in connection with this Agreement.

    STATEMENT TO BUYER: THE PHYSICAL DAMAGE INSURANCE PURCHASED UNDER THE TERMS OF THIS AGREEMENT COVERS ONLY LOSS OF OR DAMAGE TO THE EQUIPMENT. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED AS PART OF THE PHYSICAL DAMAGE INSURANCE. BUYER UNDERSTANDS THAT IF INSURANCE IS FINANCED UNDER THIS AGREEMENT, PREPAYMENT OF BUYER'S OBLIGATIONS OR TERMINATION OF THIS AGREEMENT WILL RESULT IN CANCELLATION OF INSURANCE COVERAGE, UNLESS OTHERWISE EXPLICITLY AGREED TO IN WRITING BY ASSIGNEE.

12. **Modifications and Waivers.** This Agreement sets forth the entire understanding among Seller, Assignee and Buyer. No modification, amendment or extension of this Agreement and no waiver of any provision of this Agreement shall be valid unless in writing and signed by the parties and a waiver of any default hereunder by Assignee shall not constitute a waiver of any other prior or subsequent default, except that Buyer authorizes Assignee to insert in this Agreement the identification no. (PIN) and/or model number of any Equipment if this information is unknown when this Agreement is executed or to correct any errors in such numbers or any other patent errors in the description of the Equipment.

13. **Authority of Assignee to Perform for Buyer.** If Buyer fails to perform any of Buyer's duties set forth in this Agreement (including, without limitation, the purchase of insurance), Assignee may at its option, in Buyer's name or otherwise, take any such action, including, without limitation, signing Buyer's name or paying any amount so required, and all costs and expenses incurred by Assignee in connection therewith shall form part of the Obligations and shall be payable by Buyer upon demand with interest from the date of payment by Assignee at the highest rate permitted by applicable law.

14. **Default/Cross Default.** Buyer shall be in default under this Agreement, and any other agreement with or assigned to Assignee, if any of the following occurs (each, an "event of default"): (a) Buyer fails to pay when due any of the Obligations, or to perform any covenant or other obligation of Buyer under this Agreement or any other agreement with or assigned to Assignee; (b) Buyer or any guarantor dies, ceases to exist, becomes insolvent or the subject of bankruptcy, insolvency or liquidation proceedings, attempts to or does assign this Agreement or attempts to or does remove, sell, transfer, further encumber, part with possession of or sublet any Equipment; (c) any warranty or representation made by Buyer or any guarantor to induce Seller or Assignee to extend credit to Buyer, under this Agreement or otherwise, is false in any material respect when made; (d) Buyer fails to maintain insurance required hereunder or fails to comply with the requirements of any such insurance; (e) any other event occurs that causes Assignee, in good faith, to consider that payment or performance of the Obligations is impaired or that the Equipment is at risk; (f) the Equipment is impounded or confiscated by any federal, state or local governmental authority; (g) Buyer fails to produce Collateral for inspection within 10 days, upon demand; or (h) Buyer breaches any of the other terms of this Agreement or any other agreement with or assigned to Assignee.

15. **Expenses.** To the extent not prohibited by law, Buyer shall reimburse Seller or Assignee for any expense incurred by Seller or Assignee in protecting, defending or enforcing their rights under this Agreement, including, without limitation, reasonable attorneys' fees and legal expenses and all expenses of taking possession, transporting, holding, repairing, refurbishing, preparing for disposition and disposing of the Collateral, and all expenses and costs incurred in collecting the Obligations, including collection agency fees based on a maximum of 25% of the Obligations, and all shall be part of the Obligations.

16. **Conflict with Law.** Any provision of this Agreement prohibited by applicable law shall be ineffective to the extent of the prohibition without invalidating the remaining portions of this Agreement. The validity, construction and enforcement of this Agreement shall be governed by the laws of the State of the Seller (without regard to conflict of law principles of such State). All terms not otherwise defined have the meanings assigned to them by the applicable Uniform Commercial Code.

17. **Authorization to Execute and File Financing Statements and Lien Documents.** Buyer hereby authorizes Assignee or its designee to execute and file financing statements, and any motor vehicle title, registration and lien notification documentation, and any amendments thereto, on behalf and in the name of Buyer to evidence the security interest in the Collateral granted pursuant to this Agreement. Buyer hereby irrevocably appoints Assignee or its designee as Buyer's agent and attorney-in-fact to sign such instruments on Buyer's behalf and to file them.

18. **Time Price Calculations.** If this is a variable rate contract, the Prime Rate for a given calendar month shall be the rate designated as the "Prime Rate" published in The Wall Street Journal on the twentieth day of the prior calendar month (or on the next day published if not published on the twentieth day). If The Wall Street Journal ceases publication permanently or no longer publishes a "Prime Rate", the Prime Rate shall mean the prime loan rate of any federally chartered bank selected by Assignee. For all contracts the Interest Rate shall never be less than 0%. Interest Rate shall be calculated using a daily rate determined by dividing the annual rate by 365. Buyer shall make all payments in lawful money of the United States of America.

19. **Remedies.** Upon the occurrence of any event of default, Seller or Assignee shall have all rights and remedies provided by the Uniform Commercial Code or any other applicable law and Seller or Assignee may, except where prohibited by law, at its option: (i) declare all Obligations immediately due and payable without notice or demand; (ii) enter onto any premises where the Collateral may be located, take possession of all Collateral, without notice or hearing, and, Buyer or any guarantor, also expressly waives any right to notice or a prior hearing or to require Assignee to post any bond; (iii) render the Equipment unusable; (iv) require Buyer to assemble all Collateral and make it available to Assignee at any convenient place designated by Assignee within 10 days after notice from Assignee; (v) sell (including at wholesale) or otherwise dispose of all Collateral at public or private sale for cash or on credit terms, without notice; and if notice is required by law, ten (10) days' notice to Buyer shall be deemed reasonable notice; and/or (vi) obtain a consumer credit bureau upon any Buyer or any guarantor. All rights and remedies may be exercised by Seller or Assignee either separately or in combination and any action taken by Assignee to recover payment from Buyer of the Obligations shall not limit Assignee's rights with respect to all Collateral. Assignee may apply all proceeds of realization of the Collateral to such part or parts of the Obligations as Assignee may decide. If there is a deficiency, Buyer will pay the amount of the deficiency upon demand. Buyer waives notice of dishonor, presentment and demand as to this Agreement.

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH | CAPITAL

061125 / 2783341

## Agreement Provisions

FX0000029214562 1004A0405

**20. Miscellaneous.** In the event that this contract is determined by a court of competent jurisdiction to be characterized as a loan or forbearance agreement, and not a sale, despite the terms and conditions found in this contract, then all parties agree that any interest charges computed and assessed in this contract that are in excess of the maximum allowed interest charges allowed by law shall be applied as a reduction to the principal balance owed on this contract only, and this shall be the agreed upon and satisfactory remedy to all parties. By providing any address, email address or telephone number, including a mobile phone number, either now or in the future to Seller, Assignee, any of Assignee's affiliates or any debt collectors retained by Assignee, Buyer agrees that any of the above may contact Buyer using that address or number, including contact through calls or texts using an automatic dialing and announcing device and prerecorded calls, and that such calls are not "unsolicited" under state or federal law. Any attempted revocation of this consent to contact, if allowable by law, must be made in writing. Buyer acknowledges and agrees that CNH Capital and its third party service providers can access and use telematics data and other information regarding location, maintenance and operation of the Equipment for any lawful purpose, including without limitation, to locate and repossess the Equipment. See https://www.cnhindustrialcapital.com/en_us/Pages/Privacy.aspx for additional details. If a court finds that any part of this Agreement to be invalid or unenforceable, the remainder of this Agreement will remain in effect. All of Assignee's rights shall remain in effect after the expiration or termination of this Agreement. If more than one Buyer is named in the Agreement, the liability of each shall be joint and several. All notices required or permitted hereunder shall be in writing and shall be deemed adequate if sent to the first Buyer on page 1 of the Agreement. The captions and headings of the sections of this Agreement are for convenience only and are not to be used to interpret or define the provisions hereof. Restrictive endorsements on checks or other forms of payment that Buyer sends to Assignee will not change or reduce Buyer's obligations to Assignee. Assignee will not lose any rights if Assignee accepts late or partial payments or delays enforcing its rights under this Agreement. South Dakota Residents: If there are any improprieties in making the loan or in loan practices, you may contact the South Dakota Division of Banking: South Dakota Division of Banking, 1714 Lincoln Ave, Suite 2, Pierre, SD 57501, phone number: (605) 773-3421.

**21. WAIVER OF JURY TRIAL.** EXCEPT IN GEORGIA OR CALIFORNIA OR WHERE OTHERWISE PROHIBITED BY LAW, EACH BUYER, SELLER AND CNH CAPITAL WAIVES ANY AND ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THE OBLIGATIONS, THIS AGREEMENT, OR ANY OTHER DOCUMENT CONNECTED HEREWITH, OR ANY TRANSACTION ARISING FROM OR CONNECTED TO ANY OF THE FOREGOING. EACH BUYER, SELLER AND CNH CAPITAL REPRESENTS THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY GIVEN.

**22. Electronic Contracting, Signature Acknowledgment, Future Notices.** Buyer agrees that (i) this Agreement is an electronic agreement executed by Buyer using Buyer's electronic signature or that Assignee may convert this Agreement into an electronic agreement; (ii) Buyer's electronic signature signifies Buyer's intent to enter into this Agreement and that this Agreement shall be a legally valid and enforceable Agreement in accordance with its terms to the same extent as if Buyer had executed this Agreement using Buyer's written signature and (iii) the authoritative copy of this Agreement ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by Assignee for the storage and authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the forgoing, if the Authoritative Copy is converted by printing a paper copy which is marked by Assignee as the original (the "Paper Contract"), then Buyer acknowledges and agrees that (1) your signing of this Agreement with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this Agreement, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, Buyer's duties and Obligations will be evidenced by the Paper Contract alone. By providing your e-mail address and electing to execute this Agreement electronically, Buyer agrees that all future notices, statements and communications relating to this Agreement shall be delivered to the Buyer via e-mail transmission to the e-mail address provided to Assignee by the Buyer. It is the Buyer's duty to provide any changes to Buyer's e-mail address to Assignee so that future communications can reach Buyer in a timely manner.

**OWED TO** details from Trade-In Equipment Section (Address will not print for CNH Capital payoffs)

| IDENTIFICATION NO. (PIN) | PAYOFF DATE | ADDRESS | CITY | STATE | ZIP | PHONE |
|---|---|---|---|---|---|---|
| 1H0S780SVMT815731 | 09-20-2024 | PO BOX 53328 | MADISON | WI | 53705 | |
| YPG253708 | 09-20-2024 | | | | | |
| 1H0S780SPMT815707 | 09-20-2024 | 123 | OMAHA | NE | 12345- | (123) 456-7890 |

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH CAPITAL

# ADDITIONAL SIGNATURE ADDENDUM

F%00000292145622918A0505

061125 / 2783341

In addition to the following Buyer(s) (collectively called "Buyer")

RAGUSE FAMILY PARTNERSHIP

Printed Buyer Name

Printed Buyer Name

the below are also considered a Buyer under the terms of the commercial Retail Installment Sale Contract and Security Agreement (herein the "Agreement") dated September 16, 2024 with Seller TITAN MACHINERY INC. for the purchase of the following goods (the "Equipment").

| NEW OR USED | EQUIPMENT DESCRIPTION | MODEL | IDENTIFICATION NO. (PIN) |
|---|---|---|---|
| NEW | Case IH Combine | 9250 | HAJF9N4NLRG258156 |
| NEW | Case IH Combine | 9250 | HAJF9N4NHRG258191 |
| NEW | Case IH Combine | 8250 | HAJF8N4MKPG253748 |
| | | | |
| | | | |

This Additional Signature Addendum is incorporated by reference into the Agreement. Buyer acknowledges receipt of this Agreement at the time it is executed. Each Buyer herein has received a complete copy of the Agreement, and has read fully all pages of the Agreement, and agrees to all the terms

Executed this 16 day of September, 2024

X [signature]
Signature of Buyer/Buyer's Representative — TRUMAN DEAN RAGUSE (Printed Name) — Partner (Title (not for individual Buyer))

X [signature]
Signature of Buyer/Buyer's Representative — DAVID DEAN RAGUSE (Printed Name) — Partner (Title (not for individual Buyer))

X [signature]
Signature of Buyer/Buyer's Representative — SUSAN EVE RAGUSE (Printed Name) — Partner (Title (not for individual Buyer))

X [signature]
Signature of Seller's Representative

TITAN MACHINERY INC.
Printed Seller Name

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

# EXHIBIT 6-B

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

**Filing Number: 1492873700133**
**Date: 09/19/2024**
**Time: 7:33 AM**
**STATE OF MINNESOTA**
**Office: Office of the Minnesota Secretary of State**

# UCC1 - Original Filing - UCC Financing Statement

**RETURN ACKNOWLEDGEMENT TO:**
Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703
USA

**FILER CONTACT INFORMATION:**
Corporation Service Company
1-800-858-5294
SPRFiling@cscglobal.com

## DEBTOR INFORMATION

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDL NAME(S), INITIAL(S) | | |
|---|---|---|---|---|
| RAGUSE | TRUMAN | DEAN | | |
| **MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 6867 740TH ST | Wheaton | MN | 56296 | USA |

**ORGANIZATION'S NAME**
RAGUSE FAMILY PARTNERSHIP

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 6867 740TH ST. | Wheaton | MN | 56296 | USA |

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDL NAME(S), INITIAL(S) | | |
|---|---|---|---|---|
| RAGUSE | SUSAN | EVE | | |
| **MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 6867 740TH ST | Wheaton | MN | 56296 | USA |

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDL NAME(S), INITIAL(S) | | |
|---|---|---|---|---|
| RAGUSE | DAVID | DEAN | | |
| **MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 6867 740TH ST | Wheaton | MN | 56296 | USA |

## SECURED PARTY INFORMATION

**ORGANIZATION'S NAME**
CNH Industrial Capital America LLC

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5729 Washington Avenue | Racine | WI | 53406 | USA |

## COLLATERAL

2024, Case IH, 9250, Serial No.: HAJF9N4NHRG258191, Combine.
2024, Case IH, 9250, Serial No.: HAJF9N4NLRG258156, Combine.
2024, Case IH, 8250, Serial No.: HAJF8N4MKPG253748, Combine
SECURED CREDITOR ASSERTS A FIRST PRIORITY PURCHASE MONEY SECURITY INTEREST IN THE FOREGOING EQUIPMENT, AND INCLUDING BUT NOT LIMITED TO, ALL ITS IMPROVEMENTS, PARTS, ACCESSORIES, SUBSTITUTIONS, REPLACEMENTS, PRODUCTS, PROCEEDS, INSURANCE PROCEEDS, PREMIUM REFUNDS AND ACCESSIONS. THE EQUIPMENT MAY DISPLAY A SERIAL NUMBER OR OTHER

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

**Filing Number: 1492873700133**

IDENTIFYING NUMBER, INCLUDING BUT NOT LIMITED TO, THE FOLLOWING - PRODUCT IDENTIFICATION NUMBER, TRACTOR NUMBER OR CHASSIS NUMBER..

## ADDITIONAL INFORMATION(IF ANY)

**TRUST DESIGNATION:** No Alternative

**ADDITIONAL FILER REFERENCE DATA:**
2930 31895

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

# EXHIBIT 6-C

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH CAPITAL

# PAYMENT SCHEDULE CHANGE AGREEMENT
## US - RISC

2634720

Customer Number[redacted]
Contract Number:[redacted]

Date: 05/22/2025

Buyer and Co-Buyer (collectively called "Buyer" request CNH Industrial Capital America LLC ("CNH Industrial Capital") to modify the payments due under a certain Retail Installment Sales Contract ("Contract"). Buyer and CNH Industrial Capital agree to modify the payments due under the Contract as provided in this Agreement. All other provisions of the Contract shall remain in full force and effect.

### INSURANCE

**A. Physical Damage Insurance.** Buyer must insure Buyer and CNH Industrial Capital against loss of and physical damage to the Property. CNH Industrial Capital will not provide or obtain insurance for the Buyer as part of this Agreement. **PHYSICAL DAMAGE INSURANCE MAY BE OBTAINED FROM A PERSON OF THE LESSEE'S CHOICE**
If the Contract includes a charge for physical damage insurance, then (check applicable box):

_ CNH Industrial Capital will cancel the insurance and apply any premium refund to the account. To replace the cancelled insurance, Buyer has obtained insurance coverage and will provide proof thereof.

_ The insurance covering the Equipment will remain in effect until . BUYER is required to obtain insurance covering the equipment after and maintain the insurance until the Agreement is paid in full.

X_ Buyer has insurance coverage and will provide proof thereof.

**B. Credit Insurance. CREDIT LIFE INSURANCE AND/OR CREDIT DISABILITY INSURANCE IS NOT REQUIRED AND IS NOT A FACTOR IN CNH INDUSTRIAL CAPITAL'S APPROVAL OF THIS AGREEMENT.** CNH Industrial Capital will not provide or obtain credit life insurance and/or credit disability insurance for the Buyer as part of this Agreement.
If the Contract includes a charge for credit life insurance and/or credit disability insurance, then (check applicable box):

X_ Buyer authorizes CNH Industrial Capital to cancel the insurance and apply any premium refund to the account.

_ The insurance will remain in place until the original maturity of the Contract, any benefits due will be paid in accordance with the original terms of the insurance policy.

| | |
|---|---|
| (1) Remaining Principal Balance | $1,842,817.97 |
| (2) Unpaid Interest Balance | $2,776.85 |
| (3) Interest Rate per Year | 5.00% |
| **If the contract contains a variable interest rate, the rate shown is the rate in effect when this agreement is executed** | |
| (4) Date interest begins Accruing | 5/9/25 |
| (5) Time Price Differential (Finance Charge) | $210,993.65 |
| (6) Time Balance to be Paid (Total (1) + (5) ) | $2,053,811.62 |

Buyer hereby agrees to pay to the order of CNH Industrial Capital the Time Balance (line 6) in accordance with the following schedule.

| NO. OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MMDDYYYY |
|---|---|---|---|
| 1 | ANNUAL | $195418.36 | 08/01/2025 |
| 1 | ANNUAL | $390836.73 | 12/20/2025 |
| 1 | ANNUAL | $390836.73 | 12/20/2026 |
| 1 | ANNUAL | $390836.73 | 12/20/2027 |
| 1 | ANNUAL | $390836.73 | 12/20/2028 |
| 1 | ANNUAL | $295046.34 | 09/20/2029 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

The payment amount may vary from the original Agreement due to a change in the payment schedule and/or insurance premiums.

**This section is intentionally left blank. No signature required.**

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

# **EXHIBIT 7-A**

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH CAPITAL

# RETAIL INSTALLMENT SALE CONTRACT AND SECURITY AGREEMENT
## FIXED RATE

062160 / 2842776

F%000002930179210004A0106

| "Buyer(s)": Legal Name(s) | Address | City | St | Zip Code |
|---|---|---|---|---|
| RAGUSE FAMILY PARTNERSHIP | 6867 740TH ST. | WHEATON | MN | 56296-5504 |

| "Seller": Legal Name | Address | City | St | Zip Code |
|---|---|---|---|---|
| TITAN MACHINERY INC. | 101 THIRD STREET EAST | HERMAN | MN | 56248 |

The undersigned Buyer(s) (collectively called "Buyer") hereby purchases from Seller and Seller hereby sells to Buyer the following goods (the "Equipment") at the Time Sale Price and the terms set forth herein. The Equipment is purchased for commercial ☐ business use ☑ agricultural use.

| NEW*/USED | EQUIPMENT DESCRIPTION | MODEL | IDENTIFICATION NO. (PIN) | "CASH SALE PRICE" |
|---|---|---|---|---|
| NEW | GERINGHOFF Combine Head | Horizon | 1042400231822FB | $398,165.20 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

*New Equipment is unused equipment, a rental unit or a demonstrator, not previously sold, for which the manufacturer will supply all or a portion of a new equipment warranty; this Equipment may have been manufactured in a year prior to the year of this purchase

| TRADE-IN EQUIPMENT | MODEL | IDENTIFICATION NO. (PIN) | ALLOWANCE | AMT. OWED | NET TRADE-IN | OWED TO (Address details Page 4) |
|---|---|---|---|---|---|---|
| See attached Trade-In Addendum | | | | | | |
| | | | | | | |
| | | | | | | |

### STATEMENT OF TRANSACTION

| | | | |
|---|---|---|---|
| 1. Cash Price (Cash Sale Price) | | 1. $ | 398,165.20 |
| 2. Cash Down Payment | $ 10,000.00 | | |
| Net Trade-in Allowance | $ -702.50 | | |
| Manufacturer's Rebate | $ N/A | | |
| Total Down Payment | | 2. $ | 9,297.50 |
| 3. Unpaid Balance of Cash Price (1 minus 2) | | 3. $ | 388,867.70 |
| 4. Other Charges | | | |
| (a) Taxes (Not in Cash Price) | $ N/A | | |
| (b) Official Fees (Filing and Termination) | $ 40.00 | | |
| (c) UCC Service Fee (Filing and Termination) | $ 22.00 | | |
| (d) Administrative Fee | $ 500.00 | | |
| (e) Physical Damage Insurance | $ N/A | | |
| (f) Credit Life Insurance | $ N/A | | |
| (g) Credit Accident & Health Insurance | $ N/A | | |
| (h) Purchased Protection Plan | $ N/A | | |
| (i) Other | $ N/A | | |
| Total Other Charges | | 4. $ | 562.00 |
| 5. Unpaid Balance (Amount Financed) (3+4) | | 5. $ | 389,429.70 |
| 6. INTEREST CHARGE | | 6. $ | 76,735.91 |
| 7. Total of Payments (Time Balance) (5+6) | | 7. $ | 466,165.61 |
| 8. Deferred Payment Price (Time Sale Price) (1+4+6) | | 8. $ | 475,463.11 |

9. The Unpaid Balance (Amount Financed) shall bear an Interest Charge computed at a per annum rate [the **INTEREST RATE**] equal to 7.15 % (this is a *FIXED RATE* contract).

