**EXHIBIT A**

weaver
Assurance · Tax · Advisory

June 23, 2026

Mark Speiser
Committee Chair – Official Committee of Unsecured Creditors of Raguse Family Partnership
Archer-Daniels-Midland-Company
4666 Faries Parkway
Decatur, IL 62526

Dear Mark:

This engagement letter confirms that Mark Speiser ("you" and "your"), as Committee Chair for the Official Committee of Unsecured Creditors of Raguse Family Partnership ("Your Client" or "Raguse"), has retained Weaver and Tidwell, L.L.P. ("our", "us", and "we") to provide professional services in relation to the Raguse Family Partnership, et al. Chapter 11 Bankruptcy Filing in the United States Bankruptcy Court, District of Minnesota, Case #26:60308.

We are pleased to confirm our acceptance and our understanding of this engagement by means of this letter.

## Engagement Objective

The objective of our engagement will be to provide financial advisory services in the above-referenced matter. We will communicate regularly with you to receive directions on the specific nature of the services we are to perform and the subject matter of any opinions you wish us to consider.

## Our Responsibilities

In conducting our research or reaching our conclusions, we may rely on representations made by you, Your Client, and others acting on behalf of you and Your Client. If one or more of our professionals is designated as a testifying expert in a discovery response or filings with a court or other tribunal pertaining to this matter, the nature of our services will change to that of a testifying expert witness. Such designation shall only occur with our advance consent, and we will agree with you on the professional to be so designated. Thereafter, you will determine the requirement for any appearance in court or deposition by our professionals. In the unlikely event that a properly-designated individual ceases their association with our firm during the course of this engagement, you may elect to continue this engagement with an alternative individual associated with our firm acceptable to both you and us (if available), to work with the same professional at their new firm or terminate this engagement. Regardless of your decision, you will be responsible for payment for all services we provide in advance of your decision and, so long as our services have been paid for in full, you will be entitled thereafter to access all documentation we prepare as part of this engagement.

Our services will be performed pursuant to applicable professional standards. As part of this engagement, we will not be performing attest services as defined by the American Institute of Certified Public Accountants and therefore these services will not include the compilation, review, or audit of financial records or financial statements.

## Third-Party Service Providers

Depending on the requirements of this engagement, we may use the services of our affiliate, Weaver and Tidwell India LLP, a limited liability partnership incorporated in India, or one or more other third-party service providers to assist us. Before sharing confidential information with those service providers, we will (i) secure agreements to maintain the confidentiality of such information and ensure the information is only used for the purpose of assisting us with the performance of this engagement and (ii) take commercially reasonable precautions to determine the service providers have appropriate procedures in place to prevent the unauthorized disclosure of the information. If we use such service providers, we will remain responsible for all work performed and any breach of our confidentiality arrangements by those service providers.

## Your Responsibilities

You will determine the nature of the services we are to perform and keep us informed of material changes to the scope or objectives of our services. If this engagement includes testifying expert services, you agree to provide us with reasonable advance notice of any requirement for appearance at a deposition or court hearing and all applicable deadlines. You will also inform us promptly of any legal proceeding (such as an objection or motion) challenging the admissibility or basis of the opinion or testimony of any of our professionals assigned to this engagement. The notice shall be in writing and includes the style of the case, the case number, and court in which the challenge has been asserted, as well as the nature of the challenge. We reserve the right to take all steps necessary to respond to any such challenge, including interceding on the professional's behalf with written motion and briefing, and you and Your Client agree to cooperate with us to facilitate our response. Such efforts by us though will not be taken on your behalf or otherwise supplant efforts which you may decide are appropriate and necessary to protect your interests or those of Your Client.

Your Client has authorized you to request services and we are not required to obtain separate approval from Your Client. You will keep Your Client apprised of the nature and progress of our services and the related fees.

