**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

---

In re:

| | |
|---|---|
| Raguse Family Partnership, et al.[1] | Lead Case No. 26-60308, et al. **(Jointly Administered)** |
| Debtors. | Chapter 11 |

---

**DECLARATION OF JOE CASHEL IN SUPPORT OF APPLICATION FOR ORDER AUTHORIZING AND APPROVING EMPLOYMENT OF WEAVER AND TIDWELL, L.L.P AS FINANCIAL ADVISOR FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF RAGUSE FAMILY PARTNERSHIP, ET AL. EFFECTIVE AS OF JUNE 5, 2026**

---

I, Joe Cashel, being duly sworn, state the following under penalty of perjury (the "*Cashel Declaration*").

1. I am a managing director for Weaver and Tidwell, L.L.P. ("*Weaver*"), which has offices at, among other locations, One Pennsylvania Plaza, Suite 2800, New York, NY 10119. I have over 25 years of experience serving as a Financial Advisor.

2. I am in all respects competent to make this declaration on behalf of Weaver in support of the *Application for Order Authorizing and Approving Employment of Weaver and Tidwell, L.L.P. as Financial Advisor for the Official Committee of Unsecured Creditors of Raguse Family Partnership, et al. Effective as of June 5, 2026* (the "*Application*"), pursuant to which the Official Committee of Unsecured Creditors (the "*Committee*") seeks to retain and employ Weaver as its financial advisor in the chapter 11 cases of Raguse Family Partnership,

---

[1] The Debtors are Raguse Family Partnership (Case No. 26-60308), R.A.G. Holdings, LLC (Case No. 26-60309), Tru Ag LLC (Case No. 26-60311), and Red Rock Cattle, LLC (Case No. 26-60310), David and Susan Raguse (Case No. 26-60312), and Truman Raguse (Case No. 26-60313).

R.A.G. Holdings, LLC, Tru Ag LLC, Red Rock Cattle, LLC, David and Susan Raguse, and Truman Raguse, pursuant to sections 328(a) and 1103 of the United States Code (the "*Bankruptcy Code*"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), and Local Rules 2014-1 and 9013-3, effective as of June 5, 2026.

3. In connection with these cases, the Committee believes that the services of Weaver are necessary to enable the Committee to execute its duties. The Committee contemplates that Weaver will provide the full range of financial advisory services required to represent the Committee in the course of these chapter 11 cases including:

(a) Assisting in the review of financial-related disclosures required by the Court, including the Schedules of Assets and Liabilities, the Statement of Financial Affairs and Monthly Operating Reports;

(b) Assisting in the preparation of analyses required to assess compliance with orders pertaining to Debtor-In-Possession financing and use cash collateral, and advise the Committee with regard to any proposed modifications to such orders;

(c) Assisting with the assessment and monitoring of the Debtors' short-term cash flow, liquidity, and operating results;

(d) Assisting with the review of the Debtors' analysis of core business assets and the potential disposition or liquidation of non-core assets;

(e) Assisting with the review of the Debtors' cost/benefit analysis with respect to the affirmation or rejection of various executory contracts and leases to the extent occurring after its date of engagement;

(f) Assisting in the review and monitoring of the currently-in-process and any other asset sale processes, including, but not limited to an assessment of the adequacy of the marketing process, completeness of any buyer lists, review and quantifications of any bids;

(g) Assisting with review of any tax issues associated with, but not limited to, claims/stock trading, preservation of net operating losses, refunds due to the Debtors, plans of reorganization, and asset sales;

(h) Assisting in the claims reconciliation and estimation process;

(i) Assisting in the review of other financial information prepared by the Debtors, including, but not limited to, cash flow projections and budgets, business plans, cash receipts and disbursement analysis, asset and liability analysis, and the economic analysis of proposed transactions for which Court approval is sought;

(j) Attendance at meetings and assist in discussions with the Debtors, potential investors, banks, other secured lenders, the Committee and any other official committees organized in these chapter 11 proceedings, the United States Trustee, other parties-in-interest and professionals hired by the same, as requested;

