**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

---

In re:

Raguse Family Partnership, Bky. Case No. 26-60308
Chapter 11

Debtor.

---

**NOTICE OF HEARING AND MOTION OF MINN-DAK FARMERS COOPERATIVE TO COMPEL ASSUMPTION OR REJECTION OF PATRON AGREEMENT**

---

TO: THE DEBTOR AND OTHER ENTITIES SPECIFIED IN THE APPLICABLE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND LOCAL RULE 9013-3.

1. Minn-Dak Farmers Cooperative (the "Co-Op") by and through undersigned counsel, moves the Court for entry of an order under 11 U.S.C. § 365(d)(2) compelling Debtor Raguse Family Partnership ("RFP" or "Debtor") to assume or reject the Co-Op's Patron Agreement within seven (7) days of this Court's hearing.

2. The Court will hold a hearing on this motion on **Tuesday, September 22, 2026, at 1:00 p.m.** before the Honorable William J. Fisher. The hearing will be conducted telephonically. Please contact Judge Fisher's Courtroom Deputy by email at mnb_fisher_hearings@mnb.uscourts.gov (link sends e-mail) or by telephone at 651-848-1061 to obtain the dial-in information. Dial-in instructions for telephonic hearings will also be displayed the day prior to the hearing on Judge Fisher's public calendar here: https://www.mnb.uscourts.gov/judges-calendars. Any person wanting to appear in person must contact Judge Fisher's Courtroom Deputy at 651-848-1061 at least 48 hours prior to the hearing.

3. Any response to this motion must be filed and delivered no later than Tuesday, September 15, 2026, which is seven (7) days before the time set for the hearing (including Saturdays, Sundays and holidays). UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4. The Court has jurisdiction to consider this motion under 28 U.S.C. §§ 157 and 1334, Federal Rule of Bankruptcy Procedure 5005, and Local Rule 1070-1. This is a core proceeding under 28 U.S.C. § 157(b). Debtor filed a petition under Chapter 11 of the Bankruptcy Code (the "Petition") on May 12, 2026, and the case is now before this Court.

5. This Motion arises under 11 U.S.C. § 365 and Federal Rules of Bankruptcy Procedure 6006 and 9014.

6. The best interests of the Debtor, its creditors, and the estate require that the Debtor be ordered to promptly assume or reject the Patron Agreement.

7. The Co-Op is beginning to take delivery of its members' sugarbeet crop for the current season, but RFP has not yet assumed or rejected the Patron Agreement. The Co-Op requires clarity on RFP's status under the Patron Agreement to coordinate intake, processing, payment flows, and enforcement of cure and adequate assurance requirements. The Co-Op will be significantly prejudiced if a decision to assume or reject the Patron Agreement is not made promptly.

8. This motion is supported by a memorandum of facts and law submitted concurrently herewith.

9. Should testimony be required, Mike Metzger, the Co-Op's Executive Vice President will be available to testify.

WHEREFORE, Movants respectfully request that this Court enter an order:

A. Compelling the Debtor, pursuant to 11 U.S.C. § 365(d)(2), to assume or reject the Patron Agreement by seven (7) days after entry of the order;

B. Providing that, if the Debtor elects to assume, the Debtor must, no later than the assumption deadline, cure or provide adequate assurance of prompt cure of all defaults under 11 U.S.C. § 365(b)(1) and provide adequate assurance of future performance, including with respect to amounts identified by the Co-Op related to the 2025 and 2026 crop years;

C. Preserving all Co-Op rights regarding setoff and recoupment and clarifying that nothing in the order impairs, primes, or compels turnover of funds in the Co-Op's possession subject to asserted setoff or recoupment, pending further order; and

D. Granting such other and further relief as is just and proper under 11 U.S.C. § 365 and applicable rules.

Dated: August 24, 2026.

/e/ Erik A. Ahlgren
Erik A. Ahlgren, Atty #191814
Ahlgren Law Office, PLLC
220 W. Washington Ave. Ste 105
Fergus Falls, MN 56537
Office: 218-998-2775
Email: erik@ahlgrenlawoffice.net

**ATTORNEYS FOR MINN-DAK FARMERS COOPERATIVE**

**VERIFICATION**

I, Mike Metzger, Executive Vice President of Minn-Dak Farmers Cooperative, declare under penalty of perjury that the factual statements contained in this motion and the concurrently filed memorandum of facts and law are true and correct to the best of my knowledge, information, and belief.

