# EXHIBIT A
# BIRCHEM LEASES

**CASH LEASE OF FARM LAND, BUILDINGS AND EQUIPMENT**

THIS LEASE is entered into this 1st day of January, 2026,

Between Kenneth Birchem + George Birchem landlord, of 17236 101st St. SE Hankinson, ND 58041 (Address)

and Rague Family Partnership, tenant, of 6807 140th St. Wheaton, MN 56296 (Address)

1. The landlord hereby leases to the tenant, to use for agricultural purposes, the following-described property, located in Roberts County, State of South Dakota, and commonly known as ______.

Section 9 Township 128 N Range 49W

Victor Township

and consisting of 147.30 acres, more or less, all rights thereto except as specified below:

a. The landlord reserves the right to use the following land and buildings:

N/A

2. The landlord reserves the right of himself, his agents, his employees, or his assigns to enter the farm at any reasonable time for purposes of (a) of consultation with the tenant; (b) of making repairs, improvements, and inspections; (c) of developing mineral resources; and (d) after notice of termination of the lease is given, none of which is to interfere with the tenant in carrying out regular farm operations.

3. The landlord does not convey to the tenant the right to lease or sublet any part of the land or buildings or to assign the lease to any person or persons whomsoever.

4. If the landlord should sell or otherwise transfer title to the land and buildings, he will do so subject to the provisions of this lease.

5. The terms of this lease shall be binding upon the heirs, executors, administrators, and successors of both the landlords and tenant in like manner as upon the original parties. However, in event the lease is for more than one year, the heirs or successors of the tenant shall have the option to give written notice of termination effective at the end of the lease year in which the death occurs.

6. The landlord warrants that he has the right to lease the land and buildings, and will defend the tenant's possession against any and all persons whomsoever.

7. To improve the land, conserve its resources, and maintain it in a high state of cultivation, the two parties agree as follows:

a. The tenant will maintain the land during his tenancy in as good condition as at the beginning, normal wear and depreciation and damages from causes beyond tenant's control excepted.

b. The tenant will operate the land in an efficient and husbandlike way.

c. The tenant will not, without oral consent of the landlord, cut live trees for sale or personal use.

d. The landlord reserves the right to prevent the production of any crop on any or all land where the production of such crop would clearly damage the land due to excessive erosion or other causes.

e. The tenant will use fertilization practices which will prevent depletion of the essential plant food elements in the soil.

8. The tenant will maintain the buildings and equipment during his tenancy in as good condition as at the beginning, normal wear and depreciation beyond tenant's control excepted.

9. The tenant agrees to pay to the landlord as cash rent the amount of $ 260.00, per Acre and such payment will be made as follows:

1st Half Due April 1st $17,229.00
2nd Half Due November 1st $17,229.00

10. The term of this lease shall be 3 years(s) from January 1st, 2026, to December 31st, 2028, and this lease shall continue in effect from year to year thereafter until written notice of termination is given by either party to the other at least 1 months before expiration of this lease or any renewal.

11. The tenant agrees that he or his agent will possess the land and facilities continuously during the term of the lease.

12. The tenant agrees to surrender possession of the land, buildings and equipment peaceably at the termination of the lease.

2026 1st Half - $17,229.00
2nd Half - $17,229.00

2027 1st Half - $17,229.00
2nd Half - $17,229.00

2028 1st Half - $17,229.00
2nd Half - $17,229.00

Mow Ditches 2 times per year.

13. A request for general review of the lease may be at least 30 days prior to the final date for giving notice to terminate this lease. Amendments and alterations to this lease shall be made in writing.

14. This lease shall not give rise to a partnership relationship, and neither party shall have the authority to obligate the other without written consent, except as specifically provided in this lease.

15. Each party agrees that the other party shall in no way be responsible for the debts of, or liabilities for accidents or damages caused by the other party.

16. Willful neglect, failure, or refusal by either party to carry out any substantial provision of this lease shall give the other party the benefits of any proceedings provided by law.

17. Any differences between the parties as to their several rights and obligations under this lease that are not settled by mutual agreement after thorough discussion, shall be submitted for arbitration to a committee of three disinterested persons, one selected by each party hereto and the third by the two thus selected, and the committee's decision shall be accepted by both parties.

Additional agreements:

David (720) 815-0992
Truman (720) 815-1101
Kenneth (701) 242-7692

IN WITNESS WHEREOF, the parties have signed this lease on the 2 th day of March, 20 26.

