# EXHIBIT B
# BIRCHEM LEASES – NEW TENANT

**FARM LEASE CONTRACT**
**(CASH RENT)**

This Lease Agreement ("Lease") is made by and between George Birchem and Kraig Birchem with Chad Braun.

1. ***Definitions***:

   a. *Landlord* means George Birchem and Kraig Birchem with an address of 17235 – 101st Street SE, Hankinson, North Dakota 58041.

   b. *Tenant* means Chad Braun with an address of 47395 – 101st Street, Rosholt, South Dakota 57260.

   c. *Effective Date* means January 1, 2026.

   d. *Property* means:

   The Northwest Quarter (NW¼) of Section Thirty-Five (35) in Township One Hundred Twenty-nine (129) North, of Range Forty-nine (49), West of the Fifth Principal Meridian, Richland County, North Dakota, consisting of 154 tillable acres, more or less.

2. ***Lease***. In consideration of the complete performance of the terms of this Lease, Landlord leases to the Tenant the Property.

3. ***Term***. This Lease shall commence on the 1st day of January, 2026, and shall terminate on the 31st day of December, 2028.

4. ***Rent***. Tenant agrees to pay to the Landlord the sum of Thirty-eight Thousand Five Hundred Fifty Dollars ($38,500.00) per year. This rent shall be due and payable as follows:

   a. $19,250.00 due on or before April 1, 2026.
   b. $19,250.00 due on or before November 1, 2026.
   c. $19,250.00 due on or before April 1, 2027.
   d. $19,250.00 due on or before November 1, 2027;
   e. $19,250.00 due on or before April 1, 2028;
   f. $19,250.00 due on or before November 1, 2028.

5. ***Representations***. Tenant has not relied upon any representation or statement of Landlord as to the quality or condition of the Property (or buildings, if any) or as to the number of crop acres contained in the Property, and is leasing the Property (or buildings, if any) "AS IS".

6. ***Government Payments***. All government payments from the operation of the Property are payable to Tenant. Tenant agrees to return any ASCS allotments or bases to Landlord upon termination of this Lease.

7. ***Assignment***. This Lease may not be assigned or sublet by Tenant without the prior written consent of Landlord, and any such assignment made without Landlord's consent shall be voidable at the election of Landlord.

8. ***Relationship***. Tenant is not the agent of Landlord. There is no employer-employee relationship between Landlord and Tenant or Tenant's employees.

9. ***Inspection***. Landlord may enter on the Property at any time to make reasonable inspections of the Property or to make needed repairs or maintenance.

10. ***Weeds***. Tenant agrees to conduct a good weed control program on the Property at Tenant's own expense.

11. ***Ditches and Alterations***. Tenant shall be responsible for keeping the ditches mowed and free from noxious weeds with mowing to be done at least twice a year. Tenant shall make no alterations to the Property such as, but not limited to, constructing, repairing or altering ditches and dikes without the prior written consent of Landlord.

12. ***Plowing***. Tenant has the option of whether or not to leave the Property in one of the following tilled conditions at the expiration of this Lease:

a. Moldboard plowed

b. Chisel plowed and/or disked in such a manner as to leave the Property in a normal fall condition in accordance with generally accepted tillage practices used in connection with similar crop and soil conditions in the general area of the Property

c. Sugar beet and potato ground, if any, may be left untilled after harvest of the sugar beet or potato crop. Tenant need not leave the Property in a plowed or tilled condition at the end of the Lease.

13. ***Expiration***. Unless written notice of termination is required to terminate this Lease, no notice is required from Landlord to Tenant to terminate this Lease at the end of its term. Tenant agrees to quietly and peacefully return possession to Landlord of the Property at the expiration of this Lease in as good a condition and repair as when the Lease started, normal wear and tear alone excepted.

14. ***Entrance – Final Year***. During the final year of the Lease, Landlord may enter upon each field for the purpose of preparing the soil for the next crop year as soon as Tenant has harvested the current year's crop from the field.