10. Date Interest Rate begins accruing: 10-03-2024

Buyer agrees to pay to the Seller the Time Balance as follows:

| NBR OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MM/DD/YYYY |
|---|---|---|---|
| 1 | 3 MONTHS | $ 77,694.26 | 12/27/2024 |
| 4 | 12 MONTHS | $ 77,694.26 | 12/27/2025 |
| 1 | 9 MONTHS | $ 77,694.31 | 09/27/2029 |

The payments have been calculated to pay in full principal and interest over the term of this Agreement using the Interest Rate in effect on the date of this Agreement, and assuming that all required payments are made in full on the scheduled due dates. The final payment due hereunder shall be recalculated to pay the Obligations in full.

Buyer hereby conveys to Seller all rights, title and interest in the Trade-In Equipment free and clear of all encumbrances except as noted above.

☑ If checked, Seller represents and warrants that the above Amt. Owed has been paid.

Buyer agrees to the terms of the above titled agreement (herein the "Agreement"). Buyer has received and examined the Equipment, which is in good operating order and condition and is as described above. Buyer acknowledges receipt of a copy of this Agreement. Buyer agrees to purchase the Equipment described above and pay the Time Balance based on the terms of this Agreement.

**NOTICE TO THE BUYER:**
1. DO NOT SIGN THIS BEFORE YOU READ THE TERMS ON THE FOUR AGREEMENT PAGES (PLUS ANY ADDENDUMS), EVEN IF OTHERWISE ADVISED.
2. DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
3. YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.
4. BUYER REPRESENTS THAT THE EQUIPMENT IS NOT BEING PURCHASED FOR FAMILY, HOUSEHOLD OR PERSONAL USE.

**ADDITIONAL PROVISIONS CONCERNING RIGHTS AND DUTIES OF THE PARTIES ON THE ADDITIONAL PAGES OF THIS AGREEMENT ARE A PART OF THIS AGREEMENT.**

X [signature] G.P. — RAGUSE FAMILY PARTNERSHIP — Partner — 10-03-2024

Signature of Buyer/Buyer's Representative — Printed Name — Title (not for an individual Buyer) — Date

[signature] — David Raguse Successor Trustee — G.P. — 10/4/2024

Signature of Buyer/Buyer's Representative — Printed Name — Title (not for an individual Buyer) — Date

Dealer (hereinafter "Assignor" or "Seller") hereby assigns all of its rights, title and interest in and to the Agreement and the Equipment to CNH Industrial Capital America LLC (hereinafter "Assignee" or "CNH Capital"), under terms also described in the Retail Finance Agreement, Program Procedures, Dealer Handbook or other related documents (collectively hereinafter the "RFA") executed by the Assignor and Assignee. Seller has obtained a signed credit application for this Agreement. The Equipment has been paid in full or will be paid in full with Agreement proceeds pursuant to the terms of the RFA. Assignor waives notice of acceptance of this Assignment and notice of non-payment and non-performance of the Agreement and any other notices required by law and waives any and all setoffs and counterclaims. This Assignment shall become effective upon delivery of the Agreement to Assignee or upon Assignee's payment of the purchase price thereof, whichever occurs first.

Basis of Acceptance: ☑ Nonrecourse ☐ Repurchase ☐ Full Recourse ☐ Other

Other explanation:

X [signature] — TITAN MACHINERY INC — 10-03-2024

Signature of Seller's Representative — Printed Seller Name — Date

CNH | CAPITAL

062160 / 2842776

# Agreement Provisions

1. **NO WARRANTY. THE EQUIPMENT IS SOLD AS IS AND WITH ALL FAULTS, SUBJECT TO ANY APPLICABLE MANUFACTURER'S EXPRESS, WRITTEN WARRANTY. NEITHER SELLER NOR MANUFACTURER MAKE ANY OTHER REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AND SPECIFICALLY DISCLAIM THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSES.* NEITHER SELLER NOR MANUFACTURER WILL BE LIABLE FOR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM A BREACH OF THE EXPRESS WARRANTY OR ANY IMPLIED WARRANTY IMPOSED BY LAW.***

   ***Some states do not allow these limitations and exclusions, and they shall not apply to the extent such limitations or exclusions are not allowed by applicable state law.**

2. **Prepayments.** Buyer may make a partial prepayment of the unpaid Time Balance at any time, but any partial prepayments will not change or defer Buyer's next scheduled payments.

3. **Late Charges/Default Rate/Returned Checks.** Buyer shall pay a late charge on each payment not paid within 10 days after the due date at the highest amount, both as permitted by applicable law. Buyer shall pay interest on the unpaid balance after maturity (as scheduled, by acceleration or otherwise) at the highest rate, as permitted by applicable law. If a check is returned for any reason, Assignee may charge Buyer a returned check processing fee as established by Assignee from time to time not to exceed the maximum permitted under applicable law. Assignee may apply any payment or proceed received toward the Obligations, in its sole discretion regardless of how requested or directed.

4. **Fees.** All parties to this Agreement acknowledge and agree that some fees and charges scheduled under section 4 in the Statement of Transaction may be shared between the Seller and CNH Capital as permitted by law and may result in profit for the Seller and CNH Capital. The parties further agree that Administrative or Other Fees are reasonable consideration for credit determination, handling, review, and approval of the transaction, and are not a document preparation fee nor an official fee. CNH Capital may make UCC related filings and/or termination statements pursuant to this Agreement CNH Capital reserves its right to assess additional fees and other charges to the Obligations including but not limited to, if fees and other charges increase or other actions are needed to protect its lien upon the Equipment. If any fees and/or other charges scheduled and/or assessed under any part of this Agreement exceed the maximum permitted by applicable law, any excess shall be applied toward a reduction of the principal balance and that shall be the sole and satisfactory remedy under this Agreement.

5. **Extensions and Refinancing.** If Assignee extends, defers or refinances any payments due under this Agreement, Assignee may, at its option, increase the Interest Rate or Interest Charge (herein collectively referred to as the Interest Rate).

6. **Security Interests/Cross Collateralization.** Buyer hereby grants to Seller and its successors and assigns (including Assignee) a first priority purchase money security interest in the Equipment, and in all improvements, parts and accessories belonging to the Equipment, and all substitutions, replacements, products, proceeds (including any insurance proceeds) thereof and premium refunds, refunds of any other charges hereunder and all accessions related to the Equipment (the Equipment and such items are collectively referred to herein as the "Collateral"), to secure payment and performance of all existing and future obligations of Buyer under this Agreement or any other agreement between Buyer and Seller, between Buyer and Assignee or any affiliate of Assignee, or where Buyer, under another agreement in favor of Seller or Assignee, is a guarantor or obligor (the "Obligations"). Loss of or damage to the Equipment shall not release Buyer from any of the Obligations. Upon request, Buyer shall take any action reasonably deemed necessary by Assignee to protect and enforce Assignee's interest in the Collateral or rights under this Agreement. Assignee or Seller is authorized to examine the Collateral wherever located at any reasonable time or times. Buyer authorizes Assignee to insert in this Agreement, or amend any financing statement or title registration documentation to reflect the identification no. (PIN) and/or model numbers of the Equipment if unknown at the time this Agreement is executed and to correct any errors in such numbers or any other errors in the description of the Equipment.

7. **Assignment.** Seller hereby assigns this Agreement, and any guarantee(s) ("Guarantee") hereof (together, "Assignment") to Assignee. Buyer acknowledges that Seller has the right to assign this Agreement and such Guarantee, that all rights and benefits but no obligations (if any) of Seller under this Agreement may be exercised by Assignee and that no obligations (if any) of Seller pass to Assignee. Buyer shall make all payments due under this Agreement directly to Assignee. This Agreement shall be binding on and inure to the benefit of Buyer, Seller and Assignee and their respective heirs, personal representatives, successors and assigns, provided however, that Buyer may not assign its interest in the Collateral, rights, nor its obligations under this Agreement to any person without Assignee's prior written consent. CNH Capital may pay a fee to the Assignor as consideration for the Assignor's assignment of this Agreement to CNH Capital.

8. **Notification of Change in Residence, Principal Office, or Organizational Form.** If Buyer changes (as applicable): (a) its state of principal residence, or (b) the state in which its chief executive office is located; or (c) the state in which it is organized; or (d) its form of organization (such as from an individual to a corporation); or (e) its name, as printed on a State filed registration document or individual name, as printed on a valid driver's license, then Buyer will notify Assignee in writing promptly, but in no event more than 30 days after such change.

9. **Waiver of Defenses Against Assignee; Indemnification.** Buyer will not assert against Assignee any claim or defense which Buyer may have against Seller, the manufacturer of the Equipment, or any other person. Buyer agrees that its obligation to remit payments will not be subject to, and it will not make any claim against Assignee for breach of any representation, warranty or condition with respect to the Equipment and that its obligation to pay Assignee all amounts under this Agreement is absolute and unconditional without abatement, reduction, set-off, counterclaim or interruption for any reason whatsoever, including any dispute which now or hereafter arises between Buyer and Seller or any other person. Time is of the essence. Buyer shall indemnify and hold harmless Seller, Assignee and their respective officers, directors, employees and agents from and against any damage, loss, theft or destruction of the Equipment or any part thereof, and from and against any and all loss, damages, injuries, claims, demands, costs and expenses (including without limitation reasonable attorneys' fees and expenses) of any kind and nature, arising out of or connected with this Agreement or the use, condition (including without limitation, all defects whether or not discoverable by Buyer, Seller or Assignee) or operation of the Equipment or any part thereof. Buyer shall promptly notify Seller and Assignee in writing of any loss, damage, theft, destruction, injury, claim, demand, cost or expense related to this Agreement or the Equipment of which Buyer has knowledge.

10. **Buyer's Covenants.** Buyer shall: (a) keep the Equipment in the state listed on page 1 of this Agreement and not remove the Equipment from such location, except temporarily in connection with its ordinary use or repair, unless Assignee consents in writing; (b) maintain the Equipment in good condition and repair and not permit its intended function or value to be impaired; (c) keep the Collateral free of all liens, encumbrances and security interests of all persons other than Seller and Assignee; (d) defend the Collateral against all claims and legal proceedings by persons other than Assignee; (e) pay and discharge when due all taxes, fees, levies and other charges upon the Collateral (including all personal property and ad valorem taxes); (f) pay when due all taxes arising from the purchase of the Equipment under this Agreement, excluding any taxes based upon Seller's net income; (g) use the Equipment solely in the conduct of Buyer's business; (h) ensure the Equipment will be used solely within the intended uses of the manufacturer and that manufacturer warranty remains valid; (i) not sell, lease or otherwise dispose of the Equipment nor permit the Equipment to become an accession to other goods or a fixture; and (j) not permit the Equipment to be used in violation of any law, regulation or policy of insurance; and (k) strictly follow the terms on page 1 of this Agreement; (l) perform (at Buyer's expense) all maintenance and repairs necessary to keep the Equipment in as good a condition as when delivered to Buyer, reasonable wear excepted; (m) not permit the Equipment to be used by, or to be in the possession of, anyone other than Buyer or Buyer's employees. Buyer represents and warrants that: (i) each individual executing this Agreement authorized by or on behalf of Buyer has the requisite power and authority to execute this Agreement and all related documents; (ii) Buyer is fully authorized to perform its obligations and consummate the transactions contemplated under this Agreement and related documents; (iii) the execution and delivery of this Agreement and all related documents and the consummation of the transactions under this Agreement have been duly authorized by Buyer; and (iv) this Agreement and all related documents constitute valid and legally binding obligations of Buyer, enforceable against Buyer in accordance with their respective terms

# Agreement Provisions

**11. Insurance.** Buyer shall keep Assignee's interests in the Equipment insured against fire, theft, physical damage and other hazards under policies listing Assignee as Lender's loss payee or as an additional insured, with such provisions, for such amounts (but not less than the unpaid balance outstanding under this Agreement) and by such insurers and terms as shall be satisfactory to Assignee from time to time, and shall furnish to Assignee evidence of such insurance satisfactory to Assignee. Such insurance shall provide at least 30 days' written notice of cancellation, lapse or expiration to Assignee. Buyer assigns (and directs any insurer to pay) to Assignee Buyer's interest in the proceeds of any and all insurance related to the Equipment and any premium refund, and Assignee may, at its option, apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to repair or restore the Equipment. Buyer must make all payments due under this Agreement whether or not the Equipment is insured or underinsured. Assignee is authorized, in the name of Buyer or otherwise, to make, adjust and/or settle claims under any insurance on the Equipment, or cancel the same after the occurrence of an event of default, or set off amounts owed Assignee against any rebates, credits or refunds due Buyer and/or any guarantor. If Buyer purchased physical damage insurance that is financed under this Agreement, Buyer hereby requests and authorizes Seller (provided Seller is properly licensed to do so) or its designee: (a) to arrange physical damage insurance for the benefit of Seller or Assignee and Buyer that covers physical damage to the Equipment; (b) to replace or otherwise modify such insurance as Seller deems appropriate; and (c) to be Buyer's attorney-in-fact to make claim for, receive payment of and execute, endorse and negotiate all documents, checks or drafts received in payment of loss, damage or premium refunds under any insurance. This Agreement includes and hereby incorporates by reference any Insurance Addendum signed in connection with this Agreement.

STATEMENT TO BUYER: THE PHYSICAL DAMAGE INSURANCE PURCHASED UNDER THE TERMS OF THIS AGREEMENT COVERS ONLY LOSS OF OR DAMAGE TO THE EQUIPMENT. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED AS PART OF THE PHYSICAL DAMAGE INSURANCE. BUYER UNDERSTANDS THAT IF INSURANCE IS FINANCED UNDER THIS AGREEMENT, PREPAYMENT OF BUYER'S OBLIGATIONS OR TERMINATION OF THIS AGREEMENT WILL RESULT IN CANCELLATION OF INSURANCE COVERAGE, UNLESS OTHERWISE EXPLICITLY AGREED TO IN WRITING BY ASSIGNEE.

**12. Modifications and Waivers.** This Agreement sets forth the entire understanding among Seller, Assignee and Buyer No modification, amendment or extension of this Agreement and no waiver of any provision of this Agreement shall be valid unless in writing and signed by the parties and a waiver of any default hereunder by Assignee shall not constitute a waiver of any other prior or subsequent default, except that Buyer authorizes Assignee to insert in this Agreement the identification no. (PIN) and/or model number of any Equipment if this information is unknown when this Agreement is executed or to correct any errors in such numbers or any other patent errors in the description of the Equipment.

**13. Authority of Assignee to Perform for Buyer.** If Buyer fails to perform any of Buyer's duties set forth in this Agreement (including, without limitation, the purchase of insurance), Assignee may at its option, in Buyer's name or otherwise, take any such action, including, without limitation, signing Buyer's name or paying any amount so required, and all costs and expenses incurred by Assignee in connection therewith shall form part of the Obligations and shall be payable by Buyer upon demand with interest from the date of payment by Assignee at the highest rate permitted by applicable law.

**14. Default/Cross Default.** Buyer shall be in default under this Agreement, and any other agreement with or assigned to Assignee, if any of the following occurs (each, an "event of default"): (a) Buyer fails to pay when due any of the Obligations, or to perform any covenant or other obligation of Buyer under this Agreement or any other agreement with or assigned to Assignee; (b) Buyer or any guarantor dies, ceases to exist, becomes insolvent or the subject of bankruptcy, insolvency or liquidation proceedings, attempts to or does assign this Agreement or attempts to or does remove, sell, transfer, further encumber, part with possession of or sublet any Equipment; (c) any warranty or representation made by Buyer or any guarantor to induce Seller or Assignee to extend credit to Buyer, under this Agreement or otherwise, is false in any material respect when made; (d) Buyer fails to maintain insurance required hereunder or fails to comply with the requirements of any such insurance; (e) any other event occurs that causes Assignee, in good faith, to consider that payment or performance of the Obligations is impaired or that the Equipment is at risk; (f) the Equipment is impounded or confiscated by any federal, state or local governmental authority; (g) Buyer fails to produce Collateral for inspection within 10 days, upon demand; or (h) Buyer breaches any of the other terms of this Agreement or any other agreement with or assigned to Assignee.

**15. Expenses.** To the extent not prohibited by law, Buyer shall reimburse Seller or Assignee for any expense incurred by Seller or Assignee in protecting, defending or enforcing their rights under this Agreement, including, without limitation, reasonable attorneys' fees and legal expenses and all expenses of taking possession, transporting, holding, repairing, refurbishing, preparing for disposition and disposing of the Collateral, and all expenses and costs incurred in collecting the Obligations, including collection agency fees based on a maximum of 25% of the Obligations, and all shall be part of the Obligations.

**16. Conflict with Law.** Any provision of this Agreement prohibited by applicable law shall be ineffective to the extent of the prohibition without invalidating the remaining portions of this Agreement. The validity, construction and enforcement of this Agreement shall be governed by the laws of the State of the Seller (without regard to conflict of law principles of such State). All terms not otherwise defined have the meanings assigned to them by the applicable Uniform Commercial Code.

**17. Authorization to Execute and File Financing Statements and Lien Documents.** Buyer hereby authorizes Assignee or its designee to execute and file financing statements, and any motor vehicle title, registration and lien notification documentation, and any amendments thereto, on behalf and in the name of Buyer to evidence the security interest in the Collateral granted pursuant to this Agreement. Buyer hereby irrevocably appoints Assignee or its designee as Buyer's agent and attorney-in-fact to sign such instruments on Buyer's behalf and to file them.

**18. Time Price Calculations.** If this is a variable rate contract, the Prime Rate for a given calendar month shall be the rate designated as the "Prime Rate" published in The Wall Street Journal on the twentieth day of the prior calendar month (or on the next day published if not published on the twentieth day). If The Wall Street Journal ceases publication permanently or no longer publishes a "Prime Rate", the Prime Rate shall mean the prime loan rate of any federally chartered bank selected by Assignee. For all contracts the Interest Rate shall never be less than 0%. Interest Rate shall be calculated using a daily rate determined by dividing the annual rate by 365. Buyer shall make all payments in lawful money of the United States of America.

**19. Remedies.** Upon the occurrence of any event of default, Seller or Assignee shall have all rights and remedies provided by the Uniform Commercial Code or any other applicable law and Seller or Assignee may, except where prohibited by law, at its option: (i) declare all Obligations immediately due and payable without notice or demand; (ii) enter onto any premises where the Collateral may be located, take possession of all Collateral, without notice or hearing, and, Buyer or any guarantor, also expressly waives any right to notice or a prior hearing or to require Assignee to post any bond; (iii) render the Equipment unusable; (iv) require Buyer to assemble all Collateral and make it available to Assignee at any convenient place designated by Assignee within 10 days after notice from Assignee; (v) sell (including at wholesale) or otherwise dispose of all Collateral at public or private sale for cash or on credit terms, without notice; and if notice is required by law, ten (10) days' notice to Buyer shall be deemed reasonable notice; and/or (vi) obtain a consumer credit bureau upon any Buyer or any guarantor. All rights and remedies may be exercised by Seller or Assignee either separately or in combination and any action taken by Assignee to recover payment from Buyer of the Obligations shall not limit Assignee's rights with respect to all Collateral. Assignee may apply all proceeds of realization of the Collateral to such part or parts of the Obligations as Assignee may decide. If there is a deficiency, Buyer will pay the amount of the deficiency upon demand. Buyer waives notice of dishonor, presentment and demand as to this Agreement.