## Fees and Invoicing

We will charge for our time at our standard hourly rates set forth below.

| Level | Hourly Rate |
|---|---|
| Partner/Managing Director | \$575-\$795 |
| Director/Senior Manager | \$445-\$485 |
| Manager/Supervisor | \$360-\$385 |
| Senior Associate/Associate | \$295-\$315 |
| Intern/Analyst | \$250-\$275 |
| Administrative Staff | \$150 |

The total fee for our services will be determined by the complexity of the work performed and the tasks required. Individual hourly rates vary according to the degree of responsibility involved and the skills required and are subject to periodic review and change. It is understood that neither our fees nor the payment thereof will be contingent upon the results of this engagement.

Our fee estimate is based on anticipated cooperation from all involved and the assumption that unexpected circumstances will not be encountered during the engagement. If significant additional time is necessary, we will discuss the reasons with you and arrive at a new fee estimate before we incur the additional costs.

Our invoices will be rendered (generally monthly) as work progresses and are payable on presentation. The obligation to pay for our services exists whether arising from your request or if otherwise identified by us during the course of this engagement and is not contingent on the results obtained as we do not warrant or predict results or the final outcome of the engagement.

Responsibility for the payment of our invoices resides with You. We will look to you for the payment of our fees and expenses on this engagement.

Prior to commencing the performance of our services, we require receipt of a retainer in the amount of \$10,000. The retainer will be applied to our final invoice on this engagement or may be used to offset any amount not timely paid. The retainer amount is not an estimate of our fees and expenses for this engagement. We reserve the right to stop work or decline to issue reports or provide testimony in the event of an unpaid balance in excess of the retainer.

## Additional Ethical Conflict Terms

We provide services to many attorneys, companies, and individuals in various industries and geographic locations, including services of a similar nature to this engagement. We have reviewed the information you have provided to us about the parties and related persons and entities participating in or connected to this engagement and we are not aware of any conflicts of interests which would impact our ability to perform the requested services. You agree to inform us if there is a change or addition of any parties or related persons and entities—including attorneys—participating in or connected to this engagement. We reserve the right to withdraw from this engagement if, in our professional judgment, our continued involvement in this engagement would be inappropriate due to a conflict of interest.

## Documentation and Deliverable

The documentation we prepare pertaining to and in support of this engagement, along with any resulting work product, is our property and constitutes confidential information.

Any work product we prepare as a result of this engagement will be submitted directly to you.

If our documentation is subject to a protective order or confidentiality agreement, you agree to provide a copy of the same to us. We agree to abide by such restrictions we sign.

No (i) disclosure of our work product from this engagement or any portion, abstract, or summary thereof or (ii) reference to any opinions we may offer, shall be made orally or in writing (including without limitation by inclusion or reference in a discovery response, motion, or reply) without our prior written consent and that of the professional signing the work product (if applicable); except where compelled by a court or required to comply with a legal or regulatory obligation. To the extent disclosure of our work product is permitted, it shall only be made in the original, complete, and unaltered form provided by us with all restrictive legends and other agreements intact.

All documents provided by you that we do not need to retain in our files will be returned to you if requested in writing within ninety (90) days of completion of this engagement. We reserve the right to destroy the documents if there are no instructions from you within ninety (90) days of the completion of the engagement.

*[Signatures on Next Page]*

## Incorporated General Terms

Attached are our General Terms that provide additional terms (including but not limited to provisions on confidentiality, limitations on liability, indemnifications, dispute resolution, jury waiver, etc.) for this engagement.

Those terms are incorporated and apply to all services described herein.

We appreciate the opportunity to assist you and look forward to working with you and your team.

Sincerely,

Weaver and Tidwell, L.L.P.

**WEAVER AND TIDWELL, L.L.P.**

Please sign and return a copy of this letter to indicate acknowledgment of, and agreement with, the arrangements for our engagement as described herein, including each attorney and their client's respective responsibilities. By signing below, the attorney also represents that they have been authorized to execute this agreement on behalf of their client(s).