(k) Assisting in the review of insider compensation and management fee arrangements and payments made thereunder, related party transactions, and other management conduct from which causes of action may arise;

(l) Assisting in the review and/or preparation of information and analysis necessary for the confirmation of a plan and related disclosure statement in these chapter 11 proceedings;

(m) Assisting in the evaluation and analysis of avoidance actions, including fraudulent conveyances and preferential transfers;

(n) Assisting in the prosecution of Committee responses/objections to the Debtors' motions, including attendance at depositions and provision of expert reports/testimony on case issues as required by the Committee;

(o) Render such other general business consulting or such other assistance as the Committee or its counsel may deem necessary that are consistent with the role of a financial adviser and not duplicative of services provided by other professionals in this proceeding; and

(p) Provide reports and testimony regarding the foregoing to the extent necessary.

4. Weaver requests that all fees and related costs incurred by the Committee on account of services rendered by Weaver in these cases be paid as administrative expenses of the Debtors' estates in accordance with the Bankruptcy Code and applicable orders entered in these cases.

5. Weaver will charge for its financial advisory services on an hourly basis, billed in tenth-of-an-hour increments, in accordance with its hourly rates in effect on the date that such services were rendered. Weaver's billing rates for professionals for the 2026 calendar year range from $250 per hour for analysts to $795 per hour for partners and managing directors. Time

devoted by administrative staff for the 2026 calendar year is $150 per hour (see table rate chart by level below).

| Level | Hourly Rate |
|---|---|
| Partner/Managing Director | $575-$795 |
| Director/Senior Manager | $445-$485 |
| Manager/Supervisor | $360-$385 |
| Senior Associate/Associate | $295-$315 |
| Intern/Analyst | $250-$275 |
| Administrative Staff | $150 |

These hourly rates are typically subject to periodic adjustments to reflect economic and other conditions.[2]

6. The names, position, and hourly rates for the 2026 calendar year of the Weaver professionals expected to be primarily responsible for providing services to the Committee, include: (a) Joe Cashel – Managing Director ($765/hour); and (b) Zachary Parkins – Director ($485/hour). In addition, from time to time, it may be necessary for other Weaver professionals to provide services to the Committee.

7. Weaver intends to charge for identifiable, non-overhead expenses incurred in connection with these cases, which would not have been incurred except for representation of the Committee, in accordance with the guidelines of the United States Trustee. Weaver will charge only the amount actually incurred by Weaver in connection with such items. Examples of such expenses are postage, overnight mail, courier delivery, photocopying, travel expenses, and meals and lodging. Weaver will maintain detailed records of any actual and necessary costs incurred in connection with the aforementioned services.

[2] The rates charged by each Weaver professional differ based on, among other things, the geographic location of the office in which such professional is resident, such professional's level of experience, and the rates normally charged by similar professionals.

8. Weaver intends to apply to the Court for allowance of such compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable orders of this Court, and the guidelines, practices, and customs of the United States Trustee. Weaver has advised the Committee that Weaver may seek interim compensation during this case as permitted by applicable sections of the Bankruptcy Code including sections 330 and 331, the applicable Local Rules and applicable orders of this Court.

9. Weaver ran a conflict search for all parties found on **Exhibit 1** to the Declaration. These parties include: (a) each known creditor; (b) the Debtors and their equity holders; (c) all professionals employed in these chapter 11 cases; and (d) all persons employed in the Office of the United States Trustee in the District of Minnesota.

10. Neither I, nor Weaver, nor any partner or associate thereof, insofar as I have been able to ascertain: (a) hold or represent any interest adverse to the Committee or the estates; (b) represent a creditor of the same class as any member of the Committee in connection with the cases; or (c) represent any other entity in connection with these cases having an interest adverse to the Committee with the following exceptions.

11. Further, insofar as I have been able to ascertain, other than in connection with its representation of the Committee in this case, Weaver has no connection (connection being defined as a biological or contractual relationship) with the Debtors, its creditors, or other parties in interest or their respective attorneys or accountants, the United States Trustee or any person employed in the Office of the United States Trustee with the following exceptions.