Mike Metzger
Executive Vice President
Minn-Dak Farmers Cooperative

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Raguse Family Partnership,

Debtor.

Bky. Case No. 26-60308
Chapter 11

**MINN-DAK FARMERS COOPERATIVE'S MEMORANDUM OF FACTS AND LAW IN SUPPORT OF MOTION TO COMPEL ASSUMPTION OR REJECTION OF PATRON AGREEMENT AND FOR RELATED RELIEF**

Minn-Dak Farmers Cooperative (the "Co-Op"), by and through undersigned counsel, moves the Court for entry of an order under 11 U.S.C. § 365(d)(2) compelling Debtor Raguse Family Partnership ("Debtor") to assume or reject the Co-Op's Patron Agreement within seven (7) days of this Court's hearing.

## INTRODUCTION AND RELIEF REQUESTED

The Co-Op is beginning to take delivery of its members' sugarbeet crop for the current season, but Debtor has not yet assumed or rejected the Patron Agreement. The Patron Agreement governs the ongoing, reciprocal obligations between the Co-Op and its grower-members, including Debtor, to grow and deliver sugarbeets for processing with payments remitted based on proceeds. The Debtor should not be allowed to receive the full benefit of the cooperative relationship — continued membership, processing rights, and income from the 2026 crop — without bearing the corresponding financial obligations that are part of that same relationship. Accordingly, the Co-Op requests entry of an order:

1. Compelling the Debtor, pursuant to 11 U.S.C. § 365(d)(2), to assume or reject the Patron Agreement by seven (7) days after entry of the order;

2. Providing that, if the Debtor elects to assume, the Debtor must, no later than the assumption deadline, cure or provide adequate assurance of prompt cure of all defaults under 11 U.S.C. § 365(b)(1) and provide adequate assurance of future performance, including with respect to amounts identified by the Co-Op related to the 2025 and 2026 crop years;

3. Preserving all Co-Op rights regarding setoff and recoupment and clarifying that nothing in the order impairs, primes, or compels turnover of funds in the Co-Op's possession subject to asserted setoff or recoupment, pending further order; and

4. Granting such other and further relief as is just and proper under 11 U.S.C. § 365 and applicable rules.

**BACKGROUND FACTS**

The Co-Op is a sugarbeet cooperative organized under the laws of North Dakota, and Debtor is a shareholder-member of the Co-Op. Each shareholder enters into a Patron Agreement requiring the shareholder to grow and deliver sugarbeets to the Co-Op for processing, with payment based on proceeds from the sale of sugar derived from the delivered beets. Under the Co-Op's policies and the Patron Agreement structure, the relationship is continuing and interdependent, with successive iterations communicating updated policies and regulations and providing, among other things, for a running account and offset of amounts owed by the member against future beet payments.

As of the petition date, the Co-Op's records reflect prepetition obligations owed by Debtor to the Co-Op related to the 2025 and 2026 crop years, including $312,733 for 2025 seed purchases, $166,011 for 2025 fixed costs (estimate after setoff of final payment), and $107,156 for 2026 beet seed invoices. As setoffs against these amounts, the Co-Op owes Debtor approximately $54,000 remaining from the 2025 beet payment and $133,317.65 from a 2025 federal government bridge assistance payment. The Co-Op asserts recoupment rights for the value of the 2026 beet seed against 2026 crop proceeds because the seed sale and crop delivery/payment are part of a single integrated agricultural transaction.

The Debtor's obligations to the Co-Op are secured by the Debtor's membership shares in the Co-Op, the value of which are determined primarily by the net present value of the Debtor's equity in the Co-Op.

The Co-Op is beginning to receive deliveries for the current sugarbeet season from its members and requires clarity on Debtor's status under the Patron Agreement to coordinate intake, processing, payment flows, and enforcement of cure and adequate assurance requirements.

**ARGUMENT**

1. **<u>The patron agreement is an executory contract</u>**

An executory contract is defined as "[A] contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." *In re Interstate Bakeries Corp.*, 751 F.3d 955, 962 (8th Cir.

2014). The Patron Agreement reflects ongoing, reciprocal obligations between the Co-Op and its members, including Debtor, to grow, deliver, process, and pay based on proceeds, evidencing an executory contract subject to assumption or rejection under 11 U.S.C. § 365. The Patron Agreement is an executory contract because, if the Debtors refused to deliver sugar beets or the Co-Op refused to process them, it would constitute a material breach excusing the performance of the other.