George Bircher (Landlord)

[signature] Owner/Manager
(Tenant)

## CASH LEASE OF FARM LAND, BUILDINGS AND EQUIPMENT

THIS LEASE is entered into this 1st day of January, 2026,

Between Kraig Birchem & George Birchem, landlord, of 17236 101st St. SE Hankinson, ND 58041 (Address)

and Roquse Family Partnership, tenant, of 10861 140th St. Wheaton, MN 56296 (Address)

1. The landlord hereby leases to the tenant, to use for agricultural purposes, the following-described property, located in Richland County, State of North Dakota, and commonly known as ______.

Section 36 Township 129 N Range 49 W

Greendale Township

and consisting of 154 acres, more or less, all rights thereto except as specified below:

a. The landlord reserves the right to use the following land and buildings:

N/A

2. The landlord reserves the right of himself, his agents, his employees, or his assigns to enter the farm at any reasonable time for purposes of (a) of consultation with the tenant; (b) of making repairs, improvements, and inspections; (c) of developing mineral resources; and (d) after notice of termination of the lease is given, none of which is to interfere with the tenant in carrying out regular farm operations.

3. The landlord does not convey to the tenant the right to lease or sublet any part of the land or buildings or to assign the lease to any person or persons whomsoever.

4. If the landlord should sell or otherwise transfer title to the land and buildings, he will do so subject to the provisions of this lease.

5. The terms of this lease shall be binding upon the heirs, executors, administrators, and successors of both the landlords and tenant in like manner as upon the original parties. However, in event the lease is for more than one year, the heirs or successors of the tenant shall have the option to give written notice of termination effective at the end of the lease year in which the death occurs.

6. The landlord warrants that he has the right to lease the land and buildings, and will defend the tenant's possession against any and all persons whomsoever.

7. To improve the land, conserve its resources, and maintain it in a high state of cultivation, the two parties agree as follows:

a. The tenant will maintain the land during his tenancy in as good condition as at the beginning, normal wear and depreciation and damages from causes beyond tenant's control excepted.

b. The tenant will operate the land in an efficient and husbandlike way.

c. The tenant will not, without oral consent of the landlord, cut live trees for sale or personal use.

d. The landlord reserves the right to prevent the production of any crop on any or all land where the production of such crop would clearly damage the land due to excessive erosion or other causes.

e. The tenant will use fertilization practices which will prevent depletion of the essential plant food elements in the soil.

8. The tenant will maintain the buildings and equipment during his tenancy in as good condition as at the beginning, normal wear and depreciation beyond tenant's control excepted.

9. The tenant agrees to pay to the landlord as cash rent the amount of $ 260.00, per Acre and such payment will be made as follows:

1st Half Due April 1st $19,260.00
2nd Half Due November 1st $19,260.00

10. The term of this lease shall be 3 years(s) from January 1st, 2026, to December 31st, 2028, and this lease shall continue in effect from year to year thereafter until written notice of termination is given by either party to the other at least 1 months before expiration of this lease or any renewal.

11. The tenant agrees that he or his agent will possess the land and facilities continuously during the term of the lease.

12. The tenant agrees to surrender possession of the land, buildings and equipment peaceably at the termination of the lease.

@ Mow Ditches two times per year.

2026- 1st - $19,260.00
2nd - $19,260.00

2027 - 1st - $19,260.00
2nd - $19,260.00

2028- 1st - $19,260.00
2nd - $19,260.00

13. A request for general review of the lease may be at least 30 days prior to the final date for giving notice to terminate this lease. Amendments and alterations to this lease shall be made in writing.

14. This lease shall not give rise to a partnership relationship, and neither party shall have the authority to obligate the other without written consent, except as specifically provided in this lease.

15. Each party agrees that the other party shall in no way be responsible for the debts of, or liabilities for accidents or damages caused by the other party.

16. Willful neglect, failure, or refusal by either party to carry out any substantial provision of this lease shall give the other party the benefits of any proceedings provided by law.

17. Any differences between the parties as to their several rights and obligations under this lease that are not settled by mutual agreement after thorough discussion, shall be submitted for arbitration to a committee of three disinterested persons, one selected by each party hereto and the third by the two thus selected, and the committee's decision shall be accepted by both parties.

Additional agreements:

David (320) 815-0992
Truman (320) 815-1161
George (701) 403-0400

IN WITNESS WHEREOF, the parties have signed this lease on the 2th day of March, 2026.

Kraig Burcham, land owner
(Landlord)

George Birchem

[signature] owner/manager
(Tenant)