15. ***Security Interest***. Tenant hereby grants to Landlord a security interest in all crops grown or raised on the Property during the term of this Lease and any extensions or renewal hereof to secure to Landlord the payment of the rents and any advances Landlord may make.

16. ***Default***. In the event Tenant defaults in the performance of any of the conditions or promises set forth in this Lease, Landlord may enter upon the Property and take full possession of the Property and any growing or stored crops found on the Property. Any such re-entry shall not constitute a waiver of the rents to be paid by Tenant.

17. ***Notice of Default***. In the event Tenant defaults in the performance of any condition contained in this Lease, Landlord agrees to notify Tenant of such default and Tenant shall have ten (10) days after such notice to correct the default.

18. ***Liability***. Tenant agrees to indemnify and hold Landlord harmless from any claims or liability arising from Tenant's use and possession of the Property.

19. ***Heirs and Assigns Bound***. All heirs, assigns, and personal representatives of Landlord are bound by each of the conditions of this Lease, and Landlord's rights shall pass in full to Landlord's heirs, assigns and personal representatives.

20. ***Waiver***. The failure of Landlord to insist upon strict performance of any of the terms and/or conditions of this Lease shall not be deemed a waiver of any rights or remedies for any subsequent breach or default in said terms and/or conditions.

21. ***Entire Agreement***. This Lease constitutes the entire agreement between the parties hereto and supersedes any prior oral or written agreements between the parties regarding the subject matter hereof. There are no verbal agreements that change the terms of this Lease. No waiver of any of the terms of this Lease will be effective unless the waiver is contained in a writing executed by the parties. No representation, promise, warranty, condition, understanding or agreement of any kind in connection with the subject matter hereof shall be binding on the parties hereto unless expressly set forth herein.

22. ***Amendment***. No change or modification of this Lease shall be valid unless the same be in writing and signed by all the parties to this Lease.

23. ***Sale***. Landlord reserves the right to sell the Property during the term of the Lease. In the event Landlord sells the Property, Landlord may terminate this Lease the later of the date Tenant receives written notice from Landlord of the sale of the Property, or in the event there are growing crops on the Property, the end of the current crop year. In the event this Lease is terminated by sale of the Property, Tenant shall be reimbursed for the reasonable cost of any fertilizer or chemicals applied in the fall for the next crop year, or fieldwork performed in the fall for the next crop year, which Tenant was not otherwise required to perform under this Lease.

24. ***Enforcement Costs***. If the Tenant defaults in performing any of the duties agreed to in this Lease, the Landlord shall have the right to collect from the Tenant, to the extent allowed by law, all the costs reasonably incurred in enforcing this Lease including, but not limited to, attorney's fees, seeding or cultivation costs, chemical application and ditch maintenance.

25. ***Interest***. All payments not made when due shall accrue interest at the rate of six percent (6%) per annum from the due date until paid.

26. ***Hazardous Materials***. Tenant agrees that any chemicals, fuel, fertilizer or other hazardous materials, used on the Property shall be used in full compliance with the instructions or application labels furnished with the materials, and in compliance with all federal and state laws regulating the usage of these materials. Tenant agrees that no such materials shall be stored or disposed on the Property without the proper written consent of Landlord. Tenant shall be responsible for any damages resulting from Tenant's usage of such materials on the Property and agrees to indemnify and hold Landlord harmless in the event of any claim resulting from such damage.

27. ***Time of the Essence***. Time is of the essence as to each and every term of this Lease.

28. ***Signature in Counterparts***. This Lease may be signed in counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument. The parties hereto confirm that any facsimile or scanned copy of another party's executed counterpart of this Lease (or its signature page thereof) will be deemed to be an executed original thereof.