CNH | CAPITAL

062160 / 2842776

F%00000293017921004A0406

# Agreement Provisions

**20. Miscellaneous.** In the event that this contract is determined by a court of competent jurisdiction to be characterized as a loan or forbearance agreement, and not a sale, despite the terms and conditions found in this contract, then all parties agree that any interest charges computed and assessed in this contract that are in excess of the maximum allowed interest charges allowed by law shall be applied as a reduction to the principal balance owed on this contract only, and this shall be the agreed upon and satisfactory remedy to all parties. By providing any address, email address or telephone number, including a mobile phone number, either now or in the future to Seller, Assignee, any of Assignee's affiliates or any debt collectors retained by Assignee, Buyer agrees that any of the above may contact Buyer using that address or number, including contact through calls or texts using an automatic dialing and announcing device and prerecorded calls, and that such calls are not "unsolicited" under state or federal law. Any attempted revocation of this consent to contact, if allowable by law, must be made in writing. Buyer acknowledges and agrees that CNH Capital and its third party service providers can access and use telematics data and other information regarding location, maintenance and operation of the Equipment for any lawful purpose, including without limitation, to locate and repossess the Equipment. See https://www.cnhindustrialcapital.com/en_us/Pages/Privacy.aspx for additional details. If a court finds that any part of this Agreement to be invalid or unenforceable, the remainder of this Agreement will remain in effect. All of Assignee's rights shall remain in effect after the expiration or termination of this Agreement. If more than one Buyer is named in the Agreement, the liability of each shall be joint and several. All notices required or permitted hereunder shall be in writing and shall be deemed adequate if sent to the first Buyer on page 1 of the Agreement. The captions and headings of the sections of this Agreement are for convenience only and are not to be used to interpret or define the provisions hereof. Restrictive endorsements on checks or other forms of payment that Buyer sends to Assignee will not change or reduce Buyer's obligations to Assignee. Assignee will not lose any rights if Assignee accepts late or partial payments or delays enforcing its rights under this Agreement. South Dakota Residents: If there are any improprieties in making the loan or in loan practices, you may contact the South Dakota Division of Banking: South Dakota Division of Banking, 1714 Lincoln Ave, Suite 2, Pierre, SD 57501, phone number: (605) 773-3421.

**21. WAIVER OF JURY TRIAL.** EXCEPT IN GEORGIA OR CALIFORNIA OR WHERE OTHERWISE PROHIBITED BY LAW, EACH BUYER, SELLER AND CNH CAPITAL WAIVES ANY AND ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THE OBLIGATIONS, THIS AGREEMENT, OR ANY OTHER DOCUMENT CONNECTED HEREWITH, OR ANY TRANSACTION ARISING FROM OR CONNECTED TO ANY OF THE FOREGOING. EACH BUYER, SELLER AND CNH CAPITAL REPRESENTS THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY GIVEN.

**22. Electronic Contracting, Signature Acknowledgment, Future Notices.** Buyer agrees that (i) this Agreement is an electronic agreement executed by Buyer using Buyer's electronic signature or that Assignee may convert this Agreement into an electronic agreement; (ii) Buyer's electronic signature signifies Buyer's intent to enter into this Agreement and that this Agreement shall be a legally valid and enforceable Agreement in accordance with its terms to the same extent as if Buyer had executed this Agreement using Buyer's written signature and (iii) the authoritative copy of this Agreement ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by Assignee for the storage and authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the forgoing, if the Authoritative Copy is converted by printing a paper copy which is marked by Assignee as the original (the "Paper Contract"), then Buyer acknowledges and agrees that (1) your signing of this Agreement with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this Agreement, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, Buyer's duties and Obligations will be evidenced by the Paper Contract alone. By providing your e-mail address and electing to execute this Agreement electronically, Buyer agrees that all future notices, statements and communications relating to this Agreement shall be delivered to the Buyer via e-mail transmission to the e-mail address provided to Assignee by the Buyer. It is the Buyer's duty to provide any changes to Buyer's e-mail address to Assignee so that future communications can reach Buyer in a timely manner.

**OWED TO** details from Trade-In Equipment Section (Address will not print for CNH Capital payoffs)

| IDENTIFICATION NO. (PIN) | PAYOFF DATE | ADDRESS | CITY | STATE | ZIP | PHONE |
|---|---|---|---|---|---|---|
| 1H00618CCDC765130 | 10-30-2024 | P.O BOX 650215 | DALLAS | TX | 75265 | |
| 1H00618CKDC755153 | 10-30-2024 | P.O BOX 650215 | DALLAS | TX | 75265 | |
| 1H0RD40FJM0815634 | 10-30-2024 | P.O BOX 650215 | DALLAS | TX | 75265 | |
| 1H0RD40FVM0815653 | 10-30-2024 | P.O BOX 650215 | DALLAS | TX | 75265- | |

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH | CAPITAL

# ADDITIONAL SIGNATURE ADDENDUM

F%000002930179229 18A0506

062160 / 2842776

In addition to the following Buyer(s) (collectively called "Buyer")

RAGUSE FAMILY PARTNERSHIP

Printed Buyer Name

Printed Buyer Name

the below are also considered a Buyer under the terms of the commercial Retail Installment Sale Contract and Security Agreement (herein the "Agreement") dated October 03, 2024 with Seller TITAN MACHINERY INC. for the purchase of the following goods (the "Equipment").

| NEW OR USED | EQUIPMENT DESCRIPTION | MODEL | IDENTIFICATION NO. (PIN) |
|---|---|---|---|
| NEW | GERINGHOFF Combine Head | Horizon | 1042400231822FB |
| | | | |
| | | | |
| | | | |
| | | | |

This Additional Signature Addendum is incorporated by reference into the Agreement. Buyer acknowledges receipt of this Agreement at the time it is executed. Each Buyer herein has received a complete copy of the Agreement, and has read fully all pages of the Agreement, and agrees to all the terms.

Executed this 03 day of October, 2024.

| Signature | Printed Name | Title (not for individual Buyer) |
|---|---|---|
| X [signature] Signature of Buyer/Buyer's Representative | SUSAN EVE RAGUSE | Partner |
| X [signature] Signature of Buyer/Buyer's Representative | TRUMAN DEAN RAGUSE | Partner |
| X [signature] Signature of Buyer/Buyer's Representative | DAVID DEAN RAGUSE | Partner |

X [signature]
Signature of Seller's Representative

TITAN MACHINERY INC.
Printed Seller Name

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH CAPITAL

062160 / 2842776

# MULTIPLE TRADE-IN UNIT ADDENDUM

This Multiple Trade-In Unit Addendum is hereby incorporated into the commercial Retail Installment Contract and Security Agreement or Lease Agreement dated October 03, 2024 with Seller TITAN MACHINERY INC. herein the ("Agreement"). Buyer or Lessee acknowledges receipt of this Multiple Trade-In Unit Addendum at the time it is executed, along with a copy of the Agreement and all its pages.

| # | Equipment Description | Model | Identification No. (PIN) | Allowance | Amt. Owed | Net Trade-In | Owed To |
|---|---|---|---|---|---|---|---|
| 1 | John Deer Combine Head | Cornhea | 1H00618CCDC765130 | $ 70,103.50 | $ 80,000.00 | $ -9,896.50 | John Deere |
| 2 | John Deer Combine Head | 618C | 1H00618CKDC755153 | $ 66,944.00 | $ 75,000.00 | $ -8,056.00 | John Deere |
| 3 | John Deer Combine Head | RD40F | 1H0RD40FJM0815634 | $ 100,250.00 | $ 95,000.00 | $ 5,250.00 | John Deere |
| 4 | John Deer Combine Head | RD40F | 1H0RD40FVM0815653 | $ 107,000.00 | $ 95,000.00 | $ 12,000.00 | John Deere |

Buyer hereby conveys to Seller all rights, title and interest in the Trade-in Equipment free and clear of all encumbrances except as noted above.

☑ If checked, Seller represents and warrants that the above Amt. Owed has been paid.

Executed this 03 day of October 2024.

| Signature of Buyer/Buyer's Representative | Printed Name | Title (not for an individual Buyer) |
|---|---|---|
| X [signature] G.P. | RAGUSE FAMILY PARTNERSHIP | Partner |
| X [signature] | SUSAN EVE RAGUSE | Partner |
| X [signature] | TRUMAN DEAN RAGUSE | Partner |
| [signature] | DAVID DEAN RAGUSE | Partner |

X [signature]
Signature of Seller's Representative

TITAN MACHINERY INC
Printed Seller Name

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

# <u>EXHIBIT 7-B</u>

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

**Filing Number: 1499984800638**
**Date: 10/08/2024**
**Time: 7:11 AM**
**STATE OF MINNESOTA**
**Office: Office of the Minnesota Secretary of State**

# UCC1 - Original Filing - UCC Financing Statement

**RETURN ACKNOWLEDGEMENT TO:**
Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703
USA

**FILER CONTACT INFORMATION:**
Corporation Service Company
1-800-858-5294
SPRFiling@cscglobal.com

## DEBTOR INFORMATION

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDL NAME(S), INITIAL(S) | | |
|---|---|---|---|---|
| RAGUSE | TRUMAN | DEAN | | |
| **MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 6867 740TH ST | Wheaton | MN | 56296 | USA |

**ORGANIZATION'S NAME**
RAGUSE FAMILY PARTNERSHIP

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 6867 740TH ST. | Wheaton | MN | 56296 | USA |

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDL NAME(S), INITIAL(S) | | |
|---|---|---|---|---|
| RAGUSE | DAVID | DEAN | | |
| **MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 6867 740TH ST. | Wheaton | MN | 56296 | USA |

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDL NAME(S), INITIAL(S) | | |
|---|---|---|---|---|
| RAGUSE | SUSAN | EVE | | |
| **MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 6867 740TH ST | Wheaton | MN | 56296 | USA |

## SECURED PARTY INFORMATION

**ORGANIZATION'S NAME**
CNH Industrial Capital America LLC

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5729 Washington Avenue | Racine | WI | 53406 | USA |

## COLLATERAL

2024, Geringhoff, Horizon, Serial No.: 1042400231822FB, Combine Head
SECURED CREDITOR ASSERTS A FIRST PRIORITY PURCHASE MONEY SECURITY INTEREST IN THE FOREGOING EQUIPMENT, AND INCLUDING BUT NOT LIMITED TO, ALL ITS IMPROVEMENTS, PARTS, ACCESSORIES, SUBSTITUTIONS, REPLACEMENTS, PRODUCTS, PROCEEDS, INSURANCE PROCEEDS, PREMIUM REFUNDS AND ACCESSIONS. THE EQUIPMENT MAY DISPLAY A SERIAL NUMBER OR OTHER IDENTIFYING NUMBER, INCLUDING BUT NOT LIMITED TO, THE FOLLOWING - PRODUCT IDENTIFICATION NUMBER, TRACTOR NUMBER OR CHASSIS NUMBER..

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

**Filing Number: 1499984800638**

# ADDITIONAL INFORMATION(IF ANY)

**TRUST DESIGNATION:** No Alternative

**ADDITIONAL FILER REFERENCE DATA:**
2944 04528

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

# **EXHIBIT 7-C**

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH CAPITAL

# PAYMENT SCHEDULE CHANGE AGREEMENT
## US - RISC

2634728

Customer Numbe[redacted]
Contract Number:[redacted]

Date: 05/22/2025

Buyer and Co-Buyer (collectively called "Buyer" request CNH Industrial Capital America LLC ("CNH Industrial Capital") to modify the payments due under a certain Retail Installment Sales Contract ("Contract"). Buyer and CNH Industrial Capital agree to modify the payments due under the Contract as provided in this Agreement. All other provisions of the Contract shall remain in full force and effect.

### INSURANCE

**A. Physical Damage Insurance.** Buyer must insure Buyer and CNH Industrial Capital against loss of and physical damage to the Property. CNH Industrial Capital will not provide or obtain insurance for the Buyer as part of this Agreement. **PHYSICAL DAMAGE INSURANCE MAY BE OBTAINED FROM A PERSON OF THE LESSEE'S CHOICE**
If the Contract includes a charge for physical damage insurance, then (check applicable box):

_ CNH Industrial Capital will cancel the insurance and apply any premium refund to the account. To replace the cancelled insurance, Buyer has obtained insurance coverage and will provide proof thereof.

_ The insurance covering the Equipment will remain in effect until . BUYER is required to obtain insurance covering the equipment after and maintain the insurance until the Agreement is paid in full.

X_ Buyer has insurance coverage and will provide proof thereof.

**B. Credit Insurance. CREDIT LIFE INSURANCE AND/OR CREDIT DISABILITY INSURANCE IS NOT REQUIRED AND IS NOT A FACTOR IN CNH INDUSTRIAL CAPITAL'S APPROVAL OF THIS AGREEMENT.** CNH Industrial Capital will not provide or obtain credit life insurance and/or credit disability insurance for the Buyer as part of this Agreement.
If the Contract includes a charge for credit life insurance and/or credit disability insurance, then (check applicable box):

X_ Buyer authorizes CNH Industrial Capital to cancel the insurance and apply any premium refund to the account.

_ The insurance will remain in place until the original maturity of the Contract, any benefits due will be paid in accordance with the original terms of the insurance policy.

| | |
|---|---|
| (1) Remaining Principal Balance | $367,193.72 |
| (2) Unpaid Interest Balance | $791.23 |
| (3) Interest Rate per Year | 7.15% |
| **If the contract contains a variable interest rate, the rate shown is the rate in effect when this agreement is executed** | |
| (4) Date interest begins Accruing | 5/9/25 |
| (5) Time Price Differential (Finance Charge) | $65,393.59 |
| (6) Time Balance to be Paid (Total (1) + (5) ) | $432,587.31 |

Buyer hereby agrees to pay to the order of CNH Industrial Capital the Time Balance (line 6) in accordance with the following schedule.

| NO. OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MMDDYYYY |
|---|---|---|---|
| 1 | ANNUAL | $116541.05 | 12/27/2025 |
| 1 | ANNUAL | $77694.26 | 12/27/2026 |
| 1 | ANNUAL | $77694.26 | 12/27/2027 |
| 1 | ANNUAL | $77694.26 | 12/27/2028 |
| 1 | ANNUAL | $82963.48 | 09/27/2029 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

The payment amount may vary from the original Agreement due to a change in the payment schedule and/or insurance premiums.

**This section is intentionally left blank. No signature required.**

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

# EXHIBIT 8-A

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH | CAPITAL

# EQUIPMENT OPERATING LEASE AGREEMENT

061827 / 2812235

F\X0000028501912 1009A0107

| "Lessee(s)" Legal Name(s) | Address | City | St | Zip |
|---|---|---|---|---|
| RAGUSE FAMILY PARTNERSHIP | 6867 740TH ST. | WHEATON | MN | 56296-5504 |

| "Lessor" Legal Name | Address | City | St | Zip |
|---|---|---|---|---|
| TITAN MACHINERY INC. | 4001 38TH STREET SW | FARGO | ND | 58104 |

The undersigned Lessee(s) (collectively called "Lessee") hereby leases from Lessor and Lessor hereby leases to Lessee the following goods (the "Equipment") under the terms set forth herein. The Equipment is leased for commercial ☐ business use ☑ agricultural use.

| NEW*/USED | EQUIPMENT DESCRIPTION | MODEL | SERIAL#/PIN | HOURS | "MAX ANN USE" | "EXCESS USE" |
|---|---|---|---|---|---|---|
| NEW | Case Wheel Loader | 721G Z-Bar | JEEN0721EPF256837 | 10.1 | 1000.0 Hrs | $50.00 /Hr |
| | | | | | | |
| | | | | | | |

*New Equipment is unused equipment, a rental unit or a demonstrator, not previously sold, for which the manufacturer will supply all or a portion of a new equipment warranty; this Equipment may have been manufactured in a year prior to the year of this lease.

| Location of Equipment: | Address (if other than Lessee address) | City | St | Zip |
|---|---|---|---|---|

The beginning date of this agreement (the "Agreement" or this "Lease") is 03-29-2024 ("Beginning Date") and the termination date of the Agreement is 04-01-2028 ("Termination Date"). There shall be a security deposit of $ N/A ("Security Deposit") and a purchase option price of $ 91,698.45 ("Purchase Option Price").

Lease Payments: Advance Payment of $ 4,224.26 followed by payments in accordance with the following schedule, PLUS APPLICABLE TAXES.

| NUMBER OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MM/DD/YYYY |
|---|---|---|---|
| 1 | 1 MONTHS | $ 36,470.74 | 05/01/2024 |
| 3 | 12 MONTHS | $ 41,942.13 | 05/01/2025 |
| 1 | 12 MONTHS | $ 41,942.17 | 05/01/2028 |
| | | $ | |
| | | $ | |
| | | $ | |

| NUMBER OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MM/DD/YYYY |
|---|---|---|---|
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |

The "Obligations" shall mean Lessee's responsibility to pay the payments noted in this Lease (the "Lease Payments") and to perform any other existing or future obligations of Lessee to Lessor, or to the Assignee under this Lease or any other agreement between or among Lessee and Assignee, or Lessor or affiliate of Lessor and Assignee.

**LESSEE HAS SELECTED THE EQUIPMENT. THE MANUFACTURER AND ITS REPRESENTATIVES ARE NOT LESSOR'S NOR ASSIGNEE'S AGENTS AND ARE NOT AUTHORIZED TO MODIFY THE TERMS OF THIS LEASE. LESSEE IS AWARE OF THE NAME OF THE MANUFACTURER OF EACH ITEM OF EQUIPMENT AND LESSEE WILL CONTACT EACH MANUFACTURER FOR A DESCRIPTION OF WARRANTY RIGHTS, LIMITATIONS AND DISCLAIMERS. LESSOR MAKES NO WARRANTIES TO LESSEE, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY OR OTHERWISE. LESSOR PROVIDES THE EQUIPMENT TO LESSEE AS-IS. LESSOR, NOR ASSIGNEE, SHALL BE LIABLE FOR SPECIAL, INCIDENTIAL OR CONSEQUENTIAL DAMAGES.***

****Some states do not allow these limitations and exclusions, and they shall not apply to the extent such limitations or exclusions are not allowed by applicable state law.***

Lessee has received and examined the Equipment, which is in good operating order and condition and is as described above. Lessee acknowledges receipt of a copy of this Agreement. Lessee agrees to lease the Equipment described above and based on the terms of this Agreement. The parties intend that this agreement: (a) creates a "Lease" under Section 1-203 of the Uniform Commercial Code ("UCC"); (b) is a "Lease" as defined in Section 2A-103(1)(j) of the UCC and (c) satisfies every element under Section 2A-103(1)(g) of the UCC.

**NOTICE TO THE LESSEE:**

1. DO NOT SIGN THIS BEFORE YOU READ THE TERMS ON THE FIVE AGREEMENT PAGES (PLUS ANY ADDENDUMS), EVEN IF OTHERWISE ADVISED.
2. DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
3. YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.
4. LESSEE REPRESENTS THAT THE EQUIPMENT IS NOT BEING LEASED FOR FAMILY, HOUSEHOLD OR PERSONAL USE.

**ADDITIONAL PROVISIONS CONCERNING RIGHTS AND DUTIES OF THE PARTIES ON THE ADDITIONAL PAGES OF THIS AGREEMENT ARE A PART OF THIS AGREEMENT.**

X [signature] G.P. — Signature of Lessee/Lessee's Representative | RAGUSE FAMILY PARTNERSHIP — Printed Name | Partner — Title (not for an individual Lessee) | 03-29-2024 — Date

X ______ Signature of Lessee/Lessee's Representative | Printed Name | Title (not for an individual Lessee) | Date

Dealer (herein "Assignor" or "Lessor") hereby assigns all of its rights, title and interest in and to this Agreement and the Equipment to CNH Industrial Capital America LLC (herein "Assignee" or "CNH Capital"), under terms also described in the Retail Finance Agreement, Program Procedures, Dealer Handbook or other related documents (collectively hereinafter the "RFA") executed by the Assignor and Assignee. Lessor has obtained a signed credit application for this Agreement. The Equipment has been paid in full to Dealer or will be paid in full with Agreement proceeds pursuant to the terms of the RFA. Assignor waives notice of acceptance of this Assignment and notice of non-payment and non-performance of this Agreement and any other notices required by law and waives any and all setoffs and counterclaims. The Assignment shall become effective upon delivery of this Agreement to Assignee or upon Assignee's payment of the lease price therefor, whichever occurs first.