**Committee Chair – Official Committee of Unsecured Creditors of Raguse Family Partnership**

By: [signature]

Printed Name: Mark Speiser

Title: Committee Chair

Date: 6/24/2026



weaver Assurance · Tax · Advisory

# GENERAL TERMS

1. **Expenses.**
In addition to the fee for our services, reasonable and necessary out-of-pocket expenses we incur (such as parking, reproduction and printing, postage and delivery, and out-of-market travel, meals, and accommodations) will be invoiced at cost. The total amount stated on each invoice will include a separate administrative and technology charge. The charge represents an estimated allocation of our support personnel, telecommunication, and technology infrastructure expenses. The amount stated on each invoice will also include any sales, use, gross receipts, excise, or other transaction tax imposed on our fees or expenses.

2. **Payment.**
Any disagreement with the charges must be communicated to us in writing within thirty (30) days of the invoice date, after which any right to contest the invoices will be waived. For invoices not paid within sixty (60) days of the invoice date, a late charge will be added to any uncontested outstanding balance. The late charge will be assessed at a rate of half a percent (0.5%) of the unpaid balance per month. If invoices are not paid within ninety (90) days of the invoice date, this engagement (and any other engagements for the same party) will be placed on hold and we will stop work until the balance is brought current, or we may withdraw, and we will not be liable for any damages that may result.

3. **Term.**

A. This engagement ends at the earlier of the completion of our services described above, the provision of any deliverables described above, or the termination of this engagement. Any party may earlier terminate this engagement at any time with ten (10) days' written notice to the other party. If the engagement is terminated, our engagement will be deemed to have been completed upon written notification of termination, and we will be paid for our time expended and expenses incurred through the date of termination.

B. If we are requested to perform additional services not addressed in this engagement letter, we will communicate our ability to perform the services, the scope of additional services we agree to perform, and the fee arrangements we would use. We also may issue a separate engagement letter covering the additional services. In the absence of any other written communication from us documenting the arrangement for performance of such additional services, those services will continue to be governed by the terms of this engagement letter.

4. **Ethical Conflict Resolution.**
In the unlikely event that circumstances occur which we in our sole discretion believe could create a conflict with either the ethical standards of our firm or the ethical standards of our profession in continuing our engagement, we may suspend our services until a satisfactory resolution can be achieved or we may resign from the engagement. We will provide notice of such conflict as soon as practicable and discuss any possible means of resolving the conflict prior to suspending our services.

5. **Non-Solicitation of Our Staff.**
We value every one of our partners, employees, and contractors and have spent a great deal of time and resources to locate, train, and retain those individuals. Accordingly, during the term of this engagement letter and for two (2) years after the later of the termination of this engagement letter or conclusion of the performance of all of our services performed hereunder, no party, whether voluntarily or involuntarily, directly or indirectly, will solicit to employ or engage, on a partner, employee, contractor, or other basis, any of our partners, employees, or contractors who perform these services, without obtaining the prior written consent of our CEO or COO. This section shall not apply to a solicitation by general advertisement (e.g. website, social media posting, newspaper, etc.) or any employment or engagement resulting therefrom.

6. **Confidentiality.**

A. During the course of this engagement, the parties may disclose to each other, orally, in writing, or otherwise, information that is identified as or which is otherwise categorized by law as proprietary, confidential, or privileged ("Confidential Information"). Confidential Information does not include material which (i) is in the public domain through no fault of the receiving party, (ii) was already known to the receiving party before it was first disclosed to the receiving party by or on behalf of the disclosing party related to this engagement, (iii) is received by the receiving party from third-parties without confidentiality restrictions, unless those third-parties were acting for or on behalf of the disclosing party related to this engagement, or (iv) is developed by the receiving party independently of, and without reference to, any Confidential Information communicated to the receiving party by or on behalf of the disclosing party. We will use the Confidential Information disclosed to us during this engagement solely to perform services for which we have been engaged.