12. Weaver makes the following general and specific disclosures:

- Weaver has represented Archer-Daniels-Midland Company in various wholly unrelated matters, generally related to Agreed-Upon Procedures and Quality Assurance non-attest matters.

- Weaver has represented Cargill in unrelated matters including Agreed-Upon Procedures non-attest matters and general consulting matters.

- Weaver has a consulting matter with Wells Fargo Securities in a wholly unrelated matter.

- Weaver has wholly unrelated valuation matters where the Internal Revenue Service is an interested party.

- Weaver currently has matters with JP Morgan (JP Morgan Asset Management and JP Morgan Chase Bank) on certain matters, which are entirely unrelated to these Cases.

- Weaver professionals may have represented creditors in this case at previous firms in matters wholly unrelated to the chapter 11 case. However, any extent of this is currently unknown. Weaver will continue to perform conflicts checks as this case continues. Based on the results of this search, and through direct inquiries with Weaver professionals.

- Some of Weaver's professionals, in connection with their current employment, or before joining Weaver, may have been engaged in cases, proceedings, and transactions involving, or were colleagues of, certain professionals, some of whom may have represented claimants and parties in interest in the Debtors' cases.

- Weaver will continue to run expanded conflicts searches as further information about the Debtors' creditors is uncovered. To the extent such conflicts are uncovered, Weaver will promptly file a supplemental declaration disclosing any such conflicts.

13. Weaver professionals are familiar and have worked both with and against some of the professionals in this case. Such familiarity does not create any conflict and will not impact the quality of service provided to the Committee.

14. I believe that: (a) Weaver is disinterested as that term is defined in Section 101(14) of the Bankruptcy Code; and (b) Weaver does not represent any interest materially adverse to the interests of the Debtors' estates or any class of creditors or equity security holders thereof. Going forward, Weaver will represent no entity other than the Committee in connection

with these chapter 11 cases. However, Weaver may represent a successor in interest to the Committee pursuant to a confirmed plan in these chapter 11 cases.

15. Weaver has not shared or agreed to share: (a) any compensation it has received or may receive in connection with this case with another party or person, other than with the partners, of counsel, associates, contract attorneys, and law clerks associated with Weaver; or (b) any compensation another person or party has received or may receive in connection with this case.

16. No promises have been received by Weaver, or by any partner, counsel or associate thereof, as to compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules. Weaver has no agreement with any other entity to share with such entity any compensation received by Weaver.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 23, 2026

*<u>/s/ Joe Cashel</u>*
Joe Cashel

**<u>EXHIBIT 1</u>**

<u>Debtors</u>
Raguse Family Partnership
R.A.G. Holdings, LLC
Red Rock Cattle LLC
Susan Raguse
Tru Ag, LLC
Truman Raguse
David Raguse

<u>Top 20 Creditors</u>
Archer Daniels Midland
Bois De Sioux Watershed District
Cargill
Channel Bio – Rinke Seeds
CNH Capital-Productivity Plus
CT Sibson Gravel
Farmers Mutual Hail/Choice Insurance
First Insurance Funding
Gateway Building Systems
Internal Revenue Service
Intuit Payments Inc.
John Deere Financial
Minn-Dak Farmers Cooperative
Monetafi
North Shore Track Services, Inc.
Prosperum Capital
Quality Plus Manufacturing Inc.
RCIS/Receivables Control
Simplot

<u>Secured Creditors</u>
Cornerstone Bank
Bravera Bank
Ally Bank
Ascentium Capital
Avanza Capital
CapFirst Equipment Finance, Inc.
Deutsche Leasing USA, Inc.
JPMorgan Chase Bank, N.A.
Lazarus Capital
Old Second National Bank
U.S. Small Business Administration
Vermeer Credit
Wells Fargo Leasing

<u>Office of United States Trustee</u>
Sarah Wencil
Mary R. Jensen
L. Ashley Wieck