**2. Legal standard to compel assumption or rejection**

The court has authority under Section 365(d)(2) of the Bankruptcy Code ("Code") and Federal Rules of Bankruptcy Procedure 6006 and 9014 to require the Debtor to determine whether to assume or reject an Agreement within a specified period of time.

Section 365(d)(2) of the Bankruptcy Code states:

> In a case under chapter…11…of this title, the trustee may assume or reject an executory contract…of the debtor at any time before the confirmation of a plan *but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract*…

"Congress intended Section 365(d)(2) to 'prevent parties in contractual or lease relationships with the debtor from being left in doubt concerning their status vis-à-vis the estate.'" *Univ. Med. Ctr. V. Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1079 (3d Cir. 1992) (citing S. Rep. No. 989, 95th Cong., 2d Sess. 59 (1978)). A movant is "permitted to protect its interest under an executory contract by moving for an order requiring the bankrupt party to recommend assumption or rejection of the contract within a specified time." *R & O Elevator Co. v. Harmon*, 93 B.R. 667, 672 (D. Minn. 1988).

The Debtor is permitted certain "breathing space" under Chapter 11 within which to determine whether a particular lease or executory contract should be assumed or rejected, but that "breathing space" is not without limits. *In re Enron Corp.*, 279 B.R. 695, 702 (Bankr. S.D.N.Y. 2002). Such time to assume or reject must be "reasonable." *Philadelphia Co. v. Dipple,* 312 U.S. 168, 174, 61 S.Ct. 538, 541, 85 L.Ed. 651 (1941); *In re O-Jay Foods, Inc.*, 110 B.R. 895, 897 (Bankr. D. Minn. 1989). The determination of what constitutes reasonable time to assume or reject a particular executory contract is within the bankruptcy court's discretion and has to be decided in light of the particular facts of each case but may extend up to 120 days after the date of the order for relief or the instant before the confirmation of a plan. See *In re Adelphia Commc'ns Corp.*, 291 B.R. 283, 292 (Bankr. S.D.N.Y. 2003); *In re O-Jay Foods, Inc.*, 110 B.R. at 898; 11 U.S.C. §§ 365(d)(2) & 365(d)(4). Here, the Debtor filed its bankruptcy on May 12, 2026 and it has had ample time to determine whether to assume or reject the Co-Op's Patron Agreement.

**3. Cause Exists to Compel Prompt Assumption or Rejection of Ongoing Performance Obligations**

The Debtor will almost certainly assume the Co-Op's Patron Agreement. There is no market for the Debtor's sugarbeets other than the Co-Op. All sugarbeets commercially grown in Minnesota and North Dakota are grown through and processed by a cooperative, and only members of the cooperative may deliver and process sugarbeets through the cooperative.

Delay in determining whether the Debtor will assume or reject the Co-Op's Patron Agreement will cause payment uncertainty for both the Debtor and the Co-Op.

The Co-Op intends to withhold payment until it is determined whether it will receive adequate assurance that the current payment defaults will be cured – and proper to do so because, if payments are made to the Debtor and the Debtor subsequently converts to a chapter 7 case or otherwise ceases operations, those payments (including payments for the current year's seed which grew the crop) will likely never be recovered. The Debtor will, concomitantly, be uncertain as to the amount and timing of the payments it will receive. Accordingly, it is in the best interests of all parties that the Debtor promptly determine whether it will assume or reject the Co-Op's Patron Agreement and that the parties or the court determine the appropriate means of providing adequate assurance that the Debtor's defaults will be cured.

**4. If the Debtor elects to assume the Patron Agreement, it must provide the Co-Op with adequate assurances that existing defaults will be cured, along with adequate assurances of future performance**

If the Debtor elects to assume, Section 365(b)(1) requires prompt cure or adequate assurances of a prompt cure of all defaults, and adequate assurances of future performance. The Co-Op has identified the following prepetition amounts owed to the Co-Op that constitute defaults or shortfalls under the Patron Agreement as well as potential setoffs against such claims:

| | |
|---|---|
| 2025 Seed Purchases | 312,733 |
| 2025 Fixed Costs | 220,011 |
| 2026 Seed Purchases | 107,156 |
| Set-off of 2025 Bridge Assistance | -133,318 |
| Set-off of 2025 Final Beet Payment | -54,000 |
| Recoupment of 2026 Seed Purchases from Beet Payment | -107,156 |
| Defaulted Payment Obligation After Set-offs | 345,426 |