**IN WITNESS WHEREOF**, the parties have hereunto set their hands as of the day and year first above written.

**LANDLORD:**

George Birchem

Kraig Birchem

**TENANT:**

Chad Braun

**FARM LEASE CONTRACT**
**(CASH RENT)**

This Lease Agreement ("Lease") is made by and between George Birchem with Chad Braun.

1. ***Definitions***:

   a. *Landlord* means George Birchem with an address of 17235 – 101st Street SE, Hankinson, North Dakota 58041.

   b. *Tenant* means Chad Braun with an address of 47395 – 101st Street, Rosholt, South Dakota 57260.

   c. *Effective Date* means January 1, 2026.

   d. *Property* means:

   The South Half of the Northeast Quarter (S½NE¼) and Government Lots One (1) and Two (2) of Section Five (5) in Township One Hundred Twenty-eight (128) North, of Range Forty-nine (49), West of the Fifth Principal Meridian, Roberts County, South Dakota, consisting of 137.8 tillable acres, more or less.

2. ***Lease***. In consideration of the complete performance of the terms of this Lease, Landlord leases to the Tenant the Property.

3. ***Term***. This Lease shall commence on the 1st day of January, 2026, and shall terminate on the 31st day of December, 2028.

4. ***Rent***. Tenant agrees to pay to the Landlord the sum of Thirty-four Thousand Four Hundred Fifty Dollars ($34,450.00) per year. This rent shall be due and payable as follows:

   a. $17,225.00 due on or before April 1, 2026.
   b. $17,225.00 due on or before November 1, 2026.
   c. $17,225.00 due on or before April 1, 2027.
   d. $17,225.00 due on or before November 1, 2027;
   e. $17,225.00 due on or before April 1, 2028;
   f. $17,225.00 due on or before November 1, 2028.

5. ***Representations***. Tenant has not relied upon any representation or statement of Landlord as to the quality or condition of the Property (or buildings, if any) or as to the number of crop acres contained in the Property, and is leasing the Property (or buildings, if any) "AS IS".

6. ***Government Payments***. All government payments from the operation of the Property are payable to Tenant. Tenant agrees to return any ASCS allotments or bases to Landlord upon termination of this Lease.

7. ***Assignment***. This Lease may not be assigned or sublet by Tenant without the prior written consent of Landlord, and any such assignment made without Landlord's consent shall be voidable at the election of Landlord.

8. ***Relationship***. Tenant is not the agent of Landlord. There is no employer-employee relationship between Landlord and Tenant or Tenant's employees.

9. ***Inspection***. Landlord may enter on the Property at any time to make reasonable inspections of the Property or to make needed repairs or maintenance.

10. ***Weeds***. Tenant agrees to conduct a good weed control program on the Property at Tenant's own expense.

11. ***Ditches and Alterations***. Tenant shall be responsible for keeping the ditches mowed and free from noxious weeds with mowing to be done at least twice a year. Tenant shall make no alterations to the Property such as, but not limited to, constructing, repairing or altering ditches and dikes without the prior written consent of Landlord.

12. ***Plowing***. Tenant has the option of whether or not to leave the Property in one of the following tilled conditions at the expiration of this Lease:

   a. Moldboard plowed

   b. Chisel plowed and/or disked in such a manner as to leave the Property in a normal fall condition in accordance with generally accepted tillage practices used in connection with similar crop and soil conditions in the general area of the Property

   c. Sugar beet and potato ground, if any, may be left untilled after harvest of the sugar beet or potato crop. Tenant need not leave the Property in a plowed or tilled condition at the end of the Lease.

13. ***Expiration***. Unless written notice of termination is required to terminate this Lease, no notice is required from Landlord to Tenant to terminate this Lease at the end of its term. Tenant agrees to quietly and peacefully return possession to Landlord of the Property at the expiration of this Lease in as good a condition and repair as when the Lease started, normal wear and tear alone excepted.

14. ***Entrance – Final Year***. During the final year of the Lease, Landlord may enter upon each field for the purpose of preparing the soil for the next crop year as soon as Tenant has harvested the current year's crop from the field.