Basis of Acceptance ☑ Nonrecourse ☐ Repurchase ☐ Full Recourse ☐ Other

Other explanation

X [signature] — Signature of Lessor's Representative | TITAN MACHINERY INC. — Printed Lessor Name | 03-29-2024 — Date

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH | CAPITAL

F%000002850191 21009A0207

;1927 / 2812235

## Agreement Provisions

**Assignment; Conditions to Lease.** Lessor hereby assigns this Agreement, and any related guarantee(s) ("Guarantee") (together collectively the "Assignment") to Assignee. Lessee acknowledges that Lessor has the right to assign this Agreement and such Guarantee, that all rights and benefits but no obligations (if any) of Lessor under this Agreement may be exercised by Assignee and that no obligations (if any) of Lessor pass to Assignee. Lessee shall make all payments due under this Agreement directly to Assignee. This Agreement shall be binding on and inure to the benefit of Lessee, Lessor and Assignee and their respective heirs, personal representatives, successors and assigns; provided, however, that Lessee may not assign its interest in the Equipment or its rights or obligations under this Agreement to any person without Assignee's prior written consent. LESSEE SHALL NOT ASSERT AGAINST CNH INDUSTRIAL CAPITAL AMERICA LLC ANY CLAIM OR DEFENSE WHICH LESSEE MAY HAVE AGAINST THE INITIAL LESSOR (I.E., THE ENTITY APPEARING IN THE TOP OF PAGE 1 OF THIS LEASE. Lessor and Assignee have no obligation to lease the Equipment to Lessee until they receive: (a) a fully executed Agreement; (b) evidence of insurance that complies with the requirements of Assignee; (c) such precautionary financing statements, or other documents, as Lessor deems necessary or appropriate to evidence and/or perfect Lessor's interest in the Equipment in accordance with the applicable UCC or other appropriate law; and (d) such other documents as they may reasonably request. Lessee hereby authorizes Assignee or its designee to execute and file any precautionary financing statements and other public notification documentation, and any amendments thereto describing the Equipment as Lessor deems necessary or appropriate. Lessee hereby irrevocably appoints Assignee or its designee as Lessee's agent and attorney-in-fact to sign such instruments on Lessee's behalf and to file them. CNH Capital may make UCC related filings and/or termination statements pursuant to this Agreement. CNH Capital reserves its right to assess additional fees and other charges to the Obligations including but not limited to, if fees and other charges increase or other actions are needed to protect its lien upon the Equipment.

**Title.** This Agreement is a true lease only (and not a conditional sale). Lessee does not have any right, title or interest in the Equipment, except, so long as no event of default has occurred and is continuing hereunder, the right to use it during the term hereof and, if so indicated, the option to purchase it as provided under this Agreement.

**Late Charges/Default Rate/Returned Checks.** Lessee shall pay a late charge on each payment not paid within 10 days after the due date at the highest amount, both as permitted by applicable law. Lessee shall pay interest on the unpaid balance after maturity (as scheduled, by acceleration or otherwise) and at the highest rate, as permitted by applicable law. If a check is returned for any reason, Assignee may charge Lessee a returned check processing fee as established by Lessor or Assignee from time to time not to exceed the maximum permitted under applicable law. Assignee may apply any payment or proceed received toward the Obligations, in its sole discretion regardless of how requested or directed. Lessee shall make all payments in lawful money of the United States of America. If any fees and/or other charges scheduled and/or assessed under any part of this Agreement exceed the maximum permitted by applicable law, any excess shall be applied toward a reduction of the principal balance and that shall be the sole and satisfactory remedy under this Agreement.

**Notification of Change in Residence, Principal Office, or Organizational Form.** If Lessee changes (as applicable): (a) its state of principal residence; or (b) the state in which its chief executive office is located; or (c) the state in which it is organized; or (d) its form of organization (such as from an individual to a corporation); or (e) its name, as printed on a State filed registration document or individual name, as printed on a valid driver's license, then Lessee will notify Assignee in writing promptly, but in no event more than 30 days after such change.

**Waiver of Defenses; Indemnification.** Lessee shall not assert against Assignee any claim or defense which Lessee might have against Lessor, the manufacturer of the Equipment or any other person. Lessee agrees that its obligation to remit payments will not be subject to, and it will not make any claim against Assignee for breach of any representation, warranty or condition with respect to the Equipment and that its obligation to pay Assignee amounts under this Lease is absolute and unconditional without abatement, reduction, set-off, counterclaim or interruption for any reason whatsoever, including any dispute which now or hereafter arises between Lessee and Lessor or any other person. Time is of the essence. Lessee shall defend and indemnify Lessor and Assignee and its officers, directors, employees, affiliates and agents from and against any damage, loss, theft or destruction of the Equipment or any part thereof, and from and arising out of or connected with this Lease, the use, condition (including without limitation, all defects whether or not discoverable by Lessee or Lessor) or operation of the Equipment or any part thereof. Lessee shall promptly notify Assignee of any loss, damage, theft, destruction, injury, claim, demand, cost or expense related to this Lease or the Equipment. Lessee shall also defend and indemnify Lessor and Assignee and its officers, directors, employees, affiliates and agents from and against all claims, losses and out-of-pocket costs (including attorneys' fees) arising out of: (a) the use (by Lessee, sublessee or any other party) or condition of the Equipment; (b) default by Lessee under the Lease; or (c) the repossession of the Equipment, after default by the Lessee, by the Lessor or the Assignee. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE HEREBY WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERED UPON A LESSEE UNDER ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERED BY ANY OTHER STATUTE OR OTHERWISE, WHICH MAY LIMIT OR MODIFY ANY OF LESSOR'S RIGHTS OR REMEDIES.

**Lessee's Covenants.** Lessee shall: (a) keep the Equipment at the Equipment Location listed on page 1 of this Agreement and not remove the Equipment from such locations, except temporarily in connection with its ordinary use or repair, unless Assignee consents in writing; (b) maintain the Equipment in good condition and repair and not permit its intended function or value to be impaired and Lessee will make sure that the manufacturer's warranty remains valid. Lessee will pay all the costs of performing these obligations; (c) keep the Equipment free of all liens, encumbrances and security interests of all persons other than Lessor and Assignee; (d) defend the Equipment against all claims and legal proceedings by persons other than Assignee; (e) pay and discharge when due all taxes, fees, levies and other charges upon the Equipment; (f) pay when due all taxes arising from the purchase of the Equipment under this Agreement, excluding any taxes based upon Lessor's net income; (g) use the Equipment solely in the conduct of Lessee's business; (h) ensure the Equipment will be used solely within the intended uses of the manufacturer; (i) not sell, lease or otherwise dispose of the Equipment nor permit the Equipment to become an accession to other goods or a fixture; (j) not permit the Equipment to be used in violation of any law, regulation or policy of insurance; (k) strictly follow the terms on page 1 of this Agreement; (l) perform (at Lessee's expense) all maintenance and repairs necessary to keep the Equipment in as good a condition as when delivered to Lessee, reasonable wear excepted; (m) not permit the Equipment to be used by, or to be in the possession of, anyone other than Lessee or Lessee's employees; and (n) timely pay the nonrefundable Obligations from the Beginning Date through the term on the Lease, as set forth on page 1. Lessee represents and warrants that: (i) each individual executing this Agreement authorized by or on behalf of Lessee has the requisite power and authority to execute this Agreement and all related documents; (ii) Lessee is fully authorized to perform its obligations and consummate the transactions contemplated under this Agreement and related documents the execution and delivery of this Agreement and all related documents; (iii) the execution and delivery of this Agreement and all related documents and the consummation of the transactions under this Agreement have been duly authorized by Lessee; and (iv) this Agreement and all related documents constitute valid and legally binding obligations of Lessee, enforceable against Lessee in accordance with their respective terms.

**Insurance.** Lessee shall keep Assignee's interests in the Equipment insured against fire, theft, physical damage and other hazards under policies listing Assignee as Lender's loss payee, with such provisions, for such amounts (but not less than the Termination Value, under this Agreement) and by such insurers and terms as shall be satisfactory to Assignee from time to time, and shall furnish to Assignee evidence of such insurance satisfactory to Assignee. Such insurance shall provide at least 30 days' written notice of cancellation, lapse or expiration to Assignee. Lessee assigns (and directs any insurer to pay) to Assignee Lessee's interest in the proceeds of any and all insurance related to the Equipment and any premium refund, and Assignee may, at its option, apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to repair or restore the Equipment. Lessee must make all payments due under this Agreement whether or not the Equipment is insured or underinsured. Assignee is authorized, in the name of Lessee or otherwise, to make, adjust and/or settle claims under any insurance on the Equipment, or cancel the same after the occurrence of an event of default, or set off amounts owed Assignee against any rebates, credits or refunds due Lessee and/or any guarantor. If Lessee purchased physical damage insurance that is financed under this Agreement, Lessee hereby requests and authorizes Lessor (provided Lessor is properly licensed to do so) or its designee: (a) to arrange physical damage insurance for the benefit of Lessor or Assignee and Lessee that covers physical damage to the Equipment; (b) to replace or otherwise modify such insurance as Lessor deems appropriate; and (c) to be Lessee's attorney-in-fact to make claim for, receive payment of and execute, endorse and negotiate all documents, checks or drafts received in payment of loss, damage or premium refunds under any insurance. This Agreement includes and hereby incorporates by reference any Insurance Addendum signed in connection with this Agreement. STATEMENT TO LESSEE: THE PHYSICAL DAMAGE INSURANCE PURCHASED UNDER THE TERMS OF THIS AGREEMENT COVERS ONLY LOSS OF OR DAMAGE TO THE EQUIPMENT. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED AS PART OF THE PHYSICAL DAMAGE INSURANCE. LESSEE UNDERSTANDS THAT IF INSURANCE IS FINANCED UNDER THIS AGREEMENT, PREPAYMENT OF LESSEE'S OBLIGATIONS OR TERMINATION OF THIS AGREEMENT WILL RESULT IN CANCELLATION OF INSURANCE COVERAGE, UNLESS OTHERWISE EXPLICITLY AGREED TO IN WRITING BY ASSIGNEE.

## Agreement Provisions

. **Liability Insurance.** Lessee shall obtain and maintain, liability insurance from a carrier acceptable to Assignee in such form and subject to such limits as Assignee may reasonably require protecting the interests of Lessee and Assignee against claims for damages or injuries to persons or property caused by the use, condition, holding or operation of the Equipment. Lessor shall ensure that Lessee has liability insurance in place before the lease commences, having minimum coverage of at least $1,000,000.00 total liability per occurrence, with CNH Industrial Capital America LLC named as additional insured.

. **Modifications and Waivers.** This Agreement sets forth the entire understanding among Lessor, Assignee and Lessee. No modification, amendment or extension of this Agreement and no waiver of any provision of this Agreement shall be valid unless in writing and signed by the parties and a waiver of any default hereunder by Assignee shall not constitute a waiver of any other prior or subsequent default, except that Lessee authorizes Assignee to insert in this Agreement the serial number/PIN and/or model number of any Equipment if this information is unknown when this Agreement is executed or to correct any errors in such numbers or any other patent errors in the description of the Equipment.

0. **Taxes.** Lessee agrees to pay all taxes (or reimburse Assignee for any taxes) imposed by any government, political subdivision or taxing authority upon or with respect to: (a) the purchase, ownership, possession, acceptance, relocation, repair, lease, return, sale or use of the Equipment; (b) the Lease Payments or any other payment required under this Agreement; or (c) any of the transactions contemplated by this Agreement. The term "taxes" shall mean any and all fees (including, without limitation, license, documentation, recording and registration fees), taxes (including, without limitation, gross receipts, sales, lease, use, value added, goods and services, property [tangible and intangible], excise and stamp taxes), licenses, levies, duties, assessments or withholdings of any nature whatsoever (together with any and all penalties, fines, additions to tax and interest thereon), except all taxes on or measured by Assignee's net income. Taxes may be included as part of your Lease Payments.

1. **Tax Representations and Indemnification.** As the owner, Assignee shall be entitled to claim all items of deduction, including depreciation, on the Equipment that are consistent with ownership for tax purposes (the "Tax Benefits"). Lessee will not take or omit to take any action which would cause this Agreement not to be treated as a true lease for U.S. federal tax purposes. If Assignee loses the right to claim or is not entitled to claim all or any portion of the Tax Benefits, or if all or any of the Tax Benefits claimed by Lessor are disallowed, recaptured, reduced, or eliminated, or if Assignee originally contemplated after-tax return is adversely affected (a "Loss of Tax Benefits") as a result of: (a) the inaccuracy or falsity of any representation or warranty made by Lessee in this Agreement; (b) Lessee's breach of or failure to perform any covenant or agreement hereunder; or (c) any other act or omission by Lessee, then Lessee shall pay Assignee such amount as shall, in Assignee's reasonable opinion, cause Assignee to receive over the full term of this Agreement the same after-tax return that Assignee would have realized if there had not been a Loss of Tax Benefits (the "Original Net Economic Return"). If, as a result of any change in U.S. federal and/or applicable state income tax law enacted after the date of this Agreement, Lessor shall have a Loss of Tax Benefits, Lessee shall pay Assignee, upon Assignee's request, that amount which will provide Assignee the Original Net Economic Return. Any amounts due hereunder shall be payable at Assignee's election either as supplemental Lease Payments during the remaining term of this Agreement or as a lump sum payable on demand. Neither Lessor, Assignee nor Lessee makes any representation to the other concerning the proper treatment of this Agreement for tax purposes by either party.

2. **Authority of Assignee to Perform for Lessee.** If Lessee fails to perform any of Lessee's duties set forth in this Agreement (including, without limitation, the purchase of insurance), Assignee may at its option, in Lessee's name or otherwise, take any such action, including, without limitation, signing Lessee's name or paying any amount so required, and all costs and expenses incurred by Assignee in connection therewith shall form part of the Obligations and shall be payable by Lessee upon demand with interest from the date of payment by Assignee at the highest rate permitted by applicable law.

3. **Default/Cross Default.** Lessee shall be in default under this Agreement, and any other agreement with or assigned to Assignee, if any of the following occurs (each, an "event of default"): (a) Lessee fails to pay when due any of the Obligations, or to perform any covenant or other obligation of Lessee under this Agreement or any other agreement with or assigned to Assignee; (b) Lessee or any guarantor dies, ceases to exist, becomes insolvent or the subject of bankruptcy, insolvency or liquidation proceedings, attempts to or does assign this Agreement or attempts to or does remove, sell, transfer, further encumber, part with possession of or sublet any Equipment; (c) any warranty or representation made by Lessee or any guarantor to induce Lessor or Assignee to extend credit to Lessee, under this Agreement or otherwise, is false in any material respect when made; (d) Lessee fails to maintain insurance required hereunder or fails to comply with the requirements of any such insurance; (e) any other event occurs that causes Assignee, in good faith, to consider that payment or performance of the Obligations is impaired or that the Equipment is at risk; (f) the Equipment is impounded or confiscated by any federal, state, local governmental authority or third party; (g) Lessee fails to produce Equipment for inspection within 10 days, upon demand; or (h) Lessee breaches any of the other terms of this Agreement or any other agreement with or assigned to Assignee.

4. **Expenses.** To the extent not prohibited by law, Lessee shall reimburse Lessor or Assignee for any expense incurred by Lessor or Assignee in protecting, defending or enforcing their rights under this Agreement, including, without limitation, reasonable attorneys' fees and legal expenses and all expenses of taking possession, transporting, holding, repairing, refurbishing, preparing for disposition and disposing of the Equipment, and all expenses and costs incurred in collecting the Obligations, including collection agency fees based on a maximum of 25% of the Obligations, and all shall be part of the Obligations.

5. **Remedies.** If Lessee is in default, Assignee may terminate this Agreement and/or exercise all other rights and remedies provided by law and by this Agreement, and Lessee will lose all rights to keep the Equipment. Assignee will have the right to take the Equipment, without notice or hearing, and, Lessee or any guarantor also expressly waives any right to notice or a prior hearing or to require Assignee to post any bond. To take it, Lessee consents that Assignee may enter the premises where the Equipment is stored and remove it. Assignee may take any property contained within the Equipment at the time of repossession and hold it for Lessee. Neither the termination of this Agreement nor the repossession of the Equipment by Assignee shall release Lessee from its Obligations under this Agreement. Lessee agrees that Assignee may sell the Equipment (including at wholesale), re-lease it or otherwise dispose of it in a commercially reasonable manner. Lessee agrees to pay Assignee, as liquidated damages for loss of bargain and not as a penalty, an amount equal to: (a) the Termination Value (as hereinafter defined); plus (b) a processing fee ("Processing Fee") equal to the lower of $500.00 or the maximum amount permitted by applicable law. The net proceeds of the disposition of the Equipment by sale or re-lease for the remaining term of lease under this Agreement, shall reduce the Lessee's Obligations pursuant to the preceding sentence. Any costs to Lessor and/or Assignee arising from repossessing the Equipment and/or selling the Equipment and/or re-leasing the Equipment for the remaining term of lease under this Agreement, including, without limitation, reasonable legal fees and costs, shall increase the Lessee's Obligations pursuant to the preceding sentences. Lessee shall remain liable for any deficiency. All Lessees and Guarantors consent to Assignee obtaining credit bureau reports upon them. Any surplus following any disposition of the Equipment shall belong to Assignee. All rights and remedies may be exercised by Assignee either separately or in combination and any action taken by Assignee to recover payment from Lessee of the Obligations shall not limit Assignee's rights with respect to the Equipment. Assignee can apply all proceeds or payments in its discretion.

6. **Excessive Wear and Tear.** All warranty and product improvement programs are to be completed prior to the Termination Date of the lease relating to the Equipment. For purposes of this Agreement, excessive wear and tear shall mean and include any of the following: (a.) Cab/Operator Platform. (a.1) Heavy interior soil or strong odor. (a.2) Unclean condition of the cab. (a.3) Holes, tears or burns on the dash, floor covers, seats, headliners, upholstery or interior. (a.4) Hour Meter: If the hour meter or dash has been tampered with, Assignee has the right to estimate excess hours plus any additional penalties deemed appropriate. (a.5) Seat and/or seat bolts broken. (b.) Exterior. (b.1) Dents larger than 2" in diameter or excessive number of dents. (b.2) Scratches - Any excess scratches to the paint or any one individual scratch that exceeds 8" in length. (b.3) Chips - Any single chip the size of a quarter or larger or multiple smaller chips within 1 square foot. (b.4) Paint - Substandard paint, such as peeling, bubbling or mismatched shades that evidence poor condition in comparison with original paint. (b.5) Rust - Rust holes in the body metal or any rust spots. (b.6) Glass Damage - Any glass that must be replaced due to cracks or missing glass and any windshield damages. (b.7) Frame Damage - All frame damage and substandard frame repairs in addition to modifications made to the frame. (b.8) Blades, Buckets and Other Attachments - Any broken or cracked teeth on any attachments included with the Equipment. (b.9) Tires/Tracks - Any tires/tracks on returned Equipment that have any of the following: are in an unsafe condition, are not matching, non compatible and/or have excessive cuts/cracks/missing chunks or missing/damaged drive lugs, excessive stubble damage, have broken side walls, are not original casings, have improper ballasting, have less than 50% of original tread remaining, or are not of the same size, type, grade or manufacturer (or equivalent-quality manufacturer) as were originally included on the Equipment, then Lessee will be required to pay for the cost of a new tire/track if the above conditions are not met. (b.10) Unclean exterior requiring but not limited to steam cleaning. (b.11) Broken or Inoperable lights. (b.12) Any Mirror damage. (b.13) Bent or broken steps. (b.14) Dented or bent wheel rims. (c.) Mechanical. (c.1) Mechanical - Mechanical components that are missing, broken or unsafe or that do not operate normally. The battery will need to be replaced if the battery is dead upon the delivery of the unit at lease end. (c.2) Equipment - Computer and precision farming/guidance systems or safety or emission control equipment not in proper working order. (c.3) Brakes - Brake drums that are cracked or exceed manufacturer's recommended wear limits, brake linings showing less than 50% remaining wear, or brakes that leak oil or fluid. (c.4) Power Train - Wear on power train assembly that exceeds manufacturer's then-current standards for normal wear (as shown by oil sample analysis). (c.5) Undercarriage - Leaky lubrication seals, improperly tightened/aligned track tension, cracked or broken track shoes or fasteners or drive/idler/roller/bogie wheels, less than 50% of original life remaining on any parts, or any undercarriage components not being of the original size, type, grade or manufacturer. (c.6) Combine threshing components - with less than 50% of original life remaining on any parts. (c.7) Hydraulic System - Any pumps, motors, valves or cylinders not in good operating condition or that fail to meet manufacturer's rated specifications, or hydraulic system exceeds manufacturer's then-current contaminant standards (as shown by oil sample analysis).