B. We may be requested to make the Confidential Information available to regulators and other government agencies, pursuant to authority given by law or regulation. Responding to many such requests is mandatory. In those cases, access to such Confidential Information will be provided under our supervision and we may, upon their request, provide the regulator or agency with copies of all

or selected portions of the Confidential Information. The requesting party may intend or decide to distribute the copies or information contained therein to others, including other regulators or agencies.

C. Unless otherwise stated herein, prohibited by law or direction of law enforcement, or agreed in writing, the parties will (i) provide prompt notice of any request received to make Confidential Information pertaining to this engagement, including any of our work product, available to outside parties not involved in the performance of these services and (ii) obtain written consent from the affected party before disclosing the Confidential Information in response to the request. If consent is withheld, the parties will cooperate with any lawful efforts taken to minimize the disclosure or protect the Confidential Information.

D. We will invoice for reasonable and necessary time (at our then-current standard hourly rates) and out-of-pocket expenses (including attorney's fees) we incur to respond to any request (such as a subpoena, summons, court order, or administrative investigative demand) pertaining to this engagement in a legal matter to which we are not a party. If we agree to perform additional substantive services related to or arising out of the request, such matters may be the subject of a new engagement letter.

E. The parties agree to maintain Confidential Information using the same standard of care each uses to protect its own information of like importance but in no case less than a reasonable standard of care.

F. All rights to Confidential Information (including patent, trademarks, copyrights, or other intellectual property rights) shall remain vested in the disclosing party, and no rights in the Confidential Information are vested in the receiving party, except the limited right to use the Confidential Information solely to perform its obligations or exercise its rights under this engagement letter.

G. We will return or destroy the Confidential Information upon the disclosing party's request within a reasonable period of time, except that we will maintain any copies of the Confidential Information for the period necessary to comply with any applicable laws or professional standards and our own document retention policy (e.g. we will maintain our workpapers for seven (7) years from the date of any attest report we issue). Following such a period, we may destroy the Confidential Information without notice.

H. We may at times provide (i) documents marked as drafts or (ii) preliminary or ancillary information or advice (not included in a final deliverable). Those documents, information, and/or advice are for review and consideration purposes only and should not be relied upon or distributed, and should be destroyed, unless otherwise required by law. If further analysis, information, or advice is desired, we will be informed in writing. We may assist if the matter is within our expertise. Unless already encompassed by the scope of our engagement letter, if we agree to provide such further assistance, our services will be handled as additional services in the manner described above.

I. We may transmit and store data via email, the cloud, or other electronic and Internet-based mechanisms to facilitate this engagement. Please be aware that those mediums inherently pose a risk of misdirection or interception of Confidential Information. Any request to limit such transmissions or use a different means of transmission or storage must be made in writing and we will not be responsible for any resulting compromise in data security.

J. We do not act as the host or repository of financial or non-financial information or as an information back-up service provider for our clients. It is the responsibility of our clients to maintain a complete set of their own financial and non-financial data and records. If some portion of the data and records is contained only within our files, inform us before the issuance of our deliverable and we will provide a copy.

K. Unless otherwise stated herein or agreed in writing, neither this engagement nor engagement letter is intended for the benefit of any third party. Any party may inform us of any third party who will receive our deliverable. If we are not informed in writing by a party, we are not aware of the identity of such third parties and we do not anticipate their reliance upon our professional services or deliverable unless otherwise agreed in writing.

7. **Limitations on Liability and Indemnifications.**

A. Each party to this engagement letter other than us gives the following releases and indemnifications to us and our affiliates' partners, employees, and contractors, and each of their heirs, executors, personal representatives, successors and assigns ("Our Representatives"). We and Our Representatives are hereby released, indemnified, and held harmless, from and against any liability and costs, including related liabilities, losses, damages, costs, expenses, and attorneys' fees, resulting from or arising out of: (i) knowing misrepresentations or unintentional or unauthorized disclosures to us or Our Representatives by any party (other than us) or the officers, employees, or others acting or purporting to act on their behalf, (ii) disclosure of our work product to anyone not a party this engagement letter who we were not informed of in advance, or (iii) misdirection, interception, or failed delivery of information connected with this engagement during transmission, submission, or storage.