Based on the Bankruptcy Code's automatic stay, none of the set-off or recoupment rights have been exercised at this point. The Co-Op is holding $133,318 received from the federal government's 2025 Bridge Assistance program, which the Co-Op has passed through to members who are current on their accounts. In addition, the Co-Op is holding the 2025 final beet payment that had not yet been distributed at the time of the Debtor's bankruptcy filing. Both of these payments are appropriately subject to set-off against the 2025 seed purchase and fixed costs because there is a mutuality of debt, both of which accrued pre-petition.[1] The Co-Op, similarly, has a right to recover amounts owed for the 2026 beet seed under recoupment. Unlike setoff, recoupment does not require that both debts arose prepetition—it only requires that both claims arise from the same transaction. The Eighth Circuit has held that, to justify recoupment, both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations. *U.S. on Behalf of U.S. Postal Service v. Dewey Freight System, Inc.*, 31 F.3d 620 (8th Cir. 1994). Here, the seed sale and the crop delivery constitute a single integrated agricultural transaction: the Co-Op sold seed to the Debtor; the Debtor planted the seed, grew beets and is contractually required to deliver the resulting crop back to the Co-Op. This creates the type of interconnected relationship where recoupment is appropriate.

[1] To assert setoff rights in bankruptcy, a creditor must establish a mutuality of debts; that is, that the creditor owes a debt to the debtor that arose prepetition, and the creditor has a claim against the debtor that arose prepetition. *In re Pro-Mark Services, Inc.*, 673 B.R. 565, 571 (Bankr. N.D. 2025).

Finally, the remaining $345,426 of the claim secured by shares and net present value of the Debtor's equity in the Co-Op based on both the Co-Op's articles and bylaws, which each provide for a lien in the shares to secured debts owed by the Debtor to the Co-Op.

Based on the foregoing, the Co-Op proposes the following partially as a cure and partially as adequate assurances of a cure:

1. The parties stipulate to the set-offs and recoupment as discussed above; and
2. The remaining $345,426 be paid through the Plan of Reorganization as a secured claim on the following terms: (a) the claim shall be paid over five (5) years, and shall accrue interest at the rate of 10% per annum commencing with the Debtor's bankruptcy filing date, (b) the annual principal and interest payment shall be deducted from the Co-Op's beet payment to the Debtor, (c) the obligation shall continue to be secured by the Debtor's equity and shares in the Co-Op, (d) all equity, patronage and other sums payable from the Co-Op to the Debtor (including but not limited to government payments received by the Co-Op and passed through to its shareholders) may be set off against the debt owed by the Debtor to Co-Op at the discretion of the Debtor, (d) all obligations of the Debtor to the Co-Op shall become immediately due and payable upon the Debtor's default, sale of the Co-Op equity or shares, or if the Debtor otherwise ceases the production of sugarbeets.

5. **<u>The Debtor has incorrectly asserted that it is not required to cure or provide assurances of a cure of obligations accruing prepetition</u>**

The Debtor is expected to argue that the 2025 and 2026 Patron Agreements are independent commercial transactions and that there is no obligation to cure payment obligations from the 2025 crop year in order for the Debtor to assume the 2026 Patron Agreement. While the Co-Op annually updates its Patron Agreement, the Patron Agreement does not create time delimited rights or obligations. There is no term or termination of the Patron Agreement. Rather, each new Patron Agreement is an update of the previous agreement designed to communicate the Co-Op's updated policies and regulations to its members.

The Eighth Circuit has recognized that agreements may be treated as integrated for purposes of identifying defaults that must be cured upon assumption of the contract when they are part of a unified transaction. See *In re Interstate Bakeries Corp.,* 751 F.3d 955 (8th Cir. 2014). Here, the structure of the Co-Op's membership arrangement — where members are required to enter into the Patron's Agreement as a condition of remaining a member — creates a continuous, interdependent relationship. Relevant features of the Co-Op's business model are:

1. Both the Articles and Bylaws specifically require that the shares may be purchased, owned, or held only by member-producers "who patronize the association in accordance with uniform terms and conditions prescribed by it".