15. ***Security Interest***. Tenant hereby grants to Landlord a security interest in all crops grown or raised on the Property during the term of this Lease and any extensions or renewal hereof to secure to Landlord the payment of the rents and any advances Landlord may make.

16. ***Default***. In the event Tenant defaults in the performance of any of the conditions or promises set forth in this Lease, Landlord may enter upon the Property and take full possession of the Property and any growing or stored crops found on the Property. Any such re-entry shall not constitute a waiver of the rents to be paid by Tenant.

17. ***Notice of Default***. In the event Tenant defaults in the performance of any condition contained in this Lease, Landlord agrees to notify Tenant of such default and Tenant shall have ten (10) days after such notice to correct the default.

18. ***Liability***. Tenant agrees to indemnify and hold Landlord harmless from any claims or liability arising from Tenant's use and possession of the Property.

19. ***Heirs and Assigns Bound***. All heirs, assigns, and personal representatives of Landlord are bound by each of the conditions of this Lease, and Landlord's rights shall pass in full to Landlord's heirs, assigns and personal representatives.

20. ***Waiver***. The failure of Landlord to insist upon strict performance of any of the terms and/or conditions of this Lease shall not be deemed a waiver of any rights or remedies for any subsequent breach or default in said terms and/or conditions.

21. ***Entire Agreement***. This Lease constitutes the entire agreement between the parties hereto and supersedes any prior oral or written agreements between the parties regarding the subject matter hereof. There are no verbal agreements that change the terms of this Lease. No waiver of any of the terms of this Lease will be effective unless the waiver is contained in a writing executed by the parties. No representation, promise, warranty, condition, understanding or agreement of any kind in connection with the subject matter hereof shall be binding on the parties hereto unless expressly set forth herein.

22. ***Amendment***. No change or modification of this Lease shall be valid unless the same be in writing and signed by all the parties to this Lease.

23. ***Sale***. Landlord reserves the right to sell the Property during the term of the Lease. In the event Landlord sells the Property, Landlord may terminate this Lease the later of the date Tenant receives written notice from Landlord of the sale of the Property, or in the event there are growing crops on the Property, the end of the current crop year. In the event this Lease is terminated by sale of the Property, Tenant shall be reimbursed for the reasonable cost of any fertilizer or chemicals applied in the fall for the next crop year, or fieldwork performed in the fall for the next crop year, which Tenant was not otherwise required to perform under this Lease.

24. ***Enforcement Costs***. If the Tenant defaults in performing any of the duties agreed to in this Lease, the Landlord shall have the right to collect from the Tenant, to the extent allowed by law, all the costs reasonably incurred in enforcing this Lease including, but not limited to, attorney's fees, seeding or cultivation costs, chemical application and ditch maintenance.

25. ***Interest***. All payments not made when due shall accrue interest at the rate of six percent (6%) per annum from the due date until paid.

26. ***Hazardous Materials***. Tenant agrees that any chemicals, fuel, fertilizer or other hazardous materials, used on the Property shall be used in full compliance with the instructions or application labels furnished with the materials, and in compliance with all federal and state laws regulating the usage of these materials. Tenant agrees that no such materials shall be stored or disposed on the Property without the proper written consent of Landlord. Tenant shall be responsible for any damages resulting from Tenant's usage of such materials on the Property and agrees to indemnify and hold Landlord harmless in the event of any claim resulting from such damage.

27. ***Time of the Essence***. Time is of the essence as to each and every term of this Lease.

28. ***Signature in Counterparts***. This Lease may be signed in counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument. The parties hereto confirm that any facsimile or scanned copy of another party's executed counterpart of this Lease (or its signature page thereof) will be deemed to be an executed original thereof.

**IN WITNESS WHEREOF**, the parties have hereunto set their hands as of the day and year first above written.

**LANDLORD:**

George Birchem

George Birchem

**TENANT:**

Chad Braun

Chad Braun