## Agreement Provisions

(c.8) Air Filters - Any filters not within manufacturer's specifications. (c.9) Electrical System - Any gauges or fluid indicators that are damaged or do not function, an alternator that fails to operate properly, a battery that fails to hold a charge, or any wire harnesses that are not tied down and kept secure, dry, clean and dust-free. (c.10) Leaks - Any general lubricant, engine coolant, water or A/C leaks that cost in excess of $100 to repair including labor. (c.11)Mufflers/Exhaust Pipes burnt out. (c.12) Damaged or Inoperable horn. (d.) General; Other. (d.1) General - Failure to operate and maintain the Equipment in accordance with the manufacturer's specifications, or use of components, fuels or fluids on or in connection with the Equipment that do not meet manufacturer's standards. (d.2) Other - Any other damage or repair including but not limited to unlawful or unsafe operating conditions, or that make the Equipment either unlawful or unsafe to operate. (d.3) Any missing accessories or attachments. Upon any return of the Equipment, we shall, in our sole discretion, determine the existence of any Excessive Wear and Tear. All repair estimates will be based upon applicable Lessor rates or, if Lessor is unable to estimate and repair such excessive wear and tear, then at rates applicable to another outlet as reasonably selected by Lessor. Your failure to pay the invoiced wear and tear charges and/or to instead, make the required repair at an authorized dealer within 10 days of demand, shall constitute a default under the Agreement.

**Alterations/Repairs.** Lessee will not, without Assignee's prior written consent, affix or install any accessories or attachments to the Equipment nor change it so that it cannot be used by similarly situated lessees. Any improvements, replacements, additions, accessories, or repair parts to the Equipment shall become Assignee's property, free of all liens and encumbrances, and shall be deemed part of the Equipment. The Equipment is, and shall be personal property, even if it or any part of it becomes affixed or attached to real property or any improvement to real property.

**Security Deposit.** The Security Deposit may be applied to any amounts that Lessee fails to pay under this Agreement, including but not limited to damages to the Equipment in Assignment. Lessor will assign this Agreement to CNH Industrial Capital America LLC (herein "Assignee"or "CNH Capital"). Lessee acknowledges that Lessor has the right to assign this Agreement and that all rights and benefits but no obligations (if any) of Lessor under this Agreement may be exercised by any such Assignee and that no obligations (if any) of Lessor pass to Assignee. Upon receipt of notice from Assignee with instructions for payment, Lessee shall make all payments due under this Agreement directly to Assignee. This Agreement shall be binding on and inure to the benefit of Lessee and Lessor and their respective heirs, personal representatives, successors or assigns; provided, however, that Lessee may not assign its obligations under this Agreement to any person without Assignee's prior written consent.

**Risk of Loss.** All risk of loss, theft or damage to the Equipment is assumed by the Lessee, until the Equipment is returned to the Lessor. If the Equipment can be repaired for a cost less than its fair market value, Lessee will repair the Equipment at Lessee's sole expense but damage to the Equipment shall not release Lessee from the Obligations. If the Equipment cannot be so repaired, or is lost, stolen or destroyed, Lessee shall at Assignee's option and written consent either: (a) replace the Equipment at Lessee's sole expense with equivalent equipment of equal or greater value, as determined in the sole discretion of and with the consent of the Assignee and transfer clear title to such replacement equipment to Assignee, whereupon such replacement equipment shall be deemed the Equipment for all purposes of this Agreement; or (b) pay Assignee the Termination Value. Upon payment of the requisite Termination Value, Lessee shall be entitled to retain possession of the affected unit(s) of Equipment. Assignee may, at Assignee's sole option, apply proceeds of insurance, in whole or in part, to repair or comparably replace the Equipment or to satisfy such Termination Value or any of Lessee's Obligations pursuant to this Agreement. The "Termination Value" shall be an amount equal to: (a) any past due, unpaid Lease Payments and any late charges related thereto; plus (b) all remaining Lease Payments hereunder, less any future interest payments embedded therein; plus (c) (i) the Purchase Option Price, or (ii) if no purchase option is granted, the estimated residual value used to calculate the Lease Payments by Assignee; plus (d) any other costs to Lessor and/or Assignee arising from the loss, theft, wear and tear, or damage to the Equipment or from the collection of any amount due under this Lease. In no event shall the Termination Value exceed the maximum amount permitted by applicable law.

**Purchase Option.** So long as no default exists under this Lease and it has not been earlier terminated, Lessee may on the Termination Date, upon at least 90 days, but not more than 180 days, prior written notice to Assignee, purchase all (but not less than all) of the Equipment: (a) if stated dollar amount is provided as the Purchase Option Price, then for that amount together with all applicable taxes and other charges due in connection with such sale and all other amounts due and unpaid under this Lease; or (b) if no Purchase Option Price is identified, then at the fair market value, as determined at Assignee's sole discretion, at the time the Purchase Option is exercised, together with all applicable taxes and other charges due in connection with such sale and all other amounts due and unpaid under this Lease. Lessee's purchase of the Equipment shall be on an AS-IS, WHERE-IS BASIS.

**EARLY RETURN.** IF LESSEE RETURNS THE EQUIPMENT PRIOR TO THE TERMINATION DATE, LESSEE SHALL BE OBLIGATED TO IMMEDIATELY PAY TO LESSOR AN EARLY TERMINATION FEE EQUAL TO 1.0% OF: (A) IF A STATED DOLLAR AMOUNT IS PROVIDED AS THE PURCHASE OPTION PRICE, THEN FOR THAT AMOUNT, TOGETHER WITH ALL UNPAID LEASE PAYMENTS, REMAINING LEASE PAYMENTS, PLUS SEPARATELY, ANY AND ALL OTHER AMOUNTS PROVIDED FOR UNDER THIS LEASE; OR (B) IF NO PURCHASE OPTION PRICE IS IDENTIFIED OR IS STATED AS FMV, THE ESTIMATED RESIDUAL VALUE OF THE EQUIPMENT USED TO CALCULATE THE LEASE PAYMENTS DUE UNDER THE LEASE AS DETERMINED BY ASSIGNEE TOGETHER WITH ALL UNPAID LEASE PAYMENTS, REMAINING LEASE PAYMENTS, AND ALL OTHER AMOUNTS PROVIDED FOR UNDER THIS LEASE. THIS FEE IS IN ADDITION TO THE OTHER OBLIGATIONS OWED BY THE LESSEE TO THE ASSIGNEE.

**Return.** If Lessee does not exercise the purchase option (if any) as provided in this Lease, Lessee shall on the Termination Date or such earlier date of termination of this Lease: (a) at its expense, deliver the Equipment to a location designated by Assignee; (b) pay $400.00 per serial numbered unit to the Lessor as a return fee; and (c) pay all charges incurred by Lessor to repair any excessive wear and tear and for any hours in excess of the Maximum Annual Usage at the Excess Usage Rate. The risk of loss of the Equipment shall remain with Lessee until Assignee accepts the Equipment by executing a written acceptance. Unless and until all the Equipment is returned and accepted, or is otherwise disposed of by written agreement between Assignee, and Lessee, and until all other terms and conditions have been met, the term of the Lease with respect to such Equipment shall continue. This fee is in addition to the other Obligations owed by the Lessee to the Assignee.

**Failure to Return Equipment.** If Lessee does not exercise its option, if any, to purchase the Equipment in accordance with this Agreement and fails to return the Equipment at the termination of this Agreement, due to default or otherwise, then, in addition to any other amounts that may be due to Assignee under this Agreement or under applicable law, Lessee will be liable for a daily amount computed on the basis of the scheduled Lease Payment, if unequal, the highest lease payment will be used.

**Conflict with Law.** Any provision of this Agreement prohibited by applicable law shall be ineffective to the extent of the prohibition without invalidating the remaining portions of this Agreement. The validity, construction and enforcement of this Agreement shall be governed by the laws of the State of the Lessor (without regard to conflict of law principles of such State). All terms not otherwise defined have the meanings assigned to them by the UCC.

**Miscellaneous.** In the event that this contract is determined by a court of competent jurisdiction to be characterized as a loan or forbearance agreement, and not a lease, despite the terms and conditions found in this contract, then all parties agree that any interest charges computed and assessed in this contract that are in excess of the maximum allowed interest charges allowed by law shall be applied as a reduction to the principal balance owed on this contract only, and this shall be the agreed upon and satisfactory remedy to all parties. By providing any address, email address or telephone number, including a mobile phone number, either now or in the future to Lessor, Assignee, any of Assignee's affiliates or any debt collectors retained by Assignee, Lessee agrees that any of the above may contact Lessee using that address or number, including contact through calls or texts using an automatic dialing and announcing device and prerecorded calls, and that such calls are not "unsolicited" under state or federal law. Any attempted revocation of this consent to contact, if allowable by law, must be made in writing. Lessee acknowledges and agrees that CNH Capital and its third party service providers can access and use telematics data and other information regarding location, maintenance and operation of the Equipment for any lawful purpose, including without limitation, to locate and repossess the Equipment. See https://www.cnhindustrialcapital.com/en_us/Pages/Privacy.aspx for additional details. If a court finds that any part of this Agreement to be invalid or unenforceable, the remainder of this Agreement will remain in effect. All of Assignee's rights shall remain in effect after the expiration or termination of this Agreement. If more than one Lessee is named in the Agreement, the liability of each shall be joint and several. All notices required or permitted hereunder shall be in writing and shall be deemed adequate if sent to the first Lessee on the Lease and at its address noted herein or to such other address as such party may have specified in writing by notice as prescribed in this Agreement. The captions and headings of the sections of this Agreement are for convenience only and are not to be used to interpret or define the provisions hereof. Restrictive endorsements on checks or other forms of payment that Lessee sends to Assignee will not change or reduce Lessee's obligations to Assignee. Assignee will not lose any rights if Assignee accepts late or partial payments or delays enforcing its rights under this Agreement. For combine leases, the hours used will be based on separator hours rather than engine hours.

**WAIVER OF JURY TRIAL.** EXCEPT IN GEORGIA OR CALIFORNIA OR WHERE OTHERWISE PROHIBITED BY LAW, EACH LESSEE, LESSOR AND CNH CAPITAL WAIVE ANY AND ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THE OBLIGATIONS, THIS AGREEMENT, OR ANY OTHER DOCUMENT CONNECTED HEREWITH, OR ANY TRANSACTION ARISING FROM OR CONNECTED TO ANY OF THE FOREGOING. EACH LESSEE, LESSOR AND CNH CAPITAL REPRESENT THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY GIVEN.

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH | CAPITAL



## Agreement Provisions

**Additional Waivers.** To the extent permitted by applicable law, Lessee hereby waives any and all rights and remedies conferred upon a Lessee by Sections 2A-508 through 2A-522 of the UCC, including, without limitation, Lessee's rights to: (a) cancel any Lease; (b) repudiate any Lease; (c) reject any Equipment; (d) revoke acceptance of any Equipment; (e) recover damages from Lessor for any breaches of warranty or for any other reason; (f) a security interest in the Equipment in Lessee's possession or control for any reason; (g) deduct from amounts owed all or any part of any claimed damages resulting from Lessor's default, if any, under any Lease; (h) accept partial delivery of the Equipment; (i) "cover" by making any purchase or lease of or contract to purchase or lease Equipment in substitution for those due from Lessor; (j) recover any general, special, incidental or consequential damages for any reason whatsoever; and (k) specific performance, replevin, detinue, sequestration, claim and delivery or the like for any Equipment identified in any Lease. To the extent permitted by applicable law, Lessee also hereby waives any rights now or hereafter conferred by statute or otherwise which may require Lessor to sell, lease or otherwise use any Equipment in mitigation of Lessor's damages as set forth in Section 15 or which may otherwise limit or modify any of Lessor's rights or remedies under Section 15.

**Electronic Contracting, Signature Acknowledgment, Future Notices.** Lessee agrees that (i) this Agreement is an electronic agreement executed by Lessee using Lessee's electronic signature or that Assignee may convert this Agreement into an electronic agreement; (ii) Lessee's electronic signature signifies Lessee's intent to enter into this Agreement and that this Agreement shall be a legally valid and enforceable Agreement in accordance with its terms to the same extent as if Lessee had executed this Agreement using Lessee's written signature and (iii) the authoritative copy of this Agreement ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by Assignee for the storage and authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the forgoing, if the Authoritative Copy is converted by printing a paper copy which is marked by Assignee as the original (the "Paper Contract", then Lessee acknowledges and agrees that (1) your signing of this Agreement with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this Agreement, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, Lessee's duties and Obligations will be evidenced by the Paper Contract alone. By providing your e-mail address and electing to execute this Agreement electronically, Lessee agrees that all future notices, statements and communications relating to this Agreement shall be delivered to the Lessee via e-mail transmission to the e-mail address provided to Assignee by the Lessee. It is the Lessee's duty to provide any changes to Lessee's e-mail address to Assignee so that future communications can reach Lessee in a timely manner.

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH | CAPITAL

# ADDITIONAL SIGNATURE ADDENDUM

F%000002850191231 36A0607

061927 / 2812235

In addition to the following Lessee(s) (collectively called Lessee)

RAGUSE FAMILY PARTNERSHIP

Printed Lessee Name

Printed Lessee Name

the below are also considered a Lessee under the terms of the Lease Agreement (herein the "Agreement") dated March 29, 2024 with Lessor TITAN MACHINERY INC. for the lease of the following goods (the "Equipment").

| NEW OR USED | EQUIPMENT DESCRIPTION | MODEL | SERIAL NUMBER/PIN |
|---|---|---|---|
| NEW | Case Wheel Loader | 721G Z-Bar | JEEN0721EPF256837 |
| | | | |
| | | | |
| | | | |
| | | | |

This Additional Signature Addendum is incorporated by reference into the Agreement. Lessee acknowledges receipt of this Agreement at the time it is executed. Each Lessee herein has received a complete copy of the Agreement, and has read fully all pages of the Agreement.

Executed this 29 day of March, 2024.

X [signature] P.O.A
Signature of Lessee/Lessee's Representative

DAVID DEAN RAGUSE
Printed Name

G.P.
Title (not for individual Lessee)

X [signature] P.O.A
Signature of Lessee/Lessee's Representative

SUSAN EVE RAGUSE
Printed Name

G.P.
Title (not for individual Lessee)

X [signature]
Signature of Lessee/Lessee's Representative

TRUMAN DEAN RAGUSE
Printed Name

G.P.
Title (not for individual Lessee)

X
Signature of Lessor's Representative

TITAN MACHINERY INC.
Printed Lessor Name

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH | CAPITAL

061927 / 2812235

F%000028501912314OA0707

# PURCHASED PROTECTION PLAN ADDENDUM

This is the Purchased Protection Plan Addendum to that certain Lease Agreement dated March 29, 2024 between the Lessee and the Lessor for the Equipment identified therein (herein the "Agreement"), into which this Purchased Protection Plan Addendum is hereby incorporated. If the price of a Purchased Protection Plan is financed under the Agreement, Lessee understands that a portion of the price may be paid to Lessor, to Lessor's designee or to Case New Holland Insurance Agency, LLC as an administrative or marketing fee. Assignee may deliver the Purchased Protection Plan price to Lessor and if Assignee does so, Lessor is solely responsible for remitting payment to the provider. Provider and Lessee agree that they shall not raise any claim, defense or setoff against Assignee if the Lessor fails to remit payment to the provider, unless prohibited by law. Your Dealer may receive certain brand discounts, program funds and incentives (hereafter the "Discounts"), and may elect to use or keep those Discounts, as part of their overall pricing package options presented to you. The Discounts are owned by your Dealer. Some of the cost of your potential Purchased Protection Plan may be paid for by your Dealer, utilizing those Discounts and/or rolled into your lease payment. You may ask your Dealer for additional information concerning the potential separate costs contained in your lease payment of a potential Purchased Protection Plan, prior to executing your lease Agreement. Lessee's electronic signature below indicates Lessee's consent to receive this disclosure statement electronically at the email address provided by Lessee to Lessor. Lessee accepts this disclosure statement in electronic form, and has retained a copy of the disclosure statement electronically or otherwise.

The Purchased Protection Plan is recommended but is not required. The precise protection afforded is subject to the terms, conditions and exclusions of the contract as issued. Purchased Protection Plans are issued by a licensed, independent third party unrelated to CNH Industrial Capital America LLC or Case New Holland Insurance Agency, LLC.

Lessee requests Lessor/Assignee to attempt to obtain a Purchased Protection Plan from a third party provider and to include as part of the Rental Payments the price as shown for the term as shown or for the total machine hours stated in the Purchased Protection Plan contract, whichever occurs first, for the Equipment listed below.

*Where **NEW** plan is shown below the Total Months and Total Machine Hours selected on new equipment plans include the Manufacturer's Base Warranty Period.*

*Where **USED** plan is shown below the Months and Machine Hours selected commence on the used equipment Purchase Protection Plan contract effective date.*

| | PLAN | EQUIPMENT SERIAL/PIN | PRICE | TERM (MONTHS) |
|---|---|---|---|---|
| 1 | NEW | JEEN0721EPF256837 | $7,980.00 | 72 |

Executed this 29 day of March, 2024.

| Signature of Lessee/Lessee's Representative | Printed Name | Title (not for an individual Lessee) |
|---|---|---|
| x [signature] | RAGUSE FAMILY PARTNERSHIP | Partner |
| x [signature] | DAVID DEAN RAGUSE | Partner |
| x [signature] | SUSAN EVE RAGUSE | Partner |
| x [signature] | TRUMAN DEAN RAGUSE | Partner |

23140A Rev. 01/24 Previous editions may not be used.

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

# EXHIBIT 8-B

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

**Filing Number: 1466789300284**
**Date: 04/01/2024**
**Time: 10:50 AM**
**STATE OF MINNESOTA**
**Office: Office of the Minnesota Secretary of State**

# UCC1 - Original Filing - UCC Financing Statement

**RETURN ACKNOWLEDGEMENT TO:**
Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703
USA

**FILER CONTACT INFORMATION:**
Corporation Service Company
1-800-858-5294
SPRFiling@cscglobal.com

## DEBTOR INFORMATION

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDL NAME(S), INITIAL(S) | | |
|---|---|---|---|---|
| RAGUSE | TRUMAN | DEAN | | |
| **MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 6867 740TH ST | Wheaton | MN | 56296 | USA |

**ORGANIZATION'S NAME**
RAGUSE FAMILY PARTNERSHIP

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 6867 740TH ST. | Wheaton | MN | 56296 | USA |

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDL NAME(S), INITIAL(S) | | |
|---|---|---|---|---|
| RAGUSE | DAVID | DEAN | | |
| **MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 6867 740TH ST. | Wheaton | MN | 56296 | USA |

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDL NAME(S), INITIAL(S) | | |
|---|---|---|---|---|
| RAGUSE | SUSAN | EVE | | |
| **MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 6867 740TH ST | Wheaton | MN | 56296 | USA |

## SECURED PARTY INFORMATION

**ORGANIZATION'S NAME**
CNH Industrial Capital America LLC

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5729 Washington Avenue | Racine | WI | 53406 | USA |

## COLLATERAL

2023, Case, 721G Z-Bar, Serial No.: JEEN0721EPF256837, Wheel Loader
THIS FINANCING STATEMENT IS BEING FILED SOLELY AS A PRECAUTION IF, CONTRARY TO THE INTENTION OF THE PARTIES DESCRIBED ABOVE AS LESSEE AND LESSOR, THE TRANSACTION RELATING TO THE PROPERTY DESCRIBED HEREIN IS DEEMED TO BE A SECURITY AGREEMENT RATHER THAN A LEASE WITHIN THE MEANING OF 1-201 (37) OF THE UNIFORM COMMERICAL CODE. THE EQUIPMENT MAY DISPLAY A SERIAL NUMBER OR OTHER IDENTIFYING NUMBER, INCLUDING BUT NOT LIMITED TO, THE FOLLOWING: PRODUCT IDENTIFICATION NUMBER, TRACTOR NUMBER OR CHASSIS

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

**Filing Number: 1466789300284**

NUMBER..