B. Our and Our Representatives' total aggregate liability pertaining to this engagement and engagement letter shall be limited to one (1) times the amount of our fees (excluding any reimbursable expenses) the party bringing

the claim paid to us for the services in question. In no event shall we or Our Representatives be liable for indirect, incidental, consequential, special, multiple, exemplary, or punitive losses or damages—even if advised of their possible existence.

C. Satisfaction of a claim or cause of action arising from nonattest services (if any) which are part of this engagement or performed pursuant to this engagement letter shall only be sought from the limited liability partnership, Weaver and Tidwell, L.L.P. In no event will our partners, directors, employees, or agents be individually liable for any liability, damages, expenses, or losses of any nature, caused by or resulting from the engagement, engagement letter, or use of our work product. While we are entering into this engagement letter on our own behalf, this paragraph is also intended for the benefit of Our Representatives.

D. All limitations on liability and indemnifications contained herein shall apply to the fullest extent permissible by applicable laws and professional standards (including, without limitation, any applicable rules and interpretations of the AICPA, PCAOB, and SEC), regardless of the cause of action (whether contract, negligence, or otherwise), except as finally determined to have resulted solely from our fraud, gross negligence, or willful misconduct.

8. **Dispute Resolution Procedure including Jury Waiver.**

A. No claim arising out of or relating to this engagement or engagement letter shall be filed more than two (2) years after the earlier of the termination of this engagement or the date of the delivery of our work product in question, if any. This limitation applies and begins to run even if no damage or loss has been suffered, or the injured or damaged party has not become aware of the existence or possible existence of a dispute.

B. If a dispute arises out of or relates to this engagement or engagement letter, or the breach thereof, and if the dispute cannot be settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation before resorting to litigation. In such event, the parties will attempt to agree upon a location, mediator, and mediation procedures, but absent such agreement any party may require mediation in Houston, Texas, administered by the AAA under its Commercial Mediation Procedures.

C. This engagement letter and all disputes between the parties shall be governed by, resolved, and construed in accordance with the laws of the State of Texas, without regard to conflict-of-law principles. Any action arising out of or relating to this engagement or engagement letter shall only be brought in, and each party agrees to submit and consent to the exclusive jurisdiction of the federal or state courts in the State of Texas and convenience of those situated in Harris County, Texas.

D. Each party hereby irrevocably waives any right it may have to trial by jury in any proceeding arising out of or relating to this engagement or this engagement letter.

E. Whenever possible, this engagement letter shall be interpreted in such a manner as to be effective and valid under applicable laws, regulations, or published interpretation, but if any term of this engagement letter is declared illegal, unenforceable, or unconscionable, that term shall be severed or modified, and the remaining terms of the engagement letter shall remain in force. The court should in such case modify any term declared to be illegal, unenforceable, or unconscionable in a manner that will retain the intended term as closely as possible.

F. If because of a change in status or due to any other reason, any of the terms of this engagement or any contract we have now or enter into in the future with any of the other parties, would be prohibited by, or would impair our independence when required under laws, regulations or published interpretations by governmental bodies, professional organizations or other regulatory agencies, such provision shall, to that extent, be of no further force and effect and the contract shall consist of the remaining portions.

9. **Miscellaneous.**

A. We have non-CPA owners who may provide services pertaining to this engagement.

B. We do not provide legal advice or services. If necessary, refer to appropriate legal counsel for advice or services of that nature.

C. This engagement letter sets forth all agreed upon terms and conditions of our engagement with respect to the matters covered herein and supersedes any that may have come before. This engagement letter may not be amended or modified except by further writing signed by all the parties. Any provisions of this engagement letter which expressly or by implication are intended to survive its termination or expiration will survive and continue to bind the parties. The use of electronic signatures or multiple counterparts to execute this engagement letter shall have the same force and effect as a manually or physically signed original instrument.