2. The bylaws and policies of the Co-Op ultimately govern the member-producer's relationship with the Co-Op. By policy adopted by the Board of Directors, each new member must sign a Patron Agreement.
3. There is a continuing grower relationship between the Co-Op and the member based on the member's share ownership and the reciprocal obligations of the parties as contained in the Patron Agreement. There is no term or termination of the Patron Agreement. The Patron Agreement does not create time-delimited rights or obligations. Rather, each new Patron Agreement is an update of the previous agreement designed to communicate the Co-Op's updated "Policies and Regulations" to its members.
4. The Co-Op's Policies and Regulations, as set forth in Section 6.7 of the Patron Agreement, provides for a "running account" between the Co-Op and the member and specifically provides for the offset of amounts owed by the member against future beet payments from the Co-Op. Moreover, both the Co-Op's articles and bylaws provide that any debt owed by a member to the Co-Op will be secured by a lien on the member's shares.

As is clear from a review of the Co-Op's business structure, the 2025 and 2026 agreements are not independent commercial transactions between strangers; they are successive iterations of the same ongoing membership obligation. Accordingly, the unpaid 2025 obligations constitute defaults in the overall contractual relationship that must be cured before the Debtor can assume the 2026 agreement.

Further supporting the requirement that the unpaid obligations from the 2025 crop year are a continuing default under the most current iteration of the Patron Agreement, is the requirement in Section 6.7 of the Patron Agreement stating: "If the shortfall is not covered in the final sugarbeet payment of the current crop year, nor the initial subsequent crop year payment, the Patron, within 30 days of notice, shall make arrangements, subject to approval of the Board, to pay for the any remaining shortfall". Thus, the failure to make arrangements to pay the shortfall is a continuing default that must be cured in order for the Debtor to assume the 2026 agreement.

In summary, assumption of the Debtor's rights under the Patron Agreement will require the Debtor's assumption of the liabilities, not as a matter of granting a distributive share, but by performance in full, just as if bankruptcy had not intervened. *Matter of SteelShip Corp.*, 576 F.2d 128 (8th Cir. 1978). Allowing the debtor to assume the 2026 Patron Agreement while leaving the 2025 obligations as mere prepetition unsecured claims would permit the debtor to receive the full benefit of the cooperative relationship — continued membership, processing rights, and income from the 2026 crop — without bearing the corresponding financial obligations that are part of that same relationship.

**CONCLUSION**

For the foregoing reasons, the Co-Op respectfully requests that the Court grant this Motion, enter an order compelling the Debtor to assume or reject the Patron Agreement by seven (7) days after entry of the order, require cure or adequate assurance of a cure if the Debtor elects to assume, preserve the Co-Op's setoff and

recoupment rights, and grant such other and further relief as is just and proper under 11 U.S.C. § 365 and applicable rules.

Dated: August 24, 2026.

/e/ Erik A. Ahlgren
Erik A. Ahlgren, Atty #191814
Ahlgren Law Office, PLLC
220 W. Washington Ave. Ste 105
Fergus Falls, MN 56537
Office: 218-998-2775
Email: erik@ahlgrenlawoffice.net

**ATTORNEYS FOR MINN-DAK FARMERS COOPERATIVE**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

---

In re:

Raguse Family Partnership, Bky. Case No. 26-60308
Chapter 11

Debtor.

---

**ORDER REQUIRING PROMPT ASSUMPTION OR REJECTION OF PATRON AGREEMENT**

---

This matter came before the Court on the motion of Minn-Dak Farmers Cooperative seeking an order to compel Raguse Family Partnership (the "Debtor") to assume or reject the Co-Op's Patron Agreement. Based on the record before the Court,

IT IS ORDERED

1. The Debtor shall, no later than seven (7) days from entry of this Order, file and serve a notice stating whether it elects to assume or reject the Patron Agreement with Minn-Dak Farmers Cooperative.

2. If the Debtor elects to assume, then on or before the assumption deadline it shall either:

a. Cure all existing monetary and non-monetary defaults under the Patron Agreement; or

b. Provide adequate assurance of prompt cure as required by 11 U.S.C. § 365(b)(1), and provide adequate assurance of future performance, including evidence satisfactory to the Court of the Debtor's ability to perform all ongoing obligations under the Patron Agreement.

3. All rights, claims, liens, setoff, and recoupment defenses of the Co-Op are preserved, including with respect to patron payments and program payments; nothing in this Order primes, attaches to, requires turnover of, or otherwise impairs funds in the Co-Op's possession that are subject to asserted setoff or recoupment, pending further order of the Court.

4. The Court retains jurisdiction to interpret and enforce this Order.

Date: ________________________________

William J. Fisher
United States Bankruptcy Judge