## ADDITIONAL INFORMATION(IF ANY)

**TRUST DESIGNATION:** No Alternative

**ADDITIONAL FILER REFERENCE DATA:**
2797 06907

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

# EXHIBIT 8-C

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH | CAPITAL

# PAYMENT SCHEDULE CHANGE AGREEMENT

Equipment Operating Lease

2527742

Customer Number:
Contract Number:

Date: 30-May-2024

Lessee and Co-Lessee (collectively called "Lessee" request CNH Industrial Capital America LLC ("CNH Industrial Capital") to modify the payments due under a certain Equipment Operating Lease Agreement ("Agreement"). Lessee and CNH Industrial Capital agree to modify the payments due under the Agreement as set forth below. All other provisions of the Agreement shall remain in full force and effect.

## INSURANCE

**A. Physical Damage Insurance.** Lessee must insure Lessee and CNH Industrial Capital against loss of and physical damage to the Property. CNH Industrial Capital will not provide or obtain insurance for the Lessee as part of this Agreement. **PHYSICAL DAMAGE INSURANCE MAY BE OBTAINED FROM A PERSON OF THE LESSEE'S CHOICE.**
If the Agreement includes a charge for physical damage insurance, then (check applicable box):

CNH Industrial Capital will cancel the insurance and apply any premium refund to the account. To replace the cancelled insurance, Lessee has obtained insurance coverage and will provide the proof thereof.
X The insurance covering the Equipment will remain in effect until .
Lessee has insurance coverage and will provide proof thereof.

**B. Credit Insurance. CREDIT LIFE INSURANCE AND/OR CREDIT DISABILITY INSURANCE IS NOT REQUIRED AND IS NOT A FACTOR IN CNH INDUSTRIAL CAPITAL'S APPROVAL OF THIS AGREEMENT.** CNH Industrial Capital will not provide or obtain credit life insurance and/or credit disability insurance for the Lessee as part of this Agreement.

If the Agreement includes a charge for credit life insurance and/or credit disability insurance, then (check applicable box):
_ Lessee authorizes CNH Industrial Capital to cancel the insurance and apply any premium refund to the account.

X The insurance will remain in place until the original maturity of the Agreement, any benefits due will be paid in accordance with the original terms of the insurance policy.

(1) Unpaid Lease Balance $204,239.30
(2) Original ANNUALLY payment amount $36,470.74

**New schedule of Lease Agreement:**

| NO. OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MMDDYYYY |
|---|---|---|---|
| 1 | ANNUAL | $17062.24 | 05/01/2024 |
| 1 | ANNUAL | $9356.73 | 09/01/2024 |
| 1 | ANNUAL | $10051.77 | 12/01/2024 |
| 3 | ANNUAL | $41942.13 | 05/01/2025 |
| 1 | ANNUAL | $41942.17 | 05/01/2028 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

The payment amount may vary from the original Agreement due to a change in the payment schedule and/or insurance premiums, PLUS APPLICABLE TAXES.

**NOTICE TO LESSEE: DAVID DEAN RAGUSE - This section left intentionally blank. No signature required.**
**Once the payment schedule change is complete the Lessee will receive a copy complete with all necessary signatures.**

## CONSENT OF DEALER

The Dealer identified below consents to the payment modification. The Dealer agrees that the payment schedule change shall not release or change in any way the Dealer's obligations under the Agreement.

Seller TITAN MACHINERY INC. By: ____________________ Title

CNH Industrial Capital America LLC

By: ____________________
Print Name: ____________________

Title: COLLECTIONS
Address: PO Box 71264
Philadelphia, PA 19176-6264

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

# **EXHIBIT 8-D**

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH CAPITAL

# PAYMENT SCHEDULE CHANGE AGREEMENT

Equipment Operating Lease

2634738

Customer Numbe[redacted]
Contract Number[redacted]

Date: 22-May-2025

Lessee and Co-Lessee (collectively called "Lessee" request CNH Industrial Capital America LLC ("CNH Industrial Capital") to modify the payments due under a certain Equipment Operating Lease Agreement ("Agreement"). Lessee and CNH Industrial Capital agree to modify the payments due under the Agreement as set forth below. All other provisions of the Agreement shall remain in full force and effect.

**INSURANCE**

**A. Physical Damage Insurance.** Lessee must insure Lessee and CNH Industrial Capital against loss of and physical damage to the Property.
CNH Industrial Capital will not provide or obtain insurance for the Lessee as part of this Agreement. **PHYSICAL DAMAGE INSURANCE MAY BE OBTAINED FROM A PERSON OF THE LESSEE'S CHOICE.**
If the Agreement includes a charge for physical damage insurance, then (check applicable box):

CNH Industrial Capital will cancel the insurance and apply any premium refund to the account. To replace the cancelled insurance, Lessee has obtained insurance coverage and will provide the proof thereof.
X The insurance covering the Equipment will remain in effect until .
Lessee has insurance coverage and will provide proof thereof.

**B. Credit Insurance. CREDIT LIFE INSURANCE AND/OR CREDIT DISABILITY INSURANCE IS NOT REQUIRED AND IS NOT A FACTOR IN CNH INDUSTRIAL CAPITAL'S APPROVAL OF THIS AGREEMENT.** will not provide or obtain credit life insurance and/or credit disability insurance for the Lessee as part of this Agreement.

If the Agreement includes a charge for credit life insurance and/or credit disability insurance, then (check applicable box):
_ Lessee authorizes to cancel the insurance and apply any premium refund to the account.

X The insurance will remain in place until the original maturity of the Agreement, any benefits due will be paid in accordance with the original terms of the insurance policy.

(1) Unpaid Lease Balance $146,797.49
(2) Original ANNUALLY payment amount $41,942.13

**New schedule of Lease Agreement:**

| NO. OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MMDDYYYY |
|---|---|---|---|
| 1 | ANNUAL | $20971.06 | 12/01/2025 |
| 1 | ANNUAL | $41942.13 | 05/01/2026 |
| 1 | ANNUAL | $41942.13 | 05/01/2027 |
| 1 | ANNUAL | $41942.17 | 05/01/2028 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

The payment amount may vary from the original Agreement due to a change in the payment schedule and/or insurance premiums, PLUS APPLICABLE TAXES.

**NOTICE TO LESSEE: RAGUSE FAMILY PARTNERSHIP - This section left intentionally blank. No signature required. Once the payment schedule change is complete the Lessee will receive a copy complete with all necessary signatures.**

**CONSENT OF DEALER**

The Dealer identified below consents to the payment modification. The Dealer agrees that the payment schedule change shall not release or change in any way the Dealer's obligations under the Agreement.

Seller TITAN MACHINERY INC. By: ____________________ Title

CNH Industrial Capital America LLC

By: ______________________________
Print Name: ______________________________

Title: COLLECTIONS
Address: PO Box 63048
Newark, NJ 07101-8065

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

# EXHIBIT 9-A

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH | CAPITAL

# EQUIPMENT OPERATING LEASE AGREEMENT

062160 / 2832642

F%00000290353321009A0107

| "Lessee(s)" Legal Name(s) | Address | City | St | Zip |
|---|---|---|---|---|
| RAGUSE FAMILY PARTNERSHIP | 6867 740TH ST. | WHEATON | MN | 56296-5504 |

| "Lessor" Legal Name | Address | City | St | Zip |
|---|---|---|---|---|
| TITAN MACHINERY INC. | 101 THIRD STREET EAST | HERMAN | MN | 56248 |

The undersigned Lessee(s) (collectively called "Lessee") hereby leases from Lessor and Lessor hereby leases to Lessee the following goods (the "Equipment") under the terms set forth herein. The Equipment is leased for commercial ☐ business use ☑ agricultural use.

| NEW*/USED | EQUIPMENT DESCRIPTION | MODEL | IDENTIFICATION NO. (PIN) | HOURS | "MAX ANN USE" | "EXCESS USE" |
|---|---|---|---|---|---|---|
| NEW | Case IH Puma Tractor | 220 CVX | DBDPU220KRDL51145 | 5.0 | 500.0 Hrs | $70.00 /Hr |
| NEW | Case IH Loader-AG | L117 | YPWLT5036 | N/A | 500.0 Hrs | $70.00 /Hr |
| | | | | | | |

*New Equipment is unused equipment, a rental unit or a demonstrator, not previously sold, for which the manufacturer will supply all or a portion of a new equipment warranty; this Equipment may have been manufactured in a year prior to the year of this lease.

| Location of Equipment: | Address (if other than Lessee address) TITAN | City ELBOW LAKE | St MN | Zip 56531 |
|---|---|---|---|---|

The beginning date of this agreement (the "Agreement" or this "Lease") is 07-31-2024 ("Beginning Date") and the termination date of the Agreement is 08-01-2029 ("Termination Date"). There shall be a security deposit of $ N/A ("Security Deposit") and a purchase option price of $ 181,745.52 ("Purchase Option Price").
Lease Payments: Advance Payment of $ 3,300.00 followed by payments in accordance with the following schedule, PLUS APPLICABLE TAXES.

| NUMBER OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MM/DD/YYYY |
|---|---|---|---|
| 3 | 1 MONTHS | $ 3,300.00 | 09/01/2024 |
| 1 | 1 MONTHS | $ 36,953.53 | 12/01/2024 |
| 3 | 12 MONTHS | $ 36,953.53 | 12/01/2025 |
| 1 | 12 MONTHS | $ 36,953.56 | 12/01/2028 |
| | | $ | |
| | | $ | |

| NUMBER OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MM/DD/YYYY |
|---|---|---|---|
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |

The "Obligations" shall mean Lessee's responsibility to pay the payments noted in this Lease (the "Lease Payments") and to perform any other existing or future obligations of Lessee to Lessor, or to the Assignee under this Lease or any other agreement between or among Lessee and Assignee, or Lessor or affiliate of Lessor and Assignee.

**LESSEE HAS SELECTED THE EQUIPMENT. THE MANUFACTURER AND ITS REPRESENTATIVES ARE NOT LESSOR'S NOR ASSIGNEE'S AGENTS AND ARE NOT AUTHORIZED TO MODIFY THE TERMS OF THIS LEASE. LESSEE IS AWARE OF THE NAME OF THE MANUFACTURER OF EACH ITEM OF EQUIPMENT AND LESSEE WILL CONTACT EACH MANUFACTURER FOR A DESCRIPTION OF WARRANTY RIGHTS, LIMITATIONS AND DISCLAIMERS. LESSOR MAKES NO WARRANTIES TO LESSEE, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY OR OTHERWISE. LESSOR PROVIDES THE EQUIPMENT TO LESSEE AS-IS. LESSOR, NOR ASSIGNEE, SHALL BE LIABLE FOR SPECIAL, INCIDENTIAL OR CONSEQUENTIAL DAMAGES.***

****Some states do not allow these limitations and exclusions, and they shall not apply to the extent such limitations or exclusions are not allowed by applicable state law.***

Lessee has received and examined the Equipment, which is in good operating order and condition and is as described above. Lessee acknowledges receipt of a copy of this Agreement. Lessee agrees to lease the Equipment described above and based on the terms of this Agreement. The parties intend that this agreement: (a) creates a "Lease" under Section 1-203 of the Uniform Commercial Code ("UCC"); (b) is a "Lease" as defined in Section 2A-103(1)(j) of the UCC and (c) satisfies every element under Section 2A-103(1)(g) of the UCC.

**NOTICE TO THE LESSEE:**

1. DO NOT SIGN THIS BEFORE YOU READ THE TERMS ON THE FIVE AGREEMENT PAGES (PLUS ANY ADDENDUMS), EVEN IF OTHERWISE ADVISED.
2. DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
3. YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.
4. LESSEE REPRESENTS THAT THE EQUIPMENT IS NOT BEING LEASED FOR FAMILY, HOUSEHOLD OR PERSONAL USE.

**ADDITIONAL PROVISIONS CONCERNING RIGHTS AND DUTIES OF THE PARTIES ON THE ADDITIONAL PAGES OF THIS AGREEMENT ARE A PART OF THIS AGREEMENT.**

X [signature] | RAGUSE FAMILY PARTNERSHIP | Partner | 07-31-2024
Signature of Lessee/Lessee's Representative | Printed Name | Title (not for an individual Lessee) | Date

X
Signature of Lessee/Lessee's Representative | Printed Name | Title (not for an individual Lessee) | Date

Dealer (herein "Assignor" or "Lessor") hereby assigns all of its rights, title and interest in and to this Agreement and the Equipment to CNH Industrial Capital America LLC (herein "Assignee" or "CNH Capital"), under terms also described in the Retail Finance Agreement, Program Procedures, Dealer Handbook or other related documents (collectively hereinafter the "RFA") executed by the Assignor and Assignee. Lessor has obtained a signed credit application for this Agreement. The Equipment has been paid in full to Dealer or will be paid in full with Agreement proceeds pursuant to the terms of the RFA. Assignor waives notice of acceptance of this Assignment and notice of non-payment and non-performance of this Agreement and any other notices required by law and waives any and all setoffs and counterclaims. The Assignment shall become effective upon delivery of this Agreement to Assignee or upon Assignee's payment of the lease price therefor, whichever occurs first.
Basis of Acceptance ☑ Nonrecourse ☐ Repurchase ☐ Full Recourse ☐ Other

Other explanation

X [signature] | TITAN MACHINERY INC. | 07-31-2024
Signature of Lessor's Representative | Printed Lessor Name | Date

## Agreement Provisions

1. **Assignment; Conditions to Lease.** Lessor hereby assigns this Agreement, and any related guarantee(s) ("Guarantee") (together collectively the "Assignment") to Assignee. Lessee acknowledges that Lessor has the right to assign this Agreement and such Guarantee, that all rights and benefits but no obligations (if any) of Lessor under this Agreement may be exercised by Assignee and that no obligations (if any) of Lessor pass to Assignee. Lessee shall make all payments due under this Agreement directly to Assignee. This Agreement shall be binding on and inure to the benefit of Lessee, Lessor and Assignee and their respective heirs, personal representatives, successors and assigns; provided, however, that Lessee may not assign its interest in the Equipment or its rights or obligations under this Agreement to any person without Assignee's prior written consent. LESSEE SHALL NOT ASSERT AGAINST CNH INDUSTRIAL CAPITAL AMERICA LLC ANY CLAIM OR DEFENSE WHICH LESSEE MAY HAVE AGAINST THE INITIAL LESSOR (I.E., THE ENTITY APPEARING IN THE TOP OF PAGE 1 OF THIS LEASE. Lessor and Assignee have no obligation to lease the Equipment to Lessee until they receive: (a) a fully executed Agreement; (b) evidence of insurance that complies with the requirements of Assignee; (c) such precautionary financing statements, or other documents, as Lessor deems necessary or appropriate to evidence and/or perfect Lessor's interest in the Equipment in accordance with the applicable UCC or other appropriate law; and (d) such other documents as they may reasonably request. Lessee hereby authorizes Assignee or its designee to execute and file any precautionary financing statements and other public notification documentation, and any amendments thereto describing the Equipment as Lessor deems necessary or appropriate. Lessee hereby irrevocably appoints Assignee or its designee as Lessee's agent and attorney-in-fact to sign such instruments on Lessee's behalf and to file them. CNH Capital may make UCC related filings and/or termination statements pursuant to this Agreement. CNH Capital reserves its right to assess additional fees and other charges to the Obligations including but not limited to, if fees and other charges increase or other actions are needed to protect its lien upon the Equipment.

2. **Title.** This Agreement is a true lease only (and not a conditional sale). Lessee does not have any right, title or interest in the Equipment, except, so long as no event of default has occurred and is continuing hereunder, the right to use it during the term hereof and, if so indicated, the option to purchase it as provided under this Agreement.

3. **Late Charges/Default Rate/Returned Checks.** Lessee shall pay a late charge on each payment not paid within 10 days after the due date at the highest amount, both as permitted by applicable law. Lessee shall pay interest on the unpaid balance after maturity (as scheduled, by acceleration or otherwise) and at the highest rate, as permitted by applicable law. If a check is returned for any reason, Assignee may charge Lessee a returned check processing fee as established by Lessor or Assignee from time to time not to exceed the maximum permitted under applicable law. Assignee may apply any payment or proceed received toward the Obligations, in its sole discretion regardless of how requested or directed. Lessee shall make all payments in lawful money of the United States of America. If any fees and/or other charges scheduled and/or assessed under any part of this Agreement exceed the maximum permitted by applicable law, any excess shall be applied toward a reduction of the principal balance and that shall be the sole and satisfactory remedy under this Agreement.

4. **Notification of Change in Residence, Principal Office, or Organizational Form.** If Lessee changes (as applicable): (a) its state of principal residence; or (b) the state in which its chief executive office is located; or (c) the state in which it is organized; or (d) its form of organization (such as from an individual to a corporation); or (e) its name, as printed on a State filed registration document or individual name, as printed on a valid driver's license, then Lessee will notify Assignee in writing promptly, but in no event more than 30 days after such change.

5. **Waiver of Defenses; Indemnification.** Lessee shall not assert against Assignee any claim or defense which Lessee might have against Lessor, the manufacturer of the Equipment or any other person. Lessee agrees that its obligation to remit payments will not be subject to, and it will not make any claim against Assignee for breach of any representation, warranty or condition with respect to the Equipment and that its obligation to pay Assignee amounts under this Lease is absolute and unconditional without abatement, reduction, set-off, counterclaim or interruption for any reason whatsoever, including any dispute which now or hereafter arises between Lessee and Lessor or any other person. Time is of the essence. Lessee shall defend and indemnify Lessor and Assignee and its officers, directors, employees, affiliates and agents from and against any damage, loss, theft or destruction of the Equipment or any part thereof, and from and arising out of or connected with this Lease, the use, condition (including without limitation, all defects whether or not discoverable by Lessee or Lessor) or operation of the Equipment or any part thereof. Lessee shall promptly notify Assignee of any loss, damage, theft, destruction, injury, claim, demand, cost or expense related to this Lease or the Equipment. Lessee shall also defend and indemnify Lessor and Assignee and its officers, directors, employees, affiliates and agents from and against all claims, losses and out-of-pocket costs (including attorneys' fees) arising out of: (a) the use (by Lessee, sublessee or any other party) or condition of the Equipment; (b) default by Lessee under the Lease; or (c) the repossession of the Equipment, after default by the Lessee, by the Lessor or the Assignee. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE HEREBY WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERED UPON A LESSEE UNDER ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERED BY ANY OTHER STATUTE OR OTHERWISE, WHICH MAY LIMIT OR MODIFY ANY OF LESSOR'S RIGHTS OR REMEDIES.

6. **Lessee's Covenants.** Lessee shall: (a) keep the Equipment at the Equipment Location listed on page 1 of this Agreement and not remove the Equipment from such locations, except temporarily in connection with its ordinary use or repair, unless Assignee consents in writing; (b) maintain the Equipment in good condition and repair and not permit its intended function or value to be impaired and Lessee will make sure that the manufacturer's warranty remains valid. Lessee will pay all the costs of performing these obligations; (c) keep the Equipment free of all liens, encumbrances and security interests of all persons other than Lessor and Assignee; (d) defend the Equipment against all claims and legal proceedings by persons other than Assignee; (e) pay and discharge when due all taxes, fees, levies and other charges upon the Equipment; (f) pay when due all taxes arising from the purchase of the Equipment under this Agreement, excluding any taxes based upon Lessor's net income; (g) use the Equipment solely in the conduct of Lessee's business; (h) ensure the Equipment will be used solely within the intended uses of the manufacturer; (i) not sell, lease or otherwise dispose of the Equipment nor permit the Equipment to become an accession to other goods or a fixture; (j) not permit the Equipment to be used in violation of any law, regulation or policy of insurance; (k) strictly follow the terms on page 1 of this Agreement; (l) perform (at Lessee's expense) all maintenance and repairs necessary to keep the Equipment in as good a condition as when delivered to Lessee, reasonable wear excepted; (m) not permit the Equipment to be used by, or to be in the possession of, anyone other than Lessee or Lessee's employees; and (n) timely pay the nonrefundable Obligations from the Beginning Date through the term on the Lease, as set forth on page 1. Lessee represents and warrants that: (I) each individual executing this Agreement authorized by or on behalf of Lessee has the requisite power and authority to execute this Agreement and all related documents; (ii) Lessee is fully authorized to perform its obligations and consummate the transactions contemplated under this Agreement and related documents the execution and delivery of this Agreement and all related documents; (iii) the execution and delivery of this Agreement and all related documents and the consummation of the transactions under this Agreement have been duly authorized by Lessee; and (iv) this Agreement and all related documents constitute valid and legally binding obligations of Lessee, enforceable against Lessee in accordance with their respective terms.

7. **Insurance.** Lessee shall keep Assignee's interests in the Equipment insured against fire, theft, physical damage and other hazards under policies listing Assignee as Lender's loss payee, with such provisions, for such amounts (but not less than the Termination Value, under this Agreement) and by such insurers and terms as shall be satisfactory to Assignee from time to time, and shall furnish to Assignee evidence of such insurance satisfactory to Assignee. Such insurance shall provide at least 30 days' written notice of cancellation, lapse or expiration to Assignee. Lessee assigns (and directs any insurer to pay) to Assignee Lessee's interest in the proceeds of any and all insurance related to the Equipment and any premium refund, and Assignee may, at its option, apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to repair or restore the Equipment. Lessee must make all payments due under this Agreement whether or not the Equipment is insured or underinsured. Assignee is authorized, in the name of Lessee or otherwise, to make, adjust and/or settle claims under any insurance on the Equipment, or cancel the same after the occurrence of an event of default, or set off amounts owed Assignee against any rebates, credits or refunds due Lessee and/or any guarantor. If Lessee purchased physical damage insurance that is financed under this Agreement, Lessee hereby requests and authorizes Lessor (provided Lessor is properly licensed to do so) or its designee: (a) to arrange physical damage insurance for the benefit of Lessor or Assignee and Lessee that covers physical damage to the Equipment; (b) to replace or otherwise modify such insurance as Lessor deems appropriate; and (c) to be Lessee's attorney-in-fact to make claim for, receive payment of and execute, endorse and negotiate all documents, checks or drafts received in payment of loss, damage or premium refunds under any insurance. This Agreement includes and hereby incorporates by reference any Insurance Addendum signed in connection with this Agreement. STATEMENT TO LESSEE: THE PHYSICAL DAMAGE INSURANCE PURCHASED UNDER THE TERMS OF THIS AGREEMENT COVERS ONLY LOSS OF OR DAMAGE TO THE EQUIPMENT. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED AS PART OF THE PHYSICAL DAMAGE INSURANCE. LESSEE UNDERSTANDS THAT IF INSURANCE IS FINANCED UNDER THIS AGREEMENT, PREPAYMENT OF LESSEE'S OBLIGATIONS OR TERMINATION OF THIS AGREEMENT WILL RESULT IN CANCELLATION OF INSURANCE COVERAGE, UNLESS OTHERWISE EXPLICITLY AGREED TO IN WRITING BY ASSIGNEE.

## Agreement Provisions

8. **Liability Insurance.** Lessee shall obtain and maintain, liability insurance from a carrier acceptable to Assignee in such form and subject to such limits as Assignee may reasonably require protecting the interests of Lessee and Assignee against claims for damages or injuries to persons or property caused by the use, condition, holding or operation of the Equipment. Lessor shall ensure that Lessee has liability insurance in place before the lease commences, having minimum coverage of at least $1,000,000.00 total liability per occurrence, with CNH Industrial Capital America LLC named as additional insured.

9. **Modifications and Waivers.** This Agreement sets forth the entire understanding among Lessor, Assignee and Lessee. No modification, amendment or extension of this Agreement and no waiver of any provision of this Agreement shall be valid unless in writing and signed by the parties and a waiver of any default hereunder by Assignee shall not constitute a waiver of any other prior or subsequent default, except that Lessee authorizes Assignee to insert in this Agreement the identification no. (PIN) and/or model number of any Equipment if this information is unknown when this Agreement is executed or to correct any errors in such numbers or any other patent errors in the description of the Equipment.

10. **Taxes.** Lessee agrees to pay all taxes (or reimburse Assignee for any taxes) imposed by any government, political subdivision or taxing authority upon or with respect to: (a) the purchase, ownership, possession, acceptance, relocation, repair, lease, return, sale or use of the Equipment; (b) the Lease Payments or any other payment required under this Agreement; or (c) any of the transactions contemplated by this Agreement. The term "taxes" shall mean any and all fees (including, without limitation, license, documentation, recording and registration fees), taxes (including, without limitation, gross receipts, sales, lease, use, value added, goods and services, property [tangible and intangible], excise and stamp taxes), licenses, levies, duties, assessments or withholdings of any nature whatsoever (together with any and all penalties, fines, additions to tax and interest thereon), except all taxes on or measured by Assignee's net income. Taxes may be included as part of your Lease Payments.

11. **Tax Representations and Indemnification.** As the owner, Assignee shall be entitled to claim all items of deduction, including depreciation, on the Equipment that are consistent with ownership for tax purposes (the "Tax Benefits"). Lessee will not take or omit to take any action which would cause this Agreement not to be treated as a true lease for U.S. federal tax purposes. If Assignee loses the right to claim or is not entitled to claim all or any portion of the Tax Benefits, or if all or any of the Tax Benefits claimed by Lessor are disallowed, recaptured, reduced, or eliminated, or if Assignee originally contemplated after-tax return is adversely affected (a "Loss of Tax Benefits") as a result of: (a) the inaccuracy or falsity of any representation or warranty made by Lessee in this Agreement; (b) Lessee's breach of or failure to perform any covenant or agreement hereunder; or (c) any other act or omission by Lessee, then Lessee shall pay Assignee such amount as shall, in Assignee's reasonable opinion, cause Assignee to receive over the full term of this Agreement the same after-tax return that Assignee would have realized if there had not been a Loss of Tax Benefits (the "Original Net Economic Return"). If, as a result of any change in U.S. federal and/or applicable state income tax law enacted after the date of this Agreement, Lessor shall have a Loss of Tax Benefits, Lessee shall pay Assignee, upon Assignee's request, that amount which will provide Assignee the Original Net Economic Return. Any amounts due hereunder shall be payable at Assignee's election either as supplemental Lease Payments during the remaining term of this Agreement or as a lump sum payable on demand. Neither Lessor, Assignee nor Lessee makes any representation to the other concerning the proper treatment of this Agreement for tax purposes by either party.

12. **Authority of Assignee to Perform for Lessee.** If Lessee fails to perform any of Lessee's duties set forth in this Agreement (including, without limitation, the purchase of insurance), Assignee may at its option, in Lessee's name or otherwise, take any such action, including, without limitation, signing Lessee's name or paying any amount so required, and all costs and expenses incurred by Assignee in connection therewith shall form part of the Obligations and shall be payable by Lessee upon demand with interest from the date of payment by Assignee at the highest rate permitted by applicable law.

13. **Default/Cross Default.** Lessee shall be in default under this Agreement, and any other agreement with or assigned to Assignee, if any of the following occurs (each, an "event of default"): (a) Lessee fails to pay when due any of the Obligations, or to perform any covenant or other obligation of Lessee under this Agreement or any other agreement with or assigned to Assignee; (b) Lessee or any guarantor dies, ceases to exist, becomes insolvent or the subject of bankruptcy, insolvency or liquidation proceedings, attempts to or does assign this Agreement or attempts to or does remove, sell, transfer, further encumber, part with possession of or sublet any Equipment; (c) any warranty or representation made by Lessee or any guarantor to induce Lessor or Assignee to extend credit to Lessee, under this Agreement or otherwise, is false in any material respect when made; (d) Lessee fails to maintain insurance required hereunder or fails to comply with the requirements of any such insurance; (e) any other event occurs that causes Assignee, in good faith, to consider that payment or performance of the Obligations is impaired or that the Equipment is at risk, (f) the Equipment is impounded or confiscated by any federal, state, local governmental authority or third party; (g) Lessee fails to produce Equipment for inspection within 10 days, upon demand; or (h) Lessee breaches any of the other terms of this Agreement or any other agreement with or assigned to Assignee.

14. **Expenses.** To the extent not prohibited by law, Lessee shall reimburse Lessor or Assignee for any expense incurred by Lessor or Assignee in protecting, defending or enforcing their rights under this Agreement, including, without limitation, reasonable attorneys' fees and legal expenses and all expenses of taking possession, transporting, holding, repairing, refurbishing, preparing for disposition and disposing of the Equipment, and all expenses and costs incurred in collecting the Obligations, including collection agency fees based on a maximum of 25% of the Obligations, and all shall be part of the Obligations.

15. **Remedies.** If Lessee is in default, Assignee may terminate this Agreement and/or exercise all other rights and remedies provided by law and by this Agreement, and Lessee will lose all rights to keep the Equipment. Assignee will have the right to take the Equipment, without notice or hearing, and, Lessee or any guarantor also expressly waives any right to notice or a prior hearing or to require Assignee to post any bond. To take it, Lessee consents that Assignee may enter the premises where the Equipment is stored and remove it. Assignee may take any property contained within the Equipment at the time of repossession and hold it for Lessee. Neither the termination of this Agreement nor the repossession of the Equipment by Assignee shall release Lessee from its Obligations under this Agreement. Lessee agrees that Assignee may sell the Equipment (including at wholesale), re-lease it or otherwise dispose of it in a commercially reasonable manner. Lessee agrees to pay Assignee, as liquidated damages for loss of bargain and not as a penalty, an amount equal to: (a) the Termination Value (as hereinafter defined); plus (b) a processing fee ("Processing Fee") equal to the lower of $500.00 or the maximum amount permitted by applicable law. The net proceeds of the disposition of the Equipment by sale or re-lease for the remaining term of lease under this Agreement, shall reduce the Lessee's Obligations pursuant to the preceding sentence. Any costs to Lessor and/or Assignee arising from repossessing the Equipment and/or selling the Equipment and/or re-leasing the Equipment for the remaining term of lease under this Agreement, including, without limitation, reasonable legal fees and costs, shall increase the Lessee's Obligations pursuant to the preceding sentences. Lessee shall remain liable for any deficiency. All Lessees and Guarantors consent to Assignee obtaining credit bureau reports upon them. Any surplus following any disposition of the Equipment shall belong to Assignee. All rights and remedies may be exercised by Assignee either separately or in combination and any action taken by Assignee to recover payment from Lessee of the Obligations shall not limit Assignee's rights with respect to the Equipment. Assignee can apply all proceeds or payments in its discretion.

16. **Excessive Wear and Tear.** All warranty and product improvement programs are to be completed prior to the Termination Date of the lease relating to the Equipment. For purposes of this Agreement, excessive wear and tear shall mean and include any of the following: (a.) Cab/Operator Platform. (a.1) Heavy interior soil or strong odor. (a.2) Unclean condition of the cab. (a.3) Holes, tears or burns on the dash, floor covers, seats, headliners, upholstery or interior. (a.4) Hour Meter - If the hour meter or dash has been tampered with, Assignee has the right to estimate excess hours plus any additional penalties deemed appropriate. (a.5) Seat and/or seat belts broken. (b.) Exterior. (b.1) Dents larger than 2" in diameter or excessive number of dents (b.2) Scratches - Any excess scratches to the paint or any one individual scratch that exceeds 8" in length. (b.3) Chips - Any single chip the size of a quarter or larger or multiple smaller chips within 1 square foot. (b.4) Paint - Substandard paint, such as peeling, bubbling or mismatched shades that evidence poor condition in comparison with original paint. (b.5) Rust - Rust holes in the body metal or any rust spots. (b.6) Glass Damage - Any glass that must be replaced due to cracks or missing glass and any windshield damages. (b.7) Frame Damage - All frame damage and substandard frame repairs in addition to modifications made to the frame. (b.8) Blades, Buckets and Other Attachments - Any broken or cracked teeth on any attachments included with the Equipment. (b.9) Tires/Tracks - Any tires/tracks on returned Equipment that have any of the following: are in an unsafe condition, are not matching, non compatible and/or have excessive cuts/cracks/missing chunks or missing/damaged drive lugs, excessive stubble damage, have broken side walls, are not original casings, have improper ballasting, have less than 50% of original tread remaining, or are not of the same size, type, grade or manufacturer (or equivalent-quality manufacturer) as were originally included on the Equipment, then Lessee will be required to pay for the cost of a new tire/track if the above conditions are not met. (b.10) Unclean exterior requiring but not limited to steam cleaning. (b.11) Broken or inoperable lights. (b.12) Any Mirror damage. (b.13) Bent or broken steps. (b.14) Dented or bent wheel rims. (c.) Mechanical. (c.1) Mechanical - Mechanical components that are missing, broken or unsafe or that do not operate normally. The battery will need to be replaced if the battery is dead upon the delivery of the unit at lease end. (c.2) Equipment - Computer and precision farming/guidance systems or safety or emission control equipment not in proper working order. (c.3) Brakes - Brake drums that are cracked or exceed manufacturer's recommended wear limits, brake linings showing less than 50% remaining wear, or brakes that leak oil or fluid. (c.4) Power Train - Wear on power train assembly that exceeds manufacturer's then-current standards for normal wear (as shown by oil sample analysis). (c.5) Undercarriage - Leaky lubrication seals, improperly tightened/aligned track tension, cracked or broken track shoes or fasteners or drive/idler/roller/bogie wheels, less than 50% of original life remaining on any parts, or any undercarriage components not being of the original size, type, grade or manufacturer. (c. 6) Combine threshing components - with less than 50% of original life remaining on any parts. (c.7) Hydraulic System - Any pumps, motors, valves or cylinders not in good operating condition or that fail to meet manufacturer's rated specifications, or hydraulic system exceeds manufacturer's then-current contaminant standards (as shown by oil sample analysis).

(c.8) Air Filters - Any filters not within manufacturer's specifications. (c.9) Electrical System - Any gauges or fluid indicators that are damaged or do not function, an alternator that fails to operate properly, a battery that fails to hold a charge, or any wire harnesses that are not tied down and kept secure, dry, clean and dust-free. (c.10) Leaks - Any general lubricant, engine coolant, water or A/C leaks that cost in excess of $100 to repair including labor. (c.11)Mufflers/Exhaust Pipes burnt out. (c.12) Damaged or Inoperable horn. (d.) General; Other. (d.1) General - Failure to operate and maintain the Equipment in accordance with the manufacturer's specifications, or use of components, fuels or fluids on or in connection with the Equipment that do not meet manufacturer's standards. (d.2) Other - Any other damage or repair including but not limited to unlawful or unsafe operating conditions, or that make the Equipment either unlawful or unsafe to operate. (d.3) Any missing accessories or attachments. Upon any return of the Equipment, we shall, in our sole discretion, determine the existence of any Excessive Wear and Tear. All repair estimates will be based upon applicable Lessor rates or, if Lessor is unable to estimate and repair such excessive wear and tear, then at rates applicable to another outlet as reasonably selected by Lessor. Your failure to pay the invoiced wear and tear charges and/or to instead, make the required repair at an authorized dealer within 10 days of demand, shall constitute a default under the Agreement.

17. **Alterations/Repairs.** Lessee will not, without Assignee's prior written consent, affix or install any accessories or attachments to the Equipment nor change it so that it cannot be used by similarly situated lessees. Any improvements, replacements, additions, accessories, or repair parts to the Equipment shall become Assignee's property, free of all liens and encumbrances, and shall be deemed part of the Equipment. The Equipment is, and shall be personal property, even if it or any part of it becomes affixed or attached to real property or any improvement to real property.

18. **Security Deposit.** The Security Deposit may be applied to any amounts that Lessee fails to pay under this Agreement, including but not limited to damages to the Equipment in Assignment. Lessor will assign this Agreement to CNH Industrial Capital America LLC (herein "Assignee"or "CNH Capital"). Lessee acknowledges that Lessor has the right to assign this Agreement and that all rights and benefits but no obligations (if any) of Lessor under this Agreement may be exercised by any such Assignee and that no obligations (if any) of Lessor pass to Assignee. Upon receipt of notice from Assignee with instructions for payment, Lessee shall make all payments due under this Agreement directly to Assignee. This Agreement shall be binding on and inure to the benefit of Lessee and Lessor and their respective heirs, personal representatives, successors or assigns; provided, however, that Lessee may not assign its obligations under this Agreement to any person without Assignee's prior written consent.

19. **Risk of Loss.** All risk of loss, theft or damage to the Equipment is assumed by the Lessee, until the Equipment is returned to the Lessor. If the Equipment can be repaired for a cost less than its fair market value, Lessee will repair the Equipment at Lessee's sole expense but damage to the Equipment shall not release Lessee from the Obligations. If the Equipment cannot be so repaired, or is lost, stolen or destroyed. Lessee shall at Assignee's option and written consent either: (a) replace the Equipment at Lessee's sole expense with equivalent equipment of equal or greater value, as determined in the sole discretion of and with the consent of the Assignee and transfer clear title to such replacement equipment to Assignee, whereupon such replacement equipment shall be deemed the Equipment for all purposes of this Agreement; or (b) pay Assignee the Termination Value. Upon payment of the requisite Termination Value, Lessee shall be entitled to retain possession of the affected unit(s) of Equipment. Assignee may, at Assignee's sole option, apply proceeds of insurance, in whole or in part, to repair or comparably replace the Equipment or to satisfy such Termination Value or any of Lessee's Obligations pursuant to this Agreement. The "Termination Value" shall be an amount equal to: (a) any past due, unpaid Lease Payments and any late charges related thereto; plus (b) all remaining Lease Payments hereunder, less any future interest payments embedded therein; plus (c) (i) the Purchase Option Price, or (ii) if no purchase option is granted, the estimated residual value used to calculate the Lease Payments by Assignee; plus (d) any other costs to Lessor and/or Assignee arising from the loss, theft, wear and tear, or damage to the Equipment or from the collection of any amount due under this Lease. In no event shall the Termination Value exceed the maximum amount permitted by applicable law.

20. **Purchase Option.** So long as no default exists under this Lease and it has not been earlier terminated, Lessee may on the Termination Date, upon at least 90 days, but not more than 180 days, prior written notice to Assignee, purchase all (but not less than all) of the Equipment: (a) if stated dollar amount is provided as the Purchase Option Price, then for that amount together with all applicable taxes and other charges due in connection with such sale and all other amounts due and unpaid under this Lease; or (b) if no Purchase Option Price is identified, then at the fair market value, as determined at Assignee's sole discretion, at the time the Purchase Option is exercised, together with all applicable taxes and other charges due in connection with such sale and all other amounts due and unpaid under this Lease. Lessee's purchase of the Equipment shall be on an AS-IS, WHERE-IS BASIS.

21. EARLY RETURN. IF LESSEE RETURNS THE EQUIPMENT PRIOR TO THE TERMINATION DATE, LESSEE SHALL BE OBLIGATED TO IMMEDIATELY PAY TO LESSOR AN EARLY TERMINATION FEE EQUAL TO 1.0% OF: (A) IF A STATED DOLLAR AMOUNT IS PROVIDED AS THE PURCHASE OPTION PRICE, THEN FOR THAT AMOUNT, TOGETHER WITH ALL UNPAID LEASE PAYMENTS, REMAINING LEASE PAYMENTS, PLUS SEPARATELY, ANY AND ALL OTHER AMOUNTS PROVIDED FOR UNDER THIS LEASE; OR (B) IF NO PURCHASE OPTION PRICE IS IDENTIFIED OR IS STATED AS FMV, THE ESTIMATED RESIDUAL VALUE OF THE EQUIPMENT USED TO CALCULATE THE LEASE PAYMENTS DUE UNDER THE LEASE AS DETERMINED BY ASSIGNEE TOGETHER WITH ALL UNPAID LEASE PAYMENTS, REMAINING LEASE PAYMENTS, AND ALL OTHER AMOUNTS PROVIDED FOR UNDER THIS LEASE. THIS FEE IS IN ADDITION TO THE OTHER OBLIGATIONS OWED BY THE LESSEE TO THE ASSIGNEE.

22. **Return.** If Lessee does not exercise the purchase option (if any) as provided in this Lease, Lessee shall on the Termination Date or such earlier date of termination of this Lease: (a) at its expense, deliver the Equipment to a location designated by Assignee; (b) pay $400.00 per unit to the Lessor as a return fee; and (c) pay all charges incurred by Lessor to repair any excessive wear and tear and for any hours in excess of the Maximum Annual Usage at the Excess Usage Rate. The risk of loss of the Equipment shall remain with Lessee until Assignee accepts the Equipment by executing a written acceptance. Unless and until all the Equipment is returned and accepted, or is otherwise disposed of by written agreement between Assignee, and Lessee, and until all other terms and conditions have been met, the term of the Lease with respect to such Equipment shall continue. This fee is in addition to the other Obligations owed by the Lessee to the Assignee.

23. **Failure to Return Equipment.** If Lessee does not exercise its option, if any, to purchase the Equipment in accordance with this Agreement and fails to return the Equipment at the termination of this Agreement, due to default or otherwise, then, in addition to any other amounts that may be due to Assignee under this Agreement or under applicable law, Lessee will be liable for a daily amount computed on the basis of the scheduled Lease Payment, if unequal, the highest lease payment will be used.

24. **Conflict with Law.** Any provision of this Agreement prohibited by applicable law shall be ineffective to the extent of the prohibition without invalidating the remaining portions of this Agreement. The validity, construction and enforcement of this Agreement shall be governed by the laws of the State of the Lessor (without regard to conflict of law principles of such State). All terms not otherwise defined have the meanings assigned to them by the UCC.

25. **Miscellaneous.** In the event that this contract is determined by a court of competent jurisdiction to be characterized as a loan or forbearance agreement, and not a lease, despite the terms and conditions found in this contract, then all parties agree that any interest charges computed and assessed in this contract that are in excess of the maximum allowed interest charges allowed by law shall be applied as a reduction to the principal balance owed on this contract only, and this shall be the agreed upon and satisfactory remedy to all parties. By providing any address, email address or telephone number, including a mobile phone number, either now or in the future to Lessor, Assignee, any of Assignee's affiliates or any debt collectors retained by Assignee, Lessee agrees that any of the above may contact Lessee using that address or number, including contact through calls or texts using an automatic dialing and announcing device and prerecorded calls, and that such calls are not "unsolicited" under state or federal law. Any attempted revocation of this consent to contact, if allowable by law, must be made in writing. Lessee acknowledges and agrees that CNH Capital and its third party service providers can access and use telematics data and other information regarding location, maintenance and operation of the Equipment for any lawful purpose, including without limitation, to locate and repossess the Equipment. See https://www.cnhindustrialcapital.com/en_us/Pages/Privacy.aspx for additional details. If a court finds that any part of this Agreement to be invalid or unenforceable, the remainder of this Agreement will remain in effect. All of Assignee's rights shall remain in effect after the expiration or termination of this Agreement. If more than one Lessee is named in the Agreement, the liability of each shall be joint and several. All notices required or permitted hereunder shall be in writing and shall be deemed adequate if sent to the first Lessee on the Lease and at its address noted herein or to such other address as such party may have specified in writing by notice as prescribed in this Agreement. The captions and headings of the sections of this Agreement are for convenience only and are not to be used to interpret or define the provisions hereof. Restrictive endorsements on checks or other forms of payment that Lessee sends to Assignee will not change or reduce Lessee's obligations to Assignee. Assignee will not lose any rights if Assignee accepts late or partial payments or delays enforcing its rights under this Agreement. For combine leases, the hours used will be based on separator hours rather than engine hours.

26. **WAIVER OF JURY TRIAL.** EXCEPT IN GEORGIA OR CALIFORNIA OR WHERE OTHERWISE PROHIBITED BY LAW, EACH LESSEE, LESSOR AND CNH CAPITAL WAIVE ANY AND ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THE OBLIGATIONS, THIS AGREEMENT, OR ANY OTHER DOCUMENT CONNECTED HEREWITH, OR ANY TRANSACTION ARISING FROM OR CONNECTED TO ANY OF THE FOREGOING. EACH LESSEE, LESSOR AND CNH CAPITAL REPRESENT THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY GIVEN.

## Agreement Provisions

27. **Additional Waivers.** To the extent permitted by applicable law, Lessee hereby waives any and all rights and remedies conferred upon a Lessee by Sections 2A-508 through 2A-522 of the UCC, including, without limitation, Lessee's rights to: (a) cancel any Lease; (b) repudiate any Lease; (c) reject any Equipment; (d) revoke acceptance of any Equipment; (e) recover damages from Lessor for any breaches of warranty or for any other reason; (f) a security interest in the Equipment in Lessee's possession or control for any reason; (g) deduct from amounts owed all or any part of any claimed damages resulting from Lessor's default, if any, under any Lease; (h) accept partial delivery of the Equipment; (i) "cover" by making any purchase or lease of or contract to purchase or lease Equipment in substitution for those due from Lessor; (j) recover any general, special, incidental or consequential damages for any reason whatsoever; and (k) specific performance, replevin, detinue, sequestration, claim and delivery or the like for any Equipment identified in any Lease. To the extent permitted by applicable law, Lessee also hereby waives any rights now or hereafter conferred by statute or otherwise which may require Lessor to sell, lease or otherwise use any Equipment in mitigation of Lessor's damages as set forth in Section 15 or which may otherwise limit or modify any of Lessor's rights or remedies under Section 15.

28. **Electronic Contracting, Signature Acknowledgment, Future Notices.** Lessee agrees that (i) this Agreement is an electronic agreement executed by Lessee using Lessee's electronic signature or that Assignee may convert this Agreement into an electronic agreement; (ii) Lessee's electronic signature signifies Lessee's intent to enter into this Agreement and that this Agreement shall be a legally valid and enforceable Agreement in accordance with its terms to the same extent as if Lessee had executed this Agreement using Lessee's written signature and (iii) the authoritative copy of this Agreement ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by Assignee for the storage and authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the forgoing, if the Authoritative Copy is converted by printing a paper copy which is marked by Assignee as the original (the "Paper Contract", then Lessee acknowledges and agrees that (1) your signing of this Agreement with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this Agreement, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, Lessee's duties and Obligations will be evidenced by the Paper Contract alone. By providing your e-mail address and electing to execute this Agreement electronically, Lessee agrees that all future notices, statements and communications relating to this Agreement shall be delivered to the Lessee via e-mail transmission to the e-mail address provided to Assignee by the Lessee. It is the Lessee's duty to provide any changes to Lessee's e-mail address to Assignee so that future communications can reach Lessee in a timely manner.

Filed in District Court
State of Minnesota
1/09/2025 3:45 PM

CNH | CAPITAL

# ADDITIONAL SIGNATURE ADDENDUM

F%0000029035332313 6A0607

062160 / 2832642

In addition to the following Lessee(s) (collectively called Lessee)

RAGUSE FAMILY PARTNERSHIP
Printed Lessee Name

Printed Lessee Name

the below are also considered a Lessee under the terms of the Lease Agreement (herein the "Agreement") dated July 31, 2024 with Lessor TITAN MACHINERY INC. for the lease of the following goods (the "Equipment").

| NEW OR USED | EQUIPMENT DESCRIPTION | MODEL | IDENTIFICATION NO. (PIN) |
|---|---|---|---|
| NEW | Case IH Puma Tractor | 220 CVX | DBDPU220KRDL51145 |
| NEW | Case IH Loader-AG | L117 | YPWLT5036 |
| | | | |
| | | | |
| | | | |

This Additional Signature Addendum is incorporated by reference into the Agreement. Lessee acknowledges receipt of this Agreement at the time it is executed. Each Lessee herein has received a complete copy of the Agreement, and has read fully all pages of the Agreement.

Executed this 31 day of July, 2024.

X
Signature of Lessee/Lessee's Representative — SUSAN EVE RAGUSE, Printed Name — Partner, Title (not for individual Lessee)

X
Signature of Lessee/Lessee's Representative — TRUMAN DEAN RAGUSE, Printed Name — Partner, Title (not for individual Lessee)

[redacted]
Signature of Lessee/Lessee's Representative — DAVID DEAN RAGUSE, Printed Name — Partner, Title (not for individual Lessee)

X
Signature of Lessor's Representative — TITAN MACHINERY INC., Printed Lessor Name

Filed in District Court
State of Minnesota

CNH CAPITAL

F%000002903533231 40A0707

062160 / 2832642

# PURCHASED PROTECTION PLAN ADDENDUM

This is the Purchased Protection Plan Addendum to that certain Lease Agreement dated July 31, 2024 between the Lessee and the Lessor for the Equipment identified therein (herein the "Agreement"), into which this Purchased Protection Plan Addendum is hereby incorporated. If the price of a Purchased Protection Plan is financed under the Agreement, Lessee understands that a portion of the price may be paid to Lessor, to Lessor's designee or to Case New Holland Insurance Agency, LLC as an administrative or marketing fee. Assignee may deliver the Purchased Protection Plan price to Lessor and if Assignee does so, Lessor is solely responsible for remitting payment to the provider. Provider and Lessee agree that they shall not raise any claim, defense or setoff against Assignee if the Lessor fails to remit payment to the provider, unless prohibited by law. Your Dealer may receive certain brand discounts, program funds and incentives (hereafter the "Discounts"), and may elect to use or keep those Discounts, as part of their overall pricing package options presented to you. The Discounts are owned by your Dealer. Some of the cost of your potential Purchased Protection Plan may be paid for by your Dealer, utilizing those Discounts and/or rolled into your lease payment. You may ask your Dealer for additional information concerning the potential separate costs contained in your lease payment of a potential Purchased Protection Plan, prior to executing your lease Agreement. Lessee's electronic signature below indicates Lessee's consent to receive this disclosure statement electronically at the email address provided by Lessee to Lessor. Lessee accepts this disclosure statement in electronic form, and has retained a copy of the disclosure statement electronically or otherwise.

The Purchased Protection Plan is recommended but is not required. The precise protection afforded is subject to the terms, conditions and exclusions of the contract as issued. Purchased Protection Plans are issued by a licensed, independent third party unrelated to CNH Industrial Capital America LLC or Case New Holland Insurance Agency, LLC.

Lessee requests Lessor/Assignee to attempt to obtain a Purchased Protection Plan from a third party provider and to include as part of the Rental Payments the price as shown for the term as shown or for the total machine hours stated in the Purchased Protection Plan contract, whichever occurs first, for the Equipment listed below.

*Where **NEW** plan is shown below the Total Months and Total Machine Hours selected on new equipment plans include the Manufacturer's Base Warranty Period.*

*Where **USED** plan is shown below the Months and Machine Hours selected commence on the used equipment Purchase Protection Plan contract effective date.*

| | PLAN | IDENTIFICATION NO. (PIN) | PRICE | TERM (MONTHS) |
|---|---|---|---|---|
| 1 | NEW | DBDPU220KRDL51145 | $13,980.00 | 72 |

Executed this 31 day of July, 2024.

| Signature | Printed Name | Title |
|---|---|---|
| X ______ Signature of Lessee/Lessee's Representative | RAGUSE FAMILY PARTNERSHIP | Partner |
| X [signature] Signature of Lessee/Lessee's Representative | SUSAN EVE RAGUSE | Partner |
| X [signature] Signature of Lessee/Lessee's Representative | TRUMAN DEAN RAGUSE | Partner |
| [signature] Signature of Lessee/Lessee's Representative | DAVID DEAN RAGUSE | Partner |

Printed Name; Title (not for an individual Lessee)

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

# EXHIBIT 9-B

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

**Filing Number: 1486215300374**
**Date: 08/08/2024**
**Time: 7:45 AM**
**STATE OF MINNESOTA**
**Office: Office of the Minnesota Secretary of State**

# UCC1 - Original Filing - UCC Financing Statement

**RETURN ACKNOWLEDGEMENT TO:**
Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703
USA

**FILER CONTACT INFORMATION:**
Corporation Service Company
1-800-858-5294
SPRFiling@cscglobal.com

## DEBTOR INFORMATION

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDL NAME(S), INITIAL(S) | | |
|---|---|---|---|---|
| RAGUSE | TRUMAN | DEAN | | |
| **MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 6867 740TH ST | Wheaton | MN | 56296 | USA |

**ORGANIZATION'S NAME**
RAGUSE FAMILY PARTNERSHIP

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 6867 740TH ST. | Wheaton | MN | 56296 | USA |

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDL NAME(S), INITIAL(S) | | |
|---|---|---|---|---|
| RAGUSE | DAVID | DEAN | | |
| **MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 6867 740TH ST. | Wheaton | MN | 56296 | USA |

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDL NAME(S), INITIAL(S) | | |
|---|---|---|---|---|
| RAGUSE | SUSAN | EVE | | |
| **MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 6867 740TH ST | Wheaton | MN | 56296 | USA |

## SECURED PARTY INFORMATION

**ORGANIZATION'S NAME**
CNH Industrial Capital America LLC

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5729 Washington Avenue | Racine | WI | 53406 | USA |

## COLLATERAL

2024, Case IH, 220 CVX, Serial No.: DBDPU220KRDL51145, Puma Tractor.
2024, Case IH, L117, Serial No.: YPWLT5036, Loader-AG
THIS FINANCING STATEMENT IS BEING FILED SOLELY AS A PRECAUTION IF, CONTRARY TO THE INTENTION OF THE PARTIES DESCRIBED ABOVE AS LESSEE AND LESSOR, THE TRANSACTION RELATING TO THE PROPERTY DESCRIBED HEREIN IS DEEMED TO BE A SECURITY AGREEMENT RATHER THAN A LEASE WITHIN THE MEANING OF 1-201 (37) OF THE UNIFORM COMMERICAL CODE. THE EQUIPMENT MAY DISPLAY A SERIAL NUMBER OR OTHER IDENTIFYING NUMBER, INCLUDING BUT NOT

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM



LIMITED TO, THE FOLLOWING: PRODUCT IDENTIFICATION NUMBER, TRACTOR NUMBER OR CHASSIS NUMBER..

## ADDITIONAL INFORMATION(IF ANY)

**TRUST DESIGNATION:** No Alternative

**ADDITIONAL FILER REFERENCE DATA:**
2898 86536

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

# **EXHIBIT 9-C**

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

CNH CAPITAL

# PAYMENT SCHEDULE CHANGE AGREEMENT

Equipment Operating Lease

2634746

Customer Numbe[redacted]
Contract Number:[redacted]

Date: 22-May-2025

Lessee and Co-Lessee (collectively called "Lessee" request CNH Industrial Capital America LLC ("CNH Industrial Capital") to modify the payments due under a certain Equipment Operating Lease Agreement ("Agreement"). Lessee and CNH Industrial Capital agree to modify the payments due under the Agreement as set forth below. All other provisions of the Agreement shall remain in full force and effect.

**INSURANCE**

**A. Physical Damage Insurance.** Lessee must insure Lessee and CNH Industrial Capital against loss of and physical damage to the Property.
CNH Industrial Capital will not provide or obtain insurance for the Lessee as part of this Agreement. **PHYSICAL DAMAGE INSURANCE MAY BE OBTAINED FROM A PERSON OF THE LESSEE'S CHOICE.**
If the Agreement includes a charge for physical damage insurance, then (check applicable box):

CNH Industrial Capital will cancel the insurance and apply any premium refund to the account. To replace the cancelled insurance, Lessee has obtained insurance coverage and will provide the proof thereof.
X The insurance covering the Equipment will remain in effect until .
Lessee has insurance coverage and will provide proof thereof.

**B. Credit Insurance. CREDIT LIFE INSURANCE AND/OR CREDIT DISABILITY INSURANCE IS NOT REQUIRED AND IS NOT A FACTOR IN CNH INDUSTRIAL CAPITAL'S APPROVAL OF THIS AGREEMENT.** will not provide or obtain credit life insurance and/or credit disability insurance for the Lessee as part of this Agreement.

If the Agreement includes a charge for credit life insurance and/or credit disability insurance, then (check applicable box):
_ Lessee authorizes to cancel the insurance and apply any premium refund to the account.

X The insurance will remain in place until the original maturity of the Agreement, any benefits due will be paid in accordance with the original terms of the insurance policy.

(1) Unpaid Lease Balance $164,640.91
(2) Original ANNUALLY payment amount $36,953.53

**New schedule of Lease Agreement:**

| NO. OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MMDDYYYY |
|---|---|---|---|
| 1 | ANNUAL | $53780.29 | 12/01/2025 |
| 2 | ANNUAL | $36953.53 | 12/01/2026 |
| 1 | ANNUAL | $36953.56 | 12/01/2028 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

The payment amount may vary from the original Agreement due to a change in the payment schedule and/or insurance premiums, PLUS APPLICABLE TAXES.

**NOTICE TO LESSEE: RAGUSE FAMILY PARTNERSHIP - This section left intentionally blank. No signature required. Once the payment schedule change is complete the Lessee will receive a copy complete with all necessary signatures.**

**CONSENT OF DEALER**

The Dealer identified below consents to the payment modification. The Dealer agrees that the payment schedule change shall not release or change in any way the Dealer's obligations under the Agreement.

Seller TITAN MACHINERY INC. By: ____________________ Title

CNH Industrial Capital America LLC

By: ______________________________
Print Name:
______________________________

Title: COLLECTIONS
Address: PO Box 63048
Newark, NJ 07101-8065

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

# EXHIBIT 10

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

In addition, CNH must also receive proof of insurance on all the Equipment, unless financed with CNH Capital under the Agreements, as well as the location of all the Equipment. CNH Capital reserves all rights and remedies and has waived no right. There is no oral or written, current forbearance of any kind other than the accommodation set forth above.

CNH Capital does not consent, and the Agreements expressly prohibit, any transfer, pledge, sale, assumption, or similar related action, related in any way to its Agreements or Equipment to any party. No partial payments or selected payoffs, without the expressed written consent of CNH Capital will be valid and honored.

Sincerely,

CNH INDUSTRIAL CAPITAL AMERICA LLC
RITCHIE SMITH
REGIONAL CUSTOMER CONTACT MANAGER
CONTACT NO: 815-466-9672
EMAIL: RITCHIE.SMITH@CNHIND.COM

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

# **EXHIBIT 11**

Filed in District Court
State of Minnesota
4/29/2026 3:45 PM

## *Farmer Lender Mediation*

Case No. M78-715 thru 758 [redacted]
Debtor(s): Raguse Family Partnership, Truman Dean, Susan Eve & David Dean Raguse
Initial Creditor: CNH Industrial Capital America, LLC

### FARMER LENDER MEDIATION FILE CLOSING STATEMENT

_____ **Waiver of Right to Mediation** __X__ **Termination of Mediation Case**

Debtor(s) Raguse Family Partnership, Truman Dean, Susan Eve & David Dean Raguse
6867 740th St
Wheaton, MN 56296-5504

Creditor(s) CNH Industrial Capital America, LLC Attn: Steven Wright
PO Box 63048
Newark, NJ 07101-8065

_____ **Waiver**: Debtor(s) either has/have not filed a timely mediation request OR has withdrawn a mediation request and has waived the right to mandatory mediation on the debt specified in the Creditor Notice of Mediation. If the initiating creditor does not begin a proceeding to enforce the debt within 60 days after the waiver or withdrawal, the debt may again become subject to mediation. Minnesota Statutes, 583.24, Subd.4 (3). This notice is required by Minnesota Statute, Section 583.26, Subd.2 (b), and you may proceed against the agricultural property specified in the Creditor Notice of Mediation served on the Farmer Lender Mediation Program.

__X__ **Termination**: The parties listed above have participated in mandatory mediation under the Farmer-Lender Mediation Act, Minnesota Statute §583.20 *et. seq.* Mandatory mediation is over:

A. _____ No agreement has been reached by the parties to this mediation.

B. _____ The parties have reached agreement which has been or will be reduced to writing by: __________________**

C. __X__ The parties have reached agreement, which has not been reduced to writing.

D. _____ A lack of good faith affidavit has been filed with the Program Director and with the parties to the mediation. If the affidavit has been filed against a creditor, the debtor(s) may request court supervised mandatory mediation.

** If no written objection to the terms of the agreement is filed with mediator and ten days have passed since any creditors having the right to object to the agreement received notice of the agreement OR if the debtor and any creditor(s) signed an agreement allowing the creditor/s to proceed to enforce a debt against agricultural property before the creditor/s' stay was over, five business days have passed since the debtor and the creditor(s) have signed the agreement, and neither the debtor nor the creditor(s) have rescinded the agreement as allowed under the Farmer-Lender Mediation Act, Minnesota Statute §583.26 Subd. 9(c).

** As a result of this mediation a new note #__________ was created. This note is not subject to mediation for a period of 2 years from the date on this termination statement.

Mary Nell Preisler (signature)   Candace Kulzer (signature)   5-12-25

Mary Nell Preisler   Case Mediator   Date

Program Director

(218) 935-5785 Fax: 218-935-9053 preis002@umn.edu